IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-768 (SLR) |
| CONOR MEDSYSTEMS, INC., | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' ANSWERING BRIEF
IN OPPOSITION TO CONOR'S MOTION TO STAY**

                                        YOUNG CONAWAY
                                        STARGATT & TAYLOR, LLP
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Adam W. Poff (I.D. #3990)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
(302) 571-6600
jshaw@ycst.com

*Attorneys for
Boston Scientific Corporation
and Boston Scientific Scimed, Inc.*

*Of Counsel*:
John M. Desmarais
Peter J. Armenio
Eric W. Dittmann
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4611
(212) 446-4800

Dated: February 15, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................................ 1

SUMMARY OF ARGUMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT .............................................................................................................................. 5

I.    THE REQUESTED STAY IS AN EXTRAORDINARY MEASURE ............................ 5

II.   THE BURDENS CREATED BY THE REQUESTED STAY WOULD
SUBSTANTIALLY OUTWEIGH ANY COUNTERVAILING BENEFIT ..................... 6

    A.    A Stay Is Not In The Court's Interest Because It Will Neither
Simplify The Issues For Trial Nor Conserve Judicial Resources ......................... 6

        1.    Resolution Of The Contract Action Will
Not Simplify The Issues Before This Court ............................................. 7

        2.    The Court Has Already Expended Significant Resources
With Respect To The Jang '021 Patent In The Contract Action .............. 9

    B.    A Stay Is Not In The Public Interest ................................................................... 9

    C.    BSC Would Be Significantly Harmed By A Stay .............................................. 10

    D.    Conor Has Failed To Identify Any Interest Sufficient To Warrant A Stay ........ 12

        1.    Conor's Alleged Hardship Is Illusory Because Dr. Jang
Will Be Bound By The Outcome Of This Litigation ............................. 12

        2.    If Anything, A Stay Could Bankrupt Conor By
Subjecting It To A Substantial Damages Verdict ................................... 14

CONCLUSION ........................................................................................................................ 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Baxter Healthcare Corp.*,
    No. 04 C 836, 2004 WL 1878291 (N.D. Ill. Aug. 16, 2004) ............................................ 7

*Anchor Glass Container Corp. v. Buschmeier*,
    426 F.3d 872 (7th Cir. 2005) ........................................................................................ 13

*Argos v. Orthotec LLC*,
    304 F. Supp. 2d 591 (D. Del. 2004) ............................................................................. 6, 7

*Cordis Corp. v. Boston Scientific Corp.*,
    C.A. No. 03-027-SLR (D. Del.) ............................................................................ 1, 4, 13

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*,
    711 F. Supp. 1205 (D. Del. 1989) ................................................................................... 7

*Gold v. Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir. 1983) ......................................................................................... 6

*Hybritech Inc. v. Abbott Labs.*,
    849 F.2d 1446 (Fed. Cir. 1988) .................................................................................... 10

*IGT v. Silicon Gaming Inc.*,
    51 U.S.P.Q.2d 1150 (D. Nev. 1999) ............................................................................. 12

*In re Navigation Tech. Corp.*,
    880 F.2d 1491 (1st Cir. 1989) ...................................................................................... 13

*Jang v. Boston Scientific Corp.*,
    C.A. No. ED CV 05-00426 VAP (SGLx) (C.D. Cal.) ...................................................... 1

*Kahn v. Gen. Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) ...................................................................................... 9

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ................................................................................................. 6, 10

*Latham v. Wells Fargo Bank, N.A.*,
    896 F.2d 979 (5th Cir. 1990) ........................................................................................ 13

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*,
    840 F. Supp. 211 (E.D.N.Y. 1994) ................................................................................. 8

*Rashid v. U.S. Fid. & Guar. Co.*,
    Civ.A.No. 2:91-0141, 1992 WL 565341 (S.D. W. Va. Sept. 28, 1992) .......................... 13

*Rolo v. Gen. Dev. Corp.*,
    949 F.2d 695 (3d Cir. 1991) ...................................................................................... 11

*Santrade, Ltd. v. Gen. Elec. Co.*,
    19 U.S.P.Q.2d 1396 (E.D.N.C. 1990) ............................................................................ 7

*Smith Int'l, Inc. v. Hughes Tool Co.*,
    718 F.2d 1573 (Fed. Cir. 1983) ............................................................................ 10, 12

*Summa Four, Inc. v. AT&T Wireless Servs., Inc.*,
    994 F. Supp. 575 (D. Del. 1998) .................................................................................... 7

*United States v. Breyer*,
    41 F.3d 884 (3d Cir. 1994) ............................................................................................. 5

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
    766 F. Supp. 212 (D. Del. 1991) .................................................................................... 6

*Versa Corp. v. AG-Bag Int'l Ltd.*,
    No. CV-01-544-HU, 2001 WL 34046241 (D. Or. Sept. 14, 2001) .............................. 7, 9

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*,
    No. 01 Civ. 1044 (RJH) (HBP), 2005 WL 912184 (S.D.N.Y. Apr. 19, 2005) ........ 6, 7, 10

Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") respectfully submit this brief in opposition to Defendant Conor Medsystems, Inc.'s Motion To Stay.

## NATURE AND STAGE OF THE PROCEEDINGS

BSC commenced this action against Conor on November 8, 2005. (D.I. 1) BSC's Complaint charges Conor with infringement of the Jang '021 patent, the same patent a Delaware jury found to be valid and infringed by Cordis' Cypher and Bx Velocity stents in *Cordis Corp. v. Boston Scientific Corp.*, C.A. No. 03-027-SLR (D. Del.) ("the Cordis Action"). Conor filed an Answer to BSC's Complaint on December 30, 2005 (D.I. 8), and filed an amended Answer on January 19, 2006 (D.I. 16). BSC has repeatedly requested that Conor participate in the required Rule 26(f) conference, but Conor has refused. Once the parties conduct this conference, BSC will provide Conor with its Jang production from the Cordis Action within two business days.

## SUMMARY OF ARGUMENT

BSC filed this action in November 2005 to provide the Court and the parties ample time to litigate it to a jury verdict before Conor dramatically expands its infringing activities after obtaining FDA approval for the accused CoStar stents, expected during the fourth quarter of 2007. By its Motion To Stay, Conor seeks to indefinitely delay this action pending resolution of *Jang v. Boston Scientific Corp.*, C.A. No. ED CV 05-00426 VAP (SGLx) (C.D. Cal.) ("the Contract Action"). Conor's motion should be denied for a number of reasons.

First, the requested stay would be contrary to the Court's interest in efficiently adjudicating the claims in this litigation. The Contract Action involves a dispute between Dr. Jang (the inventor of the Jang '021 patent) and BSC that focuses on the assignment of certain balloon-catheter patents. Consequently, it is unlikely that the Contract Action will have any

impact on BSC's ownership of the stent technology claimed in the Jang '021 patent. Indeed, Dr. Jang's Complaint admits that he validly assigned the Jang '021 patent to BSC.

But more importantly, regardless of the outcome of that dispute, the Contract Action will not resolve or simplify any of the liability issues in this case. Conor is accused of infringing the presumptively valid and enforceable Jang '021 patent. Nothing in the Contract Action will have any bearing on those issues. Thus, Conor will have to answer for its infringement at some point.

Now is the most appropriate time to resolve those issues. Under the current scheduling order in the Contract Action, trial is set for February 20, 2007. If the Court grants Conor's motion, BSC would be forced to seek emergency relief in the months before FDA approval of the accused CoStar stent during the fourth quarter of 2007, followed by a subsequent full trial on the merits. Thus, a stay would require the Court to try this action twice, once in the context of a preliminary injunction hearing and a second time in a full trial on the merits. By denying Conor's motion, the Court would hear this case once, and on a full record.

Second, the public interest in resolving litigation expeditiously favors denying Conor's motion. This interest is particularly important here, as adjudicating BSC's claims now avoids the possibility of Conor launching its stents in the United States and later having to pull those stents from the market.

Third, a stay would prejudice BSC by making it impossible to conduct a full trial on the merits before Conor dramatically expands its infringement in the fourth quarter of 2007. If the Court grants Conor's motion, BSC would be forced to move for a preliminary injunction within the short window of time between the trial in the Contract Action and Conor's anticipated FDA approval date. Although BSC believes that a preliminary injunction would be appropriate in those circumstances, such a proceeding has a different burden of proof and would be

burdensome for the Court and the parties.  BSC seeks to adjudicate its infringement claims against Conor in the ordinary course and on a full record.

Fourth, Conor will not suffer any harm if its requested stay is denied.  Consistent with this Court's findings in the Cordis Action, Dr. Jang will be bound by the outcome of this litigation under principles of *res judicata*.  Thus, there is no risk of duplicative litigation.  Moreover, despite Conor's assertions to the contrary, it is in Conor's interest to adjudicate the infringement issues now.  At the moment, Conor's sales and potential monetary liability are relatively small.  If Conor launches before BSC's claims are adjudicated, it would be subject to a potentially bankrupting damages award.  In its brief, Conor asserts that it cannot pay for litigation now.  But those assertions are belied by the offensive actions that Conor has filed against BSC and its licensor, Angiotech Pharmaceuticals, Inc., in the United Kingdom and Australia.  Conor has sufficient resources to litigate when it files actions, and has the same resources here.

For all these reasons, BSC respectfully requests that the Court deny Conor's motion.

## STATEMENT OF FACTS

This Court has already devoted substantial time and resources to adjudicating the Jang '021 patent in the Cordis Action.  The Court has construed the claims in a *Markman* proceeding and overseen a jury trial.  This action presents issues with which the Court is already familiar, and a stay would not conserve judicial resources.  This can be seen by comparing the Cordis stent design found to infringe the Jang '021 patent in the Cordis Action with the Conor stent design accused of infringement in this case:

 

In fact, Conor's stent design presents an easier infringement analysis than the one implicated by the stents already found to be infringing in the Cordis Action. The central infringement issue in that action concerned whether Cordis' Bx Velocity and Cypher stents had "corners." A "corner," as construed by the Court, is "a place where two surfaces meet to form an angle." (Ex. 1 (*Cordis Corp. v. Boston Scientific Corp.*, slip op. at 5 (D. Del. June 3, 2005) (*Markman* order)) As can be seen from the images above, Conor's stents undoubtedly have "corners." At a minimum, Conor's stents have the "rounded corners" preferred by the Jang '021 patent. (Ex. 2 (Jang '021 patent) at col. 12:7-11)

In the first quarter of 2005, Conor began selling its CoStar stent in certain countries in Asia and Latin America. (Opening Br. Ex. A at 6, 16; Ex. 3 (Frank Litvack, Conor Chairman & CEO, Nov. 8, 2005 Webcast Presentation) at 16-17) Through the first two quarters of 2005, Conor made $400,000 of revenue from its sales. (Opening Br. Ex. A at 17) Conor's sales have since continued to grow, totaling $2.3 million in revenue as of December 31, 2005. (Ex. 4 (Conor Feb. 15, 2006 Press Release) at 1) By the time trial in the Contract Action is held

4

(currently scheduled for the first quarter of 2007), analysts predict that Conor's sales will have exceeded $60 million. (Ex. 5 (Matthew Dodds & Efrem Kamen, Citigroup/Smith Barney, *CONR: Q3:05 – Showing Half The Monty* (Nov. 4, 2005)) at 7)  Conor's sales will grow exponentially once it receives FDA approval and launches its stents in the United States in the fourth quarter of 2007.  (Opening Br. Ex. A at 15)  Upon launch, all of Conor's sales in the United States will infringe the Jang '021 patent.

Conor currently has $78.5 million of cash and cash equivalents on hand.  (Ex. 4 at 1) This amount will likely continue to increase as Conor makes the stent sales described above. Moreover, Conor has already been involved in at least four other lawsuits, two of which it initiated against BSC and Angiotech in the United Kingdom and Australia.  (Opening Br. Ex. A at 13)  Thus, Conor has more than adequate financial resources to defend itself against BSC's allegation that it is infringing the Jang '021 patent.

As described in more detail below, nothing in the Contract Action has any bearing on Conor's growing infringing activity.  The Contract Action does not challenge the validity, enforceability or the infringement of the Jang '021 patent.  Thus, a stay will only delay when Conor must defend itself for its infringing acts, and force the Court and BSC to address that infringement in emergency proceedings.

## ARGUMENT

### I. THE REQUESTED STAY IS AN EXTRAORDINARY MEASURE

"A stay is an extraordinary measure," and the party seeking a stay must present a "compelling reason for its issuance."  *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). Indeed, "[i]t is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work

5

damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

Thus, "when considering whether to grant a stay, a district court must evaluate the possible damage, hardship, and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case." *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) (internal quotations omitted). Broken out, these considerations include four distinct relevant interests: (1) the interests of and burden on the plaintiffs; (2) the interests of and burden on the defendants; (3) the interests of the court; and (4) the public interest. *See Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*, No. 01 Civ. 1044 (RJH) (HBP), 2005 WL 912184, at *1 (S.D.N.Y. Apr. 19, 2005).[1] An examination of these interests as they apply to the facts here reveals that none support the "extraordinary" relief Conor seeks.

## II. THE BURDENS CREATED BY THE REQUESTED STAY WOULD SUBSTANTIALLY OUTWEIGH ANY COUNTERVAILING BENEFIT

### A. A Stay Is Not In The Court's Interest Because It Will Neither Simplify The Issues For Trial Nor Conserve Judicial Resources

Whether the Court's interests are served by a stay pending resolution of a parallel action depends upon two inquiries: (1) whether resolution of the parallel action will resolve issues currently pending before the Court; and (2) whether the Court already expended significant resources in the pending lawsuit. *Argos v. Orthotec LLC*, 304 F. Supp. 2d 591, 598 (D. Del. 2004).

---

[1] *Wing Shing Products* also refers to "the interests of persons not parties to the civil litigation." *Id.* As described in Section II.D.1, *infra*, Dr. Jang has an interest in having the Jang '021 patent enforced now, and BSC will adequately represent that interest in this action.

6

### 1. Resolution Of The Contract Action Will Not Simplify The Issues Before This Court

As this Court noted in *Argos*, a court's interests are not served by a stay if a party can still bring a cause of action regardless of the outcome of a parallel proceeding. *Id.* Indeed, courts routinely deny stays in such circumstances. *See, e.g.*, *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F. Supp. 1205, 1208 n.9 (D. Del. 1989) ("[T]his Court will not employ its discretion to stay the ordinary course of its [patent] proceedings simply because the outcome of the [separate] proceedings *may* moot the issues . . . ."); *Versa Corp. v. AG-Bag Int'l Ltd.*, No. CV-01-544-HU, 2001 WL 34046241, at *2 (D. Or. Sept. 14, 2001) (denying stay because "[l]itigation in this court is inevitable"); *Abbott Labs. v. Baxter Healthcare Corp.*, No. 04 C 836, 2004 WL 1878291 at *7 (N.D. Ill. Aug. 16, 2004) (denying stay because the "key issue" concerning validity in the parallel action "is not an issue in this case [and] will not necessarily resolve the issues involved here").

Conor relies upon four cases in arguing that a stay should be granted "when the ownership of the patent-in-suit is being challenged" in another proceeding. (Opening Br. at 6-7 & n.2) But each of Conor's cases is inapposite, as resolution of the parallel patent-ownership dispute would have simplified liability issues. For example, in *Wing Shing Products*, 2005 WL 912184, at *2, the court stated that "at least three of the issues now before the Federal Circuit [in the parallel litigation] are potentially outcome determinative in this case," including unenforceability, equitable estoppel and noninfringement due to co-ownership by the defendant. Similarly, in *Summa Four, Inc. v. AT&T Wireless Services, Inc.*, 994 F. Supp. 575, 581 (D. Del. 1998), the parallel suit would have determined whether one of the defendants was an owner or co-owner of the patent-in-suit and, therefore, could not infringe the patent. Finally, the parallel litigations in *Santrade, Ltd. v. General Electric Co.*, 19 U.S.P.Q.2d 1396 (E.D.N.C. 1990), and

7

*Loral Fairchild Corp. v. Matsushita Electric Industrial Co.*, 840 F. Supp. 211 (E.D.N.Y. 1994), could have mooted issues of infringement by finding the alleged infringer to be a co-owner or licensee, respectively, of the patent-in-suit.

  Here, there is no chance that a stay pending resolution of the Contract Action will simplify any liability issues for trial. Dr. Jang sued BSC over the assignment of certain patents to balloon-catheter technology (Opening Br. Ex. B at 9 ¶ 32), and primarily seeks monetary damages (*id.* at 7-8). Dr. Jang also seeks a declaration "that the balloon catheters, patents and improvements thereon are not covered by the Assignment Agreement." (*Id.* at 10) The Jang '021 patent, however, does not relate to that technology. In fact, Dr. Jang admits in his Complaint "that the Assignment Agreement relates only to coronary stents," like those covered by the Jang '021 patent. (*Id.* at 9) Rescission of the entire Assignment Agreement is merely pleaded as an alternate form of relief. BSC is therefore unlikely to lose any rights to the Jang '021 patent. More importantly, no matter the outcome of the Contract Action, it will not narrow any issue relating to Conor's infringement of the presumptively valid and enforceable Jang '021 patent. Accordingly, granting the requested stay pending resolution of the Contract Action will not simplify any liability issue for trial.

  Instead, a stay will actually increase the burden on the Court. The only question is when, not if, the present infringement allegations against Conor will be adjudicated. A stay will increase the burden on the parties and the Court by requiring the Court to hear this case twice: once during a preliminary injunction hearing and then again in a full trial on the merits.

  This inefficient use of the Court's resources can be avoided by denying Conor's motion and trying this action in the ordinary course during the third quarter of 2007. There is ample

8

time to discover and try this case on the merits before Conor's projected launch in the United States in the fourth quarter of 2007, eliminating the need for a preliminary injunction hearing.

### 2. The Court Has Already Expended Significant Resources With Respect To The Jang '021 Patent In The Contract Action

Many of the issues likely to arise in this action have already been addressed by this Court in the Cordis Action. This further supports denying Conor's requested stay. As a result of the Cordis Action, the Court is already familiar with the technology claimed in the Jang '021 patent. And the Conor stents are the same as the stents found to infringe in that action in that they use the claimed curvy, offset connectors. Furthermore, much of the discovery needed in this action can be quickly and easily leveraged from the discovery in that action. In that regard, BSC is prepared to provide Conor with all of its Jang production and relevant trial materials within two days after Conor finally agrees to conduct the required Rule 26(f) conference.

Other courts have refused to stay recently filed patent-infringement suits when the vast majority of the discovery needed in the lawsuit could be leveraged from the discovery in a previous action. *See, e.g.*, *Versa Corp.*, 2001 WL 34046241, at *4 (declining to stay an infringement suit that was still in the pleadings phase because, *inter alia*, extensive discovery had been conducted in prior proceedings and the court "d[id] not believe the remaining discovery for this case will be overwhelming"). Indeed, it is possible that this suit could be ready for trial before the Contract Action. Forcing BSC to wait a year or more to begin to enforce its patent rights would prejudice BSC and create more work for both the Court and the parties.

### B. A Stay Is Not In The Public Interest

It is always in the public interest to resolve litigation expeditiously. *See Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). Recognizing this fact, the Supreme Court has warned against the type of immoderate and indefinite stay requested by Conor. *See, e.g.*,

9

*Landis*, 299 U.S. at 255. Expeditious litigation is particularly important in patent cases, because a patent is a temporal right that the patent system protects by allowing injunctive relief. *See Wing Shing Prods.*, 2005 WL 912184, at *7.

The public interest in resolving this case before Conor's domestic launch is even more acute. Allowing Conor to launch the infringing CoStar stents in the United States, only to be forced to pull those stents off the market once this case is tried on the merits, would harm the public interest by disrupting hospitals and forcing doctors and patients to scramble unnecessarily. This is particularly true given that the drug-eluting stent market is already fully supplied by two companies (BSC and Cordis) and additional drug-eluting stents are expected to enter the U.S. market before Conor's anticipated launch. Moreover, expeditious resolution of the instant lawsuit will enable Conor to reallocate its research and development pursuits in a manner that would benefit the public. It is in the interest of doctors, patients and the general public that Conor, sooner than later, devotes its efforts to bringing a noninfringing stent design to the market.

### C. **BSC Would Be Significantly Harmed By A Stay**

To grant a stay "would be to grant a license valid as long as [Conor] could contest [this] suit." *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). Had BSC wanted to grant Conor a license, it would have. Instead, as soon as it became aware of Conor's infringing activities, it chose to bring this suit to stop Conor from continuing to infringe its patents through sales and other activities abroad using domestically made products and from launching its infringing stents in the United States. This "statutory right to exclude" is the "principle value" of the patent. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456 (Fed. Cir. 1988).

10

Granting a stay would effectively deprive BSC of a substantial portion of this right, without considering the merits of its claim. While there may be sufficient time between the conclusion of the Contract Action and Conor's domestic launch to hold a preliminary injunction hearing — and BSC will be forced to request such a hearing if a stay is granted — a stay would deprive BSC of the opportunity to seek a permanent injunction at the conclusion of a full trial on the merits before Conor launches its stents in the United States.

Obtaining such an injunction is particularly important to BSC. Conor's CoStar stent is coated with the same drug (paclitaxel) used to coat BSC's drug-eluting stent (Taxus). If the CoStar stent harms any patients or turns out to be an inferior stent, this could negatively impact BSC's sales of Taxus.

Denying the requested stay would be consistent with the Third Circuit's decision in *Rolo v. General Development Corp.*, 949 F.2d 695 (3d Cir. 1991). In *Rolo*, the Rolos sought a preliminary injunction to prevent various entities from liquidating and transferring assets, and introduced evidence that doing so would irreparably harm their interests. *Id.* at 699, 703. The trial court stayed the action pending the resolution of a parallel litigation in bankruptcy court. *Id.* at 699-700. The Third Circuit reversed the stay and ordered the preliminary injunction hearing to go forward, reasoning that, because the Rolos had evidence that they would not be able to secure such relief once the stay was terminated, to not hear the preliminary injunction request denied them relief. *Id.* at 703-04.

The requested stay in this case would have a similar impact. A stay would deny BSC the opportunity to obtain a permanent injunction after a full trial on the merits and preclude the relief it seeks. Conor's motion should be denied accordingly.

11

### D. Conor Has Failed To Identify Any Interest Sufficient To Warrant A Stay

#### 1. Conor's Alleged Hardship Is Illusory Because Dr. Jang Will Be Bound By The Outcome Of This Litigation

As a preliminary matter, Conor's alleged inability to afford to litigate (Opening Br. at 9) does not merit the Court's consideration. Conor cries poverty, but at the same time is litigating two offensive actions against BSC and its licensor, Angiotech, in the United Kingdom and Australia. Moreover, Conor has $78.5 million in cash and reserves on hand (Ex. 4 at 1), and its sales activity is expected to significantly increase (Ex. 5 at 7). Conor cannot invoke the benefits of the courthouse in initiating lawsuits while crying foul when it is haled into court to defend a lawsuit.

In any event, Conor's potential litigation costs are irrelevant to the issue of whether a stay is warranted. Conor's stents infringe the Jang '021 patent, and Conor cannot complain about self-inflicted hardships associated with being brought into court to account for its infringement. *See Smith Int'l.*, 718 F.2d at 1581; *see also IGT v. Silicon Gaming Inc.*, 51 U.S.P.Q.2d 1150, 1153 (D. Nev. 1999).

Moreover, Conor cannot claim that a decision by the Court denying the requested stay will subject it to a risk of multiple lawsuits. No matter how the Contract Action is resolved, Conor will not be forced to defend itself twice for infringing the Jang '021 patent. There is only a minimal chance that Dr. Jang will obtain ownership of the Jang '021 patent. But even then, the chance that Conor will face a separate lawsuit from Dr. Jang for infringement of the Jang '021 patent is nonexistent because BSC and Dr. Jang are in privity for purposes of *res judicata*.

Dr. Jang would succeed to the right to sue Conor for infringing the Jang '021 patent should he ever become the owner of the Jang '021 patent. As a result, the case law is clear that BSC and Dr. Jang are in privity for purposes of this action. *See, e.g., Latham v. Wells Fargo*

*Bank, N.A.*, 896 F.2d 979, 983 (5th Cir. 1990) ("[I]f [a non-party] has succeeded to the party's interest[, it] is bound by prior judgments against the party."); *Anchor Glass Container Corp. v. Buschmeier*, 426 F.3d 872, 879 (7th Cir. 2005) (defining "privity" as applying when "a party to the judgment represent[s] the same legal right") (internal quotations omitted). Dr. Jang even admits this fact. (*See* Ex. 6 (Letter from Paul A. Rose to Edward Han (Jan. 17, 2006) at 1-2) (asserting that BSC is a "constructive trustee[] for Dr. Jang of any proceeds [it] may recover"))

BSC and Dr. Jang are also in privity because BSC has adequately represented — and will continue to adequately represent — Dr. Jang's interests in prosecuting infringers of the Jang '021 patent. *See Latham*, 896 F.2d at 983. BSC's and Dr. Jang's interests in the Jang '021 patent are perfectly aligned. (*See* Ex. 6 at 1 ("[Dr. Jang] stands ready to assist with the infringement suit against Conor . . . .")) Indeed, as this Court noted during the Cordis Action, "[i]t can hardly be asserted that BSC will not vehemently argue for infringement and validity, or that these would not be the same arguments put forth by Dr. Jang, should he obtain the right to assert the '021 patent." (Ex. 7 (*Cordis Corp. v. Boston Scientific Corp.*, slip op. at 3 (D. Del. June 14, 2005) (denying motion to stay)))

Moreover, Dr. Jang's understanding that he will be bound by BSC's litigation of the Jang '021 patent is further indicia of privity between himself and BSC. *See In re Navigation Tech. Corp.*, 880 F.2d 1491, 1494 (1st Cir. 1989) (finding privity based on an implicit consent to be bound by a lawsuit); *Rashid v. U.S. Fid. & Guar. Co.*, Civ.A.No. 2:91-0141, 1992 WL 565341, at *13 (S.D. W. Va. Sept. 28, 1992) (same). In the Cordis Action, Dr. Jang was made aware of this Court's statement that he would be bound by the outcome of that lawsuit. (Ex. 8 (*Cordis Corp. v. Boston Scientific Corp.*, Trial Tr. at 117:6-15, 1044:3-9 (D. Del. June 22 & 28, 2005))

Dr. Jang never attempted to challenge the Court's ruling. The Court's statement equally applies to the instant case, and warrants denial of Conor's motion.

### 2. If Anything, A Stay Could Bankrupt Conor By Subjecting It To A Substantial Damages Verdict

Because Conor faces no threat of multiple lawsuits, the only relevant hardship to Conor for purposes of the present motion is its increasing liability if a stay is imposed. Currently, the damages to BSC from Conor's infringement is relatively small compared to the damages it would face after a domestic launch. Conor has only made $2.3 million from stent sales through the end of 2005. (Ex. 4 at 1) Although some of its foreign sales will be noninfringing sales if the stents are manufactured outside the United States, all of this will change once Conor launches in the United States. From that time forward, Conor's liability will grow exponentially. After launch in the United States, the resulting damages will be sizable, and potentially bankrupting to a small company like Conor. Thus, it is actually in Conor's interest to resolve the infringement allegations in this action now, before it launches its infringing stents in the United States.

### CONCLUSION

Staying this action would not benefit anyone. It would increase the burden on the Court, requiring it to try this case twice: first during a preliminary injunction hearing, and again in a full trial on the merits. It would harm the public interest by forcing Conor to pull its infringing stents from the market after launching in the United States. It would deny BSC the ability to fully enforce its patent rights with a permanent injunction. And it would subject Conor to potentially bankrupting damages. Each of these harms can be avoided by denying Conor's requested stay and preparing this case for trial in the third quarter of 2007.

For all these reasons, BSC respectfully requests that Conor's motion be denied.

Dated: February 15, 2006                              Respectfully submitted,

*John W. Shaw by Chad Stover*
_____
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Adam W. Poff (I.D. #3990)
YOUNG CONAWAY
STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
(302) 571-6600
jshaw@ycst.com

*Attorneys for
Boston Scientific Corporation
and Boston Scientific Scimed, Inc.*

*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Eric W. Dittmann
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4611
(212) 446-4800

15

## CERTIFICATE OF SERVICE

I, Monté T. Squire, Esquire, hereby certify that on February 15, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Morris Nichols Arsht & Tunnell LLP
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on February 15, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY ELECTRONIC MAIL**
>
> Matthew D. Powers, Esquire
> Jared Bobrow, Esquire
> Weil, Gotshal & Manges LLP
> 201 Redwood Shores parkway
> Redwood Shores, CA 94065
>
> Sherry M. Knowles, Esquire
> King & Spalding LLP
> 191 Peachtree Street
> Atlanta, GA 30303

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> _____
> Monté T. Squire (No. 4764)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19899-0391
> (302) 571-6600
> msquire@ycst.com
>
> Attorneys for Boston Scientific Corporation and Boston Scientific Scimed, Inc.