IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CONOR MEDSYSTEMS, INC., <br><br> Defendant. | ) ) ) ) ) ) ) C.A. No. 05-768 (SLR) ) ) ) ) ) ) |

**CONOR'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE AND STAY DISCOVERY AND TRIAL OF DAMAGES ISSUES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (ID # 1014)
Rodger D. Smith II (ID # 3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
  *Attorneys for Conor Medsystems, Inc.*

*Of Counsel:*

Matthew D. Powers
Jared Bobrow
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Courtland Reichman
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
(404) 572-4600

November 3, 2006

i.

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| SUMMARY OF THE ARGUMENT | 1 |
| STATEMENT OF FACTS | 3 |
| ARGUMENT | 3 |
| I. BIFURCATION OF DAMAGES IN PATENT CASES IS THE EXCEPTION, NOT THE RULE | 3 |
| II. BSC HAS NOT SHOWN THAT BIFURCATING AND STAYING DAMAGES ISSUES IS JUSTIFIED ON THE FACTS OF THIS CASE | 4 |
|     A. Bifurcating Damages Issues Will Not Further Convenience Or Promote Expedition Or Economy In This Case | 5 |
|     B. Bifurcating Damages Issues Will Prejudice Conor | 11 |
| CONCLUSION | 12 |

# TABLE OF CITATIONS

Page(s)

## Cases

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
  C.A. No. 98-80-SLR (D. Del.) ................................................................. 10

*Boston Scientific Scimed, Inc. v. Cordis Corp.*,
  C.A. No. 03-283-SLR (D. Del.) ................................................................ 10

*Ciena Corp. v. Corvis Corp.*
  210 F.R.D. 519 (D. Del. 2002) .................................................................. 5

*Cordis Corp. v. Boston Scientific Corp.*,
  C.A. No. 03-27-SLR (D. Del.) ................................................................. passim

*Datastrip (IOM) Ltd. v. Symbol Techs., Inc.*,
  C.A. No. 97-70-JJF (D. Del. Jan. 7, 1998) .................................................. 4, 7, 9

*Dentsply Int'l Inc. v. Minnesota Mining & Mfg. Co.*,
  C.A. No. 91-355-SLR (D. Del. July 26, 1993) ............................................. 4, 12

*Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers*,
  318 F. Supp. 1116 (S.D.N.Y. 1970), *aff'd*, 446 F.2d 296 (2d Cir. 1971) ......... 6, 7, 8

*Johns Hopkins Univ. v. Cellpro*,
  160 F.R.D. 30 (D. Del. 1995) .................................................................... 4, 8, 9

*Joy Techs., Inc. v. Flakt, Inc.*,
  772 F. Supp. 842 (D. Del. 1991) ............................................................... 4, 7

*Lis v. Robert Packer Hosp.*,
  579 F.2d 819 (3d Cir. 1978) ..................................................................... 3

*Matsushita Elec. Indus. v. Cinram Int'l Inc.*,
  C.A. No. 01-882-SLR (D. Del. Dec. 14, 2003) ............................................. 3, 4, 11

*Medtronic Vascular, Inc. v. Boston Scientific Corp.*,
  C.A. No. 04-34-SLR (D. Del.) ................................................................... 11

*Medtronic Vascular, Inc. v. Boston Scientific Corp.*,
  C.A. No. 98-478-SLR (D. Del.) ................................................................. 10

*Read Corp. v. Portec Inc.*,
  C.A. No. 88-29-JRR (D. Del. May 11, 1989) .............................................. 3, 4

*Rite-Hite Corp. v. Kelley Co., Inc.,*
 56 F.3d 1538 (Fed. Cir. 1995) ......................................................... 6

*Security & Access Ltd. v. Motorola, Inc.,*
 C.A. No. 96-287-SLR (D. Del. March 4, 1997) ............................. 4

*Square D. Co. v. Power Measurement Ltd.,*
 C.A. No. 95-201-SLR (D. Del. Oct. 5, 1995) ................................. 4

*Synopsys, Inc. v. Magma Design Automation,*
 C.A. No., 05-701-GMS, 2006 U.S. Dist. LEXIS 3375
 (D. Del. May 26, 2006) ................................................................. 3, 10

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,*
 707 F. Supp. 1429 (D. Del. 1989) ................................................... 4, 11

<u>Statutes and Rules</u>

35 U.S.C. § 271(e)(1) ............................................................................... 7

Fed. R. Civ. P. 26(a) ................................................................................ 2, 7, 8

Fed. R. Civ. P. 42(b) ................................................................................ 4

D. Del. LR 7.1.3(c)(2) .............................................................................. 4

Defendant Conor Medsystems, Inc. ("Conor") respectfully submits this answering brief in opposition to Plaintiffs' Motion to Bifurcate and Stay Discovery and Trial of Damages Issues.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") commenced this patent action against Conor on November 8, 2005. (D.I. 1.) The Complaint charges Conor with infringement of U.S. Patent No. 5,922,021 ("the '021 patent"). Conor timely filed its Answer on December 30, 2005 (D.I. 8), and its Amended Answer on January 19, 2006 (D.I. 16.) In its Amended Answer, Conor denied infringement and asserted defenses of invalidity and unenforceability.

On September 6, 2006, the Court held a scheduling conference at which the Court set trial in this matter to begin on October 15, 2007. (D.I. 25.) On October 18, 2006, the Court entered its Rule 16 Scheduling Order. (D.I. 36.)

## SUMMARY OF THE ARGUMENT

As this Court has observed, bifurcation – even in patent cases – is the exception, not the rule, and the party moving for bifurcation has the burden of proving that bifurcation is justified on the particular facts of the case. BSC has not pointed to a single fact specific to this case that justifies bifurcation of damages, instead relying on general assertions that either do not apply to this case or would justify bifurcation in every case, patent or otherwise. On the facts of this case, bifurcation is not justified for a number of reasons.

*First*, BSC has not shown that this case is sufficiently complex to warrant bifurcation. This case involves only one patent (which is directed to a mechanical structure), only one defendant, and only two accused products, both of which have the same design and neither of which has been approved for sale in the United States. BSC represented at the September 6,

2006 scheduling conference that it would assert only one or two claims from the '021 patent. This case is straightforward, and Conor is confident that all of the liability and damages issues can be tried during the two weeks that the Court has set aside for trial of this case.

*Second*, the witnesses and evidence relevant to liability substantially overlap with the witnesses and evidence relevant to damages. For example, many of the individuals identified in the parties' Rule 26(a) Initial Disclosures, including all of the individuals identified on BSC's Initial Disclosures, have knowledge relevant to both liability and damages. In addition, many of the documents produced in this case will be relevant to both liability and damages.

*Third*, BSC has not shown that the damages issues in this case are any more complex than in any other patent case. In fact, the damages issues here will be less complex than in the normal case because Conor's accused stents have not been approved for sale in the United States.

*Fourth*, discovery on damages is already well underway. Both parties have requested, and produced, documents relevant to damages. In fact, of BSC's 85 initial document requests, at least 37 seek documents from Conor that are relevant to damages.

*Finally*, requiring Conor to litigate this case in two stages would impose a substantial hardship on Conor by forcing it to incur additional, unnecessary costs. There is no question that two rounds of discovery and two trials would be more expensive than one. Although BSC has over 28,000 employees and had revenues of over $6 billion in 2005, Conor has fewer than 200 employees and suffered a net loss of approximately $30 million during the 6-month period ending June 30, 2006.

Accordingly, BSC's motion to bifurcate should be denied.

**STATEMENT OF FACTS**

The '021 patent is directed to an intravascular stent. The patent has two independent claims (claims 1 and 23), each of which is directed to a mechanical structure having expansion struts, joining struts and connecting struts arranged in a particular way. BSC contends that certain unidentified claims of the '021 patent are infringed by Conor's CoStar and UniStar stents, both of which have the same stent design. Those accused stents have not yet received F.D.A. approval for sale in the United States. Conor has asserted that the '021 patent is invalid, unenforceable and not infringed by the accused stents.

BSC previously asserted the '021 patent against Cordis in *Cordis Corp. v. Boston Scientific Corp.*, C.A. No. 03-27-SLR (D. Del.) ("*Cordis*"), which is still pending in this Court.

**ARGUMENT**

**I.   BIFURCATION OF DAMAGES IN PATENT CASES IS THE EXCEPTION, NOT THE RULE**

As the moving party, BSC has the burden of demonstrating that bifurcation is justified on the particular facts of this case. *See Matsushita Elec. Indus. v. Cinram Int'l Inc.*, C.A. No. 01-882-SLR, slip op. at 1 (D. Del. Dec. 14, 2003) ("The burden is on the moving party to demonstrate bifurcation is justified.") (citation omitted) (Ex. A); *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978) ("[The bifurcation] decision must be made by a trial judge only as a result of an informed exercise of discretion on the merits of each case.") (emphasis added); *Synopsys, Inc. v. Magma Design Automation*, C.A. No. 05-701-GMS, 2006 U.S. Dist. LEXIS 3375, at *10 (D. Del. May 26, 2006) ("[T]he decision to bifurcate *vel non* is a matter to be decided on a case-by-case basis . . . .") (quoting *Lis*, 579 F.2d at 824) (emphasis added).

Although bifurcation of damages may be appropriate in certain patent cases, "patent cases should [not] be bifurcated as a matter of course." *Read Corp. v. Portec Inc.*, C.A. No. 88-

29-JRR, slip op. at 4 (D. Del. May 11, 1989) (refusing to bifurcate liability and damages issues) (Ex. B). Indeed, this Court has recognized that "[b]ifurcation of trials, even in patent cases, should be the exception, not the rule." *Matsushita*, slip op. at 1 (citations omitted) (Ex. A).

Accordingly, courts in this district have regularly refused to bifurcate damages in patent cases based on the particular facts of those cases. *See, e.g., Matsushita* (refusing to bifurcate liability and damages issues) (Ex. A); *Datastrip (IOM) Ltd. v. Symbol Techs., Inc.*, C.A. No. 97-70-JJF (D. Del. Jan. 7, 1998) (same) (Ex. C); *Security & Access Ltd. v. Motorola, Inc.*, C.A. No. 96-287-SLR (D. Del. March 4, 1997) (same) (Ex. D); *Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 35 (D. Del. 1995) (same); *Square D. Co. v. Power Measurement Ltd.*, C.A. No. 95-201-SLR (D. Del. Oct. 5, 1995) (same) (Ex. E); *Dentsply Int'l Inc. v. Minnesota Mining & Mfg. Co.*, C.A. No. 91-355 (D. Del. July 26, 1993) (same) (Ex. F); *Joy Techs., Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 848-49 (D. Del. 1991) (same); *Read*, (same) (Ex. B); *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429 (D. Del. 1989) (same).

## II. BSC HAS NOT SHOWN THAT BIFURCATING AND STAYING DAMAGES ISSUES IS JUSTIFIED ON THE FACTS OF THIS CASE

BSC has not pointed to a single fact particular to this case that justifies a stay of discovery, and a separate trial, on damages.[1] Instead, BSC makes a number of general assertions – reduction in the number of issues, facilitating interlocutory appeal, complicated damages issues, little overlap in witnesses and documents – that either do not apply to this case or apply to every case (patent and non-patent) before this Court. When the Rule 42(b) standard is viewed in

---

[1] BSC cannot now use its reply brief to offer such evidence. *See* D. Del. LR 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.").

light of the specific facts of this case, it is clear that bifurcation is not justified and that all of the issues in this case should be resolved at one trial.

A.   **Bifurcating Damages Issues Will Not Further Convenience Or Promote Expedition Or Economy In This Case**

On The Facts Of This Case, A Stay Of Discovery And A Separate Trial On Damages Will Not Further Convenience Or Promote Expedition Or Economy For At Least Five Reasons.

*First*, BSC has not shown that this case is sufficiently complex to warrant bifurcation. There is only one patent at issue, and that patent is directed to a mechanical structure having expansion, joining and connecting struts arranged in a particular way. In *Cordis*, BSC described the purported invention of the '021 patent simply as an "offset curvy connector." *See Cordis* D.I. 391 at 1811:18. In addition, there is only one defendant, and there are only two accused products, both of which have the same accused design. This is not a case involving multiple patents, multiple defendants, a multitude of accused products, or counterclaims for infringement.[2]

Indeed, in *Cordis*, the portion of the trial relating to infringement and validity of the '021 patent was approximately 2 to 3 days.[3] *See Cordis*, D.I. 385 at 168:3-184:13, 199:20-202:24, 209:9-215:22, 295:8-305:7, 322:22-328:15; D.I. 386 at 426:9-507:12; D.I. 387 at 853:6-863:5, 870:17-889:15, 902:4-22; D.I. 388 at 993:15-1167:23; D.I. 390 at 1270:4-1323-9, 1358:14-1409:12; D.I. 391 at 1680:15-1703:2, 1721:6-1756:18, 1803:10-1814:19. That portion of the

---

2   BSC's reliance on *Ciena Corp v. Corvis Corp.*, 210 F.R.D. 519 (D. Del. 2002), is misplaced. There, the court ordered separate trials because liability issues involved "the assertion of five patents and numerous claims of those patents." *Id.* at 520.

3   The *Cordis* trial also involved U.S. Patent No. 6,120,536, and lasted approximately 8 trial days. *See Cordis* D.I. 384-88 & 390-92. The parties agreed to a separate damages trial.

trial consisted entirely of three fact witnesses (BSC's COO, Cordis's President, and the designer of the accused Cordis stent), two expert witnesses (BSC's expert and Cordis's expert), a couple pages of deposition designations, and approximately 50 exhibits. *See id.* According to BSC, this case "presents an easier infringement analysis" than that in *Cordis*. (D.I. 19, at 4.) Moreover, at the September 6, 2006 scheduling conference in this case, BSC represented that it would assert only one or possibly two claims from the '021 patent. Conor is confident that all of the liability and damages issues can be tried during the two weeks that the Court has set aside for trial of this case.

*Second*, the witnesses and evidence relevant to liability overlap substantially with the witnesses and evidence relevant to damages. For example, the objective indicia of obviousness – the main validity issue in *Cordis* – are also relevant to damages. *See Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (stating that commercial success in relevant to reasonable royalty), *aff'd*, 446 F.2d 295 (2d Cir. 1971). Other examples of evidence relevant to both liability and damages include the following:

- The myriad of prior art on stents is relevant to both liability (*e.g.*, anticipation and obviousness) and damages (*e.g.*, the likelihood that Conor would have changed its design to one used in the prior art rather than take a license to the '021 patent, *see Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1576-77 (Fed. Cir. 1995));

- The named inventor's unsuccessful attempts to license the '021 patent are relevant to both liability (*e.g.*, objective indicia of non-obviousness) and damages (*e.g.*, the amount that BSC and Conor would have agreed upon at the time of the alleged first infringement, *see Georgia-Pacific*, 318 F. Supp. at 1120);

- The purported invention of the '021 patent is relevant to both liability (*e.g.*, infringement and validity) and damages (*e.g.*, the nature and character of the patented invention, and the utility and advantages of the patented invention, *see Georgia-Pacific*, 318 F. Supp. at 1120);

- Sales of products allegedly covered by the '021 patent are relevant to both liability (*e.g.*, objective indicia of non-obviousness) and damages (*e.g.*,

established profitability and commercial success of the patented products, *see Georgia-Pacific*, 318 F. Supp. at 1120);

- Conor's purported acts of infringement are relevant to both liability (*e.g.*, Conor's § 271(e)(1) defense) and damages (*e.g.*, the basis for a reasonably royalty);

- Conor's accused products are relevant to both liability (*e.g.*, infringement) and damages (*e.g.*, the extent to which Conor has allegedly used the patented invention, *see Georgia-Pacific*, 318 F. Supp. at 1120);

- BSC's and Conor's businesses are relevant to both liability (*see Cordis*, D.I. 295:8-305:7, 322:22-328:15; D.I. 387 at 853:6-863:5, 870:17-889:15, 902:4-22) and damages (*e.g.*, the commercial relationship between BSC and Conor, the parties' respective bargaining positions, the amount that BSC and Conor would have agreed upon at that time of the alleged first infringement, *see Georgia-Pacific*, 318 F. Supp. at 1120); and

- Conor's competitive analyses of the market and marketing materials are relevant to both liability (*e.g.*, infringement) and damages (*e.g.*, reasonable royalty).

*See also Joy Techs., Inc.*, 772 F. Supp. at 848-49 (finding that evidence of prior art and commercial success overlap with liability and damages); *Read*, slip op. at 6 (finding that the differences between the patent and the prior art are relevant to the reasonable royalty calculation) (Ex. B); *Datastrip*, slip op. at 7 (finding that proof of liability and damages "significantly" overlap) (Ex. C).

Moreover, many of the individuals identified in the parties' Rule 26(a) Initial Disclosures have knowledge relevant to both liability and damages, including all of the individuals identified on BSC's Initial Disclosures:

- G. David Jang, the named inventor of the '021 patent, has knowledge relevant to both liability (*e.g.*, the purported invention that lead to the '021 patent, the prosecution of the '021 patent, and the differences between the '021 patent and the prior art) and damages (*e.g.*, his extensive and unsuccessful efforts to license the '021 patent to various companies in the industry, the nature and character of the patented invention, and the utility and advantages of the patented invention, *see Georgia-Pacific*, 318 F. Supp. at 1120);

- Paul LaViolette, the Chief Operating Officer of BSC, has knowledge relevant to both liability (*e.g.*, BSC's business, and the purported advantages of the '021

patent, *see Cordis*, D.I. 295:8-305:7, 322:22-328:15) and damages (*e.g.*, the commercial relationship between BSC and Conor, the parties' respective bargaining positions, the nature and character of the patented invention, and the utility and advantages of the patented invention, *see Georgia-Pacific*, 318 F. Supp. at 1120);

- Eric Simso, Vice President of Cardiology Marketing for BSC, has knowledge relevant to both liability (*e.g.*, "BSC's business and various aspects of the stent market," which would presumably be relevant to infringement and validity) and damages (*e.g.*, the commercial relationship between BSC and Conor, the parties' respective bargaining positions, and the utility and advantages of the patented invention, *see Georgia-Pacific*, 318 F. Supp. at 1120);

- Frank Litvack, the CEO of Conor, has knowledge relevant to both liability (*e.g.*, Conor's business, the prior art, and Conor's communications with BSC) and damages (*e.g.*, the commercial relationship between BSC and Conor, the parties' respective bargaining positions, and the extent to which Conor has allegedly used the patented invention, *see Georgia-Pacific*, 318 F. Supp. at 1120);

- Jeff Shanley, a designer of the accused CoStar stent, have knowledge relevant to both liability (*e.g.*, the development, design and testing of the CoStar stent) and damages (*e.g.*, the extent to which Conor has allegedly used the patented invention, *see Georgia-Pacific*, 318 F. Supp. at 1120); and

- Robert Fischell, David Fischell, and Tim Fischell, prior artists, have knowledge relevant to both liability (*e.g.*, the prior art) and damages (*e.g.*, and the utility and advantages of the patented invention, *see Georgia-Pacific*, 318 F. Supp. at 1120).

*See* Plaintiffs' Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1) at 2; Defendant Conor Medsystems, Inc.'s Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a) at 2-3. It makes no sense to call those witnesses back for a second deposition or a second trial.

*Third*, BSC has not shown that the damages issues in this case are any more complex than in any other patent case. In fact, the damages issues in this case will actually be less complex than in the normal case because Conor's accused stents have not yet received F.D.A. approval. Without Conor's stents on the market, BSC has not experienced lost profits, and its damages, if any, will be limited to a reasonable royalty. And BSC has failed to prove that the nature of the reasonable royalty issues in this case justify bifurcation. *See Johns Hopkins*, 160

F.R.D. at 35 (denying bifurcation where the moving party had failed to show why damages issues, or discovery on damages, were "complicated, expensive, or time consuming").

*Fourth*, discovery on damages is already well underway. Both parties have requested documents relevant to damages, including licensing agreements and information on costs, sales, revenues, and profits. In fact, of BSC's 85 initial document requests, at least 37 seek documents relevant to damages. *See* BSC's First Set of Requests for Production at Doc. Req. Nos. 17-52, 65, 66 (Ex. G).[4] In addition, both BSC and Conor have already produced documents relevant to damages (including Dr. Jang's attempts to license the '021 patent and Conor's clinical trials, sales history reports, competitive analyses of the market, and marketing materials) and will continue to do so. Because damages discovery is well underway, forcing the parties to now stay discovery on damages issues will not further convenience or promote economy.[5]

*Finally*, nothing in BSC's motion papers justifies (or even attempts to justify) bifurcation on the facts of this case. Rather than explain why bifurcation of damages will further convenience or promote economy on the specific facts of this case, BSC instead makes a number of general assertions that either do not apply to this case or apply to every case (patent or otherwise) before this Court. For example, BSC's first two arguments – that bifurcation will reduce the number of issues in this case and facilitate interlocutory appeal – prove nothing because those arguments would apply to, and justify bifurcation in, every case. *See Datastrip*,

---

[4] BSC has continued to seek documents related to damages, both in its October 11, 2006 letter regarding discovery, and again in the October 20, 2006 meet and confer with Conor.

[5] Moreover, continuing damages discovery can facilitate settlement discussions because it "educates each party on the other's view of the damages, which, in turn assists each party in evaluating the essential elements of the matters in issue and in assessing the risks associated with an adverse decision in the action." *Johns Hopkins*, 160 F.R.D. at 35.

slip op. at 6 ("[I]n every case it may be said that a separate trial on a dispositive issue may save some time, however a bare suggestion of efficiency cannot support the granting of a bifurcation request.") (Ex. C). BSC further argues that the damages issues in this case are complicated. As described above, however, damages issues in this case will be less complex because the F.D.A. has not approved Conor's accused stents. Similarly, BSC's argument that there is little overlap in witnesses and documents between liability and damages is simply wrong; as explained above, there is substantial overlap between the witnesses and evidence relevant to liability and the witnesses and evidence relevant to damages. Finally, BSC's proposition that the jury will not be able to understand the issues in this case unless damages are bifurcated is baseless. *See Synopsys*, 2006 U.S. Dist. LEXIS 3375, at *11 ("[Delaware] jurors are quite adept at comprehending and adhering to the instructions they are given, even in the most complex legal scenarios.").

Nor do any of BSC's cases support bifurcation in this case. BSC asserts that because damages has been bifurcated in five previous stent cases, damages should be bifurcated here. *See* BSC's Opening Br. (D.I. 35) at 4-5. But none of those cases supports bifurcation on the facts presented here. Unlike this case, the first two stent cases that BSC cites (one of which was a countersuit to the other) involved four patents and the parties agreed to bifurcate liability and damages issues. *See Boston Scientific Scimed, Inc. v. Cordis Corp.*, C.A. No. 03-283-SLR (D. Del.); *Cordis Corp. v. Boston Scientific Corp.*, C.A. No. 03-27-SLR (D. Del.). The other three stent cases relied upon by BSC involved the same four patents and the Court stayed the damages issues pending arbitration of Cordis's patent license defense, which directly impacted the damages the plaintiffs could recover. *See Medtronic Vascular, Inc. v. Boston Scientific Corp.*, C.A. No. 98-478-SLR (D. Del.); *Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular,*

*Inc.*, C.A. No. 98-80-SLR (D. Del.); *Medtronic Vascular, Inc. v. Boston Scientific Corp.*, C.A. No. 04-34-SLR (D. Del.). None of those cases suggests that bifurcation is appropriate on the facts of this case.

In sum, BSC has failed to carry its burden that bifurcation will further convenience or promote expedition or economy on the particular facts of this case. Even if BSC could show that bifurcation would result in some judicial economy, however, it would be outweighed by the resulting prejudice to Conor.

### B.     Bifurcating Damages Issues Will Prejudice Conor

"Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice." *Matsushita*, slip op. at 1-2 (quoting *Willemijn*, 707 F. Supp. at 1433) (Ex. A). Here, bifurcation of damages will prejudice Conor in at least two ways.

*First*, requiring Conor to litigate this case in two stages will impose a substantial hardship on Conor by forcing it to incur additional, unnecessary costs. Conor is a small company, especially in comparison to BSC. Although BSC has over 28,000 employees and had revenues of over $6 Billion in 2005, Conor has fewer than 200 employees and suffered a net loss of approximately $30 million during the 6-month period ending June 30, 2006. *See* BSC Form 10-K, at 34 (Ex. H); Conor Form 10-Q, at 4 (Ex. I). A single discovery period and a single trial on all issues will be considerably less expensive than separate trials on liability and damages. Conor should not be forced to incur unnecessary costs resulting from multiple depositions of some of the same witnesses and two trials by litigating this case in two phases, especially given the efficiencies involved in trying all of the issues in the case at once.

12

*Second*, Conor should be allowed to present its entire case to the jury. As this Court has found, a party "should not be deprived of its 'legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action . . . brought into court.'" *Dentsply*, slip op. at 8 (citations omitted) (Ex. F). Conor should be allowed to present the entirety of its story as a small start-up company striving to develop safer and more effective stents,[6] and should not be required to break into pieces what is really one integrated set of facts.

## CONCLUSION

For the foregoing reasons, Conor respectfully requests that the Court deny BSC's Motion to Bifurcate and Stay Discovery and Trial of Damages Issues.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (ID # 1014)
Roger D. Smith II (ID # 3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
   Attorneys for Conor Medsystems, Inc.

---

[6] Conor has received patents on its innovative stent design. *See, e.g.*, U.S. Patent Nos. 6,013,855; 6,241,762; 6,290,673; 6,293,967; 6,527,799; 6,562,065; 6,764,507; 6,855,125; and 6,964,680.

*Of Counsel:*

Matthew D. Powers
Jared Bobrow
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Courtland Reichman
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
(404) 572-4600

November 3, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2006 I electronically filed the foegoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

>Josy W. Ingersoll
>Young, Conaway, Stargatt & Taylor, LLP

I further certify that I caused to be served copies of the foregoing document on November 3, 2006 upon the following in the manner indicated:

### BY HAND

Josy W. Ingersoll
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19899

### BY EMAIL AND FEDERAL EXPRESS

Peter J. Armenio
Kirkland & Ellis
Citigroup Center
153 East 53rd Street
New York, NY 10022

/s/ *Jack B. Blumenfeld*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com