# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MATSUSHITA ELECTRICAL      )
INDUSTRIAL CO., LTD.,       )
                            )
          Plaintiff,        )
                            )
     v.                     )    Civ. No. 01-882-SLR
                            )
CINRAM INTERNATIONAL, INC.  )
                            )
          Defendants.       )

**ORDER**

At Wilmington, this 15th day of December, 2003, having

reviewed Cinram's motion for a protective order to stay discovery

on willfulness and to bifurcate willfulness until a determination

of liability/damages and the papers submitted in connection

therewith;

IT IS ORDERED that said motion (D.I. 150) is denied, for the

reasons that follow:

1.   The decision whether to bifurcate the liability and

damages phases of a patent infringement action is left to the

discretion of the trial court.  Fed. R. Civ. P. 42(b); Lis v.

Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978).

"Bifurcation of trials, even in patent cases, should be the

exception, not the rule."  Fuji Mach. Mfg. Co., Ltd. v. Hover-

Davis, Inc., 982 F. Supp. 923, 924 (W.D. N.Y. 1997).  "The burden

is on the moving party to demonstrate that bifurcation is justified." Id. (citing Mellon v. Beecham Group PLC, 17 U.S.P.Q. 2D (BNA) 1149, 1154 (D. N.J. 1989)). "Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice.'" Laitram Corp. Hewlett-Packard Co., 791 F. Supp. 113, 115 (E.D. La. 1992) (quoting Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc., 707 F. Supp. 1429, 1433 (D. Del. 1989)). Courts, therefore, must balance the equities in ruling on a motion to bifurcate. Laitram, 791 F. Supp. at 115.

2. After balancing the equities, the court believes that neither a protective order nor bifurcation of willfulness from liability and damages is appropriate under the facts at bar. Cinram bears the burden to demonstrate that bifurcation is justified. In attempting to do so, Cinram points out that it intends to rely upon an opinion of counsel, rendered after MEI brought suit, as an affirmative defense against Cinram's charge of willfulness. Cinram claims that this opinion may include trial strategy such that it would be prejudicial to its defense to provide the opinion to MEI. Cinram also makes the traditional arguments that a single jury may be overwelmed by liability and willfulness issues and that bifurcation will promote judicial economy because a verdict in its favor on the issue of liability

would obviate the need for a trial on damages. In this case, the liability issues are fairly narrowly drawn and the issue of willfulness is inextricably intertwined with those issues. As observed by the court in THK Am. Inc. v. NSK Co. Ltd., 151 F.R.D. 625, 630 (N.D. Ill. 1993):

> A willfulness determination, that is, the defendant's state of mind when it infringed the patent, is a finding of fact inextricably bound to the facts underlying the alleged infringement. In reaching a willfulness determination, a trial court weighs evidence of the totality of the surrounding circumstances in order to ascertain the infringer's good faith or its willfulness. Factors considered include: the infringer's knowledge of the inventor's patent rights, any good faith belief or invalidity or infringement formed by the infringer after an investigation of the inventor's patent rights, and the infringer's behavior as a litigant.

Consequently, the court concludes that because willfulness is determined from the totality of the circumstances, it is most efficiently and expeditiously tried together with liability and damages.

3.    The court further finds Cinram's motion to bifurcate untimely. MEI served document requests relating to willfulness on Cinram in July 2002, eleven months before the close of discovery. MEI served additional requests in May 2003. Cinram waited until June 3, 2003, three days prior to the close of fact discovery, to file its motion to bifurcate.

2

4.    Although the court closed expert discovery on August 15, 2003 pursuant to its scheduling order of June 10, 2003, discovery directed toward the issue of willful infringement may occur in accord with the instant order until trial commences.[1]


_____
United States District Judge

_____

[1]Cinram initially designated Mr. Lewis Ritchie as its witness on the willfulness issue.  Cinram scheduled his deposition originally during the last week of discovery and then rescheduled it until after the close of discovery.  Citing its motion to bifurcate, Cinram refused to allow any questions concerning specific opinions of counsel at the rescheduled deposition.  (See D.I. 154, tab H)

3

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

THE READ CORPORATION and　　)
F.T. READ & SONS, INC.,　　　)
　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　)
　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　)　　Civil Action No. 88-29-JRR
　　　　　　　　　　　　　　　)
PORTEC, INC. d/b/a　　　　　　)
PORTEC/KOLBERG DIVISION,　　　)
　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　)

----------------------------------------------------------------

　　　　Donald F. Parsons, Jr., Esquire and Paul P. Welsh,
　　　　　Esquire of Morris, Nichols, Arsht & Tunnell,
　　　　　Wilmington, Delaware
　　　　OF COUNSEL: Jack R. Pirozzolo, Esquire and Richard
　　　　　L. Binder, Esquire of Willcox, Pirozzolo & McCarthy,
　　　　　Boston, Massachusetts
　　　　　　　　　　Attorneys for Plaintiffs


　　　　Jeffrey B. Bove, Esquire of Connolly, Bove, Lodge & Hutz
　　　　　Wilmington, Delaware
　　　　OF COUNSEL: Dennis A. Gross, Esquire and Brett A.
　　　　　Valiquet of Hill, Van Santen, Steadman & Simpson,
　　　　　Chicago, Illinois
　　　　　　　　　　Attorneys for Defendant

----------------------------------------------------------------


## MEMORANDUM OPINION




Wilmington, Delaware

May 11, 1989

ROTH, District Judge

Plaintiffs Read Corporation and F.T. Read & Sons, Inc., have filed this action for patent infringement against defendant Portec, Inc., d/b/a Portect/Kolberg Division. Currently before the Court are defendant's motion to bifurcate the issues of liability and damages and its accompanying request for a stay of discovery on damages. It is the Court's conclusion that little stands to be gained from separating these two issues at the present time. Accordingly, neither bifurcation nor a stay of discovery will be ordered.

I. <u>FINDINGS OF FACT</u>.

Plaintiffs filed this suit on January 22, 1988, alleging infringement of three mechanical patents and a design patent. The claims relate to the sale of portable screening devices manufactured by defendant. Plaintiffs have also alleged unfair competition based on the patent infringement claims.

For the first six months after this action was filed, the parties engaged in settlement negotiations. Pending discovery requests were extended by agreement during that period to limit expense during those discussions. By the end of June, however, it had become clear to the parties that no settlement agreement would be reached and that discovery would have to resume.

The Court conducted a scheduling conference with the parties on July, 11, 1988. At that time the Court approved a

joint scheduling order which indicated defendant's desire to bifurcate the trial and plaintiffs' opposition to bifurcation. D.I. 21.   Since July, discovery has proceeded in substantial conformity with the scheduling order.

At the intermediate status conference conducted by the Court on January 9, 1989, a discovery cut-off date was set for March 20, 1989.   That date was subsequently continued to April 21, 1988, by mutual agreement of the parties set out in a joint stipulation approved by the Court.   D.I. 106.   At the status conference the Court also requested briefing on the instant motion to bifurcate.

On April 24, 1989, a teleconference was conducted by the Court.   At that time, the parties were granted leave to conduct two or three more depositions apiece even though the discovery cut-off date had passed.   Those depositions notwith-standing, discovery in this case appears to be essentially finished.

Trial is scheduled to begin on September 26, 1989.  At the scheduling conference the parties estimated that the trial would last about ten days.

II.  CONCLUSIONS OF LAW.

Defendant has moved the Court to bifurcate the issues of liability and damages by conducting two separate trials or, in the alternative, by trying the two issues separately and serially

2

at the same trial.[1]   Defendant contends that in either case a
stay of discovery relating to the issue of damages would be
appropriate.

Plaintiffs have made clear their position that the
Court should not bifurcate this action at the present time.
Plaintiffs maintain that separate trials are unnecessary and that
the Court need not decide whether to separate the issues to be
considered at trial until the time of trial.   In either case,
plaintiffs contend, a stay of discovery would be unwarranted.

### A. Bifurcation in General

Bifurcation in federal courts is governed by Federal
Rule of Civil Procedure 42(b).[2]   Rule 42(b) authorizes bifurca-
tion "in furtherance of convenience or to avoid prejudice, or
when separate trials will be conducive to expedition and
economy."   Fed.R.Civ.P. 42(b).   One commentator has stated that
Rule 42(b) gives courts "virtually unlimited freedom to try the
issues in whatever way trial convenience requires."   9 Wright &
Miller, Federal Practice and Procedure: Civil § 2387.

---

1.  This opinion will refer broadly to these two methods of
separating issues as "bifurcation."

2.  Fed. R. Civ. P. 42(b) provides, in pertinent part:

> The court, in furtherance of convenience or
> to avoid prejudice, or when separate trials
> will be conducive to expedition and economy,
> may order a separate trial of any claim . . .
> or of any separate issue . . . always pre-
> serving inviolate the right of trial by jury
> as declared by the Seventh Amendment to the
> Constitution or as given by a statute of the
> United States.

3

There is usually no need to try different issues in the same case separately. In fact, separate trials should not be ordered "unless such a disposition is clearly necessary." 5 Moore's Federal Practice ¶ 42.03[1] at 42-38. If a court determines that a single trial might prejudice one of the parties or that multiple trials would be significantly more convenient or economical, the court may order separate trials. Id. Alternatively, a court may consider different issues at the same trial separately by withholding presentation of evidence on one issue until the other issue has been decided.

This Court has observed in the past that patent cases often present circumstances uniquely favoring bifurcation of the liability and damages issues. Smith v. Alyeska Pipeline Serv. Co., 538 F. Supp. 977, 983 (D. Del. 1982), aff'd, 758 F.2d 668 (Fed. Cir. 1984), cert. denied, 471 U.S. 1066 (1985) (quoting Swofford v. B. & W., Inc., 34 F.R.D. 15, 19-20 (S.D. Tex. 1963), aff'd, 336 F.2d 406 (5th Cir. 1965)). But that does not mean that patent cases should be bifurcated as a matter of course; on the contrary, motions to bifurcate are to be determined on a case-by-case basis. Smith, 538 F. Supp. at 982 (quoting Lis v. Robert Packer Hospital, 579 F.2d 819, 824 (3d Cir.), cert. denied, 439 U.S. 955 (1978)). Failure to give adequate consideration to the specific facts underlying such a motion may constitute grounds for a new trial, regardless of whether prejudice has been shown. Lis, 579 F.2d at 825.

4

## B. Convenience and Judicial Economy

Consideration of two of the three criteria listed in Rule 42(b)--convenience and judicial economy--strongly disfavors bifurcating this action at the present time. Defendant points out that separating the issues could save time if the trial on liability came out in its favor, since under those circumstances trial on the damages issue would be unnecessary. However, the parties estimated at the intermediate status conference that trial of the damages issue would take only two of the ten days required for the entire trial.[3] Potentially saving 20 percent of the time allotted for trial is not a sufficient payoff to justify the inconvenience that the gamble of bifurcation would entail.[4]

The inconvenient aspects of bifurcating this action have been persuasively detailed by the plaintiffs. Plaintiffs point out that due to the close relationship between the liability and damages issues, bifurcation would require them to present the same evidence twice. Plaintiffs also contend that a stay of discovery as to damages would deprive them of evidence they need to meet their burden of proof at trial on the issue of liability; however, because the discovery cut-off date has passed, the latter argument is not persuasive.

---

3. While defendant is now trying to increase that figure, claiming that it had no idea that plaintiffs would name so many expert witnesses on damages, such excuses are not persuasive coming from a party represented by an experienced patent litigation firm.

4. With respect to discovery, no time or expense stands to be gained from bifurcation because the discovery cutoff date was April 21, 1989. D.I. 106. Consequently, bifurcation could only potentially save time or money at the trial stage.

5

A significant overlap between the issues to be proved at trial indicates that bifurcation would be inconvenient and inefficient and should therefore be denied. See, e.g., Procter & Gamble Co. v. Nabisco Brands, Inc., 604 F. Supp. 1485, 1493 (D. Del. 1985); H. B. Fuller Co. v. National Starch and Chem. Corp., 595 F. Supp. 622, 625 (D. Del. 1984); cf. Akzona, Inc. v. E.I. DuPont De Nemours & Co., 607 F. Supp. 227, 233-34 (D. Del. 1984) (citation omitted). This Court has recently stated that "the degree to which issues overlap can often best be assessed by examining the amount of evidence and number of witnesses that would be presented at both trials." Willemijn Houdstermaatschaa- pij, B.V. v. Apollo Computer, Inc., C.A. No. 88-109-JRR, slip op. at 5 (D. Del., Feb. 17, 1989) (citation omitted).

In the present case, evidence of defendant's commercial success is relevant to the issues of both liability and damages. Willemijn, C.A. No. 88-109-JRR, slip op. at 6; cf. Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 587 F. Supp. 1112, 1116 (D. Del. 1984). In addition, evidence of the differences between the patented invention and the allegedly very cumbersome "prior art" could be found to bear not only upon liability issues relating to the scope of the claims and to the applicability of the doctrine of equivalents to what plaintiffs claim to be a "pioneer patent," but also upon calculation of a "reasonable royalty" which would compensate plaintiffs for the alleged infringement. See, e.g., Georgia- Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116,

6

1120 (S.D.N.Y. 1970), modified on other grounds, 446 F.2d 295 (2d Cir.), cert. denied, 404 U.S. 870 (1971).

The Court acknowledges that there is a "fundamental difference" between an overlap in issues and an overlap in evidence. Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1213 (Fed. Cir. 1987); Paine, Webber, 587 F. Supp. at 1117. Nevertheless, the significant overlap in evidence to be presented on liability and damages in the present case indicates that there is a significant degree of substantive overlap with respect to those issues, as well. Willemijn, C.A. No. 88-109-JRR, slip op. at 5; Organic Chemicals v. Carroll Products, Inc., 86 F.R.D. 468 (W.D. Mich. 1980). Accordingly, considerations of convenience and judicial economy oppose bifurcation at the present time.

Defendant maintains that any evidence of its past financial performance that could be introduced to show commercial success at the liability phase of this trial is of a markedly different character than that which would be proffered to prove damages and that, as a result, no meaningful evidentiary overlap exists. However, plaintiffs have demonstrated sufficient areas of overlap to persuade the Court otherwise.

Defendant has suggested that the Court could prevent plaintiffs from being handicapped by a stay of discovery at the liability phase by permitting limited, relevant discovery on damages and prior art. It is indeed conceivable that such a measure would better enable plaintiffs to try the issue of lia-

7

bility; however, because almost all discovery has been completed, the stay request is at this point essentially moot and will be denied.[5]

### C. Prejudice

Because it appears that this case will be tried to a jury, the type of prejudice mentioned in Rule 42(b) is also a factor to be considered. 5 Moore's Federal Practice ¶ 42.03[1]. Defendant argues that a single, non-bifurcated trial of these issues would be prejudicial for two reasons: first, because trying both issues together would tend to confuse the jury; and second, because a jury that hears evidence on the issue of damages and various methods of calculating damages will be more inclined to conclude that defendant is liable.

Defendant has not met its burden of showing a significant risk of jury confusion. Defendant cites the Smith case for the proposition that a single trial on the issues of liability and damages "would tend to clutter the record and confuse the jury." Smith, 538 F. Supp. at 984. However, in Smith the party requesting bifurcation expressly represented to Judge Latchum that resolution of the damages issue would entail a review of

_____

5. Defendant's suggestion does, however, herald another disadvantage bifurcation would have: if the motion to bifurcate were granted as to discovery, the parties would no doubt spend a great deal of time arguing about whether or not various documents were properly discoverable as a part of the liability phase, thereby prolonging the resolution of this case. Furthermore, if separate trials were held, the foreseeable appeal of the decision in the liability trial would further delay the trial on damages. Such delays are prejudicial to the party opposing bifurcation. Wil-lemijn, C.A. No. 88-109-JRR, slip op. at 8. See also Procter & Gamble, 604 F. Supp. at 1493; H.B. Fuller, 595 F. Supp. at 625.

millions of documents and would take an exceptionally large amount of time both during discovery and at trial. Id. at 983-84.

No such representations have been made in the present case. Defendant has done little more than warn the Court that the jury may be distracted from its central task of determining liability by the complex valuation theories that could be advanced at trial. In Smith, Judge Latchum was careful to distinguish cases in which the parties requesting bifurcation simply "rely on the proposition that the damage issue is complex" from cases in which more specific representations have been made. 538 F. Supp. at 983 (distinguishing in particular Brad Ragan, Inc. v. Schrader's, Inc., 89 F.R.D. 548 (S.D. Ohio 1981)). Smith is therefore not applicable here.

Despite defendant's allegations to the contrary, the subject matter of this case does not appear to be particularly complex. In light of the fact that the parties originally agreed that ten days would be sufficient for trial, they apparently did not think that the issues were unusually complicated, either. Accordingly, bifurcation is not warranted. Cf. Procter & Gamble, 604 F. Supp. at 1492; Smith, 538 F. Supp. at 983.

With respect to any stigma that may flow from the information that the jury will receive on the issue of damages, a curative instruction should be adequate to prevent any prejudicial inferences. If an assertion that the jury was going to hear argument and be instructed on the issue of damages constituted a

9

showing of a risk of prejudice sufficient to warrant bifurcation, then the issues of liability and damages would be separated in all jury trials. If for some reason it later becomes apparent to the Court that there is a greater risk of prejudice than was formerly thought to exist, the Court may bifurcate trial of the issues at that time.

III.  CONCLUSION.

Defendant has not shown that bifurcation of the present action would promote convenience or judicial economy or is necessary to prevent prejudice at trial. Plaintiffs, on the other hand, have persuaded the Court that bifurcation at this time might very well cause unnecessary delay or inconvenience. Accordingly, defendant's motion will be denied. Because discovery in this case is essentially finished, defendant's request for a stay of discovery will also be denied.

An appropriate order will follow.

10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THE READ CORPORATION, et al.,     )
                                  )
                Plaintiffs,       )
                                  )
        v.                        )       Civil Action No. 88-29-JRR
                                  )
PORTEC, INC. d/b/a                )
PORTEC/KOLBERG DIVISION,          )
                                  )
                Defendant.        )

## O R D E R

ON this 11th day of May, 1989, for the reasons set forth in the Court's Memorandum Opinion of this date,

IT IS ORDERED that defendant's motion for bifurcation is hereby denied.

UNITED STATES DISTRICT JUDGE

# EXHIBIT C



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DATASTRIP (IOM) LIMITED,             :
                                     :
        Plaintiff,                   :
                                     :
        v.                           :        C.A. No. 97-70-JJF
                                     :
SYMBOL TECHNOLOGIES, INC. and        :
THE TRACKER CORPORATION              :
OF AMERICA,                          :
                                     :
        Defendants.                  :

---

Jack B. Blumenfeld, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL,
Wilmington, Delaware.
Of Counsel: Milton Springut, Esquire, and David A. Kalow,
Esquire of KALOW, SPRINGUT & BRESSLER, New York, New York.
Attorneys for Plaintiff.

Howard M. Handelman, Esquire, and John H. Newcomer, Jr., Esquire
of BAYARD, HANDELMAN & MURDOCH, P.A., Wilmington, Delaware.
Of Counsel: Arnold Sprung, Esquire, Nathanial D. Kramer,
Esquire, and Esther H. Steinhauer, Esquire of SPRUNG, KRAMER,
SCHAEFER & BRISCOE, Tarrytown, New York.
Attorneys for Defendants.

---

**MEMORANDUM OPINION**

January 7, 1998
Wilmington, Delaware

Farnan, Chief Judge.

This is a patent infringement action brought by Plaintiff, Datastrip (IOM) Limited, against Defendants, Symbol Technologies, Inc. and The Tracker Corporation of America. Presently before the Court is Defendants' Motion For Separate Trials On Liability And Damages (D.I. 45). In their Motion, Defendants seek relief based upon Federal Rule of Civil Procedure 42(b), which grants district courts broad discretion to order separate trials to avoid prejudice and to promote judicial economy (D.I. 46). In opposition to Defendants' application, Plaintiff asserts that Defendants have failed to demonstrate that bifurcation will promote convenience or judicial economy and that Defendants have not established that any undue prejudice will result if their application is denied (D.I. 54).

For the reasons discussed, the Court will deny Defendants' Motion For Separate Trials On Liability And Damages (D.I. 45).

## BACKGROUND

Both Plaintiff and Defendant Symbol are engaged in the business of designing, manufacturing and selling bar code scanning products. Defendant Tracker is engaged in the business of making and reselling kits for marking personal possessions with a bar code label. A bar code consists of a pattern of

1

printed bars and spaces which is used to input information into a computer by means of optical scanning.

Plaintiff brought this action against Defendants for infringement of the '221 Patent owned by Plaintiff. The '221 Patent covers the invention of a two-dimensional bar code. Plaintiff alleges that Defendant Symbol made certain modifications and additions to the technology in the '221 Patent, filed a patent application and in January, 1990, acquired United States Patent No. 5,304,786 ("'786 Patent"). Plaintiff claims that Defendant Symbol's other patents on technology used in conjunction with printed bar codes have deprived Plaintiff of its patent rights and induced infringement of the '221 Patent. Meanwhile, Defendant Tracker has been making and selling kits which Plaintiff claims incorporate a bar code of the type covered by the '221 Patent and thus, directly infringe Plaintiff's '221 Patent.

The parties have exchanged their initial disclosures under Rule 26(a)(1) and have served initial discovery requests. Plaintiff has sought and received permission from the Court to defer Rule 26(a)(1) disclosure of its damage theories until January 1998.

2

## STANDARD OF REVIEW

In the normal course of litigation, all claims and issues in a civil action are presented for resolution in one trial.  <u>Johns Hopkins Univ. v. Cellpro</u>, 160 F.R.D. 30, 32-33 (D.Del. 1995) (citations omitted).  However, in some instances, bifurcation may be worthwhile and is governed by Federal Rule of Civil Procedure 42(b):

> **(b) Separate Trials.**  The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The decision to bifurcate a trial is committed to the informed discretion of the trial judge based on the particular facts and circumstances of each case.  <u>Lis v. Robert Packer Hosp.</u>, 579 F.2d 819, 824 (3d Cir. 1978).  In exercising its discretion, a court must consider the arguments made by each side in light of the circumstances and equities of the case.

## DISCUSSION

Defendants offer two justifications for bifurcation in the instant case.  First, Defendants contend that bifurcation will

promote judicial and legal economy.  Second, Defendants claim
that bifurcation will avoid prejudice by not requiring Defendants
to identify privileged attorney-client communications during the
liability phase of the trial.  In response, Plaintiff argues that
Defendants have failed to demonstrate that bifurcation would
promote convenience and judicial economy or avoid prejudice, and
that Defendants' Motion is merely an attempt to avoid their
discovery obligations.  In Akzona Inc. v. E.I. DuPont De Nemours
& Co., 607 F.Supp. 227, 232 (D.Del. 1984), the Court outlined the
primary factors to be considered in ruling on a motion to
bifurcate, which include the potential for confusion, delay,
prejudice or the additional expense resulting from the grant or
denial of the motion.  Bifurcation may be advisable if the case
contains a large number of dissimilar or complex issues, or if
the trial of one issue is likely to be much shorter than the
others.  Procter & Gamble Co. v. Nabisco Brands, Inc., 604
F.Supp. 1485, 1491 (D.Del. 1985).  Conversely, bifurcation will
not be warranted if there will be a substantial overlap among the
issues to be proven at both trials.  Id. at 1491-92.

Historically, courts have often found it worthwhile to hold
separate trials on liability and damage issues in patent cases.
Courts have found it to be more efficient to defer discovery and

4

trial on damages issues until after liability questions have been resolved at trial and on appeal. <u>John Hopkins Univ. v. Cellpro</u>, 160 F.R.D. 30, 33 (D.Del. 1995) (citations omitted). However, in a case relied upon by Defendants, although the court approved bifurcation, it went on to explain that:

> [t]here is an important limitation on ordering a separate trial of the issues under Rule 42(b): the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without justice.

<u>Swofford v. B. & W. Inc.</u>, 336 F.2d 406, 415 (5th Cir. 1964). Thus, bifurcation is not necessarily appropriate in every patent case and the Court's discretion in this regard must be exercised with caution. <u>Brad Ragan, Inc. v. Shrader's Incorporated</u>, 89 F.R.D. 548, 549-50 (S.D. Ohio 1981).

I. <u>Defendants Must Demonstrate That Bifurcation Would Promote Convenience and Judicial Economy</u>

Since Defendants are seeking bifurcation, they have the burden of demonstrating that bifurcation is warranted in light of the general principle that a single trial tends to lesson the delay, expense and inconvenience to all the parties. <u>Mellon v. Beecham Group PLC</u>, No. CIV 86-2179, 1991 WL 16494 (D.N.J. Jan. 3, 1991). In this case, the Court concludes that Defendants have not provided sufficient reasons to demonstrate the efficiency of

5

bifurcating the damages and liability issues.

In their Motion, Defendants contend that judicial and legal economy will be promoted by bifurcation because the Court and the parties will have avoided discovery and trial on the damages issues if Defendants prevail.  Further, Defendants point out that bifurcation will permit the jury to decide the already complicated liability issues in the case without being confused and distracted by the equally complicated damages issues.

The Court is not in a position at this time to fairly evaluate Defendants' claim that there is a substantial probability that they will prevail on liability.  At this juncture, the Court does not have sufficient information to agree or disagree with such a proposition.  Thus, the Court cannot consider this factor in determining bifurcation.  Of course, in every case it may be said that a separate trial on a dispositive issue might save some time, however, a bare suggestion of efficiency cannot support the granting of a bifurcation request, and certainly judicial economy is not the only factor to be considered.

Further, the Court finds that in this case Defendants have not shown that discovery on damages will be complicated, expensive or time-consuming.  This is a patent case, and

6

therefore, by its nature it can be described as complex, but Defendants have not convincingly shown that the benefits in saving time and expense in staying discovery on damages and ordering separate trials, outweighs the advantages of presenting these issues for resolution at one trial.

An additional factor that courts find significant in deciding whether to bifurcate is the overlapping of issues. Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc., 707 F.Supp. 1429, 1434 (D.Del. 1989) (citing Akzona, Inc. v. E.I. DuPont De Nemours & Co., 607 F.Supp. 227, 233-34 (D.Del. 1984)). Plaintiff contends the following: (1) the evidence on commercial success of Defendant Symbol's products relates to both liability and damages; (2) the proof of liability and causation for damages will significantly overlap because Defendant Symbol is charged with inducing infringement; and (3) the proof on laches relates to both liability and damages. Accepting Plaintiff's assertions that the evidence on several issues may overlap, the Court agrees that bifurcation may not result in a more efficient presentation of the case. Evidence of "commercial success" is relevant in the determination of obviousness under 36 U.S.C. §103, and therefore, such evidence may be considered in assessing liability, as well as damages. In addition, general financial matters are likely to

7

be highly relevant to the liability and damages issues, resulting in a significant duplication in the presentation of evidence in both phases of the trial. Lastly, Defendants' assertion of the affirmative defense of laches may also weigh against bifurcation. In order to contest the laches defense, Plaintiff may have to inquire into damages claims during the liability phase of the trial. Thus, considering the issues cited by Plaintiff and the evidence that most likely will be presented at trial, the Court concludes that the testimony of probable witnesses and other evidence, will overlap on liability and damages issues and any time savings accomplished by bifurcation will be speculative.

Further, the Court finds that in this case it will be more efficient to work towards one trial and one appeal. Other than general assertions of potential efficiency, the Court finds that Defendants have not demonstrated that bifurcation will facilitate a single appeal, and, absent some strong evidence of the likelihood of one appeal, the Court concludes that one complete trial is the most efficient manner in which to timely dispose of this case.

II. Defendants Must Demonstrate That Bifurcation Will Prevent Prejudice

Defendants assert that if bifurcation is not granted, they

8

will either have to waive the attorney-client privilege and share the opinions of their counsel with Plaintiff sooner than necessary or in the alternative, they will have to forego reliance upon the opinion of counsel in order to maintain the privileged status of the material.  The attorney-client privilege protects a confidential communication between attorney and client when discovery is sought.  The burden of proving that the privilege exists is on the party asserting the privilege.  In re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 126 (3d Cir. 1986).  Clients waive the attorney-client privilege by deliberately injecting into the litigation the advice which the clients received from counsel.  Smith v. Alyeska Pipeline Service Co., 538 F.Supp. 977, 979 (D.Del. 1982), aff'd, 758 F.2d 668 (Fed. Cir. 1984).  Similarly, the advice of counsel exception to the privilege states that where a party asserts as an essential element of their defense that it relied upon the advice of counsel, that party waives the privilege regarding communications pertaining to that advice.  Mellon v. Beecham Group PLC, No. CIV 86-2179, 1991 WL 16494 (D.N.J. Jan. 3, 1991).

In the instant case, staying discovery specifically on Defendants' advice of counsel defense by ordering a separate trial on liability and damages is not in the Court's view, an

9

# EXHIBIT D



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SECURITY AND ACCESS           )
(ELECTRONIC MEDIA) LTD.,      )
TANIS PATRICIA WAKEFIELD, and )
TERENCE JOHN NEWELL,          )
                              )
         Plaintiffs,          )
                              )
         v.                   )    Civil Action No. 96-287-SLR
                              )
MOTOROLA, INC.                )
                              )
         Defendant.           )

ORDER

At Wilmington this  4th  day of March 1997, having
reviewed defendant's motion for separate trials on liability,
damages and enhanced damages and for a stay of discovery on those
issues (D.I.  27) and the papers filed in connection therewith;

IT IS ORDERED that said motion is denied, for the
following reasons.

1.  The decision to order separate trials on different
issues in the same case is left to the sound discretion of the
trial judge.  Separate trials are favored only when bifurcation is
"conducive to expedition and economy," furthers convenience, or
avoids prejudice.  Fed. R. Civ. P. 42(b).

2.  This is a complex patent case which has been
scheduled for trial in December 1997.  The court's primary case
management goals are to try the case as scheduled and in such a

manner as to promote the efficient and effective presentation of evidence at a minimal inconvenience to jurors.

3.   Keeping those goals in mind, the court declines to stay discovery.  The court disagrees with defendant's contention that there is no overlapping evidence.  Permitting a second discovery phase after a trial on liability and willful infringement would likely cause substantial inconvenience to jurors.  Moreover, defendant's attorney client privilege will not be compromised by discovery proceeding on all issues.  If, as defendant attests, defendant's disclosure of counsel's opinions in defense of plaintiff's willful infringement claim results in "endless battles about the scope and intent of the waiver" (D.I. 28 at 10) of such privilege, the court is quite prepared to settle them as they arise.

4.   The court will reconsider bifurcation of the trial after the case and issue dispositive motions have been resolved.

                                        _____
                                   United States District Judge

# EXHIBIT E



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SQUARE D COMPANY,                        )
                                         )
            Plaintiff,                   )
                                         )
        v.                               )   Civil Action No. 95-201-SLR
                                         )
POWER MEASUREMENT LTD. and               )
C.D. POWER MEASUREMENT                   )
LTD.,                                    )
                                         )
            Defendants.                  )

O R D E R

At Wilmington this 5th day of October, 1995, having reviewed defendant's motion for separate trials on liability and damages, including willful patent infringement, and for stay of discovery on the issues of damages and willful patent infringement (D.I. 21) and the papers filed in connection therewith;

IT IS ORDERED that said motion is denied as follows:

1. Rule 42(b) of the Federal Rules of Civil Procedure provides in relevant part that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or of any separate issue . . . or issues . . . ."

2. The decision to separate issues for trial is committed to the sound discretion of the court. <u>Smith v. Alyeska Pipeline Service Co.</u>, 538 F.Supp. 977, 984 (D.Del. 1982), <u>aff'd</u>, 758 F.2d 668 (Fed. Cir. 1984), <u>cert. denied</u>, 471 U.S. 1066 (1985).

3.  The court declines to stay discovery on any disputed issue.

4.  The record as developed to date does not justify a bifurcated trial; however, the court, if requested, will again review the need for a bifurcated trial once case dispositive motions have been resolved and the triable issues have been finally identified.


_____
United States District Judge

2

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DENTSPLY INTERNATIONAL, INC.  )
a Delaware corporation,       )
                              )
            Plaintiff,        )
                              )
        v.                    )   Civil Action No. 91-355-SLR
                              )
MINNESOTA MINING AND          )
MANUFACTURING COMPANY,        )
a Delaware corporation,       )
                              )
            Defendant.        )

-------------------------------------------------------

Steven J. Balick, Esquire, of Ashby & Geddes, Wilmington,
Delaware; attorneys for plaintiff.  Of Counsel: Michael C. Elmer,
Esquire, and Stephen T. Sullivan, Esquire, of Finnegan,
Henderson, Farabow, Garrett & Dunner, Washington, D.C.

Robert K. Payson, Esquire, and William J. Marsden, Esquire, of
Potter, Anderson & Corroon, Wilmington, Delaware; attorneys for
defendant.  Of Counsel: Frank P. Porcelli, Esquire, John R.
Schiffhauer, Esquire, and Mary D. Mosley-Goren, Esquire, of Fish
& Richardson, Boston, Massachusetts; and Terryl K. Qualey,
Esquire, and Carolyn A. Bates, Esquire, of Minnesota Mining and
Manufacturing Co., St. Paul, Minnesota.

-------------------------------------------------------

**MEMORANDUM OPINION**

Dated:  July 26, 1993

Wilmington, Delaware

ROBINSON, District Judge

## I.   INTRODUCTION

Dentsply International, Inc. ("Dentsply") commenced this action seeking a declaratory judgment that its manufacture and sale of certain state-of-the-art dental adhesive systems do not infringe Minnesota Mining and Manufacturing Company's ("3M") U.S. Patent No. 4,719,149 (the "'149 patent"). The patent in suit pertains to a "primer" used in said dental adhesive systems. Both parties presently sell and manufacture such systems. Dentsply's action is grounded on its claim that the '149 patent is invalid and unenforceable. Dentsply also claims 3M threatened it with patent infringement in "bad faith." 3M counterclaims that its patent is valid and infringed by Dentsply. 3M further claims Dentsply willfully infringed the '149 patent and accordingly seeks increased damages. Both parties request payment of their attorneys' fees in connection with this litigation. 3M demands a jury trial on all issues so triable.

Before the Court is Dentsply's motion for bifurcation into sequential jury trials. Dentsply's request contemplates a two-stage jury trial process: The first stage on liability and, depending on the outcome therein, a second stage, immediately after the first and before the same jury, either on Dentsply's claim of bad faith assertion of patent enforcement or on 3M's willful infringement claim and damages. 3M opposes the motion. For reasons that follow, Dentsply's motion to bifurcate will be denied.

## II. STANDARD OF REVIEW

Rule 42(b) of the Federal Rules of Civil Procedure governs the motion at bar. Under Rule 42(b), "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial ... of any separate issue or of any number of claims...." Trial courts are given broad discretion when deciding a motion to bifurcate. <u>Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.</u>, 707 F. Supp. 1429, 1433 (D. Del. 1989). Decisions under Rule 42(b) essentially involve a weighing of "the 'overall equities' of the case." <u>Id.</u> at 1433-34. "[B]ifurcation is a matter to be decided by the trial judge, as a result of an informed exercise of discretion, on a case-by-case basis." <u>Id.</u> at 1434. Although this Court has "observed that patent cases often present circumstances uniquely favoring bifurcation of the liability and damages issues,"[1] it remains true that "[i]n patent cases, as in others, separate trials should be the exception, not the rule." <u>Laitram Corp. v. Hewlett-Packard Co.</u>, 791 F. Supp. 113, 114 (E.D. La. 1992) (citing cases).

## III. DISCUSSION

In support of its motion to bifurcate, plaintiff argues that "[o]f primary concern to Dentsply is the unfair prejudice that would result if the jury hears all of 3M's inflammatory

---

1. <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at 1433 (citing <u>Smith v. Alyeska Pipeline Serv. Co.</u>, 538 F. Supp. 977, 982 (D. Del. 1982)).

willful infringement allegations at the same time the jury decides the liability issues." (D.I. 92 at 11)  Dentsply suggests bifurcation would alleviate any such "unfair prejudice" since 3M, under Dentsply's requested procedure, would present its evidence supporting willful infringement, if at all, in the second phase of the case after the jury reaches a verdict finding liability against Dentsply.

3M counters that bifurcation is inappropriate in the instant case because, according to 3M, there are substantial areas of overlapping evidence and issues making bifurcation inefficient, inconvenient and unfair to 3M.

This Court previously has recognized "that an overlapping of issues is significant to the decision whether to bifurcate." Willemijn Houdstermaatschaapij BV, 707 F. Supp. at 1434 (citing Akzona, Inc. v. E.I. DuPont De Nemours & Co., 607 F. Supp. 227, 233-34 (D. Del. 1984)).  "The degree to which the issues overlap can often best be assessed by examining the amount of evidence and the number of witnesses that would be presented at both trials." Willemijn Houdstermaatschaapij BV, 707 F. Supp. at 1434 (citing Organic Chemicals v. Carroll Products, Inc., 86 F.R.D. 468, 469 (W.D. Mich. 1984)).

Although 3M asserts that several areas of overlap are present, of particular concern is the question of whether evidence supporting 3M's claim against Dentsply for willful infringement properly would be introduced during the liability stage of a bifurcated trial.  Since "unfair prejudice that would

3

result if the jury hears ... 3M's inflammatory willful

infringement allegations at the same time the jury decides the

liability issues" is Dentsply's "primary concern" in moving to

bifurcate (D.I. 92 at 11), and since bifurcation would not

alleviate this prejudice if 3M nonetheless was entitled to

present evidence of willful infringement during the liability

trial, resolution of this question is of substantial importance

in deciding the motion at bar.

    3M represents that its case both on willful

infringement and on patent validity will include evidence of

Dentsply's alleged "copying":

> 3M expects to prove Dentsply
> evaluated 3M's patented products,
> saw how valuable the innovation
> would be in the marketplace, and
> saw that its current products could
> not compete with the new 3M
> technology.  Therefore, Dentsply
> was motivated to copy and did copy
> the innovation and willfully
> infringe 3M's patent, taking sales
> away from 3M, the extent of which
> sales helps to prove the value and
> validity of the patents -- the
> motivation for Dentsply's copying.

(D.I. 97 at 10)

    In opposing this argument, Dentsply contends that

evidence of "copying" and associated evidence of an alleged

infringer's intent to infringe "relates primarily to a claim for

increased damages, not to liability." (D.I. 107 at 6-7 (citing

authorities))  Although this form of evidence may "relate[]

primarily" to a claim for willful infringement and increased

damages, it is settled that "[c]opying is an indicium of

4

nonobviousness, and is to be given proper weight." <u>Diversitech</u>
<u>Corp. v. Century Steps, Inc.</u>, 850 F.2d 675, 679 (Fed. Cir. 1988)
(citing <u>Windsurfing International, Inc. v. AMF, Inc.</u>, 782 F.2d
995, 1000 (Fed. Cir.), <u>cert. denied</u>, 477 U.S. 905 (1986) (copying
of patented invention is indicative of nonobviousness)).

  Since 3M apparently will rely on evidence of Dentsply's
alleged copying in support of its willful infringement and its
patent validity claims, it appears that this "inflammatory"
evidence would be presented during both stages of a bifurcated
trial.  Therefore, the alleviation of "unfair prejudice" which
Dentsply seeks with this motion would not be accomplished, or
would be partially accomplished only, by permitting bifurcation.

  3M points out that various evidentiary matters relating
to the commercial success of the patented technology would be
relevant both to patent validity and to damages.  In response
Dentsply contends, relying upon <u>Paine, Webber, Jackson & Curtis,</u>
<u>Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 587 F. Supp.
1112 (D. Del. 1984), that this Court has rejected "the argument
that commercial success, as related to nonobviousness, is
intertwined with the issue of damages."  (D.I. 107 at 9)
Contrary to Dentsply's argument, this Court has held that
evidence of "'commercial success' is a relevant secondary
consideration in a determination of obviousness under 36 U.S.C.
section 103, [<u>Paine, Webber</u>, 587 F. Supp. at 1116]; and it is
indisputable that such evidence will be considered by a court

assessing damages."  <u>Willemijn Houdstermaatschaapij BV</u>, 707 F.
Supp. at 1434.

Dentsply further contends that "[c]ommercial success
for obviousness purposes is of a sharply different character than
use of financial information during [the] damages phase [of a
patent infringement trial]."  (D.I. 107 at 9)  The Court
"acknowledges that the issue of commercial success is not
ordinarily determined by a detailed analysis of exhaustive and
detailed financial data, such as is required for proof of
damages, but rather by whether the product is, broadly
speaking, an accepted product and a big seller."  <u>Willemijn</u>
<u>Houdstermaatschaapij BV</u>, 707 F. Supp. at 1434 (quoting <u>Paine,</u>
<u>Webber</u>, 587 F. Supp. at 1116.  Nonetheless, it is clear from the
record that bifurcation in the instant case would require 3M to
present at least some, if not a substantial amount of evidence
twice, and "although a minor evidentiary overlap may not strongly
militate against bifurcation, it certainly does not favor
bifurcation."  <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at
1434.

Accordingly, the Court concludes that the presence of
overlapping evidence weighs against bifurcation.  The Court
further finds that the requested bifurcation procedure will not
serve the "primary" purpose underlying Dentsply's motion,
alleviation of "unfair prejudice," since much of the purportedly
"inflammatory" allegations relating to willful infringement are

6

included in the overlapping evidence which properly would be presented during both stages of a sequential trial.

Dentsply's second general argument in support of its motion to bifurcate is that sequential trials will increase jury comprehension and ameliorate confusion arising from the complexities of this patent case. "The burden of showing a significant risk of confusion is on the party requesting bifurcation." Id. at 1435. The Court finds, for reasons stated below, that Dentsply has not met its burden in this regard.

Dentsply contends that this is a "highly complex" case. The Court disagrees. As to the technology at issue, while there are technical complexities which the jury will be required to confront, fundamentally this case is comprehensible because the products involved are to some extent familiar to laymen. As Dentsply concedes, the patent in suit "deals with products that are used to pre-treat [a] tooth before a filling is placed [in] or a material is bonded to the t[oo]th." (D.I 107 at 12) Furthermore, although it is true, as Dentsply argues, that the jury in this case will have to consider "varied evidentiary presentations," that is true of almost any civil case, certainly of any patent case, and it does not provide a sufficient basis for bifurcation. Likewise, the numerous and to some extent complex issues which the jury will tackle in this case are not so unusual or compelling as to warrant bifurcation.

Dentsply's final argument is that bifurcation will promote expedition and judicial economy. The Court is

7

unpersuaded by this argument for the following reasons.  First, as discussed above, there are substantial areas of overlapping evidence and presentation of the same evidentiary materials twice, even to a minor extent, certainly will not promote efficiency and economy.  Second, the Court foresees that bifurcation in this case will result in substantial delays as a result of disputes regarding the admissability of evidence during either stage of a sequential trial.  See Willemijn Houdstermaatschaapij BV, 707 F. Supp. at 1435.  Indeed, the briefing presently before the Court amply supports this prediction.  Additionally, it cannot be disputed that two trials are likely to consume more time than one, and under the procedure requested by Dentsply, there will be a second trial irrespective of which party prevails during the first stage of proceedings.

Finally, the Court finds persuasive 3M's contention that it should not be deprived of its "legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action ... brought into the court."  Nylok Fastener Corp. v. Industrial Nut Corp., 8 U.S.P.Q.2d 1092, 1093 (N.D. Ohio 1988) (quoting In re Beverly Hills Fire Litigation, 695 F.2d 207, 217 (6th Cir. 1982)).  The Court agrees that 3M should be entitled to "present to the jury the whole real-world picture of 3M's innovation and commercial success, Dentsply's [alleged use] of that innovation, and the benefits Dentsply [allegedly] achieved in terms of sales and profits from its [use], and should

8

not be required to break into pieces what is really one integrated story." (D.I. 97 at 25)

IV. **CONCLUSION**

For the reasons stated above, Dentsply's motion to bifurcate will be denied. An Order consistent with this Memorandum Opinion shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DENTSPLY INTERNATIONAL, INC.    )
a Delaware corporation,         )
                                )
            Plaintiff,          )
                                )
        v.                      )    Civil Action No. 91-355-SLR
                                )
MINNESOTA MINING AND            )
MANUFACTURING COMPANY,          )
a Delaware corporation,         )
                                )
            Defendant.          )

## O R D E R

At Wilmington this 26th day of July 1993, for the
reasons set forth in the Court's accompanying Memorandum Opinion
issued this day;

IT IS ORDERED that Dentsply's motion to bifurcate,
Fed.R.Civ.P. 42(b), will be, and hereby is, DENIED.  (D.I. 91)[1]

_____
United States District Judge

_____

1.  Plaintiff's request for oral argument hereby is denied since
the facts and legal contentions are adequately presented in the
materials before the Court and argument would not significantly
aid the decisional process. (D.I. 109)

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CONOR MEDSYSTEMS, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 05-768-SLR <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rule 34 of the Federal Rules Of Civil Procedure, Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. hereby request that Defendant Conor Medsystems, Inc. produce the documents and things requested below for inspection, copying and/or testing. The requested documents and things must be produced within thirty (30) days of the service of these requests at the offices of Kirkland & Ellis LLP, Citigroup Center, 153 East 53rd Street, New York, New York 10022, or at such other time and place as may be mutually agreed upon in writing by counsel for the parties or ordered by the Court.

## DEFINITIONS

1.    As used herein, "BSC" shall mean Boston Scientific Corporation, Boston Scientific Scimed, Inc. and all of their subsidiaries and corporate affiliates.

2.    As used herein, "CONOR" shall mean Conor Medsystems, Inc. and all of its corporate parents, corporate predecessors and past or present subsidiaries, affiliates, divisions, departments, officers, directors, principals, agents and employees.

3.    As used herein, "IVT" shall mean Interventional Technologies, Pvt, Ltd. and all of its corporate parents, corporate predecessors and past or present subsidiaries, affiliates, divisions, departments, officers, directors, principals, agents and employees.

4.    As used herein, "BIOTRONIK" shall mean Biotronik AG, Biotronik Inc. and all of their corporate parents, corporate predecessors and past or present subsidiaries, affiliates, divisions, departments, officers, directors, principals, agents and employees.

5.    As used herein, "ST. JUDE" shall mean St. Jude Medical, Inc., St. Jude Medical Australia Pty. Ltd., St. Jude Medical (Hong Kong) Limited, Getz Bros. Co., Ltd., and all of their corporate parents, corporate predecessors and past or present subsidiaries, affiliates, divisions, departments, officers, directors, principals, agents and employees.

6.    As used herein, "PHYTOGEN" shall mean Phytogen International and all of its corporate parents, corporate predecessors and past or present subsidiaries, affiliates, divisions, departments, officers, directors, principals, agents and employees.

7.    As used herein, "the '021 patent" shall mean United States Patent No. 5,922,021, including any corrections.

8.    As used herein, "CoStar stent" shall mean any stent in which the word "CoStar" constitutes all or part of the trademark or trade name, including any commercial, developmental, working or non-working model, or any prototype of the foregoing, and any stent-delivery system incorporating any such stent.

9.    As used herein, "UniStar stent" shall mean any stent in which the word "UniStar" constitutes all or part of the trademark or trade name, including any commercial, developmental, working or non-working model, or any prototype of the foregoing, and any stent-delivery system incorporating any such stent.

10.    As used herein, "Accused CONOR stent" shall mean the CoStar and UniStar stents as previously defined and any other stent having the same or similar bare-metal stent architecture as either of those stents.

11.    As used herein, "BSC stent" shall mean any stent made, used, sold or offered for sale by BSC.

12.    As used herein, "document" shall have the full meaning ascribed to it by the Federal Rules Of Civil Procedure, and shall include any means for retaining information.

13.    As used herein, "concerning" shall mean relating to, referring to, describing, evidencing, comprising or constituting.

14.    As used herein, "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive; use of a singular noun shall be construed to include the plural noun and use of a plural noun shall be construed to include the singular noun; the use of a verb in any tense shall be construed as the use of that verb in all other

3

tenses whenever necessary to bring within the scope of the requested documents that which might otherwise be construed to be outside its scope.

15.     As used herein, "IDE" shall mean any Investigational Device Exemption filed with the U.S. Food And Drug Administration.

16.     As used herein, "PMA" shall mean any Premarket Approval Application filed with the U.S. Food And Drug Administration.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Ten (10) samples of each size, model and version of the CoStar stent in the actual packaging.

### REQUEST FOR PRODUCTION NO. 2:

Ten (10) samples of each size, model and version of the UniStar stent in the actual packaging.

### REQUEST FOR PRODUCTION NO. 3:

Ten (10) samples of each size, model and version of any Accused CONOR stent, other than the CoStar and UniStar stents, in the actual packaging.

### REQUEST FOR PRODUCTION NO. 4:

All documents concerning any IDE or other application to the United States Food And Drug Administration for any Accused CONOR stent.

### REQUEST FOR PRODUCTION NO. 5:

All documents concerning any PMA or other application to the United States Food And Drug Administration for any Accused CONOR stent.

### REQUEST FOR PRODUCTION NO. 6:

All documents and things submitted to, received from or concerning communications with the United States Food And Drug Administration or any other United States governmental agency concerning any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 7:**

All documents concerning the approval or possible approval by the United States Food And Drug Administration of any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 8:**

All documents concerning the approval or possible approval by the United States Food And Drug Administration or any other United States governmental agency of any facility used to manufacture and/or assemble any component of any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 9:**

All documents concerning the approval or possible approval by any foreign governmental agency of any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 10:**

All documents concerning the approval or possible approval by any foreign governmental agency of any facility used to manufacture and/or assemble any component of any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things submitted to, received from or concerning communications with any foreign administration or agency concerning any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 12:**

All documents concerning any clinical test or other evaluation of the safety or efficacy of any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 13:**

All documents concerning the design file or design history file for any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and things concerning the design and development of any Accused CONOR stent, including but not limited to laboratory notebooks, research data, analytical data, reports and invention disclosures.

**REQUEST FOR PRODUCTION NO. 15:**

All plan views, engineering drawings, engineering diagrams, blueprints, photographs, reproductions, models, prototypes and/or schematics concerning any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 16:**

All organizational charts and personnel lists of CONOR since 1999.

**REQUEST FOR PRODUCTION NO. 17:**

All documents and things concerning any business plan, strategic plan, periodic budget, forecast, projection, long-term financial plan or management report concerning anticipated sales or financial activity concerning any Accused CONOR stent, including all documents that identify CONOR's expectations with respect to any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 18:**

Documents sufficient to identify all customers of any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 19:**

Documents sufficient to identify all distributors of any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to identify, on a monthly basis, all sales of each Accused CONOR stent by units, dollars and geographic market.

**REQUEST FOR PRODUCTION NO. 21:**

Documents sufficient to determine unit and dollar sales of each Accused CONOR stent (by product line, product model, trade or marketing name, specifications, design schematics, customer, geographic region (including foreign markets), date, manufacturing location, manufacturing process or processes or any other relevant criteria). To the extent this information exists, it should be provided: (1) in summary format on a monthly basis (or the next shortest period for which CONOR maintains such records); (2) by stent; and (3) in a computer-readable format, such as a CD, DVD or diskette.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things concerning the sale of any Accused CONOR stent, including for use in clinical trials and including without limitation orders, contracts, invoices, sales journals or any other documentation used to record unit sales, gross sales, returns, allowances and discounts and net sales.

**REQUEST FOR PRODUCTION NO. 23:**

Documents sufficient to identify the location and ownership of all fabrication facilities at which any Accused CONOR stent or any component thereof is manufactured and/or assembled.

## REQUEST FOR PRODUCTION NO. 24:

Documents sufficient to identify, on a monthly basis, the number of Accused CONOR stents that have been manufactured and/or assembled at each facility that manufactures and/or assembles Accused CONOR stents.

## REQUEST FOR PRODUCTION NO. 25:

All contracts, agreements or communications between CONOR and IVT concerning any Accused CONOR stent or component thereof.

## REQUEST FOR PRODUCTION NO. 26:

All contracts, agreements or communications between CONOR and BIOTRONIK concerning any Accused CONOR stent or component thereof.

## REQUEST FOR PRODUCTION NO. 27:

All contracts, agreements or communications between CONOR and ST. JUDE concerning any Accused CONOR stent or component thereof.

## REQUEST FOR PRODUCTION NO. 28:

All contracts, agreements or communications between CONOR and PHYTOGEN concerning any Accused CONOR stent or component thereof.

## REQUEST FOR PRODUCTION NO. 29:

All contracts, agreements or communications between CONOR and any third party concerning any Accused CONOR stent or component thereof.

**REQUEST FOR PRODUCTION NO. 30:**

Documents sufficient to identify the intended and/or actual use, distribution, recipient and revenue for each Accused CONOR stent made, used, offered for sale or sold in the United States or imported into the United States.

**REQUEST FOR PRODUCTION NO. 31:**

Documents sufficient to identify the intended and/or actual use, distribution, recipient and revenue for each Accused CONOR stent made, used, offered for sale or sold outside the United States for which a component or substantial portion of the stent was supplied or caused to be supplied in or from the United States by CONOR.

**REQUEST FOR PRODUCTION NO. 32:**

All documents and things concerning any schedules or other documents prepared or reviewed by CONOR regarding the analysis of the sale of any Accused CONOR stent by business line, product category, model number or code.

**REQUEST FOR PRODUCTION NO. 33:**

All marketing materials used anywhere in the world concerning any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 34:**

All documents and things concerning CONOR's reasons or motivations for incorporating any feature, structure or characteristic into the bare-metal stent architecture of any Accused CONOR stent.

## REQUEST FOR PRODUCTION NO. 35:

All documents and things concerning any alleged benefit provided by the bare-metal stent architecture of any Accused CONOR stent.

## REQUEST FOR PRODUCTION NO. 36:

All documents and things concerning any comparison of any aspect or feature of any Accused CONOR stent with any aspect or feature of any BSC stent, including without limitation documents comparing any technical requirement or attribute of any Accused CONOR stent to any technical requirement or attribute of any BSC stent and documents comparing the cost, features, performance, manufacture, price or profitability of any Accused CONOR stent to the cost, features, performance, manufacture, price or profitability of any BSC stent.

## REQUEST FOR PRODUCTION NO. 37:

All documents and things concerning any comparisons of the efficacy, safety or other attributes of any BSC stent and/or any Accused CONOR stent to each other or any other commercial stent, whether or not approved for sale in the United States by the United States Food And Drug Administration.

## REQUEST FOR PRODUCTION NO. 38:

All documents and things concerning or describing the features (including any alleged advantages) of any Accused CONOR stent, including without limitation any consumer surveys, physician surveys, marketing studies, outside consultant's reports, advertising campaigns, promotional materials and sales training materials.

**REQUEST FOR PRODUCTION NO. 39:**

All documents and things concerning any physician comments concerning any BSC stent and/or any Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 40:**

All documents and things concerning any CONOR license agreement, assignment or grant of rights concerning any patent claiming a stent or a feature thereof.

**REQUEST FOR PRODUCTION NO. 41:**

All documents and things concerning any CONOR license agreement, assignment, grant of rights or other agreement, or any attempt by CONOR to license, assign, grant rights or enter into any other agreement relating to stent technology.

**REQUEST FOR PRODUCTION NO. 42:**

All documents and things concerning CONOR's patent licensing policies.

**REQUEST FOR PRODUCTION NO. 43:**

All documents and things concerning the sales price of any Accused CONOR stent, including any such stent used in a clinical trial and including without limitation price lists, pricing policies, schedules, workpapers, reports or other documents.

**REQUEST FOR PRODUCTION NO. 44:**

All documents and things concerning CONOR's methodology for calculating revenue and gross and net profit before taxes, including the ability to identify labor, material, variances, selling and administrative costs and the components that make up those costs, for each Accused CONOR stent.

**REQUEST FOR PRODUCTION NO. 45:**

All documents and things relating to the costs of manufacturing each Accused CONOR stent and CONOR's methodology for the computation of such costs.

**REQUEST FOR PRODUCTION NO. 46:**

All documents and things concerning the anticipated, projected or actual effect of the introduction of any Accused CONOR stent on the stent or non-stent products sold by CONOR's competitors, including but not limited to BSC.

**REQUEST FOR PRODUCTION NO. 47:**

Documents sufficient to identify all capital assets dedicated to the production and sale of any Accused CONOR stent, including but not limited to asset listings, ledgers or reports indicating acquisition date, depreciation, book value and market value of all assets related to such production or sale.

**REQUEST FOR PRODUCTION NO. 48:**

All documents and things concerning any benefit of using the subject matter claimed by the '021 patent.

**REQUEST FOR PRODUCTION NO. 49:**

All documents and things concerning the cost to CONOR to implement any alleged acceptable non-infringing alternatives to the '021 patent.

**REQUEST FOR PRODUCTION NO. 50:**

All documents and things concerning any statement made by CONOR to any person or entity regarding the scope, value, strength, infringement, validity or enforceability of the '021 patent.

**REQUEST FOR PRODUCTION NO. 51:**

All opinions of counsel concerning any aspect of the '021 patent and/or its interpretation, and all documents reviewed or relied upon to prepare those opinions.

**REQUEST FOR PRODUCTION NO. 52:**

All opinions of counsel and other documents analyzing, evaluating, opining on or otherwise concerning the validity, enforceability, alleged invalidity or alleged unenforceability of the '021 patent and/or whether any Accused CONOR stent infringes the '021 patent.

**REQUEST FOR PRODUCTION NO. 53:**

All minutes of meetings of CONOR's Board of Directors during which the '021 patent, this civil action, BSC and/or the Accused CONOR stents were discussed and all documents or things distributed in connection with any such meeting.

**REQUEST FOR PRODUCTION NO. 54:**

Transcripts of every CONOR Webcast Presentation, Earnings Conference Call or other speech, presentation or conference concerning any Accused CONOR stent, BSC or the '021 patent and all documents and things distributed, published, used or shown at such presentation, call, speech, presentation or conference.

**REQUEST FOR PRODUCTION NO. 55:**

All documents or things concerning any patent, publication, statement, action, tangible item, item of information or event that CONOR contends affects, limits or bears upon the scope, interpretation and/or construction of any claim or claim limitation of the '021 patent.

**REQUEST FOR PRODUCTION NO. 56:**

All documents or things concerning any patent, publication, statement, action, tangible item, item of information or event that CONOR contends affects, limits or bears upon the validity and/or enforceability of any claim of the '021 patent.

**REQUEST FOR PRODUCTION NO. 57:**

All documents concerning any secondary indicia of non-obviousness of the '021 patent.

**REQUEST FOR PRODUCTION NO. 58:**

All documents concerning any alleged simultaneous invention of any of the subject matter claimed in the '021 patent.

**REQUEST FOR PRODUCTION NO. 59:**

All documents and things concerning CONOR's awareness of the '021 patent or any patent related to the '021 patent.

**REQUEST FOR PRODUCTION NO. 60:**

All documents and things concerning any meeting involving CONOR during which the '021 patent was discussed.

**REQUEST FOR PRODUCTION NO. 61:**

All documents and things analyzing, evaluating, characterizing or summarizing any aspect of the '021 patent.

**REQUEST FOR PRODUCTION NO. 62:**

All documents and things concerning the state of the art to which CONOR maintains the subject matter of the '021 patent pertains as of its priority date.

**REQUEST FOR PRODUCTION NO. 63:**

All documents and things concerning the level of ordinary skill in the art to which CONOR maintains the subject matter of the '021 patent pertains as of its priority date.

**REQUEST FOR PRODUCTION NO. 64:**

All documents and things comprising or identified by any prior art search conducted by CONOR, or on CONOR's behalf, concerning the '021 patent.

**REQUEST FOR PRODUCTION NO. 65:**

All documents and things concerning any alleged acceptable non-infringing alternatives to the subject matter claimed by the '021 patent.

**REQUEST FOR PRODUCTION NO. 66:**

All documents or things concerning the demand for the subject matter claimed by the '021 patent.

**REQUEST FOR PRODUCTION NO. 67:**

All documents and things concerning the '021 patent.

**REQUEST FOR PRODUCTION NO. 68:**

All documents and things concerning any communication or information exchanged between CONOR and Dr. G. David Jang.

**REQUEST FOR PRODUCTION NO. 69:**

All documents and things concerning any communication or information exchanged between CONOR and any third party concerning the '021 patent.

**REQUEST FOR PRODUCTION NO. 70:**

All documents identified by or reviewed or relied upon to prepare any pleading responsive to Plaintiffs' Complaint in this action.

**REQUEST FOR PRODUCTION NO. 71:**

All documents that form the basis of CONOR's allegation in its First Amended Answer that CONOR has not infringed the '021 patent.

**REQUEST FOR PRODUCTION NO. 72:**

All documents that form the basis of CONOR's allegation in its First Amended Answer that CONOR has a license or other authority to practice the subject matter claimed by the '021 patent.

**REQUEST FOR PRODUCTION NO. 73:**

All documents that form the basis of CONOR's allegation in its First Amended Answer that all of CONOR's activities are subject to the protections of 35 U.S.C. § 271(e)(1).

**REQUEST FOR PRODUCTION NO. 74:**

All documents that form the basis of CONOR's allegation in its First Amended Answer that CONOR has been unaware of the '021 patent at all relevant times.

**REQUEST FOR PRODUCTION NO. 75:**

All documents that form the basis of CONOR's allegation in its First Amended Answer that CONOR has not willfully infringed the '021 patent.

**REQUEST FOR PRODUCTION NO. 76:**

All documents that form the basis of CONOR's allegation in its First Amended Answer that each of the claims of the '021 patent is invalid.

**REQUEST FOR PRODUCTION NO. 77:**

All documents that form the basis of CONOR's allegation in its First Amended Answer that each of the claims of the '021 patent is unenforceable.

**REQUEST FOR PRODUCTION NO. 78:**

All documents that form the basis of CONOR's allegation in its First Amended Answer that Dr. Jang was aware of a number of allegedly material prior art stents that were described in the Handbook of Coronary Stents (published in 1998), including the Paragon stent and the V-Flex stent.

**REQUEST FOR PRODUCTION NO. 79:**

All documents that form the basis of CONOR's allegation in its First Amended Answer that Dr. Jang and Mr. Davis were aware of United States Patent No. 5,545,210.

**REQUEST FOR PRODUCTION NO. 80:**

All documents that form the basis of CONOR's allegation in its First Amended Answer that Dr. Jang and Mr. Davis were aware of United States Patent No. 5,807,404.

**REQUEST FOR PRODUCTION NO. 81:**

All documents that form the basis of CONOR's allegation in its First Amended Answer that the applicant for the '021 patent intended to mislead and misled the patent examiner.

**REQUEST FOR PRODUCTION NO. 82:**

All documents identified by, or reviewed or relied upon to prepare, any response to any of Plaintiffs' discovery requests in this action.

**REQUEST FOR PRODUCTION NO. 83:**

All documents that CONOR has disclosed to any consultant or expert witness retained in connection with this action.

**REQUEST FOR PRODUCTION NO. 84:**

All documents that CONOR has disclosed to any outside counsel retained in connection with this action.

**REQUEST FOR PRODUCTION NO. 85:**

All documents that CONOR intends to use at any deposition, hearing or trial in this action.

*Josy W. Ingersoll by Chad Stover*
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Adam W. Poff (I.D. #3990)
YOUNG CONAWAY
STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Plaintiffs Boston Scientific*
*Corporation and Boston Scientific Scimed, Inc.*

*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Eric W. Dittmann
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022
(212) 446-4800


DATED:  April 7, 2006

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, hereby certify that on April 7, 2006, copies of the foregoing

document were served on the following counsel as indicated below:

### BY HAND DELIVERY

Jack B. Blumenfeld, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
PO Box 1347
Wilmington, DE 19899-1347

### BY ELECTRONIC MAIL

Matthew D. Powers, Esquire
Jared Bobrow, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores parkway
Redwood Shores, CA 94065

Sherry M. Knowles, Esquire
King & Spalding LLP
191 Peachtree Street
Atlanta, GA 30303

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Josy W. Ingersoll by Chad Stover*

Josy W. Ingersoll (No. 1088)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
jingersoll@ycst.com

*Attorneys for Boston Scientific Corporation and
Boston Scientific Scimed, Inc.*

# EXHIBIT H

Use these links to rapidly review the document
TABLE OF CONTENTS

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-K

### ANNUAL REPORT PURSUANT TO
### SECTION 13 OR 15(d) OF THE
### SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2005

Commission File No. 1-11083

# BOSTON SCIENTIFIC CORPORATION

(Exact Name Of Company As Specified In Its Charter)

| | |
|---|---|
| **DELAWARE** | **04-2695240** |
| (State of Incorporation) | (I.R.S. Employer Identification No.) |

**ONE BOSTON SCIENTIFIC PLACE, NATICK, MASSACHUSETTS 01760-1537**
(Address Of Principal Executive Offices)

**(508) 650-8000**
(Company's Telephone Number)

Securities registered pursuant to Section 12(b) of the Act:

| | |
|---|---|
| **COMMON STOCK, $.01 PAR VALUE PER SHARE** | **NEW YORK STOCK EXCHANGE** |
| (Title Of Class) | (Name of Exchange on Which Registered) |

Securities registered pursuant to Section 12(g) of the Act:
**NONE**

Indicate by check mark if the Company is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes: ☒ No ☐

Indicate by check mark if the Company is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes: ☐ No ☒

Indicate by check mark whether the Company (1) has filed all reports required to be filed by Section 13 or 15 (d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Company was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes: ☒ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the Company's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one): Large accelerated filer ☐ Accelerated filer ☒ Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes: ☐ No ☒

The aggregate market value of the Company's common stock held by non-affiliates of the Company was approximately $17 billion based on the closing price of the Company's common stock on June 30, 2005, the last business day of the Company's most recently completed second fiscal quarter.

The number of shares outstanding of the Company's common stock as of February 22, 2006, was 821,567,300.

## FIVE-YEAR SELECTED FINANCIAL DATA
### (in millions, except per share data)

| Year Ended December 31, | 2005 | 2004 | 2003 | 2002 | 2001 |
|---|---|---|---|---|---|
| **Operating Data** | | | | | |
| Net sales | $ 6,283 | $ 5,624 | $ 3,476 | $ 2,919 | $ 2,673 |
| Gross profit | 4,897 | 4,332 | 2,515 | 2,049 | 1,754 |
| Selling, general and administrative expenses | 1,814 | 1,742 | 1,171 | 1,002 | 926 |
| Research and development expenses | 680 | 569 | 452 | 343 | 275 |
| Royalty expense | 227 | 195 | 54 | 36 | 35 |
| Amortization expense | 152 | 112 | 89 | 72 | 136 |
| Litigation-related charges (credits), net | 780 | 75 | 15 | (99) | |
| Purchased research and development | 276 | 65 | 37 | 85 | 282 |
| Total operating expenses | 3,929 | 2,758 | 1,818 | 1,439 | 1,654 |
| Operating income | 968 | 1,574 | 697 | 610 | 100 |
| Income before income taxes | 891 | 1,494 | 643 | 549 | 44 |
| Net income (loss) | 628 | 1,062 | 472 | 373 | (54) |
| | | | | | |
| Net income (loss) per common share—basic | $ 0.76 | $ 1.27 | $ 0.57 | $ 0.46 | $ (0.07) |
| Net income (loss) per common share—assuming dilution | $ 0.75 | $ 1.24 | $ 0.56 | $ 0.45 | $ (0.07) |
| | | | | | |
| Weighted average shares outstanding—assuming dilution | 837.6 | 857.7 | 845.4 | 830.0 | 802.8 |

| As of December 31, | 2005 | 2004 | 2003 | 2002 | 2001 |
|---|---|---|---|---|---|
| **Balance Sheet Data** | | | | | |
| Cash, cash equivalents and marketable securities | $ 848 | $ 1,640 | $ 752 | $ 260 | $ 185 |
| Working capital | 1,152 | 684 | 487 | 285 | 275 |
| Total assets | 8,196 | 8,170 | 5,699 | 4,450 | 3,974 |
| Borrowings (long-term and short-term) | 2,020 | 2,367 | 1,725 | 935 | 1,204 |
| Stockholders' equity | 4,282 | 4,025 | 2,862 | 2,467 | 2,015 |
| Book value per common share | $ 5.22 | $ 4.82 | $ 3.46 | $ 3.00 | $ 2.49 |

The Company paid a two-for-one stock split that was effected in the form of a 100 percent stock dividend on November 5, 2003. All historical amounts above have been restated to reflect the stock split.

See also the notes to our consolidated financial statements included in Item 8 below.

34

EXHIBIT I

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# FORM 10-Q

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended June 30, 2006

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from_____ to _____

Commission file number 000-51066

# CONOR MEDSYSTEMS, INC.
**(Exact Name of Registrant as Specified in its Charter)**

| | |
|---|---|
| **Delaware** | **94-3350973** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification Number) |

**1003 Hamilton Court**
**Menlo Park, California 94025**
**(Address of Principal Executive Offices, including Zip Code)**

**(650) 614-4100**
**(Registrant's Telephone Number, Including Area Code)**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   YES ☒   NO ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. (Check one):

Large accelerated filer ☐   Accelerated filer ☒   Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   YES ☐   NO ☒

The registrant had 37,576,645 shares of Common Stock, $0.001 par value per share, outstanding as of August 1, 2006.

**CONOR MEDSYSTEMS, INC.**

**FORM 10-Q**

**FOR THE QUARTER ENDED JUNE 30, 2006**

**TABLE OF CONTENTS**

PART I. FINANCIAL INFORMATION

Item 1.   Financial Statements

    Condensed Consolidated Balance Sheets ............ 3

    Condensed Consolidated Statements of Operations ............ 4

    Condensed Consolidated Statements of Cash Flows ............ 5

    Notes to Condensed Consolidated Financial Statements ............ 6

Item 2.   Management's Discussion and Analysis of Financial Condition and Results of Operations ............ 16

Item 3.   Quantitative and Qualitative Disclosures About Market Risk ............ 24

Item 4.   Controls and Procedures ............ 24

PART II. OTHER INFORMATION

Item 1.   Legal Proceedings ............ 24

Item 1A. Risk Factors ............ 25

Item 2.   Unregistered Sales of Equity Securities and Use of Proceeds ............ 43

Item 4.   Submission of Matters to a Vote of Security Holders ............ 43

Item 6.   Exhibits ............ 44

SIGNATURE ............ 45

**PART I. FINANCIAL INFORMATION**

**Item 1. Financial Statements**

**Conor Medsystems, Inc.**

**Condensed Consolidated Balance Sheets**
(In thousands)

| | June 30, 2006 (unaudited) | December 31, 2005 (Note 1) |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 52,439 | $ 78,470 |
| Accounts receivable | 5,077 | 1,168 |
| Inventories, net | 4,143 | 1,886 |
| Prepaid expenses and other current assets | 2,093 | 1,002 |
| Total current assets | 63,752 | 82,526 |
| Property and equipment, net | 8,102 | 5,027 |
| Restricted cash | 175 | 173 |
| Assets held for sale | 534 | 3,400 |
| Other assets | 989 | 944 |
| Total assets | $ 73,552 | $ 92,070 |
| **Liabilities and stockholders' equity** | | |
| Current liabilities: | | |
| Accounts payable | $ 3,826 | $ 3,163 |
| Accrued compensation | 2,179 | 2,007 |
| Accrued clinical development liabilities | 3,267 | 2,629 |
| Accrued legal expenses | 1,937 | 2,248 |
| Contingent expense recovery | 1,316 | — |
| Other accrued liabilities | 1,968 | 2,966 |
| Deferred rent | 12 | 84 |
| Liability for early exercise of stock options - current portion | 86 | 103 |
| Total current liabilities | 14,591 | 13,200 |
| Liability for early exercise of stock options | 85 | 147 |
| Commitments and contingencies (Note 5) | | |
| Stockholders' equity | | |
| Preferred stock | — | — |
| Common stock | 34 | 33 |
| Additional paid-in-capital | 191,674 | 196,973 |
| Deferred stock compensation | — | (15,349) |
| Accumulated other comprehensive income | 18 | 203 |
| Accumulated deficit | (132,850) | (103,137) |
| Total stockholders' equity | 58,876 | 78,723 |
| Total liabilities and stockholders' equity | $ 73,552 | $ 92,070 |

See accompanying notes

3

**Conor Medsystems, Inc.**

**Condensed Consolidated Statements of Operations**
(In thousands, except per share amounts)
(Unaudited)

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
| | 2006 | 2005 | 2006 | 2005 |
| Product sales | $ 11,332 | $    288 | $ 15,719 | $    324 |
| Cost of sales | 5,029 | 603 | 8,868 | 841 |
| Gross margin | 6,303 | (315) | 6,851 | (517) |
| Operating expenses: | | | | |
| Research and development | 12,981 | 6,453 | 27,141 | 14,106 |
| General and administrative | 5,871 | 5,564 | 11,231 | 10,169 |
| Total operating expenses | 18,852 | 12,017 | 38,372 | 24,275 |
| Loss from operations | (12,549) | (12,332) | (31,521) | (24,792) |
| Interest income | 609 | 788 | 1,311 | 1,468 |
| Other income (expenses), net | 375 | (280) | 497 | (248) |
| Net loss | $(11,565) | $(11,824) | $(29,713) | $(23,572) |
| Basic and diluted net loss per share | $    (0.34) | $    (0.36) | $    (0.89) | $    (0.72) |
| Shares used to compute basic and diluted net loss per share | 33,657 | 32,954 | 33,555 | 32,767 |

See accompanying notes

4

**Conor Medsystems, Inc.**

**Condensed Consolidated Statements of Cash Flows**

(In thousands)

(Unaudited)

|  | For the Six Months Ended June 30, | |
|---|---|---|
|  | 2006 | 2005 |
| **Cash flows from operating activities** | | |
| Net loss | $(29,713) | $(23,572) |
| Adjustments to reconcile net loss to net cash used in operating activities: | | |
| Depreciation | 656 | 401 |
| Recognition of employee stock-based compensation | 7,143 | 4,750 |
| Loss on disposal of property and equipment | 5 | 65 |
| Issuance of stock options to consultants for services | 1,553 | 1,096 |
| Changes in operating assets and liabilities: | | |
| Accounts receivable | (3,775) | (285) |
| Inventories | (2,423) | (1,152) |
| Prepaid expenses and other current assets | (1,086) | 118 |
| Other assets | 2,821 | 23 |
| Accounts payable | 599 | 296 |
| Accrued compensation | 155 | 313 |
| Accrued clinical development liabilities | 638 | 352 |
| Accrued legal expenses | (311) | 1,084 |
| Contingent expense recovery | 1,316 | — |
| Other accrued liabilities | (1,028) | 824 |
| Deferred rent | (71) | (49) |
| Net cash used in operating activities | (23,521) | (15,736) |
| **Cash flows from investing activities** | | |
| Transfers to restricted cash | (2) | (2) |
| Capital expenditures | (3,919) | (2,203) |
| Net cash used in investing activities | (3,921) | (2,205) |
| **Cash flows from financing activities** | | |
| Proceeds from the exercise of stock-based compensation awards, including early exercise, and employee stock purchase plan plan | 1,308 | 8,554 |
| Repurchase of common stock | (32) | — |
| Net cash provided by financing activities | 1,276 | 8,554 |
| Effect of exchange rate changes on cash and cash equivalents | 135 | 60 |
| Net decrease in cash and cash equivalents | (26,031) | (9,327) |
| Cash and cash equivalents at beginning of period | 78,470 | 117,676 |
| Cash and cash equivalents at end of period | $ 52,439 | $108,349 |

See accompanying notes

5