IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION<br>and BOSTON SCIENTIFIC SCIMED, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CONOR MEDSYSTEMS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 05-768-SLR<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION
TO BIFURCATE AND STAY DISCOVERY AND TRIAL OF DAMAGES ISSUES**

                                                  YOUNG CONAWAY STARGATT
                                                     &TAYLOR, LLP
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Adam W. Poff (I.D. #3990)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
(302) 571-6600
apoff@ycst.com

*Attorneys for Plaintiffs*

*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Eric W. Dittmann
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Dated: November 13, 2006

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ..................................................................................... 1

ARGUMENT ............................................................................................................................ 3

    I.    The Requested Bifurcation And Stay Of Discovery And Trial Of Damages Issues Is Warranted Based On The Facts Of This Case ........................................... 3

        A.    BSC Does Not Advocate Bifurcation Of Every Patent Case ..................... 3

        B.    Bifurcation Is Merited By The Particular Facts Of This Case .................... 3

    II.    Substantial Overlap Does Not Exist Between The Liability And Damages Evidence In This Case ............................................................................................ 4

    III.    Determining Damages In This Case Will Present Complex Issues ....................... 6

    IV.    Discovery Has Just Begun And Is Not "Well Underway" ..................................... 7

    V.    Bifurcating And Staying Discovery And Trial Of Damages Will Aid, Not Prejudice, Conor ..................................................................................................... 8

CONCLUSION ......................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Ciena Corp. v. Corvis Corp.*,
   210 F.R.D. 519 (D. Del. 2002) ................................................................................. 5

*Cordis Corp. v. Boston Scientific Corp.*,
   C.A. No. 03-027-SLR (D. Del.) ...................................................................... 3, 4, 5, 6

*Datastrip (IOM) Ltd. v. Symbol Techs., Inc.*,
   C.A. No. 97-70-JJF, at *7 (D. Del. January 7, 1998) ................................................ 5

*Dentsply Int'l, Inc. v. Minnesota Mining & Mfg Co.*,
   C.A. No. 91-355-SLR, at *5 (D. Del. July 26, 1993) ................................................ 5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ........................................................................... 5

*In re Rouffet*,
   149 F.3d 1350 (Fed. Cir. 1998) ................................................................................. 4

*Johns Hopkins Univ. v. CellPro*,
   160 F.R.D. 30 (D. Del. 1995) .................................................................................... 8

*Lis v. Robert Packer Hosp.*,
   579 F.2d 819 (3d Cir. 1978) ...................................................................................... 3

*Matsushita Electrical Industrial Co. v. Cinram Int'l, Inc.*,
   C.A. No. 01-882-SLR, at *2 (D. Del. Dec. 15, 2003) ................................................ 8

*Read Corp. v. Portec, Inc.*,
   C.A. No. 88-29-JRR, at *8 (D. Del. May 11, 1989) ............................................. 5, 8

*Willemijin Houdstermaatschaapij BV v. Apollo Comp. Inc.*,
   707 F. Supp. 1429 (D. Del. 1989) ............................................................................. 5

**Statutes**

35 U.S.C. § 271(e)(1) ........................................................................................... 4, 5, 7

Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") respectfully submit this reply brief in further support of their Motion To Bifurcate And Stay Discovery And Trial Of Damages Issues (D.I. 34).

## SUMMARY OF THE ARGUMENT

In its Opening Brief, BSC explained that, for many of the same reasons that the Court has bifurcated other stent patent cases, bifurcation is warranted here. In trying to oppose BSC's motion, Conor contradicts its position at the September 6, 2006 scheduling conference with the Court, where it opposed scheduling trial in October 2007 by claiming that it would be hard pressed to prepare all of the issues for a trial at that time. It is beyond dispute that BSC's requested bifurcation would facilitate Conor's preparation for the scheduled October 15, 2007 trial by limiting the issues to be discovered and tried. Thus, BSC's requested bifurcation addresses Conor's stated concern.

Based on BSC's prior experiences with stent patent litigations in this Court, including a previous trial involving the patent at issue in this case, United Stated Patent No. 5,922,021 ("the Jang '021 Patent"), BSC filed the instant motion on October 17, 2006. In its Opening Brief, BSC requested that the Court exercise its broad discretion to bifurcate damages and liability in this case because such a procedure will simplify issues for the October 2007 jury, streamline the litigation, and promote judicial economy. (D.I. 35) In its Answering Brief in opposition to BSC's motion (D.I. 44), Conor makes five arguments. But all of these arguments are flatly contradicted by the facts.

*First,* BSC has not requested that the Court adopt a general practice of bifurcating liability and damages in all patent cases. Rather, BSC has moved for bifurcation and stay of discovery and trial of damages issues in this case based on its particular facts. These facts

include this Court's past experience bifurcating damages issues in stent patent litigations, including a litigation involving the same patent at issue here.

*Second,* Conor's allegation that substantial overlap exists in this case rendering bifurcation inappropriate is not supported by its general averments. If Conor's vague generalizations were sufficient, bifurcation would never be warranted in patent cases. Nor do Conor's more specific allegations of evidentiary overlap withstand closer scrutiny.

*Third,* Conor's claim that damages issues in this case are no more complex than in any other patent case is undercut by Conor's own brief. (D.I. 44 at 8) As explained in greater detail below, it is in part because Conor's stents have not yet received F.D.A. approval that determining damages will be complicated. Bifurcating and staying discovery and trial of damages issues will alleviate these complexities.

*Fourth,* Conor's assertion that "damages discovery is well underway" (D.I. 44 at 9) is inaccurate. BSC has not sought any discovery from Conor directed solely to damages issues. Moreover, when BSC filed this motion, Conor had yet to produce a single document in this litigation. Conor has now produced some documents, but depositions are not scheduled to begin until December 1, 2006, and months remain of fact and expert discovery.

*Fifth,* Conor's assertions of undue prejudice are flatly contradicted by its assertion at the scheduling conference with the Court that it would experience difficulty discovering and preparing all of the issues for the scheduled October 15, 2007 trial.

## ARGUMENT

I. **The Requested Bifurcation And Stay Of Discovery And Trial Of Damages Issues Is Warranted Based On The Facts Of This Case**

   A. **BSC Does Not Advocate Bifurcation Of Every Patent Case**

Conor does not dispute that this Court has broad discretion to order bifurcation in this case. Instead, Conor creates and refutes a strawman argument regarding bifurcation in *every* patent case. (D.I. 44 at 3–4) But BSC does not, and need not, advocate bifurcation of damages and liability issues in all patent cases. Rather, BSC's motion is limited to this stent patent litigation, "where experience has demonstrated its worth." *See Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978)

This Court is fully aware of the issues involved in the discovery and trial of stent patent cases, including the prior case involving the Jang '021 Patent. *See, e.g., Cordis Corp. v. Boston Scientific Corp.*, C.A. No. 03-027-SLR (D. Del.) ("*Cordis* Litigation"). In contrast to the district court in *Lis*, 579 F.2d at 824, this Court has specific knowledge of the Jang '021 Patent, has overseen discovery involving the Jang '021 Patent, and has conducted a full jury trial on the infringement and validity of the Jang '021 Patent. Based on this experience alone, the Court is warranted in ordering bifurcation as the "result of an informed exercise of discretion on the merits of [this] case." *See id.*

   B. **Bifurcation Is Merited By The Particular Facts Of This Case**

As discussed in BSC's Opening Brief, and as this Court knows from the *Cordis* Litigation, a number of technical and legal issues will be involved even in a liability-only trial of the Jang '021 Patent. (D.I. 35 at 4–7) Conor asks this Court to set aside its own experience with the Jang '021 Patent and instead accept Conor's suggestion that liability and damages issues can be lumped together because "[t]here is only one patent at issue . . . . [T]here is only one

defendant, and there are only two accused products, both of which have the same accused design." (D.I. 44 at 5) But Conor's assertions ignore the stent technology at issue and the level of detail involved in the factual and expert evidence that will likely be adduced at trial. And Conor's assertions also ignore that there was only one defendant, Cordis, and two main accused products, the Bx Velocity and Cypher stents, the last time the Court ordered bifurcation and tried Jang '021 Patent liability issues separately, in the *Cordis* Litigation.

In addition, as Conor points out in its Answering Brief (D.I. 44 at 8), Conor has claimed immunity from infringement in this case under 35 U.S.C. § 271(e)(1) (*see* D.I. 16, Ninth Defense). This defense raises additional issues concerning the timing, purpose, and location of the manufacture and/or assembly of the accused stents. These liability issues were not present in the *Cordis* Litigation, making bifurcation even more appropriate here.

This case also raises damages-specific complexities, which are discussed in Section III below. If anything, this case is an even better candidate for bifurcation than the *Cordis* Litigation in which the Court has already ordered it.

## II.    Substantial Overlap Does Not Exist Between The Liability And Damages Evidence In This Case

Conor's second argument, that substantial overlap exists between liability and damages, is based on vague assertions that, if true, would weigh against bifurcation in every patent case. For example, Conor states that the "invention of the '021 patent is relevant to both liability . . . and damages" and that "prior art on stents is relevant to both liability . . . and damages." (D.I. 44 at 6) If such generalizations were true or sufficient, they would justify a denial of bifurcation in every instance. Indeed, given the broad range of factors potentially relevant to the analysis of obviousness, *see, e.g., In re Rouffet*, 149 F.3d 1350, 1355 (Fed. Cir. 1998) (listing eleven factors), and a reasonable royalty, *see, e.g., Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.

Supp. 1116, 1120 (S.D.N.Y. 1970) (listing fifteen factors), a party opposing bifurcation will always be able to point to some potential overlap between the two analyses. Nonetheless, that overlap is usually small and, "[t]ypically, courts bifurcate patent cases into liability and damage trials." *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002).

The key area of alleged overlap to which Conor points — namely, commercial success — is a red herring. BSC does not sell a commercial embodiment of the Jang '021 Patent. As a result, the primary evidence of commercial success will not be BSC fact witnesses, but documents regarding the sales of Cordis stents found to infringe the Jang '021 Patent in the *Cordis* Litigation. This case is therefore different from the cases cited in Conor's Answering Brief, where evidence of commercial success came directly from the parties to the litigation. *See, e.g., Read Corp.*, C.A. No. 88-29-JRR at *5; *Datastrip (IOM) Ltd. v. Symbol Techs., Inc.*, C.A. No. 97-70-JJF, at *7 (D. Del. January 7, 1998); *Dentsply Int'l, Inc. v. Minnesota Mining & Mfg Co.*, C.A. No. 91-355-SLR, at *5–*7 (D. Del. July 26, 1993); *Willemijin Houdstermaatschaapij BV v. Apollo Comp. Inc.*, 707 F. Supp. 1429, 1434 & n.2 (D. Del. 1989).

In addition, Conor's assertions that its "acts of infringement are relevant to both liability . . . and damages" and that its "accused products are relevant to both liability . . . and damages" (D.I. 44 at 7), do not merit serious consideration. While the fact of infringement and infringing status of the accused products are relevant to damages, much of the underlying detail relevant to the liability case is not relevant to the damages case. Moreover, Conor's assertions of overlap are undercut by its asserted defenses that its "accused stents have not yet received F.D.A. approval" and are therefore not on the U.S. market (*id.* at 8), and that its activities are immunized under 35 U.S.C. § 271(e)(1) (D.I. 16, Ninth Defense). These issues are pure liability defenses and have no bearing on damages issues.

Conor's claim that witnesses will overlap in the presentation of liability and damages issues is equally unconvincing. (*See* D.I. 44 at 7–8) The individuals listed in Conor's Answering Brief will not act as "cross-over" witnesses on liability and damages issues. For example, Dr. Jang, the inventor of the Jang '021 Patent, did not testify in the *Cordis* Litigation at all. Moreover, never having commercially made or sold a stent, Dr. Jang likely does not have the type of financial information relevant to a damages analysis. Similarly, Mr. Shanley, the alleged designer of the accused CoStar stent, is unlikely to provide a detailed analysis of Conor's financial information relevant to a damages analysis. BSC's damages case will be presented in large measure by damages experts. And BSC expects the same from Conor. There will be very few, if any, "cross-over" witnesses and any resulting overlap between the liability and damages witnesses will be small.

## III.   Determining Damages In This Case Will Present Complex Issues

Conor's third argument claims that "damages issues in this case will actually be less complex than in the normal [patent] case because Conor's accused stents have not yet received F.D.A. approval" (D.I. 44 at 8). In actuality, the fact that Conor does not yet have F.D.A. approval for the accused stents in the United States will likely render the damages analysis in this case more complex than in the normal case. For example, a significant portion of the damages here will turn on the value of the head start Conor gained in its attempt to enter the market by infringing the Jang '021 Patent. This case will not be a simple calculation based on sales as in many patent cases.

Bifurcation of discovery and trial on damages issues would account for these complexities, avoid jury confusion, and promote judicial economy. Moreover, bifurcation would possibly eliminate the need for any damages discovery or trial if Conor believes its assertions that the Jang '021 Patent is invalid and not infringed.

6

### IV. Discovery Has Just Begun And Is Not "Well Underway"

Conor's next argument against bifurcation and stay, that "discovery on damages is already well underway" (D.I. 44 at 2, 9), flies in the face of the facts of this case. First, BSC has not sought any discovery directed solely to damages issues. BSC has had to seek certain information on sales and prices to rebut Conor's § 271(e)(1) defense, and BSC served requests for that purpose. Second, far from being well underway, discovery is just now beginning in earnest as a result of Conor's repeated delays.

Although BSC filed the present suit on November 8, 2005 (D.I. 1), Conor refused to engage in discovery during the pendency of its motion to stay (D.I. 9). The Court denied Conor's motion on August 17, 2006 (D.I. 24). During the parties' negotiations after the September 6, 2006 scheduling conference with the Court — during which Conor suggested that it would be hard-pressed to discover and prepare this case for the scheduled October 15, 2007 trial date — BSC sought Conor's agreement to bifurcate and stay discovery and trial of damages issues. (*See* D.I. 35 at 1) Following Conor's refusal, BSC promptly filed the instant motion on October 17, 2006, at which time Conor had yet to produce a single document during the eleven months the litigation had been pending. (*See id.* at 2)

Conor began producing documents on October 26, 2006, but its production to date contains few, if any, financial documents that are not publicly available. Contrary to Conor's characterization in the Answering Brief, the referenced document requests propounded by BSC are directed to Conor's asserted § 271(e)(1) defense. In fact, Conor's stated objections to the referenced document request repeatedly rely on an alleged exemption under 35 U.S.C. § 271(e)(1).

In addition, neither party has taken a single deposition to date. Months remain for fact discovery, and expert discovery will continue into April 2007. (D.I. 36 at (c))

7

The cases Conor relies upon in opposing BSC's motion are inapposite. In those cases, discovery was either well-advanced or entirely concluded. *See, e.g., Matsushita Electrical Industrial Co. v. Cinram Int'l, Inc.*, C.A. No. 01-882-SLR, at *2 (D. Del. Dec. 15, 2003) ("[Movant] waited until . . . three days prior to the close of fact discovery, to file its motion to bifurcate.") (D.I. 44 at Ex. A); *Johns Hopkins Univ. v. CellPro*, 160 F.R.D. 30, 31 (D. Del. 1995) (motion to bifurcate filed almost seven months after Scheduling Order entered); *Read Corp. v. Portec, Inc.*, C.A. No. 88-29-JRR, at *8 (D. Del. May 11, 1989) ("[B]ecause almost all discovery has been completed, the stay request is at this point essentially moot") (D.I. 44 at Ex. B).

Here, BSC moved for bifurcation a week after submitting the proposed scheduling order for the Court's consideration on October 11, 2006. Granting BSC's motion at this early stage of discovery will enable the parties and the Court to enjoy the benefits of streamlined litigation and simplified discovery.

## V.   Bifurcating And Staying Discovery And Trial Of Damages Will Aid, Not Prejudice, Conor

As detailed in BSC's Opening Brief, the requested bifurcation and stay of damages issues in this case will streamline the litigation and avoid unnecessary costs and burdens to the Court and the parties. (D.I. 35 at 5–7) During the scheduling conference with the Court, Conor asserted that the October 15, 2007 trial date would not give Conor enough time to prepare all of the issues in the case for trial. Following the scheduling conference, BSC proposed bifurcation and stay of discovery and trial on damages issues, a proposal that would address Conor's stated concern. Curiously, Conor refused BSC's proposal, which necessitated motion practice. Conor's Answering Brief conspicuously omits that it is now contradicting its position during the scheduling conference by opposing bifurcation. (*See* D.I. 35 at 1, 6–7)

8

Reducing the number of issues involved in the October 15, 2007 trial and the discovery leading up to it can only aid Conor's ability to prepare for the October 15, 2007 trial. Given Conor's flip-flop on this issue, BSC is left to wonder whether Conor had any real concern about the October 2007 trial or whether it is trying to keep all of the issues in the case so that it can later ask for a postponement of the trial date. Either way, Conor has not shown how the requested bifurcation would cause it any prejudice.

In its Answering Brief, Conor argues that bifurcation will impose additional costs that will especially prejudice Conor as a small company. (D.I. 44 at 11) But Conor's resources and litigiousness belie this cry of prejudice. As of the beginning of this year, Conor had over $90 million in assets. (D.I. 44 at Ex. I) And as of September 30, 2005, Conor had initiated multiple patent litigations in jurisdictions around the world. (Ex. 1 to Plaintiff's Reply Brief, Conor 10-Q for the period ended September 30, 2005 at BSC-C 0079590) Conor's attempt to characterize itself as a small company lacking sufficient resources to defend itself in a bifurcated case is flatly contradicted by these facts. Moreover, as discussed above, if Conor actually believes its non-infringement and invalidity arguments, bifurcation would save it substantial time and expense by possibly eliminating the need for any damages discovery and trial at all.

## CONCLUSION

For all the reasons set forth above, as well as those set forth in BSC's Motion and Opening Brief, BSC respectfully requests that the Court grant its motion and enter BSC's proposed order bifurcating and staying discovery and trial of damages issues pending resolution of the underlying liability issues.

        Respectfully submitted,

        YOUNG CONAWAY STARGATT
         & TAYLOR, LLP

        */s/ Adam W. Poff*
        Josy W. Ingersoll (I.D. #1088)
        John W. Shaw (I.D. #3362)
        Adam W. Poff (I.D. #3990)
        1000 West Street, 17th Floor
        P.O. Box 391
        Wilmington, Delaware 19801
        (302) 571-6600
        apoff@ycst.com

        *Attorneys for Plaintiffs*

*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Eric W. Dittmann
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022-4611
(212) 446-4800

Dated: November 13, 2006

**CERTIFICATE OF SERVICE**

I, Adam W. Poff, Esquire, hereby certify that on November 13, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld, Esquire
>Morris Nichols Arsht & Tunnell LLP
>1201 North Market Street
>PO Box 1347
>Wilmington, DE 19899-1347

I further certify that on November 13, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY ELECTRONIC MAIL ON NOVEMBER 13, 2006
AND U.S. MAIL ON NOVEMBER 14, 2006**

>Matthew D. Powers, Esquire
>Jared Bobrow, Esquire
>Weil, Gotshal & Manges LLP
>201 Redwood Shores Parkway
>Redwood Shores, CA 94065

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>/s/ *Adam W. Poff*
>Adam W. Poff (No. 3990)
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, DE 19899-0391
>(302) 571-6600
>apoff@ycst.com
>
>Attorneys for Boston Scientific Corporation and Boston Scientific Scimed, Inc.