# EXHIBIT A

1  GIBSON, DUNN & CRUTCHER LLP
2  Wayne M. Barsky, SBN 116731
   Michael A. Sitzman, SBN 156667
3  Julian W. Poon, SBN 219843
4  June T. Tai, SBN 226997
   Brenda L. Kleidosty, SBN 234987
5  Shannon E. Mader, SBN 235271
6  333 South Grand Avenue
   Los Angeles, California 90071-3197
7  Telephone: (213) 229-7000
8  Facsimile: (213) 229-7520
   wbarsky@gibsondunn.com
9  jpoon@gibsondunn.com
10
   MUNDELL, ODLUM & HAWS, LLP
11 Thomas C. Mundell, SBN 99081
12 650 E. Hospitality Lane, Suite 470
   San Bernardino, CA 92408
13 Telephone: (909) 890-9500
14 Facsimile: (909) 890-9580
   tmundell@mohlaw.com
15
16 Attorneys for Plaintiff,
   G. David Jang, M.D.
17

18          UNITED STATES DISTRICT COURT
19          CENTRAL DISTRICT OF CALIFORNIA
20          EASTERN DIVISION - RIVERSIDE
21

| 22 | G. DAVID JANG, M.D., | Case No. EDCV 05-00426 VAP (SGLx) |
|---|---|---|
| 23 | Plaintiff, | [PROPOSED] FIRST AMENDED |
| 24 | v. | COMPLAINT AND DEMAND FOR JURY TRIAL |
| 25 | BOSTON SCIENTIFIC | |
| 26 | CORPORATION, a Delaware | Hon. Virginia A. Phillips |
| 27 | corporation; SCIMED LIFE SYSTEMS, INC., a Minnesota corporation, | Trial Date:  February 20, 2007 |
| 28 | | |

Gibson, Dunn &
Crutcher LLP

BSC-C 0097272

1
2          Defendants.

3          Plaintiff G. David Jang, M.D. ("Dr. Jang"), for his complaint against defendants

4   Scimed Life Systems, Inc. and Boston Scientific Corporation (collectively "the Boston

5   Scientific Parties"), alleges on personal knowledge as to all facts known to him, and

6   on information and belief as to all other facts, as follows:

7                          **JURISDICTION AND VENUE**

8          1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), providing for

9   diversity jurisdiction in the United States district courts, because (1) Dr. Jang is a

10  citizen of the State of California, (2) Scimed Life Systems, Inc. is incorporated under

11  the laws of the State of Minnesota and maintains its principal place of business there,

12  (3) Boston Scientific Corporation is incorporated under the laws of the State of

13  Delaware and maintains its principal place of business in the State of Massachusetts,

14  and (4) the matter in controversy exceeds, exclusive of interest and costs, the sum of

15  seventy-five thousand dollars.

16         2.     Venue is proper in this judicial district under 28 U.S.C. § 1391, because a

17  substantial part of the events or omissions giving rise to the claims asserted herein

18  occurred in this District.

19                              **THE PARTIES**

20         3.     Dr. Jang is an individual residing in the County of San Bernardino,

21  California. In 1965, Dr. Jang obtained his medical degree at the Korea University

22  College of Medicine in Seoul, Korea. He completed his residency in radiology and a

23  clinical fellowship in cardiovascular radiology at Harvard Medical School. He also

24  completed a residency in internal medicine at Loma Linda University Medical Center,

25  and a fellowship in cardiology at Stanford University Medical Center. Dr. Jang is a

26  member of the American College of Cardiology, the American Heart Association, the

27  American Medical Association, the Society of Cardiac Angiography, and the San

28  Bernardino County Medical Society. After teaching radiology as an instructor at

Gibson, Dunn &
Crutcher LLP

2

[Proposed] First Amended Complaint And Demand For Jury Trial

BSC-C 0097273

Harvard Medical School, Dr. Jang was appointed to the faculty at Loma Linda University School of Medicine, where he is presently a full professor of radiology and medicine. He has been practicing interventional cardiology at the Loma Linda University Medical Center since 1979, and continues to care for cardiology patients to this day. In 1999, Dr. Jang established a California S-corporation, "INVENCA," to facilitate his research and development of medical devices. In addition, the United States Patent and Trademark Office has issued approximately twenty-five patents to Dr. Jang in the fields of coronary balloon catheters and coronary stents. Dr. Jang has written a textbook entitled "Angioplasty," published by McGraw-Hill in 1985.

4. On information and belief, Defendant Boston Scientific Corporation ("BSC") is a corporation organized and existing under the laws of the State of Delaware, and maintains its principal place of business in the State of Massachusetts.

5. On information and belief, Defendant Scimed Life Systems, Inc. ("Scimed") is a corporation organized and existing under the laws of the State of Minnesota, and maintains its principal place of business there. Dr. Jang is further informed and believes that Scimed is a wholly-owned subsidiary of BSC.

6. On information and belief, each defendant was at all times herein mentioned the agent, representative, and alter ego of the other defendant, and as such was at all times herein mentioned acting within the purpose, course and scope of said agency, representation, and alter ego with the consent, permission and ratification of the other defendant.

## GENERAL ALLEGATIONS

### The Technology

7. When a patient suffers from a blocked coronary artery, doctors will often perform a balloon angioplasty. In that procedure, a small catheter carrying a deflated balloon is inserted through an artery in the patient's groin or arm. The catheter is navigated to the blocked artery in the patient's heart, and the balloon catheter is inflated, thereby dilating the blocked artery and compressing the plaque and other

Gibson, Dunn &
Crutcher LLP

3

[Proposed] First Amended Complaint And Demand For Jury Trial

BSC-C 0097274

substances against the walls of the artery.   The balloon is then deflated and removed.
Balloon angioplasty has been the most prevalent non-invasive interventional treatment
for a blocked coronary artery, the alternative being bypass surgery.

8.    To reduce the likelihood that a dilated artery will become blocked again
(a condition known as restenosis), or to clear a blockage that is so severe that balloon
angioplasty alone would not be sufficient, a coronary "stent" may be inserted into the
treated artery.  A coronary stent is a flexible, mesh, metal tube that is inserted in the
artery in a compressed state.  In addition to being used to perform balloon angioplasty,
balloon catheters are also used to deliver coronary stents to portions of a coronary
artery that are at risk for restenosis, where the balloon is inflated in order to shape the
stent to the contours of the inner walls of the artery.  Once expanded, the stent remains
in the artery in an expanded state, even after the balloon has been deflated and
removed, thereby reducing the risk of restenosis in the vicinity of the stent.  The risk
of restenosis is further reduced by "drug-eluting stents"—stents coated with drugs that
suppress the re-growth of cells that block coronary arteries.  On average, coronary
stents are implanted in 80-90% of angioplasty procedures performed today.
Consequently, the coronary stent industry is a multi-billion-dollar per year endeavor.

9.    Even when stents are used as part of the angioplasty procedure, balloon
catheters are used before any stent is inserted in order to "pre-dilate" a blocked artery,
and they are also used after a stent has already been put in place in order to "post-
dilate" the artery.  Moreover, "stand-alone" balloon angioplasty is often performed
without the use of any stents.  Balloons are also used, separate and apart from stents,
in order to treat "in-stent" restenosis, which occurs when the internal lumen of a
previously stented artery is re-clogged by the process of restenosis.

**The Negotiations**

10.    Beginning in late 2000, negotiations commenced between Dr. Jang and
the Boston Scientific Parties regarding the acquisition by the Boston Scientific Parties
of the rights to the coronary stents and certain stent technology invented and patented

Gibson, Dunn &
Crutcher LLP

4

[Proposed] First Amended Complaint And Demand For Jury Trial

BSC-C 0097275

1    by Dr. Jang. Many of the negotiations took place between Dr. Jang, on his own

2    behalf, and Larry Best (then, Chief Financial Officer and Senior Vice President of

3    BSC and Scimed, and now CFO and Executive Vice President of the Boston Scientific

4    Parties) and Doug Godshall (then, Director of New Business Development for BSC,

5    focusing on cardiology, and now BSC's Vice President of New Product

6    Development), on behalf of the Boston Scientific Parties. Best and Godshall

7    represented to Dr. Jang that they had the authority to negotiate such an agreement on

8    behalf of the Boston Scientific Parties.

9           11.    During the course of the negotiations, Dr. Jang specifically asked Messrs.

10   Best and Godshall whether the Boston Scientific Parties were interested in also

11   acquiring the rights to the separate balloon catheter technology pioneered and patented

12   by Dr. Jang. They responded that the Boston Scientific Parties were only interested in

13   acquiring the rights to Dr. Jang's coronary stent technology and patents.

14          12.    Consistent with these discussions, Dr. Jang and BSC (acting through

15   Best) signed a term sheet on March 14, 2001, setting forth certain terms that the

16   parties had agreed upon for BSC's acquisition of the rights to Dr. Jang's coronary

17   stent technology and patents (the "Term Sheet"). No mention was made anywhere in

18   the Term Sheet, which outlined the terms of the transaction that the parties had agreed

19   upon, of Dr. Jang's separate balloon catheter technology or patents. Moreover, the

20   Boston Scientific Parties neither paid nor promised to pay Dr. Jang anything for the

21   rights to his balloon catheter technology and patents (as opposed to his coronary stent

22   technology and patents). A true and correct copy of the Term Sheet is attached hereto

23   as Exhibit 1 and incorporated herein by reference.

24          **The Agreements**

25          13.    On or about May 4, 2001, Dr. Jang and BSC entered into an option

26   agreement (the "Option Agreement") that gave BSC one year in which to evaluate,

27   and determine whether it wished to acquire, the rights to Dr. Jang's coronary stent

28   technology and patents. The Option Agreement stated that if BSC wished to acquire

Gibson, Dunn &
Crutcher LLP

5

BSC-C 0097276

the rights to Dr. Jang's coronary stent technology and patents, the parties would enter into an assignment agreement and a part-time employment agreement, drafts of which were attached to the Option Agreement. A true and correct copy of the Option Agreement is attached hereto as Exhibit 2 and incorporated herein by reference.

14.    On or about May 1, 2002, BSC sent Dr. Jang a notice that it had, on April 29, 2002, assigned to Scimed all of BSC's rights and obligations under the Option Agreement. The notice also stated that Scimed was electing to exercise the option to acquire the rights to Dr. Jang's coronary stent technology and patents.

15.    On June 3, 2002, Dr. Jang entered into an assignment agreement with Scimed (the "Assignment Agreement") and a part-time employment agreement with BSC (the "Employment Agreement"), copies of which are attached hereto as Exhibits 3 and 4, respectively, and incorporated herein by reference. At the same time, Dr. Jang executed contemporaneously therewith a notarized Patent Assignment ("Patent Assignment"), a Bill of Sale and Assignment ("Bill of Sale and Assignment"), and a Non-Qualified Stock Option Agreement ("Non-Qualified Stock Option Agreement"). Copies of the Patent Assignment and of the Bill of Sale and Assignment are attached hereto as Exhibits 5 and 6, respectively, and incorporated herein by reference. Hereinafter, the June 3, 2002 Assignment Agreement, Employment Agreement, Patent Assignment, Bill of Sale and Assignment, and Non-Qualified Stock Option Agreement shall be referred to as the "Transaction Documents."

16.    Under the Assignment Agreement, Dr. Jang agreed to assign to Scimed the rights to his coronary stent technology and patents, which he did on or about June 3, 2002. The coronary stent patents and designs assigned by Dr. Jang to Scimed are set forth on the schedules attached to the Assignment Agreement. Consistent with the parties' intent and negotiations, the schedules of assigned technology and patents do not include any coronary balloon catheters or balloon patents, nor does the Assignment Agreement, Patent Assignment, or Bill of Sale and Assignment anywhere provide for the assignment to Scimed of the rights to Dr. Jang's separate balloon

Gibson, Dunn & Crutcher LLP

6

BSC-C 0097277

1  catheter technology and patents.  Indeed, Exhibit C to the Employment Agreement,

2  which was executed contemporaneously with the Assignment Agreement and is

3  specifically integrated into the Assignment Agreement by the terms of the Assignment

4  Agreement, specifically notes that Dr. Jang's coronary balloon catheters and patents

5  are his prior inventions and that any improvements to those patents and designs

6  developed by Dr. Jang will belong to him.

7        17.    As consideration for the assignment of the rights to Dr. Jang's coronary

8  stent technology and patents, the Assignment Agreement requires Scimed to pay Dr.

9  Jang up to $160 million (the same amount provided for in the Term Sheet), based on

10  revenues from the sale of products developed by the Boston Scientific Parties that

11  incorporate Dr. Jang's coronary stent technology or patents (defined in the

12  Assignment Agreement as "Contingent Payment Products").  More specifically, the

13  Assignment Agreement provides for an up-front payment of $50 million, followed by

14  10% royalty payments on Contingent Payment Products (capped at $60 million), plus

15  an additional payment of $50 million if worldwide sales of Contingent Payment

16  Products reach or exceed $2.5 billion within five years of the first commercial sale of

17  such products in the United States.  The Assignment Agreement refers to payments

18  based on sales of Contingent Payment Products as the "Earn Out."  Finally, the

19  Assignment Agreement provides for a $10 million payment (to be credited against the

20  $60 million cap on Earn Out payments) to be paid to Dr. Jang if the Boston Scientific

21  Parties fail to obtain a European CE Mark on a Contingent Payment Product within

22  two years of entering into the Assignment Agreement.

23        18.    Defendants' "Express," "TAXUS Express" (BSC's drug-coated version

24  of Express), "Liberté," and the drug-coated version of Liberté coronary stent products

25  constitute Contingent Payment Products.  According to BSC's annual reports,

26  worldwide sales of Express and Liberté coronary stent products (including the drug-

27  coated versions) by the Boston Scientific Parties have exceeded $2.5 billion since the

28  first commercial sale in the U.S.  Thus, sales of Contingent Payment Products by the

Gibson, Dunn &
Crutcher LLP

7

[Proposed] First Amended Complaint And Demand For Jury Trial

BSC-C 0097278

1  Boston Scientific Parties have generated sufficient revenue to trigger Scimed's 10%

2  royalty obligation (easily reaching the $60 million cap) and triggering the $50 million

3  payment for achieving worldwide sales of $2.5 billion.  Nevertheless, to date, Scimed

4  has made only the $50 million initial payment due under the Assignment Agreement,

5  plus a $10 million payment on June 2, 2004.

6       19.    Additionally, contrary to the parties' intent—as expressed in the Term

7  Sheet, the negotiations, and the Transaction Documents—the Boston Scientific Parties

8  are wrongfully asserting an ownership interest in the rights to Dr. Jang's coronary

9  balloon catheter technology and patents.

10                      **FIRST CLAIM FOR RELIEF**

11                 **(Rescission of the Transaction Documents**

12                        **Against All Defendants)**

13       20.    Dr. Jang specifically realleges and incorporates herein by reference each

14  and every allegation contained in paragraphs 1 through 19 hereof.

15       21.    As a first ground for rescission of the Transaction Documents, Dr. Jang

16  pleads failure of consideration or material breach by the Boston Scientific Parties.

17  The up-to $160 million that Dr. Jang is entitled to receive from the Boston Scientific

18  Parties under the Assignment Agreement was the most important consideration and

19  inducement for Dr. Jang to execute the Transaction Documents.  By failing and

20  refusing to pay Dr. Jang  $100 million that Dr. Jang in fact earned out of the $160

21  million in total payment obligations that Scimed has under the Assignment

22  Agreement, and by allowing such failure of performance or material breach to occur,

23  the Boston Scientific Parties have deprived Dr. Jang of the very essence of his bargain

24  under the Assignment and Employment Agreements and the rest of the Transaction

25  Documents.  Accordingly, both of these Agreements, the rest of the Transaction

26  Documents and the obligations imposed thereby should be rescinded in their entirety,

27  and the parties restored to their *status quo ante* positions.

28

Gibson, Dunn &
Crutcher LLP

8

BSC-C 0097279

22.     The Assignment Agreement cannot, and should not, be interpreted to include within its scope Dr. Jang's balloon catheter technology.  As the Boston Scientific Parties knew at the time the Transaction Documents were signed, it was never Dr. Jang's intention to convey any rights to his balloon catheter technology.  If, however, the Assignment Agreement is determined to require the assignment to Scimed of the rights to Dr. Jang's balloon catheter technology and patents, then Dr. Jang pleads, as a second and alternative ground for rescission of the Transaction Documents, mistake with respect to whether the Transaction Documents require Dr. Jang to assign the rights to his balloon catheter technology and patents (and improvements thereon) to the Boston Scientific Parties.  When he signed the Transaction Documents in June 2002, Dr. Jang believed, through no fault or neglect of his own, and based upon express statements made by the Boston Scientific Parties, that the Transaction Documents required him to assign to the Boston Scientific Parties only the rights to his coronary stent technology and patents (and certain pacemaker technology), but not also the rights to his balloon catheter technology and patents.  If such belief was mistaken, any such mistake would have been material to Dr. Jang's decision to sign the Transaction Documents, as Dr. Jang would not have signed them as they were drafted had he believed that it gave the Boston Scientific Parties rights to his balloon catheter technology and patents.  The Boston Scientific Parties, through their agents Best and Godshall, knew of, should have known, or caused any such mistake because they represented to Dr. Jang that the Boston Scientific Parties did not wish to acquire the rights to Dr. Jang's balloon catheter technology and patents and were not going to pay for them.  Even if the Boston Scientific Parties were not aware of, or had not caused, any such mistake, it would be unconscionable and unfair under the circumstances to enforce the Assignment Agreement and Employment Agreement as the Boston Scientific Parties contend they should be read.

Gibson, Dunn &
Crutcher LLP

9

BSC-C 0097280

23.    By way of service of this complaint, Dr. Jang hereby provides notice of rescission and offers to restore to the Boston Scientific Parties all consideration received by Dr. Jang under the Transaction Documents.

24.    Dr. Jang further seeks restitution of all benefits conferred upon the Boston Scientific Parties under the Transaction Documents.

## (ALTERNATIVE) SECOND CLAIM FOR RELIEF

### (Reformation of the Transaction Documents Against All Defendants)

25.    Dr. Jang specifically realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 24 hereof.

26.    If the Assignment Agreement does require the assignment to Scimed of not only the rights to Dr. Jang's coronary stent technology and patents, but also the rights to Dr. Jang's balloon catheter technology and patents, then Dr. Jang pleads, as a first ground for reformation of the Transaction Documents, mistake with respect to whether the Transaction Documents require Dr. Jang to assign the rights not only to certain of his coronary stent technology and patents, but also his balloon catheter technology and patents (and improvements thereon), to the Boston Scientific Parties. When he signed the Transaction Documents in June 2002, Dr. Jang believed, through no fault or neglect of his own, and continues to believe in good faith to this day, that the Transaction Documents require him to assign to the Boston Scientific Parties only the rights to certain of his coronary stent technology and patents, and not also the rights to his balloon catheter technology and patents. If such belief was mistaken, such mistake would have been material to Dr. Jang's decision to sign the Transaction Documents, as Dr. Jang would not have signed them as they were drafted had he believed that it gave the Boston Scientific Parties rights to his balloon catheter technology and patents. The Boston Scientific Parties, through at least their agents Best and Godshall, knew of, should have known, or caused any such mistake because they expressly represented to Dr. Jang that the Boston Scientific Parties did not wish

Gibson, Dunn & Crutcher LLP

10

BSC-C 0097281

1   to acquire the rights to Dr. Jang's balloon catheter technology and patents and were

2   unwilling to pay for such additional technology and patents.

3       27.    If the definitions of "Design(s)" and "Technology" in Section 1.1 of the

4   Assignment Agreement and/or the provisions of Section 2.1 of the Assignment

5   Agreement ("Assignment of Technology") are determined to include the rights to any

6   of Dr. Jang's balloon catheter technology and patents, then Dr. Jang specifically

7   pleads that these provisions of the Assignment Agreement do not reflect what the real

8   agreement between the parties was, and should be reformed to specifically state that

9   balloon catheter technology and patents are excluded from the scope of the assignment

10  in order to embody the parties' actual agreement (an assignment of rights to certain of

11  Dr. Jang's coronary stent technology and patents).  If Section 1.2 ("Exclusive Services

12  in Area") and/or Section 5.2 ("Work Product Assignment") of the Employment

13  Agreement are determined to require the assignment of rights to any of Dr. Jang's

14  balloon catheter technology and patents, then Dr. Jang specifically pleads that these

15  provisions of the Employment Agreement do not reflect what the real agreement

16  between the parties was, and should be reformed to specifically state that balloon

17  catheter technology and patents are excluded from the scope of the assignment in

18  order to embody the actual agreement of the parties (an assignment of rights to certain

19  of Dr. Jang's coronary stent technology and patents).  If any provisions of the Patent

20  Assignment, Bill of Sale and Assignment, and/or any of the other Transaction

21  Documents are determined to require the assignment of rights to any of Dr. Jang's

22  balloon catheter technology and patents, then Dr. Jang specifically pleads that these

23  provisions do not reflect the real agreement between the parties, and any such

24  documents should be reformed to specifically state that balloon catheter technology

25  and patents are excluded from the scope of the assignment in order to embody the

26  parties' actual agreement (an assignment of rights to certain of Dr. Jang's coronary

27  stent technology and patents).

28

Gibson, Dunn &
Crutcher LLP

[Proposed] First Amended Complaint And Demand For Jury Trial

BSC-C 0097282

## (ALTERNATIVE) THIRD CLAIM FOR RELIEF

### (Breach of Contract Against Scimed)

28.  Dr. Jang specifically realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 27 hereof.

29.  The Assignment Agreement is a written agreement between Dr. Jang and Scimed.

30.  Dr. Jang has performed all of the covenants, conditions, and promises to be performed on his part under the Assignment Agreement, with the exception of any obligations the performance of which has been excused by Scimed's breach of the Assignment Agreement.

31.  Scimed has breached the Assignment Agreement by failing to pay Dr. Jang approximately $100 million of the $160 million in payments to which Dr. Jang is entitled under the Assignment Agreement from the Boston Scientific Parties' sale of Contingent Payment Products, even though the Express and Liberté coronary stent products (including the drug-coated versions thereof) constitute Contingent Payment Products and have generated sufficient revenue to trigger Scimed's Earn Out and other payment obligations under the Assignment Agreement.

32.  As a direct and proximate result of Scimed's breach of the Assignment Agreement, Scimed has inflicted damage upon Dr. Jang in an amount to be determined at trial, but not less than $100,000,000.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty Against All Defendants)

33.  Dr. Jang specifically realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 32 hereof.

34.  Dr. Jang entrusted his coronary stent technology and ideas for improvements thereon to the Boston Scientific Parties under an exclusive arrangement whereby the Boston Scientific Parties agreed to develop, patent or maintain the patents on, and commercially exploit, Dr. Jang's technology and ideas, in return for royalties

Gibson, Dunn & Crutcher LLP

12

BSC-C 0097283

to be paid to Dr. Jang.  As a result of this arrangement, a confidential or fiduciary relationship existed between Dr. Jang and the Boston Scientific Parties in connection with the Assignment Agreement and Employment Agreement and the rest of the Transaction Documents.

35.    The Boston Scientific Parties breached the fiduciary duties they owed Dr. Jang through several acts of overreaching and unfair conduct, including misleading Dr. Jang, making false promises to Dr. Jang regarding the Boston Scientific Parties' intentions with respect to his balloon catheter technology and patents, withholding Dr. Jang's rightful share of the revenues generated from the sale of Contingent Payment Products, falsely denying that their stents utilized Dr. Jang's stent technology, and attempting to claim as their own, and to prevent Dr. Jang from marketing, the balloon catheter technology that he invented and developed on his own time and using his own resources.  If the Assignment Agreement is determined to require Dr. Jang to assign to the Boston Scientific parties the rights to his balloon catheter technology and patents, then the Boston Scientific Parties also breached their fiduciary duty to Dr. Jang by entering into the Assignment Agreement knowing that Dr. Jang had no intention of conveying rights in his balloon catheter technology and patents, and by taking advantage of Dr. Jang's evident belief that it did not do so.

36.    As a direct and proximate result of the Boston Scientific Parties' breaches of the fiduciary duties they owed Dr. Jang, Dr. Jang has been or will be damaged in an amount to be proven at trial.

37.    In doing the acts hereinabove alleged, the Boston Scientific Parties acted reprehensibly and in bad faith, with oppression, fraud and/or malice, entitling Dr. Jang to recover punitive damages in an amount appropriate to punish defendants and to deter them from engaging in similar misconduct in the future.

Gibson, Dunn &
Crutcher LLP

13

BSC-C 0097284

## (ALTERNATIVE) FIFTH CLAIM FOR RELIEF

### (Declaratory Judgment Against All Defendants)

38.    Dr. Jang specifically realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 37 hereof.

39.    Dr. Jang contends that neither the Assignment Agreement nor any of the other Transaction Documents requires him to assign to Scimed any of his balloon catheter technology and patents (and any improvements thereto), whereas the Boston Scientific Parties contend that the Assignment Agreement does require him to do so. Therefore, an actual controversy has arisen and now exists with respect to whether the Assignment Agreement (or any of the other Transaction Documents) requires Dr. Jang to assign to Scimed the rights to his balloon catheter technology and patents (and any improvements thereto).

40.    Dr. Jang requests that the Court issue a declaratory judgment clarifying the rights and obligations of the parties under the Assignment Agreement and the rest of the Transaction Documents with respect to Dr. Jang's balloon catheter technology and patents.

## PRAYER

WHEREFORE, Dr. Jang prays for the following relief:

1. That the Court enter judgment in favor of Dr. Jang and against the Boston Scientific Parties;

2. An order rescinding the Transaction Documents, and compelling the Boston Scientific Parties to make restitution to Dr. Jang of all benefits conferred upon them as a result of the Transaction Documents;

3. In the alternative, an order reforming the Transaction Documents and clarifying that Dr. Jang is not required to assign the rights to his balloon catheter technology or patents to either of the Boston Scientific Parties, and that the Boston Scientific Parties have no rights to any such technology or patents;

Gibson, Dunn &
Crutcher LLP

14

BSC-C 0097285

4. In the alternative, that Dr. Jang be awarded monetary damages and other relief sufficient to compensate him for Scimed's breaches of the Assignment Agreement;

5. That Dr. Jang be awarded monetary damages and other relief sufficient to compensate him for the Boston Scientific Parties' breaches of the fiduciary duties that they owed Dr. Jang;

6. A judicial declaration that neither the Assignment Agreement nor any of the other Transaction Documents requires him to assign to Scimed his balloon catheter technology and patents (and any improvements thereto).

7. For punitive damages in an amount sufficient to punish and deter the Boston Scientific Parties;

8. Such other and further relief as this Court may deem just and appropriate.

DATED: March 3, 2006

GIBSON, DUNN & CRUTCHER LLP
Wayne M. Barsky
Michael A. Sitzman
Julian W. Poon
June T. Tai
Brenda L. Kleidosty
Shannon E. Mader

MUNDELL, ODLUM & HAWS, LLP
Thomas C. Mundell


By: _____
       Wayne M. Barsky

Attorneys for Plaintiff, G. David Jang, M.D.

BSC-C 0097286

1

## DEMAND FOR JURY TRIAL

2    Dr. Jang demands a trial by jury on all issues so triable.

3

4    DATED: March 3, 2006

5                                    GIBSON, DUNN & CRUTCHER LLP
                                     Wayne M. Barsky
6                                    Michael A. Sitzman
                                     Julian W. Poon
7                                    June T. Tai
                                     Brenda L. Kleidosty
8                                    Shannon E. Mader

9
                                     MUNDELL, ODLUM & HAWS, LLP
10                                   Thomas C. Mundell

11

12

13                                   By: _____
                                              Wayne M. Barsky
14
                                     Attorneys for Plaintiff, G. David Jang, M.D.
15    10928583_1.DOC

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

[Proposed] First Amended Complaint And Demand For Jury Trial

BSC-C 0097287

# EXHIBIT B

1   GIBSON, DUNN & CRUTCHER LLP
2   Wayne M. Barsky, SBN 116731
    Michael A. Sitzman, SBN 156667
3   Julian W. Poon, SBN 219843
4   333 South Grand Avenue
    Los Angeles, California 90071-3197
5   Telephone: (213) 229-7000
6   Facsimile: (213) 229-7520
7   wbarsky@gibsondunn.com
    jpoon@gibsondunn.com
8
    MUNDELL, ODLUM & HAWS, LLP
9   Thomas C. Mundell, SBN 99081
10  650 E. Hospitality Lane, Suite 470
    San Bernardino, CA 92408
11  Telephone: (909) 890-9500
12  Facsimile: (909) 890-9580
13  tmundell@mohlaw.com

14  Attorneys for Plaintiff,
    G. David Jang, M.D.
15



FILED
CLERK, U.S. DISTRICT COURT

MAR - 7 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION       BY DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

16              UNITED STATES DISTRICT COURT
17            CENTRAL DISTRICT OF CALIFORNIA
18             EASTERN DIVISION - RIVERSIDE
19

20  G. DAVID JANG, M.D.,            Case No. EDCV 05-00426 VAP (SGLx)
21              Plaintiff,          STIPULATION AND [PROPOSED]
22                                  ORDER ALLOWING PLAINTIFF TO
                                    FILE AN AMENDED COMPLAINT
23  BOSTON SCIENTIFIC
24  CORPORATION, a Delaware         Hon. Virginia A. Phillips
    corporation; SCIMED LIFE SYSTEMS,
25  INC., a Minnesota corporation,  Trial Date:  February 20, 2007
26              Defendants.
27
28



DOCKETED ON CM

MAR 10 2006

BY              044

Gibson, Dunn &
Crutcher LLP

Stipulation And [Proposed] Order Allowing Plaintiff To File An Amended Complaint

BSC-C 0162440

HOWREY LLP
Sandra Smith Thayer, SBN 200294
550 South Hope Street, Suite 1100
Los Angeles, California 90071
Telephone: (213) 892-1800
Facsimile: (213) 892-2300
Thayers@howrey.com

HOWREY LLP
Matthew M. Wolf, Admitted *pro hac vice*
Edward Han, Admitted *pro hac vice*
John Nilsson, Admitted *pro hac vice*
1299 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: (202) 783-0800
Facsimile: (202) 383-6610
Wolfm@howrey.com
Hane@howrey.com
Nilssonj@howrey.com

Attorneys for Defendants,
Boston Scientific Corporation and
SciMed Life Systems, Inc.

/ / /

/ / /

/ / /

/ / /

Gibson, Dunn &
Crutcher LLP

2

1      It is hereby stipulated by and between the parties hereto through their respective

2 counsel of record that Plaintiff G. David Jang, M.D. ("Dr. Jang") be permitted to file

3 an Amended Complaint, an original and one copy of which is filed concurrently

4 herewith pursuant to Local Rule 15-1.

5

6 DATED: March 3, 2006

7                               GIBSON, DUNN & CRUTCHER LLP
                               Wayne M. Barsky

8                                Michael A. Sitzman

9                                Julian W. Poon

10                                MUNDELL, ODLUM & HAWS, LLP
                               Thomas C. Mundell

11

12

13                              By: _____
                                      Julian W. Poon

14

15 DATED: March ___, 2006             Attorneys for Plaintiff, G. David Jang, M.D.

16                                HOWREY LLP
                               Sandra Smith Thayer

17                                Matthew M. Wolf

18                                Edward Han

19                                John Nilsson

20

21                              By: _____
                                      Sandra Smith Thayer

22

23                                Attorneys for Defendants,
                               Boston Scientific Corporation and

24                                SciMed Life Systems, Inc.

25

26

27

28

BSC-C 0162442

It is hereby stipulated by and between the parties hereto through their respective counsel of record that Plaintiff G. David Jang, M.D. ("Dr. Jang") be permitted to file an Amended Complaint, an original and one copy of which is filed concurrently herewith pursuant to Local Rule 15-1.

DATED:  March ___, 2006

                                  GIBSON, DUNN & CRUTCHER LLP
                                  Wayne M. Barsky
                                  Michael A. Sitzman
                                  Julian W. Poon

                                  MUNDELL, ODLUM & HAWS, LLP
                                  Thomas C. Mundell

                                  By: _____
                                               Julian W. Poon

                                  Attorneys for Plaintiff, G. David Jang, M.D.

DATED:  March 3, 2006

                                  HOWREY LLP
                                  Sandra Smith Thayer
                                  Matthew M. Wolf
                                  Edward Han
                                  John Nilsson

                                  By: _____
                                              Sandra Smith Thayer

                                  Attorneys for Defendants,
                                  Boston Scientific Corporation and
                                  SciMed Life Systems, Inc.

3

Stipulation And [Proposed] Order Allowing Plaintiff To File An Amended Complaint

BSC-C 0162443

# [PROPOSED] ORDER

Based upon the stipulation of counsel for the parties, and good cause appearing,
IT IS HEREBY ORDERED as follows:

1.    Plaintiff is granted leave to file the Amended Complaint that was lodged with the Court with this Stipulation and [Proposed] Order.  Pursuant to Local Rule 15-3, Plaintiff's Amended Complaint is deemed served upon Defendants in this action as of the date of this Order.

2.    Defendants are given ten (10) days from the date of this Order to respond to Plaintiff's Amended Complaint.


DATED: March 1, 2006

Hon. Virginia A. Phillips
United States District Judge

10928594_1.DOC

Gibson, Dunn &
Crutcher LLP

4

Stipulation And [Proposed] Order Allowing Plaintiff To File An Amended Complaint

BSC-C 0162444

# EXHIBIT C

1  GIBSON, DUNN & CRUTCHER LLP
   Wayne M. Barsky, SBN 116731
2  Julian W. Poon, SBN 219843
   Joshua A. Jessen, SBN 222831
3  Brenda L. Kleidosty, SBN 234987
   Shannon E. Mader, SBN 235271
4  333 South Grand Avenue
   Los Angeles, California 90071-3197
5  Telephone: (213) 229-7000
   Facsimile: (213) 229-7520
6  wbarsky@gibsondunn.com
   jpoon@gibsondunn.com
7
   MUNDELL, ODLUM & HAWS, LLP
8  Thomas C. Mundell, SBN 99081
   650 E. Hospitality Lane, Suite 470
9  San Bernardino, CA 92408
   Telephone: (909) 890-9500
10 Facsimile: (909) 890-9580
   tmundell@mohlaw.net
11
   Attorneys for Plaintiff,
12 G. David Jang, M.D.
13 [Additional counsel listed on next page]
14
15              UNITED STATES DISTRICT COURT
16             CENTRAL DISTRICT OF CALIFORNIA
17             EASTERN DIVISION - RIVERSIDE
18
19 G. DAVID JANG, M.D.,                    Case No. EDCV 05-00426 VAP (CTx)
20        Plaintiff,                       STIPULATION AND [PROPOSED]
                                           ORDER: (1) GRANTING PARTIAL
21        v.                               SUMMARY JUDGMENT AGAINST
                                           PLAINTIFF ON PLAINTIFF'S
22 BOSTON SCIENTIFIC CORPORATION,          THIRD CLAIM FOR RELIEF FOR
   a Delaware Corporation; SCIMED LIFE     BREACH OF CONTRACT AGAINST
23 SYSTEMS, INC., a Minnesota              DEFENDANT SCIMED LIFE
   Corporation,                            SYSTEMS, INC., AND (2)
24                                         DISMISSING WITHOUT
        Defendants.                        PREJUDICE DEFENDANTS' FIRST
25                                         AND SECOND COUNTERCLAIMS
26
27                                         The Honorable Virginia A. Phillips
28                                         Trial Date:  February 20, 2007

FILED
CLERK, U.S. DISTRICT COURT
SEP 18 2006
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

ENTERED
SEP 20 2006
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
BY                  DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Priority ___
Send     ___
Enter    ___
Closed   ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

LODGED
2006 SEP 12 PM 2:5
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY

DOCKETED ON CM
SEP 20 2006
BY

Gibson, Dunn &
Crutcher LLP

BSC-C 0098656

1   Wallace Wu, SBN 220110
HOWREY LLP
2   550 South Hope Street, Suite 1100
Los Angeles, California 90071
3   Telephone: (213) 892-1800
Facsimile: (213) 892-2300

4

5   Matthew M. Wolf (*pro hac vice*)
Edward Han (*pro hac vice*)
John E. Nilsson (*pro hac vice*)
6   HOWREY LLP
1299 Pennsylvania Avenue, N.W.
7   Washington, DC 20004
Telephone: (202) 783-0800
8   Facsimile: (202) 383-6610
Wolfm@howrey.com
9   Hane@howrey.com
Nilssonj@howrey.com

10

11   Attorneys for Defendants,
Boston Scientific Corporation and
Scimed Life Systems, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

BSC-C 0098657

1    Plaintiff G. David Jang, M.D. ("Dr. Jang") and Defendants Boston Scientific

2  Corporation ("BSC") and Scimed Life Systems, Inc. ("Scimed") hereby stipulate and

3  agree, by and through their undersigned counsel of record, subject to the terms set

4  forth below, including but not limited to the preservation of Dr. Jang's right of appeal,

5  and further subject to the approval of this Court, that an order should be entered (1)

6  granting partial summary judgment against Dr. Jang and in favor of Scimed on Dr.

7  Jang's Third Claim for Relief for Breach of Contract against Scimed, and (2)

8  dismissing without prejudice Defendants' First and Second Counterclaims as moot.  In

9  support of their Stipulated Motion, the parties state as follows:

10    1.    On or about March 3, 2006, Dr. Jang filed a First Amended Complaint

11  and Demand For Jury Trial (the "Complaint") against BSC and Scimed.  Dr. Jang's

12  Complaint states five claims for relief, including a Third Claim for Relief for breach of

13  contract against Scimed.

14    2.    Dr. Jang's Third Claim for Relief alleges, among other things, that

15  "Scimed has breached the Assignment Agreement by failing to pay Dr. Jang

16  approximately $100 million of the $160 million in payments to which Dr. Jang is

17  entitled under the Assignment Agreement from the Boston Scientific Parties' sale of

18  Contingent Payment Products, even though the Express . . . coronary stent products

19  (including the drug-coated versions thereof) constitute Contingent Payment Products

20  and have generated sufficient revenue to trigger Scimed's Earn Out and other payment

21  obligations under the Assignment Agreement."  Complaint, ¶ 31.

22    3.    Under the Assignment Agreement, the question of whether Express stents

23  are Contingent Payment Products, and thus whether Scimed has breached the

24  Assignment Agreement by failing to make payments to Dr. Jang based upon sales of

25  Express stents, depends on whether the "development, manufacture, use, or sale" of

26  the Express stent is "covered by one or more Valid Claims of the Patents in the

27  jurisdiction in which such stent is manufactured or sold or which, but for the

28  assignment made pursuant to this Agreement, would infringe one of more Valid

Gibson, Dunn &
Crutcher LLP

1

BSC-C 0098658

1  Claims of the Patents." Complaint, Exh. 3-033. Stated differently, in order for Dr.

2  Jang to prove that Scimed has breached the Assignment Agreement, Dr. Jang must

3  prove that, absent the Assignment Agreement (under which he assigned several of his

4  patents to Scimed), the Express stent would infringe one or more valid claims of the

5  patents assigned by Dr. Jang to Scimed.

6      4.    On or about March 20, 2006, Defendants filed an Answer to Dr. Jang's

7  Complaint and also asserted several counterclaims against Dr. Jang. Defendants' first

8  and second counterclaims are styled "Declaratory Judgment Of Non-Infringement" and

9  "Declaratory Judgment Regarding 'Contingent Payment Products,'" respectively, and

10  turn on the same patent-coverage or infringement issues as does Dr. Jang's breach of

11  contract claim against Scimed.

12      5.    During discovery, Dr. Jang identified several claims in two U.S. patents

13  (U.S. Patent Nos. 5,922,021 and 5,954,743) that he believes cover the Express stent.

14  Accordingly, and after significant briefing on the issue by both parties, the Court held

15  a claim construction (Markman) hearing on May 30, 2006 to construe several terms

16  contained in the patent claims at issue.

17      6.    On or about August 24, 2006, the Court issued a Claim Construction

18  Order ("the Order"), which the parties received on August 28, 2006. Plaintiff Dr. Jang

19  believes that the Court's Order is incorrect in several fundamental respects, and he

20  intends to seek appellate review of the Court's Order in the appropriate appellate court.

21  Nonetheless, the parties agree that, under the Court's existing Claim Construction

22  Order, Dr. Jang cannot prove that the Express stent is covered by any claims of U.S.

23  Patent Nos. 5,922,021 and 5,954,743, and therefore cannot prove that Scimed breached

24  the Assignment Agreement with respect to those patents.

25      7.    Accordingly, in order to conserve the resources of both the parties and the

26  Court, *see, e.g., York Prods., Inc. v. Central Tractor Farm & Family Ctr.,* 99 F.3d

27  1568, 1571 (Fed. Cir. 1996), the parties hereby stipulate and agree, subject to the

28  approval of this Court, and further subject to the full and complete preservation of Dr.

Gibson, Dunn & Crutcher LLP

BSC-C 0098659

1  Jang's right to appeal the Order, that an order of partial summary judgment should now

2  be entered against Dr. Jang and in favor of Scimed on Dr. Jang's Third Claim for

3  Relief for Breach of Contract against Scimed.  Similarly, because the Defendants' first

4  and second counterclaims are now moot, the parties also stipulate and agree, subject to

5  the approval of this Court, that an order should be entered dismissing those

6  counterclaims without prejudice.

7  8.      This Stipulation is wholly predicated on Dr. Jang's right to obtain appellate

8  review of the Court's Claim Construction Order.  By entering into this Stipulation, the

9  parties agree that Dr. Jang is *not waiving*, but rather is *expressly reserving*, his right to

10  obtain appellate review of the Court's Claim Construction Order and to proceed further

11  with his Third Claim for Relief on remand from the Court of Appeals should the Court

12  of Appeals reverse or vacate this Court's Claim Construction Order in whole or in part.

13  Indeed, Dr. Jang's right to appeal the Court's Claim Construction Order is an *essential*

14  *condition* of this Stipulation, and if the Court does not agree that Dr. Jang is *fully*

15  *preserving all of his rights to obtain appellate review of the Claim Construction Order*,

16  ///

17  ///

18  ///

19

20

21

22

23

24

25

26

27

28

1    then Dr. Jang does not consent to the entry of an order granting partial summary

2    judgment against him on his Third Claim for Relief and requests that the Court reject

3    this Stipulation.

4

5                                    Respectfully submitted,

6    Dated:  September 12, 2006         GIBSON, DUNN & CRUTCHER LLP

7

8                                    By: _____

9                                              Wayne M. Barsky

10                                   Attorneys for Plaintiff,
                                     G. David Jang, M.D.
11

12   Dated:  September 12, 2006         HOWREY LLP

13

14

15                                   By: _____

16                                              Matthew M. Wolf

17                                   Attorneys for Defendants,
                                     Boston Scientific Corporation and
                                     Scimed Life Systems, Inc.
18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

4

BSC-C 0098661

then Dr. Jang does not consent to the entry of an order granting partial summary judgment against him on his Third Claim for Relief and requests that the Court reject this Stipulation.

Respectfully submitted,

Dated: September __, 2006          GIBSON, DUNN & CRUTCHER LLP


By: _____
          Wayne M. Barsky

Attorneys for Plaintiff,
G. David Jang, M.D.


Dated: September 12th, 2006          HOWREY LLP


By: _Matthew Wolf_ (by permission by JEM)
          Matthew M. Wolf

Attorneys for Defendants,
Boston Scientific Corporation and
Scimed Life Systems, Inc.

Gibson, Dunn &
Crutcher LLP

4

BSC-C 0098662

# [PROPOSED] ORDER

Having considered the parties' foregoing Stipulation (1) Granting Partial Summary Judgment Against Plaintiff on Plaintiff's Third Claim for Relief for Breach of Contract Against Defendant Scimed Life Systems, Inc., and (2) Dismissing Without Prejudice Defendants' First and Second Counterclaims as moot, and good cause appearing to exist, IT IS SO ORDERED.

Specifically, in accordance with the terms of the foregoing stipulation, the Court grants partial summary judgment against Dr. Jang and in favor of Scimed on Dr. Jang's Third Claim for Relief for Breach of Contract. The Defendants' First and Second Counterclaims are accordingly moot, and are dismissed without prejudice. Entry of this Order does not waive or compromise Dr. Jang's right to obtain appellate review of the Court's Claim Construction Order and, if the Court's Claim Construction Order is reversed or vacated in part on appeal, to proceed further with his Third Claim for Relief on remand from the Court of Appeals.

Dated: September 18, 2006

Hon. Virginia A. Phillips
United States District Judge

100073692_1.DOC

Gibson, Dunn & Crutcher LLP

5