IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION<br>and BOSTON SCIENTIFIC SCIMED, INC.<br><br>Plaintiffs,<br><br>v.<br><br>CONOR MEDSYSTEMS, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.: 05-768-SLR<br>)<br>)<br>)<br>)<br>) |

**BSC'S SECOND NOTICE OF DEPOSITION OF
CONOR MEDSYSTEMS, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)**

PLEASE TAKE NOTICE that at 9:30 a.m. on February 5, 2007, or such other time and date as agreed to by counsel, Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") will take the deposition upon oral examination of Defendant Conor Medsystems, Inc. ("Conor") at the offices of Kirkland & Ellis LLP, 153 East 53rd Street, New York, New York 10022, pursuant to Federal Rule of Civil Procedure 30(b)(6). This deposition upon oral examination will be conducted before an officer authorized to administer oaths and will be recorded by stenographic and videographic means.

BSC will take this deposition upon oral examination through one or more officers, directors, managing agents or other persons designated by Conor pursuant to Federal Rule of Civil Procedure 30(b)(6) as the person(s) knowledgeable to testify on Conor's behalf concerning the topics identified in Schedule A. Conor is requested to identify the individual(s) who will

testify regarding each topic at least one week in advance of the deposition. The deposition will continue from day to day until completed with such adjournments as to time and place as may be necessary. You are invited to attend and examine the witness(es).

Dated: January 23, 2007

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

_____
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. # 3362)
Adam W. Poff (I.D. #3990)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-671
apoff@ycst.com

*Attorneys for Plaintiffs Boston Scientific
Corporation and Boston Scientific Scimed, Inc.*

*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Marjorie Press Lindblom
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

2

## SCHEDULE A

### Definitions

As used herein, "Conor" shall mean defendant Conor Medsystems, Inc. and all of Conor Medsystems, Inc.'s corporate parents, corporate predecessors and part or present subsidiaries, affiliates, divisions, departments, officers, directors, principals, agents and employees.

As used herein, "BSC" shall mean Plaintiffs Boston Scientific Corporation, Boston Scientific Scimed, Inc., collectively, and all of their corporate parents, corporate predecessors and part or present subsidiaries, affiliates, divisions, departments, officers, directors, principals, agents and employees.

As used herein, "the Jang '021 patent" shall mean U.S. Patent No. 5,922,021 including any corrections thereto.

As used herein, "Conor Stents" shall mean any stent made, used, sold, offered for sale or imported into the United States by Conor in which the word "CoStar," "UniStar," "MedStent" or "DepoStent" constitutes all or part of the trademark or name, including any commercial, developmental, working or non-working model, or any prototype of any of the foregoing, and any stent-delivery system incorporating any such stent.

1. Financial information regarding Conor Stents, including on a monthly basis and a product-by-product basis: a) unit sales and revenue in each geographic territory in which the stents were sold; b) profits earned on the sale of Conor Stents (gross, operating, net, incremental, projected, or other category of profits recognized by Conor); and c) costs associated with the development, manufacture, sale or distribution of Conor Stents, including any selling, general and administrative and development expenses related to the Conor Stents.

2. The market for sales of stents, both in the United States and internationally, from 1999 to present, including without limitation: a) Conor's understanding of who its competitors are (or were) in the stent market and which products its competitors sell (or sold); b) the strengths and weaknesses of Conor Stents compared to competitors' stents; c) categories used by Conor to classify stents (*e.g.*, "coil," "slotted tube," "drug eluting") or stent delivery systems (*e.g.*, "rapid exchange" or "over the wire," etc.) and the percentage of the total market, in terms of both dollars and units, that is (or was) occupied by each such category; and d) the total size of the market in dollars and units and the share of the market held by both Conor and any of its competitors.

3. Marketing and selling of Conor Stents, including but not limited to: a) advertising and marketing literature, press releases and similar communications; b) Conor's strategy for marketing and selling its stents; c) all agreements concerning the sales, marketing, distribution or promotion of Conor Stents between Conor and any other party; d) identification of target markets; e) any purported advantages or benefits of the products that were touted or pointed out to customers; f) identification of those features Conor considers important to its customers; g) any comparisons that were drawn between

Conor Stents and other stents; h) any perceived difference between drug-eluting stents and bare-metal stents; and i) any advantages, disadvantages, shortcomings or limitations of drug-eluting stents compared to bare-metal stents.

4. Market studies, surveys, market share data, market reports, projections, estimates, forecasts, marketing or business plans, budgets, sales reports, profitability assessments or other marketing or financial reports relating to Conor Stents.

5. Demand for any feature(s) of the Conor Stents, including but not limited to flexibility, deliverability, scaffolding, radial strength, radiopacity or closed-cell design.

6. Conor's licensing agreements with third parties relating to stents, stent delivery systems, balloon dilation systems or related interventional devices, including all licenses, sublicenses, cross-licenses, settlement agreements, covenants not to sue, etc., the negotiations leading to those agreements, and any payments made pursuant to those agreements, whether by Conor or to Conor.

7. The locations both in the U.S. and outside the U.S. (including at Conor-owned, outside vendor and third-party facilities) where Conor Stents and stent delivery systems have been manufactured, drug coated and/or assembled from 1999 to present and, for each such location, the date it received regulatory approval, the manufacturing capacity and the total amount of Conor Stents manufactured, drug coated and/or assembled, including but not limited to net shipments (including where such shipments were sold) and finished goods inventory on a monthly and product-by-product basis, and the associated scrap rate, and plans, if any, for development and/or construction of additional and/or expanded manufacturing, drug coating and/or assembly facilities for Conor Stents (both in the U.S. and outside the U.S.), including the cost and timing of such facilities.

8.  The pricing of Conor Stents, both in the United States and internationally, from any time to the present, including but not limited to: a) price discounts (*e.g.*, price and discount lists, price concessions, incentive programs and any other special pricing and sales promotion); b) prices and changes in prices (including the reasons for such changes) for Conor Stents; and c) pricing analyses for each Conor Stent.

9.  The reasons for Cordis' acquisition of Conor, and Conor's willingness to be acquired, including but not limited to: a) projections of sales of Conor Stents after Conor's acquisition by Cordis; b) Conor's analysis of the value of Conor Stents to Cordis' stent portfolio; c) presentations made by Conor to Cordis and/or outside analysts regarding the value of Conor Stents to Cordis' stent portfolio; and, d) information received from Cordis, persons acting on its behalf and/or outside analysts regarding the value of Conor Stents to Cordis' stent portfolio.

10. The identity of any alternatives to using the stent design accused of infringing the '021 patent, including: a) whether these alternatives have been approved by regulatory agencies; b) how long they would take to implement; and, c) what they would cost to implement.

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on January 23, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld, Esquire
>Morris Nichols Arsht & Tunnell LLP
>1201 North Market Street
>PO Box 1347
>Wilmington, DE 19899-1347

I further certify that on January 23, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY ELECTRONIC MAIL AND U.S. MAIL**

>Matthew D. Powers, Esquire
>Jared Bobrow, Esquire
>Weil, Gotshal & Manges LLP
>201 Redwood Shores Parkway
>Redwood Shores, CA 94065

>Timothy E. Demasi, Esquire
>Weil, Gotshal & Manges LLP
>767 Fifth Avenue
>New York, NY 10153

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
*apoff@ycst.com*

Attorneys for Boston Scientific Corporation and Boston Scientific Scimed, Inc.