# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-768-SLR |
| CONOR MEDSYSTEMS, INC., | ) ) | |
| Defendant. | ) ) | |

## BSC'S OPENING BRIEF ON CLAIM CONSTRUCTION ISSUES

YOUNG CONAWAY
STARGATT & TAYLOR, LLP
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Adam W. Poff (I.D. #3990)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for
Boston Scientific Corporation and
Boston Scientific Scimed, Inc.*

*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Marjorie Press Lindblom
Young J. Park
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022
(212) 446-4800
Dated:  May 11, 2007

## Table of Contents

INTRODUCTION ...................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ....................................................1

SUMMARY OF THE ARGUMENT ..........................................................................2

STATEMENT OF FACTS ........................................................................................4

    I.      Cordis And Conor Are Sister Corporations Working In Concert...........................4

    II.     Prior *Jang v. BSC* Litigation In California.................................................6

LEGAL STANDARDS ............................................................................................8

ARGUMENT.........................................................................................................9

    I.      THE "WHEREIN" LIMITATION DOES NOT EXCLUDE  A 180
            DEGREE OUT-OF-PHASE ALIGNMENT ..........................................................9

          A.     Conor Is Barred From Re-Litigating The "Wherein" and
               "Connecting  Strut Column" Limitations Under The Doctrine Of
               Collateral Estoppel....................................................................10

          B.     The Ordinary Meaning Of The Claim Does Not Support Conor's
               Proposed Construction That Excludes 180 Degree Out-Of-Phase
               Designs....................................................................................11

          C.     Cordis's Proposed Construction Is Contrary To The Claim
               Language.................................................................................11

          D.     Dr. Jang Did Not Clearly And Unmistakably Disclaim "Out-Of-
               Phase"  Stent Designs During Prosecution Of The Jang '021 Patent.........13

          E.     Conor Misrepresents Dr. Jang's Statements Regarding Stent
               Designs With 180 Degree Out Of Phase Expansion Strut Pairs................14

    II.     "A FIRST CONNECTING STRUT COLUMN FORMED OF A
            PLURALITY OF FIRST CONNECTING STRUTS" MEANS "A
            COLUMN FORMED OF AT LEAST TWO FIRST CONNECTING
            STRUTS" ...............................................................................................15

          A.     The Construction Of "A First Connecting Strut Column"  From
                The *Cordis* Action And The *Jang* Action Are Consistent  So The
               Court Does Not Need To Alter Its Construction .....................................16

          B.     If The Court Chooses To Further Construe "Connecting Strut
               Column," It Should Mean "A Column Formed Of A Plurality Of
               Connecting Struts,  As Opposed To Expansion Or Joining Struts,

i

|  | | Unattached To Each Other And Arranged Along The Circumference Of The Stent." | 17 |
|  | C. | BSC's Proposed Clarification Is Necessary To Prevent Juror Confusion | 18 |
| III. | | "EXPANSION COLUMN" MEANS "A TUBULAR STRUCTURE FORMED SOLELY OF A PLURALITY OF EXPANSION STRUT PAIRS, AS OPPOSED TO CONNECTING STRUTS, ARRANGED IN A COLUMN ALONG THE CIRCUMFERENCE OF THE STENT" | 20 |
|  | A. | BSC's Proposed Construction Is Consistent With The Construction Of "Expansion Column" In The *Jang* Action | 20 |
|  | B. | BSC's Proposed Clarification Is Necessary To Prevent Juror Confusion | 21 |

K&E 11792864.6

## Table of Authorities

**Cases**

*Andersen Corp. v. Fiber Composites, LLC*,
    474 F.3d 1361 (Fed. Cir. 2007) ...................................................................................... 13

*Burlington N. R.R. Co. v. Hyundai Merchant Marine Co.*,
    63 F.3d 1227 (3d Cir. 1995) ........................................................................................... 11

*Cordis Corp. v. Boston Scientific Corp.*,
    2005 WL 1331172 ............................................................................................................. 11

*Greenleaf v. Garlock, Inc.*,
    174 F.3d 352 (3d Cir. 1999) ........................................................................................... 11

*Invitrogen Corp. v. Clontech Lab., Inc.*
    429 F.3d 1052 (Fed. Cir. 2005) ........................................................................................ 9

*Jang v. Boston Scientific Corp.*,
    EDCV 05-426-VAP (CTx) (C. D. Cal) ................................................................... 3, 7, 8

*KX Indus., L.P. v. PUR Water Purification Prods., Inc.*,
    108 F. Supp. 2d 380 (D. Del. 2000) ..................................................................... 12, 17, 20

*Markman v. Westview Instruments Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) (en banc) ............................................................. 10, 12, 16

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) .......................................................................................................... 17

*Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*,
    288 F.3d 519 (3d Cir. 2002) ........................................................................................... 11

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ............................................................................ 9, 14, 15

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................. 9, 16

*Solomon v. Kimberly-Clark Corp.*
    216 F.3d 1372 (Cir. Fed. 2000) ..................................................................................... 16

## INTRODUCTION

As provided by the Court's Amended Rule 16 Scheduling Order (D.I. 113), Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively "BSC") respectfully submit this opening brief in support of their proposed claim constructions.

## NATURE AND STAGE OF THE PROCEEDINGS

On March 5, 2003, BSC filed its Answer and Counterclaim in *Cordis Corp. v. Boston Scientific Corp.*, No. 03-027 ("the *Cordis* action") alleging, *inter alia*, that Cordis Corporation ("Cordis") infringed the Jang '021 patent. (D.I. 26)  On July 1, 2005, a jury found that the Jang '021 patent was valid and infringed. (D.I. 381)  This Court upheld the jury verdict and denied Cordis' motion for JMOL on May 11, 2006. (D.I. 417)  This Court likewise denied Cordis' ensuing motion for reconsideration. (D.I. 429)

On November 8, 2005, BSC filed this action against Conor Medsystems, Inc. (D.I. 1)  In its Complaint, BSC accused Conor's CoStar and UniStar stents of infringing Claim 35 of U.S. Patent No. 5,922,021 ("the Jang '021 patent," Ex. 1).

As provided by the Court's orders and the parties' agreement, the parties' proposed constructions of disputed claim terms and phrases were exchanged on March 7, 2007.  The parties subsequently met and conferred to reduce the number of disputed claim terms and phrases.  In accordance with the Court's Amended Rule 16 Scheduling Order, the parties submitted a Joint Claim Construction Statement on April 5, 2007.  The parties submitted an Amended Joint Claim Construction Statement on May 2, 2007 (D.I. 132) and a Second Amended Joint Claim Construction Statement on May 10, 2007 (D.I. 134).  The Second Amended Joint Claim Construction Statement identifies three claim limitations that are still in dispute, and sets forth the parties' competing constructions of those terms.  BSC respectfully submits this opening brief in support of its proposed constructions for those disputed claim limitations.

1

## SUMMARY OF THE ARGUMENT

In the *Cordis* action, this Court previously construed two of the three disputed claim limitations at issue here. Those limitations are "a first connecting strut column formed of a plurality of first connecting struts" (the "connecting strut column" limitation) and "wherein the first expansion strut of the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column" (the "wherein" limitation). BSC proposes that the Court construe those limitations as it did in the *Cordis* action. The third claim limitation, "expansion column," should be construed in the manner set forth by BSC in this brief.

No basis exists for this Court to change it prior claim constructions. With Cordis being found an infringer of the same patent on a similar product in the *Cordis* action, Conor, a sister corporation of Cordis, requests that this Court re-construe certain claim limitations for its convenience. In essence, Conor asks this Court to ignore its prior claim constructions and provide the public with two different claim constructions for the same terms from the same court.

With respect to the "wherein" limitation, aside from window dressing so that the words are not exactly the same, Conor reasserts a claim construction that this Court has already considered and rejected in the *Cordis* action. Proposing that the "wherein" limitation exclude stents with expansion strut pairs in adjacent expansion columns that are 180 degrees out-of-phase, Conor ignores this Court's Order in the *Cordis* action that explicitly rejected that claim construction. (Ex. 2 at 6.) As the Court properly determined, the plain meaning of the "wherein" limitation only requires that "the first expansion strut in the first column does not share a longitudinal axis with the second expansion strut in the second column." Moreover, there was no clear and unmistakable disclaimer of stents designs that are 180 degrees out-of-phase.

2

Conor also disregards this Court's prior construction of the "connecting strut column" limitation. Conor requests that this Court not follow the same claim construction that Cordis proposed, and prevailed upon, in the *Cordis* action. Moreover, Conor has the same attorneys from the *Cordis* action propose these different claim constructions for the same limitation. With Cordis being found an infringer under the construction of "connecting strut column" that it proposed, Conor now seeks a different construction for that same limitation. It is disingenuous for Conor, through a corporate shell-game, to argue otherwise.

If the Court were to further construe the "connecting strut column" limitation, however, it should adopt BSC's alternative proposed construction, "a column formed of a plurality of connecting struts, as opposed to expansion or joining struts, unattached to each other and arranged along the circumference of the stent." This construction has the same scope to the construction of "connecting strut column" that BSC proposed in a litigation between Dr. David Jang, the inventor of the '021 patent, and BSC in the District Court for the Central District of California. *See Jang v. Boston Scientific Corp.*, EDCV 05-426-VAP (CTx) (C. D. Cal) ("the *Jang* action").

The third disputed claim limitation is "expansion column." BSC proposes that that limitation should be construed to mean "a tubular structure formed by a plurality of expansion strut pairs, as opposed to connecting struts, arranged in a column along the circumference of the stent." BSC's proposed construction of "expansion column" has the same scope to the construction of the same limitation in the *Jang* action.

3

# STATEMENT OF FACTS

In *Cordis Corporation v. Boston Scientific Corporation and Boston Scientific Scimed, Inc.*, Civil Action 03-027-SLR, this Court construed several limitations of the Jang '021 patent including the "connecting strut column" limitation and the "wherein" limitation. Based on this Court's claim constructions, a jury found the BX Velocity stent to infringe the Jang '021 patent under the doctrine of equivalents. With its sister corporation, Cordis, having already been found an infringer under the Court's prior claim construction, Conor seeks to avoid the same result by having this Court re-construe the same claim limitations that it did before.

## I. Cordis Vigorously Litigated The Validity Of The Jang '021 Patent For Over Two Years

In the *Cordis* action, BSC's asserted a claim against Cordis for infringement of the Jang '021 patent. Over the course of two-and-a-half years of litigation, the parties conducted numerous depositions and produced hundreds of thousands of pages of documents. This Court engaged in a full and thorough claim construction process including multiple rounds of briefing by the parties and a hearing before the Court. (D.I. 230, 232, 280, 287, 334)

The process culminated in a June 2005 trial. At the conclusion of the trial, the jury found the Jang '021 patent valid and infringed by Cordis. (D.I. 381) Cordis proceeded to challenge this verdict in post trial motions over the ensuing two years, which this Court has twice denied. (D.I. 417, 429) Throughout this entire process, Cordis was represented by Patterson, Belknap, Webb and Tyler ("PBWT"), a law firm that has represented Cordis and J&J in a number of other stent cases.

## II. Cordis And Conor Are Sister Corporations Working In Concert

On November 16, 2006, Conor issued a press release stating that it was merging with J&J and Cordis. (Ex. 4.) That merger was completed on February 1, 2007 when a J&J acquisition

4

company named Cypress Acquisition Sub, Inc. merged with and into Conor. (Ex. 5.) Conor

subsequently filed a certificate of conversion, altering its status from that of a wholly-owned

corporation to that of a wholly-owned limited liability company. (*Id.*) In its February 26, 2007

Amended Rule 7.1 Statement, Conor disclosed that it is now a 100% owned subsidiary of J&J.

(D.I. 116)

As a result of this corporate restructuring, Cordis, Conor and J&J are all jointly owned.

Both Cordis and Conor are "Johnson & Johnson compan[ies]." (Exs. 5 & 6.) Cordis operates

under the control of a J&J executive (Ex. 6) and, as of February 1, 2007, "Conor Medsystems

[has] operate[d] as part of the Cordis franchise." (Ex. 4 at 2.)

In addition to the formal corporate relationship, public statements by Conor, J&J and

Cordis make clear that all three entities are operating jointly towards a common purpose:

> **The acquisition of Conor Medsystems by Johnson & Johnson will provide Cordis Corporation, a Johnson & Johnson company, with a unique drug delivery technology.** This technology is currently employed on the CoStar® Stent System . . . The CoStar® Stent System is currently sold outside the United States.
>
>          * * *
>
> Rick Anderson, Johnson & Johnson Company Group Chairman with responsibility for the Cordis business, said: **"Cordis is looking forward to strengthening its portfolio with the addition of the CoStar® Stent System.** . . . By combining the unique capabilities of Conor Medsystems and Cordis, we are confident that we will bring innovative solutions to patients around the world." (Ex. 4 at 1, 2 (emphasis added).)

These statements demonstrate that Conor, Cordis and J&J are essentially acting as a single

business venture with a single strategy and decision-making process. In its proxy statement filed

with the SEC, J&J states that Cordis will be marketing and selling Conor's infringing stents:

> Upon closure, our near term efforts will focus on . . . secur[ing] approvals for Conor products worldwide [and] *[f]ully integrating*

5

> ***Conor Medsystems products into the Cordis global sales and
> marketing strategy***.  (Ex. 7 at 3 (emphasis added).)

Conor and Cordis, along with J&J, are thus sharing resources and technology, and appear to be

under the control of a single management structure.  The statements also imply that products will

be shared amongst all three entities and marketed in coordination with each other.

Further confirming that Conor, Cordis and J&J are essentially acting as a single business

venture with a single strategy and decision-making process, PBWT represented, and continues to

represent, Cordis in the *Cordis* action.  Shortly after Cordis and J&J finished acquiring Conor,

attorneys for PBWT made formal appearances before this Court in connection with the *Conor*

action.  (D.I. 112)  By the end of February 2007, Conor's prior counsel had withdrawn from this

case in favor of PBWT.  (D.I. 121)  There is now identity of legal representation in the *Cordis*

and *Conor* actions.

Given this intimate relationship with Cordis, Conor has no right to question this Court's

claim constructions from the *Cordis* action.  Cordis vigorously disputed the claim terms at issue

(even winning on the "connecting strut column" limitation) and the Court rendered its claim

constructions after considering Cordis' arguments.  Cordis has had its day in Court and were

found to be an infringers.  Conor is bound by Cordis' actions.

### III.    Prior *Jang v. BSC* Litigation In California

Fearing that under the Court's prior claim construction it too will be found an infringer

like its sister corporation Cordis, Conor looks for any hook to have the Court re-visit its prior

claim constructions.  Conor turns to BSC's proposed claim constructions from another litigation

involving BSC and Dr. David Jang, inventor of the '021 patent.  *Jang v. Boston Scientific Corp.*,

EDCV 05-426-VAP (CTx) (C.D. Cal.).  The *Jang* court's claim constructions, however, are

6

entirely consistent with this Court's prior claim constructions from the *Cordis* action. There is no need for this Court to change its prior claim constructions based on the *Jang* action.

As this Court is aware, there was a litigation between BSC and Dr. Jang in the District Court for the Central District of California. Among the issues before that Court was whether BSC's Express® stent was covered by the Jang '021 patent and whether BSC would therefore have to pay royalties to Dr. Jang under a contract between those parties. Following the *Jang* court's claim construction, the parties stipulated to summary judgment that the Express® stent is not covered by any claims of the Jang '021 patent. (Ex. 3, at ¶ ¶ 2, 3, 6, and 7.)

The *Jang* court construed claim limitations of the Jang '021 patent, including "connecting strut column" and "expansion column." (Ex. 8.) "Connecting strut column" was construed to mean "a column formed solely of a plurality of connecting struts unattached to each other and arranged along the circumference of the stent." (*Id.* at 9-12.) "Expansion column" was construed to mean "a tubular structure formed solely by a plurality of expansion strut pairs arranged in a column along the circumference of the stent." (*Id.* at 5-9.)

In reaching its claim construction, the California court rejected Dr. Jang's argument that a "connecting strut column" could be a column of structural elements that were a combination of connecting struts, expansion struts and joining struts. (*Id.* at 9-12.) An example of how an Express® stent could be construed to have a "connecting strut column" (in blue) under Dr. Jang's proposed construction is shown in the figure labeled "Dr. Jang's claim construction." (Ex. 9 at 11.) Instead, the Court adopted BSC's proposed construction that a "connecting strut column" was merely a column of connecting struts that were stacked one on top of the other in the circumferential direction (shown in blue in the figure labeled "BSC's claim construction"). The Court agreed with BSC that Dr. Jang's proposed construction of "connecting strut column"

7

improperly blurred the distinction between expansion struts and connecting struts.  (Ex. 8 at 9-12.)  As shown in "BSC's claim construction" figure below, however, it does not matter whether portions of expansion strut pairs are in the "airspace" extending in the circumferential direction that also contains the "connecting strut column."  (Ex. 9 at 9.)



(BSC's claim construction)                    (Dr. Jang's claim construction)

The California court also rejected Dr. Jang's argument that an "expansion column" consists of at least two expansion strut pairs in a circumferential arrangement, as shown in red in the figure labeled "Dr. Jang's claim construction."  (Ex. 8 at 9-12.)  The Court agreed with BSC that the specification supported its construction that an "expansion column" was a tubular structure formed of expansion strut pairs.  (*Id.* at 5-9.)  According to the Court, "nowhere does the patent describe any other structural member contained in the expansion columns [other than expansion strut pairs]."  (*Id* at 8.)  The Court also noted that the expansion strut pairs in an expansion column are connected to form a tubular structure.  (*Id.* at 8-9.)  As shown in BSC's figure above, however, it does not matter whether portions of connecting strut pairs are in the "airspace" extending in the circumferential direction that also contains the "expansion column."

## LEGAL STANDARDS

When construing claims "[t]he court necessarily begins with the language of the asserted claims."  *Invitrogen Corp. v. Clontech Lab., Inc.*  429 F.3d 1052, 1076 (Fed. Cir. 2005).  The

8

claims, however, "must be read in view of the specification of which they are a part." *Phillips v.*

*AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc).  Indeed, "the specification is

always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the

single best guide to the meaning of the disputed term." *Id.*  The prosecution history, if it is in

evidence, is also important in determining claim scope. *Id.* at 1316.  But in order for an applicant

to disavow claim scope during prosecution, such disavowal must be "clear and unmistakable."

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).

      In contrast, extrinsic evidence is "unlikely to result in a reliable interpretation of patent

claim scope unless considered in the context of the intrinsic evidence." *Phillips* 415 F.3d at

1316.  Inventor testimony is of limited probative value given that it is not unusual for there to be

a significant difference between what an inventor thinks is patented and the scope of the allowed

claims. *Markman v. Westview Instruments Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995) (en banc).

## ARGUMENT

## I.    THE "WHEREIN" LIMITATION DOES NOT EXCLUDE A 180 DEGREE OUT-OF-PHASE ALIGNMENT

      In the *Cordis* action, this Court defined the limitation "wherein the first expansion strut of

the first expansion strut pair in the first expansion column has a longitudinal axis offset from a

longitudinal axis of the first expansion strut of the second expansion pair in the second expansion

column" to mean "the first expansion strut in the first column does not share a longitudinal axis

with the second expansion strut in the second column." (Ex. 2 at 6.)  Nothing in the Court's

construction of the "wherein" limitation excludes expansion strut pairs in adjacent expansion

columns that are 180 degrees out-of-phase.  Nor is there any reason for the Court to change its

prior construction, as Conor seeks.  In reaching its construction, this Court properly applied

ordinary meaning to claim 23 (from which claim 35 depends) consistent with the specification

9

and prosecution history. (*Id.* at 6, n.18, n.19.) This Court should reject Conor's attempt to re-

litigate claim construction issues that were already decided in the *Cordis* action.

### A.    Conor Is Barred From Re-Litigating The "Wherein" and "Connecting Strut Column" Limitations Under The Doctrine Of Collateral Estoppel

As set forth more fully in BSC's Motion For Summary Judgment Based Upon Collateral

Estoppel, Conor is a sister corporation of Cordis and both companies are wholly owned

subsidiaries of J&J.  Moreover, Conor is in privity with Cordis and any legal issue decided

against Cordis is equally binding against Conor.  That includes this Court's prior claim

constructions of the "wherein" and "connecting strut column" limitations.

The Third Circuit has set forth a four-part test for applying issue preclusion:

> (1) the issue sought to be precluded [is] the same as that involved
> in the prior action; (2) that issue [was] actually litigated; 3) it [was]
> determined by a final and valid judgment; and 4) the determination
> was essential to the prior judgment.

*See Burlington N. R.R. Co. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995);

*see also Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002).

Once privity between the parties is established, there can be no dispute that a finding of

collateral estoppel is appropriate in this action.  As discussed above, this Court has already

construed the "wherein" and "connecting strut column" limitations in the *Cordis* action.  The

Court applied these claim constructions throughout the litigation in the *Cordis* action and in a

two-week trial in June 2005.  Based on its claim constructions, a jury found Claim 36 of the Jang

'021 patent not invalid and infringed by the BX Velocity stent.  Although final judgment has not

been entered in the *Cordis* action, the Third Circuit, as well as this Court, have recognized that

the jury verdict of infringement and no invalidity is sufficient to apply collateral estoppel in this

action.  *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 358 (3d Cir. 1999) (applying collateral

10

estoppel based upon a jury verdict); *Cordis Corp. v. Boston Scientific Corp.*, 2005 WL 1331172 at *6 (applying collateral estoppel based upon a jury verdict in a prior stent patent case).

Even if the strict tenets of collateral estoppel are not met, this Court has recognized the public policy in deferring to prior constructions of the same claim limitations of the same patent. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390-91 (1996) (recognizing public policy in favor of courts issuing uniform claim constructions); *KX Indus., L.P. v. PUR Water Purification Prods., Inc.*, 108 F. Supp. 2d 380, 387 (D. Del. 2000) (same). Conor has not, and cannot, provide adequate justification for departing from this public policy.

**B.    The Ordinary Meaning Of The Claim Does Not Support Conor's Proposed Construction That Excludes 180 Degree Out-Of-Phase Designs**

Under its ordinary meaning, the "wherein" limitation means "the first expansion strut in the first column does not share a longitudinal axis with the second expansion strut in the second column." Moreover, nothing in the language of Claim 23 or the Court's prior construction of the "wherein" limitation excludes stent designs that are out-of-phase. The specification defines the term "offset" simply to mean "hav[ing] longitudinal axes that are not collinear." (Ex. 1 at 6:53-55.) As this Court ruled in its prior construction of the "wherein" limitation, offset expansion struts are merely expansion struts that have longitudinal axes that are not collinear.

**C.    Cordis' Proposed Construction Is Contrary To The Claim Language**

Conor proposes the following construction of the "wherein" clause:

> The terms in the "wherein" clause have the same meaning in claim 23 as in claim 1. This clause limits claim 23 to stents where the first expansion struts of the (distally coupled) expansion strut pairs of the first expansion column are circumferentially offset from first expansion struts of the (proximally coupled) expansion strut pairs of the second expansion column, thereby limiting the claim to stents with offset connected strut pairs and excluding stents with 180 degree out-of-phase designs.

The flaws in Conor's proposed construction are immediately recognizable.

11

As an initial matter, Claims 1 and 23 of the Jang '021 patent do not have the same scope. For the Court's convenience, BSC has provided a chart with Claims 1 and 23 side-by-side. (Ex. 10.) As can be seen, Claim 23 requires the structural elements in an expansion column to be arranged differently than Claim 1. For example, Claim 1 requires expansion struts of a first expansion strut pair in a first expansion column to be joined at their distal ends and expansion struts of a second expansion strut pair in a second expansion column to be joined at their proximal ends. Claim 23, however, requires expansion struts of expansion strut pairs to be joined in an alternating manner at both their distal and proximal ends. Moreover, it is a fundamental doctrine of claim interpretation that different claims are presumed to have different meanings. *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369 (Fed. Cir. 2007).

Although the "wherein" limitation modifies the arrangement of expansion struts in both Claims 1 and 23, there is no basis in law or reason to require "the terms" of the "wherein" limitation to also have the same effect, *i.e.*, the arrangement of expansion struts, as Conor proposes. As set forth above, Claims 1 and 23 do not require the expansion struts in an expansion strut pair to be arranged in the same manner. Conor's proposed claim construction is akin to giving the term "jumbo jet" and "jumbo shrimp" the same definition because both terms contain the same modifier, "jumbo." Conor's proposed claim construction is untenable.

Second, Conor's proposed claim construction improperly adds a requirement that the first expansion struts of distally coupled expansion strut pairs of the first expansion column to be longitudinally offset from the first expansion struts of the proximally coupled expansion strut pairs of the second expansion column. The "wherein" limitation, however, does not require such an offset. The "wherein" limitation only requires that the first expansion struts in the first expansion column be offset from the second expansion struts in the second expansion column.

12

That is the plain language of the claim and it is what this Court determined.[1]  There is nothing in Claim 23 further limiting the respective offset expansion struts to be distally and proximally connected in the manner specified by Conor's proposed construction.  Conor's self-serving proposed claim construction should therefore be rejected.

Third, Conor's proposed claim construction improperly requires the "wherein" limitation to exclude stents with 180 degree out-of-phase designs.  Nothing in the "wherein" limitation requires that.  Stents designs that are 180 degree out-of-phase are not even mentioned in that limitation.  The plain language of the "wherein" limitation simply does not support the narrow interpretation that Conor gives it.  Nor does the '021 patent mention anywhere that stents with 180 degree out-of-phase designs are excluded.  This Court has already considered this argument, and has rejected Conor's proposed construction.

### D.    Dr. Jang Did Not Clearly And Unmistakably Disclaim "Out-Of-Phase" Stent Designs During Prosecution Of The Jang '021 Patent

Nor did Dr. Jang make any "clear and unmistakable" disclaimer of 180 degree out-of-phase designs during prosecution of the '021 patent.  *Omega Eng'g,* 334 F.3d at 1323 (disavowal of claim scope must be "clear and unmistakable").  This issue was briefed extensively in the *Cordis* action with the Court rejecting Cordis' proposed construction that would exclude stent designs with 180 degree out-of-phase designs.  (Ex. 2 at 6.)  In reaching its conclusion, the Court determined that Dr. Jang, in amending claims 1 and 23 to add the "wherein" limitation, did not

---

[1]    Notably, the Court's prior construction of this term in accordance with its ordinary meaning distinguishes Claim 23 over the prior art.  United States Patent No. 6,203,569 ("the Wijay '569 patent") — one of the prior art references Conor has asserted in this litigation — discloses stents that have the first expansion strut of the first expansion column sharing a longitudinal axis with the second expansion strut in the second expansion column.  (Ex. 11.)  As Conor's technical experts have conceded, the Court's prior construction of this term specifically distinguishes the Wijay '569 patent from Claim 23.  (Ex. 12 at 226: 11-25; Ex. 13 at 402: 8-20.)

13

clearly and unmistakably disclaim 180 degree out-of-phase stent designs. (*Id.* at 6, n.19.) Cordis' arguments were found unconvincing by this Court then, and nothing has happened since to warrant a different result in this action.

Considering the disclosure in the Jang '021 specification and the fact that asserted claim 35 was never distinguished over the prior art on the basis of not having a "180 degree out-of-phase" stent design, the "wherein" limitation should be construed in accordance with its plain meaning, as this Court did in the *Cordis* action.

### E.    Conor Misrepresents Dr. Jang's Statements Regarding Stent Designs With 180 Degree Out Of Phase Expansion Strut Pairs

According to the Court, the intrinsic evidence supports a claim construction that does not exclude stents with 180 degree out-of-phase expansion strut pairs. Unable to rebut this, Conor misrepresents Dr. Jang's deposition testimony to argue that he disclaimed such stents. Conor's arguments, however, are irrelevant and unavailing. The testimony of Dr. Jang that Conor relies upon does not support disclaimer of stents with 180 degree out-of-phase designs. Moreover, such extrinsic evidence is of limited probative value and cannot contradict the intrinsic evidence.

During his deposition, Dr. Jang was asked about one of his prior stent designs that happened to have 180 degree out-of-phase expansion strut pairs. Dr. Jang testified that "I didn't think this one was — for some reason I did not even apply [for a] patent." Somehow, Conor argues that that general statement proves Dr. Jang did not apply for a patent on a stent design with 180 degree out-of-phase expansion strut pairs. (Ex. 14 at 136: 16-17; Ex. 15 at BSC-C 019842-43.) But Dr. Jang never said he did not patent the design that Conor referred to because it had a 180 degree out-of-phase design. In fact, he did not articulate any reason at all for his beliefs. (Ex. 14 at 136: 21-23.) Nor did Conor ask Dr. Jang why he did not patent that particular design. Moreover, a person of ordinary skill in the art would not have understood Dr. Jang's

14

testimony to mean he was disclaiming all stents with 180 degree out-of-phase designs.  (Ex. 16 at ¶ 23-24.)

In any event, Dr. Jang's general statement is extrinsic evidence that cannot contradict the intrinsic evidence supporting this Court's prior claim construction.  *Phillips* 415 F.3d at 1316. Indeed, the Federal Circuit has warned against relying too heavily on an inventor's understanding of the scope of his or her own invention.  *Markman* 52 F.3d at 985 (stating that "it is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO") (citations omitted); *Solomon v. Kimberly-Clark Corp.*  216 F.3d 1372, 1380 (Cir. Fed. 2000).

For the reasons set forth above, the intrinsic evidence supports the ordinary meaning of the "wherein" limitation, as this Court determined in the *Cordis* action.  Conor's reliance on ambiguous inventor testimony does not, and cannot, change this result.

## II.    "A FIRST CONNECTING STRUT COLUMN FORMED OF A PLURALITY OF FIRST CONNECTING STRUTS" MEANS "A COLUMN FORMED OF AT LEAST TWO FIRST CONNECTING STRUTS"

In the *Cordis* action, this Court construed the limitation "a first connecting strut column formed of a plurality of first connecting struts" to mean "a column formed of at least two first connecting struts."  This is the construction that Cordis argued for to the Court, and prevailed upon.  Conor, Cordis' corporate sister, should not be allowed to propose a different construction in this action.  To do so would reward J&J for its corporate shell-game tactics.

The Court based its construction of "a first connecting strut column formed of a plurality of first connecting struts" on the plain meaning of those words, as informed by the patent specification.  (Ex. 2 at 5; Ex. 1 at 6:46-52.)  BSC proposes that the Court apply the same construction in this action.  Conor, however, proposes that the Court ignore the construction that

15

Cordis advocated in the *Cordis* action and instead adopt the construction from the *Jang* action, "a column formed solely of a plurality of connecting struts unattached to each other and arranged along the circumference of the stent."

In proposing this new claim construction, Conor walks away from the construction that Cordis advocated and prevailed upon in the *Cordis* action. Moreover, it is the same set of attorneys, PBWT, that argued for the prior claim construction that now argue for a different one here. Conor asks this Court to provide the public with two different claim constructions for the same claim limitation. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390-91 (1996) (recognizing public policy in favor of courts issuing uniform claim constructions); *KX Indus., L.P. v. PUR Water Purification Prods., Inc.*, 108 F. Supp. 2d 380, 387 (D. Del. 2000) (same). Conor, through Cordis, had its opportunity to fully advocate the claim construction for the "connecting strut column" limitation that it deemed proper. Having prevailed on its previously proposed claim construction, through Cordis, Conor should not be permitted to propose yet another claim construction for the "connecting strut column" limitation.

### A.    The Construction Of "A First Connecting Strut Column" From The *Cordis* Action And The *Jang* Action Are Consistent So The Court Does Not Need To Alter Its Construction

There is no need for this Court to modify its prior claim construction. The claim construction from the *Jang* court is completely consistent with this Court's construction of the "first connecting strut column" limitation. Accordingly, BSC proposes that the Court continue to construe "a first connecting strut column formed of a plurality of first connecting struts" to mean "a column formed of at least two first connecting struts."

In reaching its construction of the "a first connecting strut column" limitation, this Court relied on the following passage from the Jang patent:

16

> Asymmetrical cell spaces 40 in FIG 1.A are surrounded by a first
> expansion strut pair 32 in a first expansion column 24, a first
> connecting strut 38, a second expansion strut pair 32 in an adjacent
> expansion column 24, a first joining strut 30, a second connecting
> strut 38, and a second joining strut 30.

(Ex. 2 at 5, n. 17; Ex. 1 at Col. 6: 46-52.)  From this passage it is clear that this Court recognized

that connecting struts are separate and distinct structural elements from the adjacent expansion

strut pairs that they connect.  Also implicit from this passage is that a "connecting strut column"

is a column of metal containing connecting struts, unattached to other connecting struts, arranged

one above the other in the circumferential direction; it is not a column of structural elements that

are a combination of connecting struts, expansion struts and joining struts.  This understanding of

"connecting strut column" is consistent with BSC's claim construction in the *Jang* action.  The

claim construction from the *Jang* action merely makes explicit that connecting struts are

different than expansion struts, and that a column of connecting struts is comprised of connecting

struts, unattached to other connecting struts, as opposed to a column of structural elements that

are a combination of connecting struts, expansion struts and joining struts.

### B.    If The Court Chooses To Further Construe "Connecting Strut Column," It Should Mean "A Column Formed Of A Plurality Of Connecting Struts, As Opposed To Expansion Or Joining Struts, Unattached To Each Other And Arranged Along The Circumference Of The Stent."

If the Court chooses to construe further the "connecting strut column" limitation, BSC

proposes that the limitation mean "a column formed of a plurality of connecting struts, as

opposed to expansion or joining struts, unattached to each other and arranged along the

circumference of the stent."  This proposed construction has the same scope as BSC's proposed

claim construction of "connecting strut column" in the *Jang* action.

BSC's proposed construction of "connecting strut column" in both this action and the

*Jang* action covers the arrangement of connecting struts required by the Jang '021 patent.  In

17

reaching its claim construction, the *Jang* court relied on the specification, Summary of the Invention and figures in the patent. According to that Court, the intrinsic evidence disclosed a stent with a connecting strut column formed of connecting struts, unattached to other connecting struts, and no other type of structural element, *i.e.*, expansion and joining struts. (Ex. 8 at 10-12.) The *Jang* court also noted that if it did not limit connecting strut columns to connecting struts, there would be no structural distinction between expansion and connecting struts. (Ex. 8 at 12.)

The additional language in BSC's alternative proposed construction, "as opposed to expansion or joining struts," merely makes explicit in this action what the *Jang* court understood in that action — a "connecting strut column" is a column of connecting struts, not a column of structural elements that are a combination of connecting struts, expansion struts and joining struts. BSC's proposed construction also makes clear that a "connecting strut column" is not a column of "airspace" that only contains connecting struts and no other structural elements, as Cordis has recently argued in the *Cordis* action. Rather, a "connecting strut column" is a column of connecting struts that are arranged one above the other in the circumferential direction. This is illustrated in the figure BSC relied upon in its claim construction brief in the *Jang* action. *See supra*, Statement Of Facts, Part III, p.8 (Ex. 9 at 9, 11).

## C. BSC's Proposed Clarification Is Necessary To Prevent Juror Confusion

This Court should adopt BSC's proposed construction, which adds the language "as opposed to expansion or joining struts," to discourage Conor from purposefully misinterpreting BSC's claim construction from the *Jang* action. Indeed Cordis, in its JMOL briefs in the *Cordis* action, has already attempted to misrepresent the claim constructions from the *Jang* action.

In the *Cordis* action, seizing upon the word "solely" in BSC's construction of "connecting strut column" from the *Jang* action, Cordis argued that BSC limited the scope of "connecting

18

strut column" to an imaginary column of "airspace" bounded by the ends of the connecting struts.

(Ex. 17.)  According to Cordis, as shown in the figure below, if even a portion of an expansion

strut pair were to invade the "airspace" of a "connecting strut column," such a structure would

not infringe that limitation.  (*Id*. at 17.)  Conor has also indicated in its expert witness reports and

interrogatory responses that it too will misinterpret the term "solely" from BSC's prior claim

construction by arguing, *inter alia*, that a column of connecting struts with "drug reservoirs"

would not meet the "connecting strut column" limitation because the column would not be

comprised "solely" of connecting struts.  (Ex. 18 at 17-18.)



Cordis' and Conor's position is meritless.  As set forth above, the term "solely" merely

refers to the absence of expansion and joining struts in a "connecting strut column."  Moreover,

neither the claims nor the specification impose such a limitation on how the "connecting struts"

join adjacent "expansion columns."  Given Cordis' prior acts of misrepresenting arguments when

given the opportunity, it is necessary to take measures to discourage Conor from doing the same

in this action.  BSC's proposed construction will prevent Conor from confusing the jury by

misusing the word "solely" and should be adopted.  Indeed, Conor has gone so far as to say the

19

"solely" in its proposed construction trumps the "comprising" language in the preamble.  This will lead to needless confusion.

### III.  "EXPANSION COLUMN" MEANS "A TUBULAR STRUCTURE FORMED OF A PLURALITY OF EXPANSION STRUT PAIRS, AS OPPOSED TO CONNECTING STRUTS, ARRANGED IN A COLUMN ALONG THE CIRCUMFERENCE OF THE STENT"

The term "expansion column" should be construed to mean "a tubular structure formed by a plurality of expansion strut pairs, as opposed to connecting struts, arranged in a column along the circumference of the stent."  This construction is supported by the intrinsic evidence and has the same scope as BSC's proposed construction in the *Jang* action.

In the *Jang* action, BSC proposed that an "expansion column" was "a tubular structure formed solely by a plurality of expansion strut pairs arranged in a column along the circumference of the stent."  The additional language in BSC's current construction, "as opposed to connecting struts," however, has become necessary in view of Cordis' recent misrepresentations of BSC's claim constructions from the *Jang* action.

### A.  BSC's Proposed Construction Is Consistent With The Construction Of "Expansion Column" In The *Jang* Action

BSC's proposed construction of "expansion column" in both this action and the *Jang* action covers the arrangement of expansion strut pairs required by the claims of the Jang '021 patent.  In reaching its claim construction, "a tubular structure formed solely of a plurality of expansion strut pairs arranged in a column along the circumference of the stent," the *Jang* court relied mainly on the specification, Summary of the Invention and figures of the patent. According to the Court, the intrinsic evidence disclosed a stent with an expansion column formed of expansion strut pairs and no other type of structural element, *i.e.*, connecting struts. (Ex. 8 at 6-8.)  The *Jang* court also recognized that, in order to properly perform its function, the

20

"expansion column" must be in the form of a tubular structure.  (Ex. 8 at 8-9.)  The *Jang* court

further noted that each of the figures in the patent show "expansion columns" as expansion strut

pairs connected together to form a tubular structure.  (Ex. 8 at 9.)

Indeed, Claim 23 expressly requires that an "expansion column" be formed of a plurality

of expansion struts pairs and distinguishes the "expansion column" from the "connecting strut

column," which is composed of connecting struts.  Furthermore, in describing an "expansion

column," the patent specification states that "[e]xpansion columns 24 are formed from a series of

expansion struts 28, and joining struts 30."  (Ex. 1 at 5:52-53.)  Accordingly, for these reasons

and the reasons supporting the *Jang* court's construction of "expansion column," BSC proposes

that "expansion column" be construed to mean "a tubular structure formed of a plurality of

expansion strut pairs, as opposed to connecting struts, arranged in a column along the

circumference of the stent."

The additional language in BSC's proposed construction, "as opposed to connecting

struts," merely makes explicit in this action what the *Jang* court understood in that action — an

"expansion column" is a tubular structure formed by a plurality of expansion strut pairs, not a

column of structural elements that are a combination of expansion strut pairs and connecting

struts.  BSC's proposed construction also makes clear that an "expansion column" is not a

column of "airspace" bounded by the longitudinal ends of the "expansion struts" that only

contains expansion strut pairs, as Cordis has recently argued in the *Cordis* action.  Rather, an

"expansion column" is simply a "tubular structure" formed by connected expansion strut pairs.

**B.    BSC's Proposed Clarification Is Necessary To Prevent Juror Confusion**

In the *Cordis* action, seizing upon the word "solely" in BSC's construction of "expansion

column" from the *Jang* action, Cordis argued that BSC limited the scope of "expansion column"

21

to the imaginary column of "airspace" bounded by the ends of the expansion strut pairs. (Ex. 16.) According Cordis, as shown in the figure above (*see supra*, Argument, Part II.C, p. 19), if even a portion of a connecting strut were to invade the "airspace" of an "expansion column," such a structure would not infringe that limitation. Conor has also indicated in its expert witness reports and interrogatory responses that it will continue to misinterpret the term "solely" from BSC's prior claim construction by arguing that an expansion column with "drug reservoirs," "ductile hinges" and "heads" would not meet the "expansion column" limitation because the column would not be comprised "solely" of expansion strut pairs. (Ex. 17 at 26-27.)

Cordis' and Conor's position, however, is meritless. As set forth above, the term "solely" merely refers to the absence of connecting struts in the tubular structure that forms an "expansion column." Moreover, neither the claims nor the specification impose such a limitation on how the "connecting struts" join adjacent "expansion columns." Furthermore, Cordis and Conor ignore the portion of BSC's proposed construction that the tubular structure, and not a column of airspace, is the structure formed solely of expansion strut pairs. Given Cordis' prior acts of purposefully misrepresenting arguments when given the opportunity, it is necessary to take measures to discourage Conor from doing the same in this action. BSC's proposed construction will prevent Conor from confusing the jury by misusing the word "solely" and should be adopted. Indeed, Conor has gone so far as to say the "solely" in its proposed construction trumps the "comprising" language in the preamble. This will lead to needless confusion.

## CONCLUSION

For the foregoing reasons, BSC respectfully requests that the Court adopt its constructions from the *Cordis* case, or in the alternative adopt the constructions proposed by BSC as set forth herein.

22

Dated:  May 11, 2007

Respectfully submitted,

_____

Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Adam W. Poff (I.D. #3990)
YOUNG CONAWAY
STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for Boston Scientific Corporation
and Boston Scientific Scimed, Inc.*

*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Marjorie Press Lindblom
Young J. Park
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022-4611
(212) 446-4800

23

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on May 11, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> John G. Day, Esquire
> Lauren E. Maguire, Esquire
> Ashby & Geddes
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19899

I further certify that on May 11, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY ELECTRONIC MAIL**

> Gregory L. Diskant, Esquire
> Eugene M. Gelernter, Esquire
> Kathleen M. Crotty, Esquire
> Scott W. Parker, Esquire
> Ravi V. Sitwala, Esquire
> Diana Breaux, Esquire
> Patterson, Belknap, Webb
>    & Tyler, LLP
> 1133 Avenue of the Americas
> New York, NY 10036

> Courtland L. Reichman, Esquire
> King & Spalding
> 1180 Peachtree Street, NE
> Atlanta, GA 30309

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
apoff@ycst.com

Attorneys for Boston Scientific Corporation and Boston Scientific Scimed, Inc.

054604.1005