# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No.: 05-768-SLR |
| CONOR MEDSYSTEMS, INC., ) ) | |
| Defendant. ) ) | |

## OPENING BRIEF IN SUPPORT OF BSC'S MOTION FOR SUMMARY JUDGMENT BASED UPON COLLATERAL ESTOPPEL

YOUNG CONAWAY
STARGATT & TAYLOR, LLP
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Adam W. Poff (I.D. #3990)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899
(307) 571-6600

*Attorneys for*
*Boston Scientific Corporation*
*and Boston Scientific Scimed, Inc.*

*Of Counsel:*

John M. Desmarais
Peter J. Armenio
Young J. Park
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022-4611
(212) 446-4800

Dated:  May 11, 2007

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ....................................................................1

SUMMARY Of THE ARGUMENT ...........................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

I.    Cordis And PBWT Vigorously Litigated The Validity And Enforceability Of The
      Jang '021 Patent For Over Two Years .............................................................................2

II.   Cordis And Conor Are Sister Corporations Working In Concert ......................................3

III.  *Conor* Relitigates The *Cordis* Validity And Enforceability Issues ....................................5
      A.    The Two Cases Involve The Same Validity Question...............................................5
      B.    The Two Cases Involve The Same Enforceability Question ....................................6
      C.    The Two Cases Involve The Same Witnesses .........................................................6
      D.    The Two Cases Involve The Same Prior Art ...........................................................7
      E.    The Two Cases Involve The Same Lawyers.............................................................7

ARGUMENT ..............................................................................................................................8

I.    Collateral Estoppel Prevents The Relitigation Of Decided Issues.....................................8

II.   The Prior Validity And Enforceability Determinations Are Dispositive Of The
      Present Validity And Enforceability Issues ...................................................................11
      A.    Conor Is In Privity With Cordis...........................................................................11
            1.    The General Case Law Supports A Finding Of Privity ...............................11
            2.    The Specific Holding Of *Schneider* Supports A Finding Of Privity .........12
      B.    Claim 35 Presents The Same Validity Issue As Claim 36....................................14
      C.    *Conor* Presents The Same Enforceability Issue As *Cordis* ..................................15
      D.    The Remaining Elements For Issue Preclusion Are Present ................................16
      E.    Fairness Disfavors Relitigating Validity And Enforceability..............................16

CONCLUSION.........................................................................................................................17

# TABLE OF AUTHORITIES

*1488, Inc. v. Philsec Inv. Corp.*,
  939 F.2d 1281 (5th Cir. 1999) ................................................................9,10,11

*Asahi Glass Co. v. Toledo Eng'g Co.*, Case No. 03-7120,
  2007 WL 756756 (N.D. Ohio Mar. 7, 2007) ........................................10,11

*B-S Steel, Inc. v. Tex. Indus., Inc.*,
  327 F. Supp. 2d (D. Kan. 2004)...............................................................9,10

*Blonder-Tongue Labs., Inc. v. Univ. Ill. Foundation*,
  402 U.S. 313 (1971).........................................................................................8

*Boston Scientific Corp. v. Schneider (Europe) AG*,
  983 F. Supp. 245 (D. Mass. 1997) ....................................................11,12,13

*Buckley v. Airshield Corp.*,
  977 F.Supp. 375 (D. Md. 1997).................................................................9,10

*Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*,
  63 F.3d 1227 (3d Cir. 1995)......................................................................8,15

*Cedars-Sinai Med. Ctr. v. Revlon, Inc.*, Nos. 85-178, 85-699,
  111 F.R.D. 24 (D. Del. Jun. 11, 1986) ........................................................16

*Cent. Transp., Inc. v. Four Phase Sys., Inc.*,
  936 F.2d 256 (6th Cir. 1991) ..............................................................9,10,11

*Cordis Corp. v. Boston Scientific Corp.*, No. 03-027-SLR,
  2005 WL 1331172 (D. Del. Jun. 3, 2005) ...........................................7,8,15

*Eagle Transp. Ltd. v. O'Connor*,
  470 F. Supp. 731 (S.D.N.Y. 1979) ................................................................9

*Foster v. Hallco Mfg. Co.*,
  947 F.2d 469 (Fed. Cir. 1991)......................................................................7

*Greenberg v. Potomac Health Systems, Inc.*,
  869 F. Supp. 328 (E.D. Pa. 1994)..........................................................10,11

*Greenleaf v. Garlock, Inc.*,
  174 F.3d 352 (3d Cir. 1999)........................................................................15

*ITT Corp. v. GTE Corp.*,
  380 F. Supp. 976 (M.D.N.C. 1974) .....................................................9,10,11

## TABLE OF AUTHORITIES (cont'd)

Page

*In re Imperial Corp.*,
    92 F.3d 1503 (9th Cir. 1996) ...............................................................9,10,11

*Lary v. Ansari*,
    817 F.2d 1521 (11th Cir. 1987) .........................................................9,10,11

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*,
    58 F.3d 616 (Fed. Cir. 1995)......................................................................9

*Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*,
    288 F.3d 519 (3d Cir. 2002)........................................................................8

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322, 326 (1979) .......................................................................7,8

*South Corp. v. United States*,
    690 F.2d 1368 (Fed. Cir. 1983).............................................................8,13

*Tensar Corp. v. Tenax Corp.*, No. 91-1460,
    25 U.S.P.Q.2d 1314 (D. Md. Oct. 16, 1992) ...........................................13

*United States v. Weber*,
    396 F.2d 381 (3d Cir. 1968).......................................................................9

*Vanbrode Milling Co. v. Kellogg Co.*,
    113 F. Supp. 845 (D. Del. 1953)...............................................................10

*Vasquez v. Bridgestone/Firestone Inc.*,
    325 F.3d 665  (5th Cir. 2003) .....................................................................9

*Weatherchem Corp. v. J.L. Clark, Inc.*,
    163 F.3d 1326 (Fed. Cir. 1998) ...........................................................8,13

*Westwood Chem., Inc. v. United States*,
    525 F.2d 1367 (Ct. Cl. 1975) ...............................................................8,13

Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") respectfully submit this brief in support of their motion for summary judgment that Conor Medsystems, Inc. ("Conor") is collaterally estopped from contesting the validity or enforceability of Claim 35 of United States Patent No. 5,922,021 ("the Jang '021 patent").

## NATURE AND STAGE OF THE PROCEEDINGS

On March 5, 2003, BSC filed its Answer and Counterclaim in *Cordis Corp. v. Boston Scientific Corp.*, No. 03-027 ("*Cordis*") alleging, *inter alia*, that Cordis Corporation ("Cordis") infringed the Jang '021 patent. (*Cordis* D.I. 26)  On July 1, 2005, a jury found that the Jang '021 patent was valid and infringed. (*Cordis* D.I. 381)  This Court upheld the jury verdict and denied Cordis' motion for JMOL on May 11, 2006. (*Cordis* D.I. 417)  This Court likewise denied Cordis' ensuing motion for reconsideration. (*Cordis* D.I. 429)

BSC filed its Complaint in the present action ("*Conor*") on November 8, 2005 alleging, *inter alia*, that Conor infringed the Jang '021 patent. (D.I. 1)  Under the Court's Amended Rule 16 Scheduling Order, fact discovery was completed on March 9, 2007 and motions for summary judgment are to be filed on May 11, 2007. (D.I. 113)  Trial is scheduled to begin on October 15, 2007. (D.I. 36)

## SUMMARY OF THE ARGUMENT

Cordis, a wholly-owned subsidiary of Johnson & Johnson ("J&J"), proceeded to trial against BSC in 2005 alleging, *inter alia*, that Claim 36 of the Jang '021 patent was invalid and that the patent was unenforceable.  Cordis was represented by Patterson, Belknap, Webb and Tyler ("PBWT"), a law firm that vigorously litigated the case for over two years and who has represented Cordis and J&J in a number of other stent cases.  The trial resulted in a jury verdict of infringement and validity, which this Court subsequently affirmed.

Conor, another wholly-owned subsidiary of J&J working in concert with Cordis, presently alleges that Claim 35 of the Jang '021 patent is invalid and that the patent is unenforceable. After almost two years of litigation, Conor is poised to proceed to trial in 2007 represented by the same attorneys who represented Cordis, offering testimony from the same witnesses Cordis offered and relying upon the same prior art that Cordis relied upon.

Collateral estoppel prevents relitigation of issues previously decided. It is properly applied against parties not involved in the prior proceeding, so long as they are in privity — *i.e.*, in a sufficiently close relationship — with the prior party. Collateral estoppel for patent validity properly applies to different claims of a patent, so long as the differences between the claims do not give rise to differences in the question of validity.

Cordis and J&J had their day in Court. A jury found — in a verdict affirmed by this Court — that the Jang '021 patent was valid and infringed. *Conor* now presents the same validity and unenforceability issues that were litigated and decided in *Cordis*. The same lawyers will present the same arguments based on the same evidence using the same witnesses. To the extent new arguments or evidence is offered, it will be due merely to a change in litigation strategy or the exercise of diligence that was lacking in the first litigation. But there is no need to reward the defendant with a second bite at the apple — and to suffer the accompanying consumption of judicial resources — merely because a different J&J subsidiary is named in the present case than the last. Collateral estoppel exists to prevent just such a result.

### STATEMENT OF FACTS

**I.    CORDIS AND PBWT VIGOROUSLY LITIGATED THE VALIDITY AND ENFORCEABILITY OF THE JANG '021 PATENT FOR OVER TWO YEARS**

In *Cordis*, BSC asserted a claim against Cordis for infringement of the Jang '021 patent. Cordis advanced affirmative defenses of invalidity (based upon the alleged failure to

2

comply with the requirements of 35 U.S.C. § 101, 102, 103 and/or 112) and unenforceability

(based upon alleged unclean hands and patent misuse). (*Cordis* D.I. 34[1])  Over the course of

two-and-a-half years of litigation, the parties conducted numerous depositions and produced

hundreds of thousands of pages of documents.  This Court engaged in a full and thorough claim

construction process including multiple rounds of briefing by the parties and a hearing before the

Court. (*Cordis* D.I. 230, 232, 280, 287, 334)

The process culminated in a June 2005 trial.  At the conclusion of the trial, the

jury found the Jang '021 patent valid and infringed by Cordis. (*Cordis* D.I. 381)  Cordis

proceeded to challenge this verdict in post trial motions over the ensuing two years, which this

Court has twice denied. (*Cordis* D.I. 417, 429)  Throughout this entire process, Cordis has

continued to be represented by PBWT.

## II.    CORDIS AND CONOR ARE SISTER CORPORATIONS WORKING IN CONCERT

On November 16, 2006, Conor issued a press release stating that it was merging

with J&J and Cordis. (Ex. 1)  That merger was completed on February 1, 2007 when a J&J

acquisition company named Cypress Acquisition Sub, Inc. merged with and into Conor. (Exs. 2,

3)  Conor subsequently filed a certificate of conversion, altering its status from a wholly-owned

corporation to a wholly-owned limited liability company. (Ex. 3)  In its February 26, 2007

Amended Rule 7.1 Statement, Conor disclosed that it is now a 100% owned subsidiary of J&J.

(D.I. 116)

As a result of this corporate restructuring, Cordis, Conor and J&J are all jointly

owned.  Both Cordis and Conor are "Johnson & Johnson compan[ies]." (Exs. 1, 4)  Cordis

---

[1] Cordis withdrew misuse as a grounds for its unenforceability defense in subsequent pleadings.
   (*Cordis* D.I. 168)

operates under the control of a J&J executive (Ex. 4) and, as of February 1, 2007, "Conor

Medsystems [has] operate[d] as part of the Cordis franchise." (Ex. 1)

      In addition to the formal corporate relationship, public statements by Conor, J&J

and Cordis make clear that all three entities are operating jointly in a common business:

> **The acquisition of Conor Medsystems by Johnson & Johnson will provide Cordis Corporation, a Johnson & Johnson company, with a unique drug delivery technology.** This technology is currently employed on the CoStar® Stent System . . . The CoStar® Stent System is currently sold outside the United States.
>
>          \*      \*      \*
>
> Rick Anderson, Johnson & Johnson Company Group Chairman with responsibility for the Cordis business, said: **"Cordis is looking forward to strengthening its portfolio with the addition of the CoStar® Stent System**. . . . By combining the unique capabilities of Conor Medsystems and Cordis, we are confident that we will bring innovative solutions to patients around the world." (Ex. 1) (emphasis added)

These statements demonstrate that Conor, Cordis and J&J are essentially acting as a single

business venture with a single strategy and decision-making process. In its proxy statement filed

with the SEC, Conor states that Cordis will be marketing and selling Conor's infringing stents:

> Upon closure, our near term efforts will focus on . . . secur[ing] approvals for Conor products worldwide [and] *[f]ully integrating Conor Medsystems products into the Cordis global sales and marketing strategy*. (Ex. 5) (emphasis added)

Conor and Cordis, along with J&J, are thus sharing resources, technology and strategy. The

statements also imply that products will be shared amongst all three entities and marketed in

coordination with each other.

**III.    *CONOR* RELITIGATES THE *CORDIS* VALIDITY
AND ENFORCEABILITY ISSUES**

**A.    The Two Cases Involve The Same Validity Question**

The *Cordis* case involved allegations by Cordis that Claim 36 of the Jang '021 patent is invalid.  The *Conor* case similarly involves allegations by Conor that Claim 35 of the Jang '021 patent is invalid.  Both of these patent claims depend from — and therefore incorporate all of the limitations of — independent Claim 23 of the Jang '021 patent.  This claim recites a stent comprised of expansion columns and connecting strut columns.  (Ex . 6)  Because the limitations of Claim 23 are identical in both actions, the question of whether the prior art teaches the limitations of Claim 23 is necessarily identical in both actions.

The dependent Claims 35 and 36 both add limitations requiring the connecting strut to connect to corners of the expansion columns and, more specifically, to connect to offset (*i.e.*, opposite) corners.  Specifically, Claim 35 requires a top-corner-to-bottom-corner connection whereas Claim 36 requires a bottom-corner-to-top-corner connection:





      (Claim 35 — Top-to-Bottom)            (Claim 36 — Bottom-to-Top)

As BSC pointed out during the *Cordis* trial, this offset corner-to-corner connection scheme distinguished the Jang patent from the prior art that Cordis had asserted.  (Ex, 7; Ex. 8 at 1004-06, 1061-78)  This distinction did not depend on the fact that the connector was specifically offset from the top to the bottom, but rather that it was offset in general, and therefore ran from one corner to the opposite corner.  (*Id.*)  Claim 36 additionally incorporates the limitations of

Claim 24, but a review of the *Cordis* material shows that these limitations were not used to distinguish prior art during trial. (*Id.*)

The difference between top-to-bottom and bottom-to-top does not impact the disclosure of the prior art or how the stent design functions. Conor's own experts concede that there is no functional difference between connecting top-corner to bottom-corner and connecting bottom-corner to top-corner — the relevant aspect is connecting opposite corners. (Ex. 9 at 39; Ex. 10 at 14 & n.2; Ex. 12 at 403; Ex. 13 at 217-18) The offset corner-to-corner limitations of Claim 35 are therefore distinguishable over the prior art for the same reasons as the offset corner-to-corner limitations of Claim 36.

### B.    The Two Cases Involve The Same Enforceability Question

Cordis asserted an affirmative defense of unenforceability of the Jang '021 patent as part of the litigation in *Cordis*. Conor presently asserts a defense of unenforceability of the Jang '021 patent as part of the litigation in *Conor*. Although some of the approaches used by the sister corporations to try to prove unenforceability vary — Cordis initially based its defense on unclean hands and misuse (*Cordis* D.I. 34) whereas Conor has based its defense on unclean hands, misuse and inequitable conduct (*Conor* D.I. 16) — the two cases present the same issue of enforceability of the Jang '021 patent.

### C.    The Two Cases Involve The Same Witnesses

Both of the experts who testified regarding the validity of the Jang '021 patent as part of the *Cordis* case — namely Drs. Moore and Buller — have again been disclosed by the parties as experts regarding the validity of the Jang '021 patent for the *Conor* case. (Exs. 9, 11) Dr. Jang, the sole inventor of the Jang '021 patent, and Paul Davis, the attorney who prosecuted the application that led to the Jang '021 patent, have been identified as potential witnesses and deposed in both the *Cordis* case and the *Conor* case. The same is true regarding David Fischell,

an alleged inventor of prior art who testified during the *Cordis* trial. Most, if not all, of the witnesses relevant to the validity of the Jang '021 patent will therefore be identical between the two cases.

**D.     The Two Cases Involve The Same Prior Art**

A comparison between Cordis' disclosure of prior art references in its Notice Pursuant To 35 U.S.C. § 282[2] (Ex. 14) and Conor's disclosure of prior art references in its interrogatory responses (Ex. 15) reveals near identity in the references cited. Similarly, the references that underlie Dr. Buller's report on the validity of the Jang '021 patent in the *Cordis* case (Ex. 17) are largely coextensive with the references the he relies upon for his report on the validity of the Jang '021 patent in the *Conor* case (Ex. 9). The prior art references relied upon by Dr. Solar (Ex. 10), Conor's other expert regarding validity, are essentially identical to those relied upon by Dr. Buller (Ex. 9). Although there are a few specific references that are not in common between the two actions, there is no allegation by either party that the technology and art relevant to *Conor* is not the same technology and art that was relevant to *Cordis*.

**E.     The Two Cases Involve The Same Lawyers**

PBWT represented, and continues to represent, Cordis regarding the *Cordis* litigation. Shortly after Cordis and J&J finished acquiring Conor, attorneys for PBWT made formal appearances before this Court in connection with the *Conor* litigation. (D.I. 112) By the end of February 2007, Conor's prior counsel had withdrawn from this case in favor of PBWT. (D.I. 121) There is now identity of representation between *Cordis* and *Conor*.

---

[2] Cordis' § 282 notice incorrectly identifies J&J as a party to the *Cordis* action. Although J&J has been a party in other stent litigation between Cordis and BSC, J&J was not formally a party in the *Cordis* action.

## ARGUMENT

### I.    COLLATERAL ESTOPPEL PREVENTS THE RELITIGATION OF DECIDED ISSUES

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The grant of summary judgment is appropriate where collateral estoppel — *i.e.*, issue preclusion — bars a party from relitigating a prior-decided issue.  *See, e.g., Cordis Corp. v. Boston Scientific Corp.*, No. 03-027-SLR, 2005 WL 1331172, at *6 (D. Del. 2005).

"Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).  "[O]nce a legal or factual issue has been settled by the court after a trial in which it was fully and fairly litigated, that issue should enjoy repose . . . [and] may not be relitigated even in an action on a different claim as between the parties." *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 480 (Fed. Cir. 1991).  The Third Circuit has set forth a four-part test for applying issue preclusion:

> (1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.

*Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995); *see also Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002).  In addition to these formal requirements, the application of collateral estoppel is "subject to [an] overriding fairness determination by the trial judge." *Burlington*, 63 F.3d at 1231.

The Supreme Court has recognized that a finding of patent invalidity in one suit can be the basis for issue preclusion in a subsequent suit. *Blonder-Tongue Labs., Inc. v. Univ.*

8

*Ill. Found.*, 402 U.S. 313, 333 (1971).  This Court has previously applied such precedent in

holding that a finding of patent validity in one suit can be the basis for issue preclusion in a

subsequent suit.  *Cordis*, 2005 WL 1331172, at *6-*7.  Such applicability of issue preclusion to

determinations of validity is not limited to the specific patent claims at issue in the prior

proceeding:

> "[C]ollateral estoppel may apply to nonlitigated claims . . . the
> inquiry should be whether the nonlitigated claims present new
> issues as to the art pertinent to the nonlitigated claims; as to the
> scope and content of that art; as to the differences between the
> prior art and the nonlitigated claims; and as to the level of ordinary
> skill in that art. If none of these inquiries raises any new triable
> issues, then the obviousness determination in the prior proceeding
> should be equally applicable to the nonlitigated claims."

*Westwood Chem., Inc. v. United States*, 525 F.2d 1367, 1372-76 (Ct. Cl. 1975)[3]

Issue preclusion applies both to the specific party involved in the prior litigation

as well as its privies.  *Parklane*, 439 U.S. at 326.  Privity is separate and distinct from vicarious

liability, and privity can often be found even if vicarious liability is not applicable.  *See, e.g.*,

*Eagle Transp. Ltd. v. O'Connor*, 470 F. Supp. 731, 733 (S.D.N.Y. 1979); *ITT Corp. v. GTE*

*Corp.*, 380 F. Supp. 976, 983 (M.D.N.C. 1974).

There are few bright-line rules regarding the existence of privity:  "Privity has

often been described as nothing more than a legal conclusion that the relationship between the

one who is a party on the record and the non-party is sufficiently close to afford application of

the principles of preclusion." *Vasquez v. Bridgestone/Firestone Inc.*, 325 F.3d 665, 667 (5th Cir.

2003).  The Third Circuit has adopted such a view of privity.  *See United States v. Weber*, 396

F.2d 381, 386 (3d Cir 1968) ("Privity . . . is merely a word used to say that the relationship

---

[3] Any precedent from the Court of Claims which predates the existence of the Federal Circuit is
binding upon the Federal Circuit.  *South Corp. v. United States,* 690 F.2d 1368, 1370 (Fed.
Cir. 1982).

between the one who is a party on the record and another is close enough to include the other within the res judicata."); *see also Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) ("[C]ourts have sometimes avoided the use of the term 'privity' and instead have focused directly on the question whether the relationship between the parties is such that one party should enjoy the benefit, or suffer the burden, of a judgment for or against another. The Third Circuit, in particular, has used that approach . . .").

Although not always dispositive, a corporate relationship can be important (and sometimes sufficient) in establishing privity. *See, e.g.*, *In re Imperial Corp.*, 92 F.3d 1503, 1506 (9th Cir 1996) ("Corporate affiliations may be relevant in determining whether two parties are in privity for purposes of issue or claim preclusion."); *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1290 (5th Cir. 1991) (finding a sister corporation and a subsidiary both in privity with the party to a prior litigation); *Cent. Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 257-60 & n.2 (6th Cir. 1991) (same); *B-S Steel, Inc. v. Tex. Indus., Inc.*, 327 F. Supp. 2d 1252, 1259-60 (D. Kan. 2004) (finding a wholly-owned subsidiary in privity with its parent corporation); *Buckley v. Airshield Corp.*, 977 F. Supp. 375, 378-79 (D. Md. 1997) (privity established as a result of merger); *Vanbrode Milling Co. v. Kellogg Co.*, 113 F. Supp. 845, 847 (D. Del. 1953) (wholly-owned subsidiary in privity with parent).

In addition to reliance on the existence of a corporate relationship, an association or coordination of business reinforces a finding of privity. *See, e.g., Lary v. Ansari*, 817 F.2d 1521, 1524 (11th Cir. 1987) (corporation formed to continue business found to be in privity for res judicata purposes); *Greenberg v. Potomac Health Systems, Inc.*, 869 F. Supp. 328, 331 (E.D. Pa. 1994) (wholly-owned subsidiary in privity with its parent due, in part, to overlapping

officers); *ITT*, 380 F. Supp. at 982 (finding that "a subsidiary corporation is held to be in privity with its parent in respect to the common corporate business.").

"Various courts . . . have concluded that the existence of shared counsel supports a finding of privity where other factors present suggest that a unique relationship exists between the two parties." *Asahi Glass Co. v. Toledo Eng'g Co.*, Case No. 03-7120, 2007 WL 756756 (N.D. Ohio Mar. 7, 2007); *see also 1488, Inc.*, 939 F.2d at 1290 ("The fact that all three shared the same attorneys only reinforces this [finding of privity]."); *Cent. Transp.*, 936 F.2d at 260 & n.2 (identity of counsel noted in finding privity); *ITT Corp.*, 380 F. Supp. at 979 (same).

## II. THE PRIOR VALIDITY AND ENFORCEABILITY DETERMINATIONS ARE DISPOSITIVE OF THE PRESENT VALIDITY AND ENFORCEABILITY ISSUES

### A. Conor Is In Privity With Cordis

#### 1. The General Case Law Supports A Finding Of Privity

Conor, Cordis and J&J are all interrelated corporations with overlapping interests and officers. Both Conor and Cordis are "Johnson & Johnson compan[ies]" that are wholly-owned by J&J. (Exs. 1, 4) As discussed above, such sister and subsidiary relationships are often cited by courts in finding privity for the application of collateral estoppel. *E.g.*, *Imperial Corp.*, 92 F.3d at 1506; *1488, Inc.*, 939 F.2d at 1290; *Cent. Transp.*, 936 F.2d at 257-60 & n.2; *B-S Steel*, 327 F. Supp. 2d at 1259-60. The fact that Conor and Cordis became sister corporations after the jury verdict in *Cordis* was rendered and the complaint in *Conor* was filed does not alter this conclusion. *See Boston Scientific Corp. v. Schneider (Europe) AG*, 983 F. Supp. 245, 258 (D. Mass. 1997) (applying collateral estoppel based upon a corporate relationship even though the "merger . . . did not arise until after the [prior] litigation had been substantially completed and after this case had been filed.").

11

And the relationship between Cordis and Conor goes beyond mere commonality of ownership. As they have declared in press releases, these corporate relationships "will provide Cordis Corporation, a Johnson & Johnson company, with [the technology of] the CoStar Stent System." (Ex. 1) J&J officers have declared their goal of "combining the unique capabilities of Conor Medsystems and Cordis." (Ex. 1) Public filings with the SEC have similarly indicated that Cordis may be marketing and selling Conor stents, including the CoStar stent accused of infringement in the present case. (Ex. 5) Such coordination and unity of purpose, especially for entities under the same ownership and control, further supports a finding of privity. *See Lary*, 817 F.2d at 1524; *Greenberg*, 869 F. Supp. at 331; *ITT*, 380 F. Supp. at 982.

Additionally, Conor and Cordis are sharing the same counsel, PBWT, for both *Conor* and *Cordis*, counsel which J&J has also used in related stent litigation. Such commonality of counsel among related entities has been found to reinforce a finding of privity. *See 1488, Inc*, 939 F.2d at 1290 ("The fact that all three share[] the same attorney only reinforces this [finding of privity]."); *Asahi*, 2007 WL 756756, at *10 ("the existence of shared counsel supports a finding of privity.").

    2.    The Specific Holding Of *Schneider* Supports A Finding Of Privity

Although there are few bright lines regarding the existence of privity, the facts underlying the decision in *Schneider* to collaterally estop an defendant from challenging the validity of a patent-in-suit are analogous to those in the present case:

> The first case before me . . . was initiated by Competitor A to establish that its products do not infringe the patent controlled by Competitor B or alternatively that the patent is invalid. . . . ***During the course of this litigation, Competitor A merged with competitor C. Competitor C in earlier litigation had unsuccessfully challenged the validity of Competitor B's patent.***

> After the merger, Competitor A and competitor C centralized the
> medical device business at issue here in Competitor C.

*Schneider*, 983 F. Supp. at 247-48 (emphasis added). This is similar to the present situation:

During the course of the patent infringement suit between BSC and Conor on the Jang '021

patent, Conor merged with Cordis, a party who had unsuccessfully challenged the validity of the

Jang '021 patent in a prior litigation against BSC.

Even though the party being estopped "had almost no opportunity to participate

directly in the earlier litigation," its interests were adequately protected because there was "a

clear identity of interests . . . with respect to the relevant issues — i.e., the validity and

enforceability of a patent, held by a common competitor, which was potentially infringed by both

companies." *Id*. at 259. Moreover, as here, the estopped party "was fully aware of the [prior]

litigation when it chose to merge." *Id*. at 258. The invocation of collateral estoppel therefore did

not unfairly deprive the infringer of an extra chance to challenge the validity of the patent-in-suit.

Instead, the court focused on the *de facto* relitigation of the prior suit that would

occur if collateral estoppel were not applied:

> Finally, due to the nature of the relationship outlined above,
> litigation [in the second suit] of validity and inequitable conduct
> ***would effectively amount to relitigation of those issues*** by [the
> party to the prior suit]. I recognize that, under applicable patent
> doctrines, [the prior party] stands to benefit if *any* party
> successfully challenges the validity or enforceability of [the
> patentee's] patent. . . ***[F]ailure to apply collateral estoppel would
> be seriously unfair to [the patentee] and would undermine the
> public policies behind that doctrine***.

*Id.* at 259 (emphasis added). This Court is similarly faced with a choice of allowing Cordis a *de*

*facto* second bite at the apple or applying collateral estoppel to give finality to the prior verdict

**B.    Claim 35 Presents The Same Validity Issue As Claim 36**

The predecessor court to the Federal Circuit explicitly held that collateral estoppel can apply to the issue of validity for a patent claim even though prior litigation concerned a separate claim. *Westwood Chem.,* 525 F.2d at 1372-76. This decision is binding precedent for the Federal Circuit. *South Corp.*, 690 F.2d at 1370. In such circumstances, collateral estoppel is applied in light of three considerations: 1) the difference, if any, in the scope of the prior art; 2) the difference, if any, in how the invention is distinguishable from the prior art; and 3) the difference, if any, in the ordinary level of skill in the art. *See Westwood*, 525 F.2d at 1372-76.

Regarding the first inquiry, a comparison between the prior art references asserted in *Cordis* and the references asserted in *Conor* show that they are largely identical. *Compare* Cordis' § 282 Notice (Ex. 14) *with* Conor's Fourth Supplemental Response to Interrogatory No. 8 (Ex. 15). This is not surprising given the similarity in the claims' limitations and scope. There is no allegation that different technology or art is implicated by the differences between the claims. To the extent that PBWT chooses to assert new references in *Conor* that it chose not to assert in *Cordis*, such a change in litigation strategy does not represent a difference in the scope of the prior art. Similarly, PBWT cannot claim prior ignorance of any references during *Cordis* as a justification for relitigating the same issue in *Conor*. *See Tensar Corp. v. Tenax Corp.*, No. 91-1460, 25 U.S.P.Q.2d 1314, at *2 (D. Md. Oct. 16, 1992) (refusing to allow the relitigation of validity "merely because new prior art was later discovered.").

Regarding the second inquiry, Claim 23, from which both Claims 35 and 36 depend, is necessarily identical in scope for both *Cordis* and *Conor*. All of the limitations contained therein have no difference between the two actions and are distinguishable over the prior art for identical reasons. Regarding the additional limitations contained in the dependent claims, Conor's own experts admit that the difference between the connection schemes in Claims

14

35 and 36 would not affect the performance of a stent. (Ex. 9 at 39; Ex. 10 at 14 & n.2; Ex. 12 at

403; Ex. 13 at 217-18) Whether the connector goes from top-to-bottom or bottom-to-top does

not matter so long as the connector joins offset corners (rather than joining middles or the same

corners):



      (Claim 35 — Top-to-Bottom)          (Claim 36 — Bottom-to-Top)

A review of the evidence and arguments BSC presented during the *Cordis* trial shows that the

offset corner-to-corner connection itself was used to distinguish prior art, rather than the specific

bottom-to-top implementation of the offset connection. (Ex. 7; Ex. 8 at 1004-06, 1061-78)

While Claim 36 incorporates the limitations of Claim 24, this trial material shows that these

limitations were not used to distinguish prior art. (*Id.*) To the extent the limitations of Claim 36

distinguish a prior art reference, the limitations of Claim 35 distinguish the reference for the

same reasons.

        Regarding the third inquiry, a comparison of the expert reports from *Cordis* and

*Conor* reveals little, if any difference in the relevant level of skill in the art. *Compare* Ex. 16 at

3-4; Ex. 17 at 3 *with* Ex. 9 at 6-7; Ex. 10 at 6; Ex. 11 at 4. This is not surprising in that the

principle difference between claims is that they read on geometric mirror-images of each other.

Given the lack of differences under the test set forth in *Westwood*, the validity of Claim 35 in

*Conor* presents the same issues as the validity of Claim 36 in *Cordis*.

    **C.**    ***Conor* Presents The Same Enforceability Issue As *Cordis***

        Even though a different claim of the Jang '021 patent is at issue in *Conor* than the

claim at issue in *Cordis*, the issue of enforceability is identical because an allegation of

unenforceability "affects the entire patent." *Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326, 1336 (Fed. Cir. 1998). Notably, most of the grounds upon which Conor has contested enforceability — namely misuse, unclean hands and inequitable conduct — are identical to those grounds upon which Cordis relied — namely misuse and unclean hands. *Compare Cordis* D.I. 34 *with Conor* D.I. 16. Just as courts have applied collateral estoppel to the issue of validity, so have they applied it to the issue of enforceability. *See, e.g.*, *Schneider*, 983 F. Supp. at 260 (applying collateral estoppel to the issue of enforceability); *cf. Cedars-Sinai Med. Ctr. v. Revlon, Inc.*, Nos. 85-178, 85-699, 111 F.R.D. 24, 33 (D. Del. Jun. 11, 1986) (noting the applicability of collateral estoppel to the issue of enforceability).

### D.    The Remaining Elements For Issue Preclusion Are Present

As discussed above, the validity of Claim 36 of the Jang '021 patent was litigated throughout the years of litigation in *Cordis* and at trial in June 2005. As demonstrated by the jury instructions and verdict form from *Cordis*, the issue of validity was actually litigated and resolved. (*Cordis* D.I. 380, 381) And there is no question that the jury's determination of validity was essential to its verdict of validity. Similarly, the verdict of infringement and validity, and this Court's affirmation of the verdict, necessarily implies that the Jang '021 patent was found enforceable. Although final judgment has not yet been entered, the Third Circuit, as well as this Court, have recognized that this procedural disposition is sufficiently firm so as to apply collateral estoppel. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 358 (3d Cir. 1999) (applying collateral estoppel based upon a jury verdict); *Cordis*, 2005 WL 1331172 at *6 (applying collateral estoppel based upon a jury verdict in a prior stent patent case).

### E.    Fairness Disfavors Relitigating Validity And Enforceability

In addition to the formal requirements for collateral estoppel, its application is "subject to [an] overriding fairness determination by the trial judge." *Burlington*, 63 F.3d at

16

1231.  The public statements made by Cordis and Conor, as well as those made by J&J, imply that the companies will be sharing technology and marketing products together.  Allowing a relitigation in *Conor* of issues decided in *Cordis* would essentially reward Cordis and J&J with a second bite at the apple after losing a fully and fairly litigated case and trial.  J&J and Cordis could avoid the effects of the *Cordis* verdict by merely conducting their same business under the Conor name.  All three entities are already working in concert and sharing technology and products.  Such avoidance of prior adjudications through mere corporate formalities does not comport with the fairness and finality afforded by the judicial doctrine of collateral estoppel.

## CONCLUSION

For all of the reasons set forth above, BSC respectfully requests that this Court enter summary judgment that Claim 35 of the Jang '021 patent is not invalid and that the Jang '021 patent is not unenforceable.

17

Dated:      May 11, 2007                        Respectfully submitted,

 

_____
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Adam W. Poff (I.D. #3990)
YOUNG CONAWAY
STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for*
*Boston Scientific Corporation*
*and Boston Scientific Scimed, Inc.*

*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Young J. Park
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022-4611
(212) 446-4800

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on  May 11, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> John G. Day, Esquire
> Lauren E. Maguire, Esquire
> Ashby & Geddes
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19899

I further certify that on May 11, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY ELECTRONIC MAIL**

> Gregory L. Diskant, Esquire
> Eugene M. Gelernter, Esquire
> Kathleen M. Crotty, Esquire
> Scott W. Parker, Esquire
> Ravi V. Sitwala, Esquire
> Diana Breaux, Esquire
> Patterson, Belknap, Webb
>     & Tyler, LLP
> 1133 Avenue of the Americas
> New York, NY  10036

> Courtland L. Reichman, Esquire
> King & Spalding
> 1180 Peachtree Street, NE
> Atlanta, GA  30309

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> _____
> Adam W. Poff (No. 3990)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19899-0391
> (302) 571-6600
> *apoff@ycst.com*
>
> Attorneys for Boston Scientific Corporation and Boston
> Scientific Scimed, Inc.