# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION )
and BOSTON SCIENTIFIC SCIMED, INC., )
                                 )
          Plaintiffs, )
                                 )
          v.                   )     C.A. No. 05-768 (SLR)
                                 )
CONOR MEDSYSTEMS. INC.. )
                                 )
          Defendant. )

## CONOR MEDSYSTEMS'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS

       Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant Conor Medsystems, Inc. ("Conor") requests that plaintiffs Boston Scientific Corporation ("BSC") and Boston Scientific Scimed, Inc. ("BSSI") (collectively "Boston Scientific") answer the following interrogatories in writing and under oath within thirty (30) days after the service of these interrogatories. These interrogatories are continuing in character so as to require plaintiffs to serve supplemental responses if plaintiffs obtain further or different information, as required by Federal Rule of Civil Procedure 26(e).

## DEFINITIONS

      1.    "Conor" means defendant Conor Medsystems. Inc.. its predecessors and successors. past and present parents, subsidiaries, and divisions, and all past and present directors, officers. employees. agents, investors, affiliates. and representatives (including consultants and attorneys) of any of the foregoing.

      2.    "Boston Scientific" means plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc., its predecessors and successors, past and present parents,

2.

subsidiaries. and divisions, and all past and present directors. officers. employees. investors, and representatives (including consultants and attorneys) of any of the foregoing.

3.    "'021 Patent" means U.S. Patent No. 5.922.021 and any patents or patent applications related thereto, including foreign patents or patent applications.

4.    "Document" means the original and each non-identical copy of any written. printed. typed. recorded, computerized. electronic, taped, graphic. or other matter. in whatever form. whether in final or draft. including but not limited to all materials that constitute "writings." "recordings." or "photographs" within the meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the meaning of Rule 34 of the Federal Rules of Civil Procedure.  The word "Document" includes without limitation electronic mail. data stored on computer hard drives. diskettes. memories. tapes, compact discs. or any other computer media. and any other information stored magnetically, electronically, or optically.  Any Document bearing any marks. including without limitation initials. stamped indicia. comments. highlighting, marginalia. or other notations not a part of the original text or reproduction thereof. is a separate Document that is also included in the request.

5.    "Communication" means any form of oral or written interchange or attempted interchange. whether in person. by telephone, by facsimile. by telex, by electronic mail. or by any other medium.

6.    "Relates To," "Relating To," "In Relation To," "Related To." and their cognates mean in whole or in part constituting. containing. concerning, regarding, embodying, reflecting. describing. discussing, analyzing, identifying. stating. referring to, dealing with. or in any way pertaining to.

3.

7.    As applied to individuals or entities, the words "Identify," "Identity," and "Identification" mean to state the individual's full name, present or last known address and telephone number, present or last known employer, present or last known business address and telephone number.    As applied to Documents, the words "Identify," "Identity," and "Identification" mean to state the type of Document, the date of the Document, the names of the individuals who drafted, authored, or signed the Document, the names of the individuals to whom the Document or a copy thereof was addressed or sent, a summary of the subject matter of the Document, the number of pages of the Document, the present whereabouts of the subject matter of the Document, the number of pages of the Document, the present whereabouts of the Document, and the name and address of the custodian of the Document

8.    The words "and" and "or" shall be used conjunctively or disjunctively, whichever makes the request more inclusive.

9.    The singular form of a word shall include the plural, and vice versa.

10.    "Complaint" means Boston Scientific's Complaint, filed November 8, 2005.

11.    "Conor's Answer" means Answer and Counterclaims of Conor Medsystems, Inc. dated January 19, 2006.

## INSTRUCTIONS

1.    Each interrogatory shall be answered separately and fully, unless it is objected to, in which event the reasons for the objections should be specifically and separately stated.    Should Boston Scientific claim that any particular interrogatory is beyond the scope of permissible discovery, specify in detail each and every ground on which such claim rests.    If Boston Scientific finds any portion of any interrogatory or any term used in an interrogatory to

4.

be vague. ambiguous. subject to varying interpretations. or unclear. state what portion of the interrogatory or term Boston Scientific finds to be vague. ambiguous. subject to varying interpretations. or unclear, state Boston Scientific's understanding of the interrogatory or term, and respond in accordance with that understanding.

       2.    If Boston Scientific withholds any responsive information based on a claim of privilege or any other claim of immunity from discovery. then for each item of information, document, or communication withheld. state the applicable claim (e.g., "attorney-client privilege." "work product doctrine." etc.) and provide sufficient facts giving rise to the claim of privilege or other immunity with sufficient detail to enable Conor to assess. and the Court to adjudicate. the applicability of the privilege or protection as required by Federal Rule of Civil Procedure 26(b)(5). including without limitation. identifying the date of the information, document. or communication. its author, and any recipients of the information. document. or communication, and describing the general subject matter of the information. document. or communication withheld.

       3.    Answers to these interrogatories shall set out each interrogatory in full before each answer. Separate answers shall be given in response to each interrogatory.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each claim of the '021 Patent that Boston Scientific contends Conor has infringed or is infringing.

**INTERROGATORY NO. 2:**

Separately for each claim identified in response to Interrogatory No. 1, describe in detail each product or apparatus (including, without limitation, product and model numbers) by which Boston Scientific contends Conor has infringed or is infringing the claim.

**INTERROGATORY NO. 3:**

State in detail all facts that support or relate to your allegation that Conor is infringing the ʾ021 Patent, including the contention that Conor is "making, using, offering to sell and/or selling some or all of the Accused Stents for subsequent commercial sale in India and other countries and/or the development and submission of information other than under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products."

**INTERROGATORY NO. 4:**

Separately for each asserted claim of the '021 Patent, describe all facts and circumstances regarding conception and reduction to practice, including the earliest date on which the claimed invention was conceived, the earliest date on which the claimed invention was reduced to practice, any diligence in reducing to practice the claimed invention, the Identity of each person with knowledge of the foregoing, including the nature of each person's participation, involvement, and contribution to such conception, reduction to practice or diligence in reducing to practice, and the identity of all Documents concerning such conception, reduction to practice, or diligence in reducing to practice.

**INTERROGATORY NO. 5:**

State what Boston Scientific contends or believes is the earliest priority date of each asserted claim of the '021 Patent, and state all bases for such contention or belief.

6.

**INTERROGATORY NO. 6:**

Identify all patents and all pending or abandoned patent applications (whether filed in the United States or elsewhere) that claim priority to or through the '021 Patent, including without limitation the number of each patent and patent application and the patent office in which the patent or patent application was filed, and for each such patent application, state whether the patent application is pending or abandoned.

**INTERROGATORY NO. 7**

Separately, for each claim of the '021 Patent, describe in detail all facts and circumstances Relating To the first creation, manufacture and use of the claimed invention, including the first public use, the first offer for sale in the U.S., and the first sale in the United States of the claimed invention, and including, without limitation, the date on which each such event occurred, the Identity of each person with knowledge of any of the foregoing, the price of any such offers for sale or sales, and the Identity of all Documents Relating To any of the foregoing.

**INTERROGATORY NO. 8:**

Identify each license agreement, settlement agreement, covenant-not-to-sue, assignment agreement, or other agreement concerning the '021 Patent, or offers to enter into any such agreement (written or oral) concerning the '021 Patent, including without limitation each party to the agreement or offer, each person with knowledge of the agreement or offer, Documents Relating To the agreement or offer, each person involved in discussing or negotiating the agreement or offer, the terms of the agreement or offer, whether any royalties, fees or other monetary consideration were or was exchanged and if so in what amount, the date the agreement was entered into or the offer made, and whether the agreement or offer was entered into or made as part of the resolution of any lawsuit, arbitration or other legal proceeding.

**INTERROGATORY NO. 9:**

Identify all Communications apprising any person or entity about the existence of the `021 Patent, including, without limitation, all Communications notifying any person or entity regarding its actual or possible alleged infringement of the '021 Patent or seeking to enforce or license the `021 Patent, and for each identified Communication state, without limitation, all facts relating to its contents, the identity of the parties involved in the Communication, the date of the Communication, the substance of the Communication, any response to the Communication, each person with knowledge of the Communication, and any documents concerning the Communication.

**INTERROGATORY NO. 10:**

Describe in detail each and every lawsuit, arbitration or other legal proceeding involving the '021 Patent (whether inside or outside the United States), including without limitation the case name, case number, parties, venue, and lawyers involved in such legal proceeding as well as any witnesses in such legal proceeding, and state whether the lawsuit, arbitration or other legal proceeding is ongoing.

**INTERROGATORY NO. 11:**

Identify all prior art, and all patents, publications, or other materials or events that anyone has suggested or stated is or may be prior art, which relates to the subject matter of any claim of the '021 Patent, including without limitation the date and title of the art, the source of the art, the product or method described therein, the persons who have knowledge of the art, the date on which Boston Scientific first became aware of the art, and the manner in which Plaintiff became aware of the art.

8.

**INTERROGATORY NO. 12:**

Identify by product name and model, part, and/or revision number each Boston Scientific product (whether currently or formerly made), if any, that Boston Scientific alleges embodies, incorporates, or practices any of the inventions claimed in the '021 Patent, and for each such product, identify the claim or claims allegedly embodied by such product.

**INTERROGATORY NO. 13:**

Identify any individual involved in the research, design, development, or engineering of any of the subject matter claimed or disclosed in the '021 Patent, or any of the products identified in response to Interrogatory No. 12, and state the nature of the individual's involvement in such activities.

**INTERROGATORY NO. 14:**

State in detail all facts that support or relate to your allegation that Conor has willfully infringed the '021 Patent, including the contention in paragraph 15 of Boston Scientific's Complaint that "Conor has willfully infringed the '021 Patent."

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
rsmith@mnat.com
  Attorneys for Conor Medsystems, Inc.

9.

OF COUNSEL:

Matthew D. Powers
Jared Bobrow
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Sherry M. Knowles
KING & SPALDING LLP
191 Peachtree Street
Atlanta, GA 30303
(404) 572-4600

September 15, 2006
537369

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 15, 2006, he caused copies of

the foregoing to be served upon the following in the manner indicated:

### BY HAND

Josy W. Ingersoll
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Peter J. Armenio
Kirkland & Ellis
Citigroup Center
153 East 53rd Street
New York, NY 10022


Rodger D. Smith II (#3778)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION     )
and BOSTON SCIENTIFIC SCIMED, INC.,  )
                                  )
              Plaintiffs,         )
                                  )
         v.                       )     Civil Action No. 05-768 SLR
                                  )
CONOR MEDSYSTEMS, INC..           )
                                  )
              Defendant           )

### PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES
### TO CONOR'S INTERROGATORY NOS. 2, 3, 4, 5, 7 AND 14

Pursuant to Federal Rules Of Civil Procedure 33 and 26(e) and Local Rule 26 1,

and on the schedule set by the Court as extended by agreement of the parties. Plaintiffs Boston

Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") hereby make the

following supplemental objections and responses to Defendant Conor Medsystems, Inc.'s

("Conor's") Interrogatory Nos 2, 3, 4, 5, 7 and 14

Pursuant to Federal Rule Of Civil Procedure 26(e), BSC reserves the right to

supplement its responses to these interrogatories further if it learns of additional information

### PLAINTIFFS' SUPPLEMENTAL GENERAL OBJECTIONS
### TO CONOR'S INTERROGATORY NOS. 2, 3, 4, 5, 7 AND 14

The general objections set forth in Plaintiffs' Objections And Responses To

Conor's First Set Of Interrogatories ("General Objections") are hereby incorporated by reference

and made part of BSC's supplemental response to each interrogatory.

## PLAINTIFFS' SUPPLEMENTAL SPECIFIC OBJECTIONS AND
## RESPONSES TO CONOR'S INTERROGATORY NOS. 2, 3, 4, 5, 7 AND 14

### INTERROGATORY NO. 2:

Separately for each claim identified in response to Interrogatory No. 1, describe in detail each product or apparatus (including, without limitation, product and model numbers) by which Boston Scientific contends Conor has infringed or is infringing the claim.

### RESPONSE TO INTERROGATORY NO. 2:

BSC objects to this contention interrogatory as premature. BSC will answer this

contention interrogatory in accordance with the Scheduling Order agreed to by the parties.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

BSC objects to this contention interrogatory as premature. Conor has not

provided BSC with documents sufficient to show whether the bare-metal stent architecture of

Conor's stents varies, if at all, between different model numbers. Subject to this objection and its

General Objections, and subject to further supplementation if BSC learns of additional facts

during the discovery process, BSC identifies Conor stents including those using the names

"CoStar" or "UniStar" as all or part of the trademark.

### INTERROGATORY NO. 3:

State in detail all facts that support or relate to your allegation that Conor is infringing the '021 Patent, including the contention that Conor is "making, using, offering to sell and/or selling some or all of the Accused Stents for subsequent commercial sale in India and other countries and/for [sic] the development and submission of information other than under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products."

### RESPONSE TO INTERROGATORY NO. 3:

BSC objects to this contention interrogatory as premature. BSC will answer this

contention interrogatory in accordance with the Scheduling Order agreed to by the parties.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

BSC objects to this contention interrogatory as premature. Subject to this objection and its General Objections, and subject to further supplementation if BSC learns of additional facts during the discovery process, BSC responds that Conor has tested, used, manufactured, assembled, offered for sale and/or sold at least some of the accused CoStar and UniStar stents in the United States for commercial purposes and/or not solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products Pursuant to Federal Rule of Civil Procedure 33(d), BSC further responds that information responsive to this interrogatory may be derived from documents produced to date by both parties

## INTERROGATORY NO. 4:

Separately for each asserted claim of the '021 Patent, describe all facts and circumstances regarding conception and reduction to practice, including the earliest date on which the claimed invention was conceived, the earliest date on which the claimed invention was reduced to practice, any diligence in reducing to practice the claimed invention, the Identity of each person with knowledge of the foregoing. including the nature of each person's participation, involvement, and contribution to such conception. reduction to practice or diligence in reducing to practice, and the identity of all Documents concerning such conception. reduction to practice. or diligence in reducing to practice.

## RESPONSE TO INTERROGATORY NO. 4:

BSC objects to this contention interrogatory as premature. BSC will answer this contention interrogatory in accordance with the Scheduling Order agreed to by the parties.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

BSC objects to this contention interrogatory as premature. Subject to this objection and its General Objections, BSC responds as follows.

The subject matter of Claim 35 of the '021 patent was conceived prior to April 26. 1996 and diligently reduced to practice no later than April 26, 1996, the date U.S. Provisional Application No. 60/017,484 was filed. Dr. G. David Jang is the inventor of the subject matter claimed in the '021 patent, including the subject matter claimed in Claim 35. BSC further responds to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d) and identifies the deposition of Dr. G. David Jang in *Cordis Corp. v Boston Scientific Corp.*, No. 03-027-SLR (D. Del.), the documents provided by Dr. G. David Jang in response to Cordis' subpoena in *Cordis Corp v. Boston Scientific Corp.*, No. 03-027-SLR (D. Del ) and the prosecution history of the '021 patent, all of which have already been produced to Conor.

### INTERROGATORY NO. 5:

State what Boston Scientific contends or believes is the earliest priority date of each asserted claim of the '021 Patent, and state all bases for such contention or belief.

### RESPONSE TO INTERROGATORY NO. 5:

BSC objects to this contention interrogatory as premature. BSC will answer this contention interrogatory in accordance with the Scheduling Order agreed to by the parties

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

BSC objects to this contention interrogatory as premature. Subject to this objection and its General Objections, BSC responds that the priority date of Claim 35 of the '021 patent is at least as early as April 26, 1996, the filing date of U.S. Provisional Application No. 60/017,484

**INTERROGATORY NO. 7:**

Separately, for each claim of the '021 Patent, describe in detail all facts and circumstances Relating To the first creation, manufacture and use of the claimed invention, including the first public use, the first offer for sale in the U.S., and the first sale in the United States of the claimed invention, and including, without limitation, the date on which each such event occurred, the Identity of each person with knowledge of any of the foregoing, the price of any such offers for sale or sales, and the Identity of all Documents Relating To any of the foregoing.

**RESPONSE TO INTERROGATORY NO. 7:**

BSC objects to this contention interrogatory as premature  BSC will answer this

contention interrogatory in accordance with the Scheduling Order agreed to by the parties.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

BSC objects to this contention interrogatory as premature.  Subject to this

objection and its General Objections, and subject to further supplementation if BSC learns of

additional facts during the discovery process, BSC responds as follows

Claims 23, 24 and 36 of the '021 patent were first commercialized in the United

States by Cordis' Bx Velocity stent in 2000  Claim 35 of the '021 patent was first

commercialized in the United States by Conor's stents. including but not limited to those using

the names "CoStar" or "UniStar" as all or part of the trademark, at least as early as 2005.  BSC

further responds to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d) and

identifies documents relating to the prices, offers for sale and/or sales of the foregoing products

produced to date by both parties

**INTERROGATORY NO. 14:**

State in detail all facts that support or relate to your allegation that Conor has willfully infringed the '021 Patent, including the contention in paragraph 15 of Boston Scientific's Complaint that "Conor has willfully infringed the '021 Patent."

**RESPONSE TO INTERROGATORY NO. 14:**

BSC objects to this contention interrogatory as premature  BSC will answer this contention interrogatory in accordance with the Scheduling Order agreed to by the parties.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

BSC objects to this contention interrogatory as premature. Subject to this objection and its General Objections, and subject to further supplementation if BSC learns of additional facts during the discovery process, BSC responds as follows

Conor has copied and otherwise infringed the '021 patent while on notice of the '021 patent and with no reasonable good-faith basis for concluding that it does not infringe that '021 patent. Conor began infringing the '021 patent while on notice of, *inter alia*, the *Cordis Corp. v. Boston Scientific Corp* action  Conor has made multiple design changes to the accused stents over the years. but has never altered the aspects of its stent architecture that infringe and copy the '021 patent  Conor continues to infringe and copy the '021 patent with full knowledge of the '021 patent and the infringing nature of its activities.

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

_____
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Adam W. Poff (I.D. #3990)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
(302) 571-6600

*Attorneys for Plaintiffs*

*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Eric W. Dittmann
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Dated: December 8, 2006

## CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on December 8, 2006, copies of the

foregoing document were served on the following counsel as indicated below:

### BY ELECTRONIC MAIL AND HAND DELIVERY

Jack B. Blumenfeld, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
PO Box 1347
Wilmington, DE 19899-1347

### BY ELECTRONIC MAIL

Matthew D. Powers, Esquire
Jared Bobrow, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores parkway
Redwood Shores, CA 94065

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Adam W. Poff
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
apoff@ycst.com

*Attorneys for Boston Scientific Corporation and
Boston Scientific Scimed, Inc.*

# EXHIBIT K

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION  )
and BOSTON SCIENTIFIC SCIMED, INC., )
                               )
        Plaintiffs,      )
                               )
        v.            )     Civil Action No. 05-768 SLR
                               )
CONOR MEDSYSTEMS, INC.,    )
                               )
        Defendant.     )

## PLAINTIFFS' SUPPLEMENTAL OBJECTIONS
## AND RESPONSES TO CONOR INTERROGATORY NOS. 3, 5, 14 and 20

Pursuant to Federal Rules Of Civil Procedure 33 and 26(e) and Local Rule 26.1, and on the schedule set by the Court, Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") hereby make the following supplemental objections and responses to Defendant Conor Medsystems, Inc.'s ("Conor's") Interrogatory Nos. 3, 5, 14 and 20.

Pursuant to Federal Rule Of Civil Procedure 26(e), BSC reserves the right to supplement its responses to these interrogatories further as discovery in this action progresses.

## PLAINTIFFS' SUPPLEMENTAL GENERAL OBJECTIONS
## TO CONOR INTERROGATORY NOS. 3, 5, 14 and 20

The general objections set forth in Plaintiffs' Objections And Responses To

Conor's First Set Of Interrogatories ("General Objections") are hereby incorporated by reference

and made part of BSC's supplemental response to each interrogatory.

## PLAINTIFFS' SUPPLEMENTAL SPECIFIC OBJECTIONS AND RESPONSES TO CONOR INTERROGATORY NOS. 3, 5, 14 and 20

### INTERROGATORY NO. 3:

State in detail all facts that support or relate to your allegation that Conor is infringing the '021 Patent, including the contention that Conor is "making, using, offering to sell and/or selling some or all of the Accused Stents for subsequent commercial sale in India and other countries and/for [sic] the development and submission of information other than under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products."

### RESPONSE TO INTERROGATORY NO. 3:

BSC objects to this contention interrogatory as premature. BSC will answer this contention interrogatory in accordance with the Scheduling Order agreed to by the parties.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

BSC objects to this contention interrogatory as premature. Subject to this objection and its General Objections, and subject to further supplementation if BSC learns of additional facts during the discovery process, BSC responds that Conor has tested, used, manufactured, assembled, offered for sale and/or sold at least some of the accused CoStar and UniStar stents in the United States for commercial purposes and/or not solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products. Pursuant to Federal Rule of Civil Procedure 33(d), BSC further responds that information responsive to this interrogatory may be derived from documents produced to date by both parties.

### SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

BSC objects to this contention interrogatory to the extent that it calls for attorney work product or expert testimony. Subject to these objections and its General Objections, and

subject to further supplementation as discovery in this action progresses, BSC responds as follows:

The accused CoStar and UniStar stents share the same bare-metal stent architecture. *See* Conor Response to Interrogatory No. 5. BSC contends that the CoStar and UniStar stents infringe, at least literally, Claim 35 of the '021 patent, which depends from Claim 23.

Attached as Exhibit A is a chart comparing Claim 35 to the CoStar and UniStar stents, using the claim constructions for the '021 patent previously ordered by this Court in Civil Action No. 03-027-SLR. Attached as Exhibit B are Figures 1-3, which illustrate the architecture of the CoStar and UniStar stents and pictorially represent where each and every element of Claim 35 is located in those stents. As reflected in the chart and figures, the CoStar and UniStar stents meet each and every limitation of Claim 35, at least literally.

To date, Conor has failed to answer BSC's contention interrogatory regarding Conor's asserted non-infringement defense. To the extent Conor contends that any limitation of Claim 35 is not met literally by the CoStar and UniStar stents, BSC reserves the right to assert infringement under the doctrine of equivalents and to supplement this contention interrogatory response accordingly.

BSC further responds that Conor has tested, used, manufactured, assembled, offered for sale and/or sold at least some of the accused CoStar and UniStar stents in the United States for commercial purposes and/or not solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use or sale of drugs or veterinary biological products. For example, Conor has shipped, sold and/or consigned CoStar and/or UniStar stents manufactured and/or assembled the United States to

Conor's Ireland facility for subsequent commercial sale and/or use outside the United States. *See, e.g.,* CM 181821–181832. Conor has also manufactured CoStar and/or UniStar stents in the United States for subsequent commercial sale and/or use in clinical trials outside the United States. *See, e.g.,* Conor Response to Interrogatory Nos. 1 and 2; CM 188830; 18845–46. Conor has already admitted commercial manufacture of the accused CoStar and/or UniStar in the United States in its interrogatory responses, *see* Conor Response to Interrogatory Nos. 1 and 2, rendering Conor's continued assertion of a defense under 35 U.S.C. § 271(e)(1) baseless, vexatious and a proper basis for finding that this is an exceptional case under 35 U.S.C. § 285. Discovery regarding Conor's previously denied, but now admitted, commercial activities in the United States is ongoing.

## THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

BSC objects to this contention interrogatory to the extent that it calls for attorney work product or expert testimony. Subject to these objections and its General Objections, and subject to further supplementation as discovery in this action progresses, BSC responds as follows:

The accused CoStar and UniStar stents share the same bare-metal stent architecture. *See* Conor Response to Interrogatory No. 5. BSC contends that the CoStar and UniStar stents infringe, at least literally, Claim 35 of the '021 patent, which depends from Claim 23.

Attached as Exhibit A is a chart comparing Claim 35 to the CoStar and UniStar stents, using the claim constructions for the '021 patent previously ordered by this Court in Civil Action No. 03-027-SLR. Attached as Exhibit B are Figures 1-3, which illustrate the architecture of the CoStar and UniStar stents and pictorially represent where each and every element of

Claim 35 is located in those stents. As reflected in the chart and figures, the CoStar and UniStar stents meet each and every limitation of Claim 35, at least literally.

To date, Conor has failed to answer BSC's contention interrogatory regarding Conor's asserted non-infringement defense adequately. To the extent Conor contends that any limitation of Claim 35 is not met literally by the CoStar and UniStar stents and explains why, BSC reserves the right to assert infringement under the doctrine of equivalents and to supplement this contention interrogatory response accordingly.

To the extent that any limitation of Claim 35 is not met literally by the CoStar and UniStar stents, they meet these limitations under the doctrine of equivalents. For example, to the extent that the following limitations contained in Claim 35 are not met literally by the CoStar and UniStar stents, they meet these limitations under the doctrine of equivalents: "expansion strut"; "joining strut"; "connecting strut"; "corner"; "expansion column"; and "connecting strut column."

Reserving the right to further supplement its response to this contention interrogatory, BSC contends that to the extent that the structure identified as ES1-ES5 in Figures 1-3 of Exhibit B, which includes the area that Conor calls a "ductile hinge," is not found to meet the "expansion strut" limitation literally, that structure in CoStar and UniStar meets the "expansion strut" limitation of Claim 35 under the doctrine of equivalents. The structure identified as ES1-ES5 in CoStar and UniStar performs substantially the same function in substantially the same way to achieve substantially the same result as the "expansion strut" limitation of Claim 35.

Reserving the right to further supplement its response to this contention interrogatory, BSC also contends that to the extent that the structure identified as JS1-JS4 in Figures 1-3 of Exhibit B, which includes the area that Conor calls a "head," is not found to meet

the "joining strut" limitation literally, that structure in CoStar and UniStar meets the "joining strut" limitation of Claim 35 under the doctrine of equivalents. The structure identified as JS1-JS4 in CoStar and UniStar performs substantially the same function in substantially the same way to achieve substantially the same result as the "joining strut" limitation of Claim 35.

Reserving the right to further supplement its response to this contention interrogatory, BSC also contends that to the extent that the structure identified as CS1 in Figures 1-3 of Exhibit B, which Conor calls a "bridge portion," is not found to meet the "connecting strut" limitation literally, that structure in CoStar and UniStar meets the "connecting strut" limitation of Claim 35 under the doctrine of equivalents. The structure identified as CS1 in CoStar and UniStar performs substantially the same function in substantially the same way to achieve substantially the same result as the "connecting strut" limitation of Claim 35.

Reserving the right to further supplement its response to this contention interrogatory, BSC also contends that to the extent that the structure identified as C1 and C2 in Figures 1-3 of Exhibit B, is not found to meet the "corner" limitation literally, that structure in CoStar and UniStar meets the "corner" limitation of Claim 35 under the doctrine of equivalents. The structure identified as C1 and C2 in CoStar and UniStar performs substantially the same function in substantially the same way to achieve substantially the same result as the "corner" limitation of Claim 35.

Reserving the right to further supplement its response to this contention interrogatory, BSC also contends that to the extent that the structures identified as "first expansion column" and "second expansion column" in Figures 1-3 of Exhibit B are not found to meet the "expansion strut column" limitation literally, each of those structures in CoStar and UniStar meets the "expansion strut column" limitation under the doctrine of equivalents. Each of

the structures identified as "first expansion column" and "second expansion column" in Figures 1-3 performs substantially the same function in substantially the same way to achieve substantially the same result as the "expansion column" limitation of Claim 35.

Reserving the right to further supplement its response to this contention interrogatory, BSC also contends that to the extent that the structure identified as "first connecting strut column" in Figures 1-3 of Exhibit B is not found to meet the "first connecting strut column" limitation literally, that structure in CoStar and UniStar meets the "first connecting strut column" limitation under the doctrine of equivalents. The structure identified as "first connecting strut column" in Figures 1-3 performs substantially the same function in substantially the same way to achieve substantially the same result as the "expansion column" limitation of Claim 35.

BSC reserves the right to supplement this response further, including after Conor provides its overdue non-infringement contentions and after the Court provides its claim constructions.

BSC further responds that Conor has tested, used, manufactured, assembled, offered for sale and/or sold at least some of the accused CoStar and UniStar stents in the United States for commercial purposes and/or not solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use or sale of drugs or veterinary biological products. For example, Conor has shipped, sold and/or consigned CoStar and/or stents manufactured and/or assembled the United States to Conor's Ireland facility for subsequent commercial sale and/or use outside the United States. *See, e.g.,* CM 181821–181832. Conor has also manufactured CoStar and/or UniStar stents in the United States for subsequent commercial sale and/or use in clinical trials outside the United States. *See,*

*e.g.,* Conor Response to Interrogatory Nos. 1 and 2; CM 188830; 18845–46.  Conor has already

admitted commercial manufacture of the accused CoStar and/or UniStar in the United States in

its interrogatory responses, *see* Conor Response to Interrogatory Nos. 1 and 2, rendering Conor's

continued assertion of a defense under 35 U.S.C. § 271(e)(1) baseless, vexatious and a proper

basis for finding that this is an exceptional case under 35 U.S.C. § 285.

      BSC further responds that Conor's Vice President of Operations has testified to

Conor's significant and ongoing commercial activity in the United States.  Throughout 2005,

Conor electropolished stents at its Menlo Park, California facility and sent them to its Athlone,

Ireland facility for further production.  *See* J. Tillack February 13, 2007 Deposition Tr. at 40:23-

41:2 and 42:3-7; J. Tillack Deposition Exhibit 14.  These stents were then sold to Biotronik,

Conor's European distributor, and to IVT, Conor's distributor to non-European Union countries.

*See* J. Tillack Tr. at 131:20-132:19; J. Tillack Deposition Exhibit 18.  None of this activity is

exempt under 35 U.S. § 271(e)(1).  Mr. Tillack further testified that this activity may be ongoing.

*See* J. Tillack Tr. at 82:16-20.

## INTERROGATORY NO. 5:

      State what Boston Scientific contends or believes is the earliest priority date of
each asserted claim of the '021 Patent, and state all bases for such contention or belief.

## RESPONSE TO INTERROGATORY NO. 5:

      BSC objects to this contention interrogatory as premature.  BSC will answer this

contention interrogatory in accordance with the Scheduling Order agreed to by the parties.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

      BSC objects to this contention interrogatory as premature.  Subject to this

objection and its General Objections, BSC responds that the priority date of Claim 35 of the '021

patent is at least as early as April 26, 1996, the filing date of U.S. Provisional Application No.

60/017,484.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

BSC objects to this contention interrogatory as premature. Subject to this

objection and its General Objections, BSC states that the subject matter of Claim 35 of the '021

patent was conceived prior to April 26, 1996 and diligently reduced to practice no later than

April 26, 1996, the date U.S. Provisional Application No. 60/017,484 was filed.

## INTERROGATORY NO. 14:

State in detail all facts that support or relate to your allegation that Conor has
willfully infringed the '021 Patent, including the contention in paragraph 15 of Boston
Scientific's Complaint that "Conor has willfully infringed the '021 Patent."

## RESPONSE TO INTERROGATORY NO. 14:

BSC objects to this contention interrogatory as premature. BSC will answer this

contention interrogatory in accordance with the Scheduling Order agreed to by the parties.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:

BSC objects to this contention interrogatory as premature. Subject to this

objection and its General Objections, and subject to further supplementation if BSC learns of

additional facts during the discovery process, BSC responds as follows.

Conor has copied and otherwise infringed the '021 patent while on notice of the

'021 patent and with no reasonable good-faith basis for concluding that it does not infringe that

'021 patent. Conor began infringing the '021 patent while on notice of, *inter alia*, the *Cordis*

*Corp. v. Boston Scientific Corp.* action. Conor has made multiple design changes to the accused

stents over the years, but has never altered the aspects of its stent architecture that infringe and

10

copy the '021 patent. Conor continues to infringe and copy the '021 patent with full knowledge of the '021 patent and the infringing nature of its activities.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:

BSC objects to this contention interrogatory to the extent that it calls for attorney work product. Subject to this objection and its General Objections, and subject to further supplementation as discovery in this action progresses, BSC responds as follows:

BSC incorporates its Second Supplemental Response to Interrogatory No. 3 regarding infringement of Claim 35 of the '021 patent by the accused CoStar and UniStar stents. Conor has copied and otherwise infringed the '021 patent and/or its commercial embodiments while on notice of the '021 patent since at least 1999, with no reasonable good-faith basis for concluding that it does not infringe. *See* Conor Response to Interrogatory No. 16 (admitting that Conor has been aware of the '021 patent since 1999). Indeed, Conor has advised BSC that it will not be relying on any opinion of counsel as a defense to its willful infringement in this action.

In addition to its 8-year awareness of the '021 patent *per se*, Conor began infringing, and has continued to infringe, the '021 patent while on notice of, *inter alia*, Civil Action No. 03-027-SLR, in which the validity of the '021 patent was upheld by both a jury verdict and this Court's denial of Cordis' motion for judgment as a matter of law. *See* Conor's Response to Request For Admission No. 49.

In addition to the above, Conor has sought to copy commercial embodiments of the '021 patent. Among other examples, a visual comparison of the BX Velocity stent architecture previously found to infringe the '021 patent in Civil Action No. 03-027-SLR and the accused CoStar and UniStar stents confirms this copying.

In addition to the above, Conor has made multiple design changes to the accused CoStar and UniStar stents over the years, but has never altered the aspects of their stent

architecture that infringe the '021 patent and copy that patent and/or its commercial

embodiments. *See, e.g.,* CM 003282; 003292; 003295; 009886-009887; 003319-003320;

003321-003322; 003364-003365; 003366-003367 and 020458.

   Conor continues to infringe and copy the '021 patent with full knowledge of the

'021 patent and the infringing nature of its activities. To date Conor, has not cited any facts that

justify or otherwise explain its knowing, willful and wanton misappropriation of the benefits of

the '021 patent. To the extent Conor cites any such facts, if any such facts exist, BSC reserves

the right to further supplement its response to this interrogatory.

### THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:

   BSC objects to this contention interrogatory to the extent that it calls for attorney-

client privileged information and/or work product. Subject to this objection and its General

Objections, and subject to further supplementation as discovery in this action progresses, BSC

responds as follows:

   BSC incorporates by reference its Third Supplemental Response to Interrogatory

No. 3 regarding infringement of Claim 35 of the '021 patent by the accused CoStar and UniStar

stents. Conor has copied and otherwise infringed the '021 patent and/or its commercial

embodiments while on notice of the '021 patent since at least 1999, with no reasonable good-

faith basis for concluding that it does not infringe. *See* Response to Interrogatory No. 16

(admitting that Conor has been aware of the '021 patent since 1999); J. Shanley February 28,

2007 Deposition Tr. at 259:4-8 and 18-22 (admitting to, as early as July 2005, seeing the '021

patent, reading its abstract and looking at its drawings). Indeed, Conor has advised BSC that it

will not be relying on any opinion of counsel as a defense to its willful infringement in this

action.

Furthermore, as early as August 2005, Conor believed it faced "significant risks" with respect to patents held by third parties. *See* CM 001278; J. Shanley Tr. at 239:6-22. In particular, Conor believed that certain "Jang stent structure patents" held by BSC could have an "adverse effect" on Conor. *See* CM 001279; J. Shanley Tr. at 240:13-21. While Conor was engaged in litigation with BSC, Conor willfully destroyed documents relevant to this litigation, including without limitation documents related to its IDE application.

In addition to its 8-year awareness of the '021 patent *per se* and its knowledge that this patent could have an "adverse effect" on Conor, Conor began infringing, and has continued to infringe, the '021 patent while on notice of *inter alia,* Civil Action No. 03-027-SLR, in which the validity of the '021 patent was upheld by both a jury verdict and this Court's denial of Cordis' August 26, 2005 motion for judgment as a matter of law. *See* Conor's Response to Request for Admission No. 49; J. Shanley Tr. at 242:7-10.

In addition to the above, Conor has sought to copy commercial embodiments of the '021 patent. A visual comparison of the BX Velocity stent architecture previously found to infringe the '021 patent in Civil Action No. 03-027-SLR and the accused CoStar and UniStar stents confirms this copying. Furthermore, Conor admits to designing its own stents, including the accused stents, with BX Velocity in mind. *See* J. Shanley Tr. at 103:8-22 and 249:20-25. Conor admits to manufacturing BX Velocity "knock-offs" for its internal design purposes. *See* J. Shanley Tr. at 106:7-20. Conor measured, created engineering drawings for, and conducted fatigue tests on these BX Velocity "knock-offs" in order to inform its own stent designs. *See* J. Shanley Tr. at 208:14-16 and 244:11-248:5; CM 123829-123846; CM 123948-124262.

Other documents from Conor's design files leave no doubt that Conor copied BX Velocity when designing its stents. *See, e.g.,* CM 87273-274 and CM 009006 (showing

13

schematics of BX Velocity overlaid on top of various Conor stent designs); CM 123829-123846 (showing, in the same document, Conor's analysis of BX Velocity and its own internal designs); CM 124858-862 (showing, in the same document, a picture of a BX Velocity-like stent and Conor's own internal designs); J. Shanley Tr. at 250:22-13 and 252:10-25.

In addition to the above, Conor has made multiple design changes to the accused CoStar and UniStar stents over the years, but has never altered the aspects of their stent architecture that infringe the '021 patent and copy that patent and/or its commercial embodiments. *See, e.g.*, CM 003282; CM 003292; CM 003295;CM 009886-009887; CM 003319-003320; CM 003321-003322; CM 003364-003365; CM 003366-003367; CM 006890; CM 020458; CM 058215; CM 058476; CM090066; CM 107551; CM 118758; CM 118760; CM 118767; CM 118784; CM 118843; CM 118931; CM 119000; CM 123949; CM 123950; CM124264; CM 125112; CM 129935; BSC-C 085072.

Conor alleges that it could easily and successfully design a stent that would eliminate at least some infringing aspects of its stent design. *See* J. Shanley Tr. at 224:4-225:4. In fact, Conor has modified the design of its stents to avoid infringing other stent-related patents. *See* J Shanley Tr. at 232-21:23:19; CM 184740-741. Despite this, no design work has been done or is currently being done to modify Conor's stents to avoid infringing the '021 patent. *See* J. Shanley Tr. at 236:3-6 and 238:6-19.

Conor continues to infringe and copy the '021 patent with full knowledge of the '021 patent and the infringing nature of its activities. To date Conor, has not cited any facts that justify or otherwise explain its knowing, willful and wanton misappropriation of the benefits of the '021 patent. To the extent Conor cites any such facts, if any such facts exist, BSC reserves the right to further supplement its response to this interrogatory.

**INTERROGATORY NO. 20:**

State in detail all facts that support, relate to, or contradict Boston Scientific's allegation in its Fed. R. Civ. 26 Initial Disclosures that Boston Scientific is entitled to "an injunction pursuant to 35 U.S.C. § 283 to prevent Conor's future infringement of the '021 patent," including but not limited to what irreparable injury Boston Scientific would suffer as a result of Conor's alleged infringement, why monetary damages would be inadequate to compensate any injury Boston Scientific would suffer, why the public interest would not be disserved by a permanent injunction, and why an injunction would be warranted considering the balance of hardships between Boston Scientific and Conor.

**RESPONSE TO INTERROGATORY NO. 20:**

BSC objects to this interrogatory to the extent that it seeks information that is protected from discovery by the attorney-client privilege and/or work product doctrine. BSC further objects to this interrogatory to the extent that it calls for a legal conclusion. BSC further objects to this interrogatory as premature and seeking expert testimony. BSC will provide expert testimony in accordance with the Scheduling Order set by the Court.

Subject to these objections and its General Objections, and subject to further supplementation if BSC learns of additional facts during the discovery process, BSC responds as follows:

BSC would suffer irreparable injury as a result of Conor's infringement because, *inter alia*, the revenue generated by BSC's drug-eluting stents is critical to the financial viability of BSC and no other products can substitute for them. Sales of Conor's infringing product in the U.S. could potentially cause a significant reduction in sales of BSC's drug-eluting stents, which in turn could adversely affect BSC financially in incalculable ways. BSC could be put in a position where it has to reduce the amount of money spent on research, which would affect its long-term future. BSC's ability to continue employing the tens of thousands of people it currently employs could be adversely affected. BSC would also be irreparably harmed by the price erosion that could result from the sales of infringing stents. BSC would also be irreparably

15

harmed by the effect on its paclitaxel-eluting stents of having Conor also selling paclitaxel-eluting stents. Allowing Conor to sell its product will adversely affect the reputation of BSC's stents and damage the goodwill that BSC has developed for its stents, particularly if the clinical results of Conor stents are not as good as BSC's. BSC will also be irreparably harmed because Conor is a "free rider"—attempting to exploit the investment of approximately half a billion dollars that BSC has made in developing and testing its paclitaxel-eluting stents, while making little or no contribution of its own. Furthermore, it would take BSC years to develop a new drug for a drug-eluting stent product were Conor allowed to compete against it with infringing technology.

Monetary damages would not be adequate to compensate the injury BSC would suffer from Conor's infringement because no amount of money can compensate for the loss of BSC's reputation and goodwill. Nor would a royalty likely be sufficient to replace the profits that BSC would lose on its stents, thereby leaving BSC substantially worse off. Further, much of the financial damage that could accrue by allowing Conor to compete with an infringing stent, such as the impact on BSC's cost of debt or the impact of a reduction in market capitalization, is difficult to predict with certainty, thereby making monetary damages inadequate.

An injunction against the sale of Conor's products in the U.S. would not disserve the public interest because BSC's stents have been proven to be safe and effective, whereas Conor's stents have not. BSC stands behind a long history of solid clinical results in its drug-eluting stent program. Conor, in contrast, lacks reliable and verifiable clinical data to support its stents. Moreover, BSC is an important contributor to the U.S. health care system, and much of its research is funded by the proceeds of drug-eluting stent sales. If Conor's infringement is allowed, it is conceivable that BSC would have to reduce its substantial commitment to the

16

development of drug-eluting stents and other innovations. Further, Conor has failed to capture significant market share in Europe, showing that the market has so far indicated that it does not need Conor's infringing product, but does need BSC's products.

The balance of hardships between BSC and Conor warrants an injunction because Conor will not suffer any hardship from an injunction, which would merely preserve the status quo: Conor has no stent on the market in the United States. Johnson & Johnson, Conor's new owner, would suffer no harm because it bought Conor knowing full well that Conor's stents faced an injunction due to their infringement of the Jang patent—indeed, Johnson & Johnson's own stents have previously been found to infringe the Jang '021 patent at issue here. Moreover, Conor's stents are unlikely ever to reach even 1% of Johnson & Johnson's annual sales. In contrast, BSC would lose its prior investment, a significant percentage of its ongoing business and a significant portion of its goodwill if Conor were allowed to infringe. The hardship to BSC would be particularly acute if Conor infringes with a clinically inferior stent. Moreover, the equities are squarely on BSC's side, as both Conor and Johnson & Johnson have known of the Jang '021 patent for years, yet Conor chose not to redesign its stent and Johnson & Johnson chose to purchase Conor knowing of the litigation and knowing that the Jang patent had already been found to be both valid and infringed by Johnson & Johnson stents in a previous litigation.

BSC will supplement its response to this interrogatory as fact and expert discovery progresses in this action.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20:

BSC objects to this interrogatory to the extent that it seeks information that is protected from discovery by the attorney-client privilege and/or work product doctrine. BSC further objects to this interrogatory to the extent that it calls for a legal conclusion. BSC further

objects to this interrogatory as premature and seeking expert testimony. BSC will provide expert testimony in accordance with the Scheduling Order set by the Court.

Subject to these objections and its General Objections, and subject to further supplementation if BSC learns of additional facts during the discovery process, BSC responds as follows:

BSC incorporates by reference its Third Supplemental Response to Interrogatory No. 3 regarding infringement of Claim 35 of the '021 patent by the accused CoStar and UniStar stents and its Third Supplemental Response to Interrogatory No. 15 regarding Conor's willful infringement of Claim 35 of the '021 patent. BSC would suffer irreparable injury as a result of Conor's infringement because, *inter alia*, the revenue generated by BSC's drug-eluting stents is critical to the financial viability of BSC and no other products can substitute for them. Sales of Conor's infringing product in the U.S. could potentially cause a significant reduction in sales of BSC's drug-eluting stents, which in turn could adversely affect BSC financially in incalculable ways. BSC could be put in a position where it has to reduce the amount of money spent on research, which would affect its long-term future. BSC's ability to continue employing the tens of thousands of people it currently employs could be adversely affected. BSC would also be irreparably harmed by the price erosion that could result from the sales of infringing stents. BSC would also be irreparably harmed by the effect on its paclitaxel-eluting stents of having Conor also selling paclitaxel-eluting stents. Allowing Conor to sell its product will adversely affect the reputation of BSC's stents and damage the goodwill that BSC has developed for its stents, particularly if the clinical results of Conor stents are not as good as BSC's. BSC will also be irreparably harmed because Conor is a "free rider"—attempting to exploit the investment of approximately half a billion dollars that BSC has made in developing and testing its paclitaxel-

18

eluting stents, while making little or no contribution of its own. Furthermore, it would take BSC years to develop a new drug for a drug-eluting stent product were Conor allowed to compete against it with infringing technology.

Monetary damages would not be adequate to compensate the injury BSC would suffer from Conor's infringement because no amount of money can compensate for the loss of BSC's reputation and goodwill. Nor would a royalty likely be sufficient to replace the profits that BSC would lose on its stents, thereby leaving BSC substantially worse off. Further, much of the financial damage that could accrue by allowing Conor to compete with an infringing stent, such as the impact on BSC's cost of debt or the impact of a reduction in market capitalization, is difficult to predict with certainty, thereby making monetary damages inadequate.

An injunction against the sale of Conor's products in the U.S. would not disserve the public interest because BSC's stents have been proven to be safe and effective, whereas Conor's stents have not. BSC stands behind a long history of solid clinical results in its drug-eluting stent program. Conor, in contrast, lacks reliable and verifiable clinical data to support its stents. Moreover, BSC is an important contributor to the U.S. health care system, and much of its research is funded by the proceeds of drug-eluting stent sales. If Conor's infringement is allowed, it is conceivable that BSC would have to reduce its substantial commitment to the development of drug-eluting stents and other innovations. Further, Conor has failed to capture significant market share in Europe, showing that the market has so far indicated that it does not need Conor's infringing product, but does need BSC's products.

The balance of hardships between BSC and Conor warrants an injunction because Conor will not suffer any hardship from an injunction, which would merely preserve the status quo: Conor has no stent on the market in the United States. Conor's own statements confirm

that it would suffer no hardship in the event it were prohibited from using the CoStar design. For example, Conor alleges that it could modify the CoStar stent design if it so desired. *See* J. Shaney February 28, 2007 Deposition Tr. at 266:16-19. Conor further alleges that it could easily and successfully design a stent that would eliminate at least some infringing aspects of its stent design. *See* J. Shanley Tr. at 224:4-225:4. Nor would Johnson & Johnson, Conor's new owner, suffer any harm because it bought Conor knowing full well that Conor's stents faced an injunction due to their infringement of the Jang patent—indeed, Johnson & Johnson's own stents have previously been found to infringe the Jang '021 patent at issue here. Moreover, Conor's stents are unlikely ever to reach even 1% of Johnson & Johnson's annual sales. In contrast, BSC would lose its prior investment, a significant percentage of its ongoing business and a significant portion of its goodwill if Conor were allowed to infringe. The hardship to BSC would be particularly acute if Conor infringes with a clinically inferior stent. Moreover, the equities are squarely on BSC's side. Both Conor and Johnson & Johnson have known of the Jang '021 patent for years, yet Conor chose not to redesign its stent and instead willfully copied and otherwise infringed the '021 patent and/or its commercial embodiments. Furthermore, Johnson & Johnson chose to purchase Conor knowing of the litigation and knowing that the Jang patent had already been found to be both valid and infringed by Johnson & Johnson stents in a previous litigation.

BSC will supplement its response to this interrogatory as fact and expert discovery progresses in this action.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adam W. Poff*
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Adam W. Poff (I.D. #3990)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com

*Attorneys for Plaintiffs*

*Of Counsel:*

John M. Desmarais
Peter J. Armenio
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Dated: March 9, 2007

EXHIBIT A

CONOR'S COSTAR AND UNISTAR STENTS LITERALLY INFRINGE CLAIM 35 OF THE JANG '021 PATENT

| Claim Language | CoStar and UniStar Stents |
|---|---|
| 23.  A stent in a non-expanded state, | The CoStar and UniStar products are both stents that share the same bare-metal stent architecture (*see* Conor's Response to BSC Interrogatory No. 5) and are made and sold in a non-expanded state. |
| comprising: | |
| a first expansion column formed of a plurality of first expansion column strut pairs, a first expansion strut pair including a first expansion strut adjacent to a second expansion strut and a first joining strut that couples the first and second expansion struts at a proximal end of the first expansion strut pair, a second expansion strut pair including a third expansion strut adjacent to the second expansion strut and a second joining strut that couples the second and third expansion struts at a distal end of the second expansion strut pair, a third expansion strut pair including a fourth expansion strut adjacent to the third expansion strut and a third joining strut that couples the third and fourth expansion struts at a proximal end of the third expansion strut pair, a fourth expansion strut pair including a fifth expansion strut adjacent to the fourth expansion strut and a fourth joining strut that couples the fourth and fifth expansion struts at a distal end of the fourth expansion strut pair, | A "first expansion column" is shown in Fig. 1, which is comprised of a "plurality of first expansion column strut pairs" (ES1, ES2, and JS1; ES2, ES3, and JS2; ES3, ES4, and JS3; and ES4, ES5, and JS4).

A "first expansion strut pair" is shown in Fig. 1 as "first expansion strut" ES1 and "adjacent . . . second expansion strut" ES2.  Fig. 1 shows a "first joining strut" JS1 that "couples" these struts at a "proximal end of the first expansion strut pair."

A "second expansion strut pair" is shown in Fig. 1 as "third expansion strut" ES3 and "adjacent . . . second expansion strut" ES2.  Fig. 1 shows a "second joining strut" JS2 that "couples" these struts at a "distal end of the second expansion strut pair."

A "third expansion strut pair" is shown in Fig. 1 as "fourth expansion strut" ES4 and "adjacent . . . third expansion strut" ES3.  Fig. 1 shows a "third joining strut" JS3 that "couples" these struts at a "proximal end of the third expansion strut pair."

A "fourth expansion strut pair" is shown in Fig. 1 as "fifth expansion strut" ES5 and "adjacent . . . fourth expansion strut" ES4.  Fig. 1 shows a "fourth joining strut" JS4 that "couples" these struts at a "distal end of the fourth expansion strut pair." |

1

EXHIBIT A
CONOR'S COSTAR AND UNISTAR STENTS LITERALLY INFRINGE CLAIM 35 OF THE JANG '021 PATENT

| Claim Language | CoStar and UniStar Stents |
|---|---|
| a first expansion strut pair first corner formed where the first joining strut is coupled to the first expansion strut, and a first expansion strut pair second corner formed where the first joining strut is coupled to the second expansion strut, and a second expansion strut pair first corner formed where the second joining strut is coupled to the second expansion strut, and a second expansion strut pair second corner formed where the second joining strut is coupled to the third expansion strut, and a third expansion strut pair first corner formed where the third joining strut is coupled to the third expansion strut, and a third expansion strut pair second corner formed where the third joining strut is coupled to the fourth expansion strut, and a fourth expansion strut pair first corner formed where the fourth joining strut is coupled to the fourth expansion strut, and a fourth expansion strut pair second corner formed where the fourth joining strut is coupled to the fifth expansion strut; | The "first expansion column" is shown in Fig. 2 to have: a "first expansion strut pair first corner" C1 "formed where the first joining strut is coupled to the first expansion strut"; a "first expansion strut pair second corner" C2 "formed where the first joining strut is coupled to the second expansion strut"; a "second expansion strut pair first corner" C1 "formed where the second joining strut is coupled to the second expansion strut"; a "second expansion strut pair second corner" C2 "formed where the second joining strut is coupled to the third expansion strut"; a "third expansion strut pair first corner" C1 "formed where the third joining strut is coupled to the third expansion strut"; a "third expansion strut pair second corner" C2 "formed where the third joining strut is coupled to the fourth expansion strut"; a "fourth expansion strut pair first corner" C1 "formed where the fourth joining strut is coupled to the fourth expansion strut"; and a "fourth expansion strut pair second corner" C2 "formed where the fourth joining strut is coupled to the fifth expansion strut." |
| | All of the above "corners" in the CoStar/UniStar stents are formed where two surfaces (*i.e.*, the surfaces of the respective expansion struts and joining struts) meet to form an angle. |

2

EXHIBIT A

CONOR'S COSTAR AND UNISTAR STENTS LITERALLY INFRINGE CLAIM 35 OF THE JANG '021 PATENT

| Claim Language | CoStar and UniStar Stents |
|---|---|
| | |
| a second expansion column formed of a plurality of second expansion column strut pairs, a first expansion strut pair including a first expansion strut adjacent to a second expansion strut and a first joining strut that couples the first and second expansion struts at a proximal end of the first expansion strut pair, a second expansion strut pair including a third expansion strut adjacent to the second expansion strut and a second joining strut that couples the second and third expansion struts at a distal end of the second expansion strut pair, a third expansion strut pair including a fourth expansion strut adjacent to the third expansion strut and a third joining strut that couples the third and fourth expansion struts at a proximal end of the third expansion strut pair, a fourth expansion strut pair including a fifth expansion strut adjacent to the fourth expansion strut and a fourth joining strut that couples the fourth and fifth expansion struts at a distal end of the fourth expansion strut pair, | A "second expansion column" is represented in Fig. 1, which is comprised of a "plurality of second expansion column strut pairs" (ES1, ES2, and JS1; ES2, ES3, and JS2; ES3, ES4, and JS3; and ES4, ES5, and JS4).<br><br>A "first expansion strut pair" is shown in Fig. 1 as "first expansion strut" ES1 and "adjacent . . . second expansion strut" ES2. Fig. 1 shows a "first joining strut" JS1 that "couples" these struts at a "proximal end of the first expansion strut pair."<br><br>A "second expansion strut pair" is shown in Fig. 1 as "third expansion strut" ES3 and "adjacent . . . second expansion strut" ES2. Fig. 1 shows a "second joining strut" JS2 that "couples" these struts at a "distal end of the second expansion strut pair."<br><br>A "third expansion strut pair" is shown in Fig. 1 as "fourth expansion strut" ES4 and "adjacent . . . third expansion strut" ES3. Fig. 1 shows a "third joining strut" JS3 that "couples" these struts at a "proximal end of the third expansion strut pair."<br><br>A "fourth expansion strut pair" is shown in Fig. 1 as "fifth expansion strut" ES5 and "adjacent . . . fourth expansion strut" ES4. Fig. 1 shows a "fourth joining strut" JS4 that "couples" these struts at a "distal end of the fourth expansion strut pair." |

3

EXHIBIT A
CONOR'S COSTAR AND UNISTAR STENTS LITERALLY INFRINGE CLAIM 35 OF THE JANG '021 PATENT

| Claim Language | CoStar and UniStar Stents |
|---|---|
|  |  |
| a first expansion strut pair first corner formed where the first joining strut is coupled to the first expansion strut, and a first expansion strut pair second corner formed where the first joining strut is coupled to the second expansion strut, and a second expansion strut pair first corner formed where the second joining strut is coupled to the second expansion strut, and a second expansion strut pair second corner formed where the second joining strut is coupled to the third expansion strut, and a third expansion strut pair first corner formed where the third joining strut is coupled to the third expansion strut, and a third expansion strut pair second corner formed where the third joining strut is coupled to the fourth expansion strut, and a fourth expansion strut pair first corner formed where the fourth joining strut is coupled to the fourth expansion strut, and a fourth expansion strut pair second corner formed where the fourth joining strut is coupled to the fifth expansion strut; | The "second expansion column" is shown in Fig. 2 to have: a "first expansion strut pair first corner" C1 "formed where the first joining strut is coupled to the first expansion strut"; a "first expansion strut pair second corner" C2 "formed where the first joining strut is coupled to the second expansion strut"; a "second expansion strut pair first corner" C1 "formed where the second joining strut is coupled to the second expansion strut"; a "second expansion strut pair second corner" C2 "formed where the second joining strut is coupled to the third expansion strut"; a "third expansion strut pair first corner" C1 "formed where the third joining strut is coupled to the third expansion strut"; a "third expansion strut pair second corner" C2 "formed where the third joining strut is coupled to the fourth expansion strut"; a "fourth expansion strut pair first corner" C1 "formed where the fourth joining strut is coupled to the fourth expansion strut"; and a "fourth expansion strut pair second corner" C2 "formed where the fourth joining strut is coupled to the fifth expansion strut." <br><br> All of the above "corners" in the CoStar/UniStar stents are formed where two surfaces (*i.e.*, the surfaces of the respective expansion struts and joining struts) meet to form an angle. |
| a first connecting strut column formed of a plurality of first connecting struts, each connecting strut of the first connecting strut column including a connecting strut proximal section, a connecting strut distal section and a connecting strut intermediate section, | An exemplary "first connecting strut column" is shown in Fig. 3, which is comprised of "a plurality of first connecting struts." Fig. 3 shows that first connecting strut CS1 of the exemplary first connecting strut column has a "connecting strut proximal section" CSP1, "connecting strut intermediate section" CSI1 and "connecting strut distal section" CSD1. Fig. 3 also shows that second connecting strut CS2 of the exemplary first connecting strut column has a "connecting strut proximal section" CSP2, "connecting strut intermediate section" CSI2 and "connecting strut distal |

4

EXHIBIT A

CONOR'S COSTAR AND UNISTAR STENTS LITERALLY INFRINGE CLAIM 35 OF THE JANG '021 PATENT

| Claim Language | CoStar and UniStar Stents |
|---|---|
| | section" CSD2.<br><br>The pattern of expansion struts, connecting struts and joining struts represented in Figures 1~3 repeats itself circumferentially around the stent so the "first connecting strut column" is formed of at least two first connecting struts. |
| a first connecting strut proximal section is coupled to the joining strut of the second expansion strut pair of the first expansion strut column, and a first connecting strut distal section is coupled to the joining strut of the first expansion strut pair of the second expansion strut column, and a second connecting strut proximal section is coupled to the joining strut of the fourth expansion strut pair of the first expansion strut column, and a second connecting strut distal section is coupled to the joining strut of the third expansion strut pair of the second expansion strut column, | Fig. 3 shows an example of a "first connecting strut proximal section" CSP1 that is "coupled to the joining strut JS2 of the second expansion strut pair of the first expansion strut column" and a "first connecting strut distal section" CSD1 that is "coupled to the joining strut JS1 of the first expansion strut pair of the second expansion strut column." Fig. 3 also shows an example of a "second connecting strut proximal section" CSP2 that is "coupled to the joining strut JS4 of the fourth expansion strut pair of the first expansion strut column" and a "second connecting strut distal section" CSD2 that is "coupled to the joining strut JS3 of the third expansion strut pair of the second expansion strut column." |
| the first connecting strut intermediate section being non-parallel to the first connecting strut proximal and distal sections | Fig. 3 shows an exemplary "first connecting strut intermediate section" CSI1 that is " non-parallel to the first connecting strut proximal and distal sections" CSP1 and CSD1. |
| wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column. | As shown in Fig. 1, the "first expansion strut of the first column ES1 does not share a longitudinal axis with the second expansion strut in the second column ES2. " |

5

EXHIBIT A

CONOR'S COSTAR AND UNISTAR STENTS LITERALLY INFRINGE CLAIM 35 OF THE JANG '021 PATENT

| Claim Language | CoStar and UniStar Stents |
|---|---|
| | |
| 35. The stent of claim 23, wherein the first connecting strut proximal section is coupled to the first corner of the second expansion strut pair of the first expansion strut column, and the first connecting strut distal section is coupled to the second corner of the first expansion strut pair of the second expansion strut column, and the second connecting strut proximal section is coupled to the first corner of the fourth expansion strut pair of the first expansion strut column, and the second connecting strut distal section is coupled to the second corner of the third expansion strut pair of the second expansion strut column. | Fig. 3 shows that the "first connecting strut proximal section" CSP1 is "coupled to the first corner of the second expansion strut pair of the first expansion strut column" C1 and the "first connecting strut distal section" CSD1 is "coupled to the second corner of the first expansion strut pair of the second expansion strut column" C2.  Fig. 3 also shows that the "second connecting strut proximal section" CSP2 is "coupled to the first corner of the fourth expansion strut pair of the first expansion strut column" C1 and the "second connecting strut distal section" CSD2 is "coupled to the second corner of the third expansion strut pair of the second expansion strut column" C2. |

6

EXHIBIT B



# Figure 1

ES1: "first expansion strut"
ES2: "second expansion strut"
ES3: "third expansion strut"
ES4: "fourth expansion strut"
ES5: "fifth expansion strut"

JS1: "first joining strut"
JS2: "second joining strut"
JS3: "third joining strut"
JS4: "fourth joining strut"

# Figure 2



"first expansion column"    "first connecting strut column"    "second expansion column"

"proximal"    "distal"

1st pair
2nd pair
3rd pair
4th pair

1st pair
2nd pair
3rd pair
4th pair

C1: "first corner"
C2: "second corner"



# Figure 3

CS1: "first connecting strut"
CSP1: "first connecting strut proximal section"
CSI1: "first connecting strut intermediate section"
CSD1: "first connecting strut distal section"

CS2: "second connecting strut"
CSP2: "second connecting strut proximal section"
CSI2: "second connecting strut intermediate section"
CSD2: "second connecting strut distal section"

## CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on March 9, 2007, copies of the foregoing

document were served on the following counsel as indicated below:

### BY ELECTRONIC MAIL AND HAND DELIVERY

Steven J. Balick, Esquire
John G. Day, Esquire
Lauren E. Maguire, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

### BY ELECTRONIC MAIL AND U.S. MAIL

Gregory L. Diskant, Esquire
Eugene M. Gelernter, Esquire
Kathleen M. Crotty, Esquire
Scott W. Parker, Esquire
Ravi V. Sitwala, Esquire
Diana Breaux, Esquire
Patterson, Belknap, Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY  10036


Courtland L. Reichman, Esquire
King & Spalding
1180 Peachtree Street, NE
Atlanta, GA  30309

YOUNG CONAWAY STARGATT & TAYLOR, LLP


/s/ Adam W. Poff
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
apoff@ycst.com

*Attorneys for Boston Scientific Corporation and
Boston Scientific Scimed, Inc.*

# EXHIBIT L



Application No. 08/845,657
Page 3

a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair, a plurality of the second expansion strut pair forming a second expansion column;

a first connecting strut including a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section, the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column, a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column, [wherein a length of the first connecting strut proximal section is equal to a length of the first connecting strut distal section, and a length of] the first connecting strut intermediate section [is] being non-parallel to [greater than the length of] the first connecting strut proximal and distal sections, wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column.

2. (Amended) The stent of claim 1, wherein a spacing distance between the first expansion [column] strut pair and an adjacent first expansion [column] strut pair in the first expansion column are the same.

3. (Amended) The stent of claim 1, wherein a spacing distance between the second [column] expansion strut pair and an adjacent second [column] expansion strut pair in the second expansion column are different.

N:\PRIVATE\WPDOCS\PTO\ANG008.AMD

strut is coupled to the third expansion strut, and a third expansion strut pair first corner formed where the third joining strut is coupled to the third expansion strut, and a third expansion strut pair second corner formed where the third joining strut is coupled to the fourth expansion strut, and a fourth expansion strut pair first corner formed where the fourth joining strut is coupled to the fourth expansion strut, and a fourth expansion strut pair second corner formed where the fourth joining strut is coupled to the fifth expansion strut; and

a first connecting strut column formed of a plurality of first connecting struts, each connecting strut of the first connecting strut column including a connecting strut proximal section, a connecting strut distal section and a connecting strut intermediate section, a first connecting strut proximal section is coupled to the joining strut of the second expansion strut pair of the first expansion strut column, and a first connecting strut distal section is coupled to the joining strut of the first expansion strut pair of the second expansion strut column, and a second connecting strut proximal section is coupled to the joining strut of the fourth expansion strut pair of the first expansion strut column, and a second connecting strut distal section is coupled to the joining strut of the third expansion strut pair of the second expansion strut column, [wherein a length of the connecting strut proximal section is the same as a length of the connecting strut distal section and the connecting strut intermediate section has a length that is greater than the lengths of the connecting strut distal and proximal sections], the first connecting strut intermediate section being non-parallel to the first connecting strut proximal and distal sections, wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column.

A.3 Ind.

H:\PRIVATE\WPDOCS\PU\AMO\768.AMD

49

Application No. 08/845,657
Page 7

## REMARKS

The Examiner has objected to the disclosure because of informalities and typographical errors, and requires correction. The Examiner has also objected to dependent claims 3-6 because of informalities and requires correction. Applicant has amended the specification and claims 3-6 to overcome these grounds of objection.

Applicant thanks the Examiner for his indication that claims 4, 6, 19, 20, 22, 23, 31-38, 46-47, 51, 59, 63, 65, 74-75, 77-78 and 80-86 would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

Claims 1-3, 5, 7-18, 21, 24-30, 39-45, 48-50, 52-58, 60-62, 64, 66-73, 76 and 79 have been rejected under 35 U.S.C. § 102(b) as anticipated by EP 079067A2 ("Pinchasik, et al.). Claims 13-15 stand rejected under 35 U.S.C. § 103 as being obvious over Pinchasik et al. in view of EP 0679372A2 ("Lau, et al."). These grounds of rejection are respectively traversed.

The present invention is a stent with a first connecting strut with proximal, distal and intermediate sections. The intermediate section is non-parallel to the proximal and distal sections. Additionally, the stent has a first expansion strut of a first expansion strut pair in a first expansion column that has a longitudinal axis which is offset from a longitudinal axis of a first expansion strut of the second expansion strut pair in a second expansion column.

Pinchasik et al., fails to teach or suggest such a structure. Pinchasik et al., in combination with Lau et al., also fails to tach or suggest such a structure. Additionally, there is no suggestion or motivation to combine the teachings of Pinchasik et al., with Lau et al. to obtain the stent of the present invention.

H:\PEJ\VAJ\BWP\DOCS\P81\AMD2008.AMD

# EXHIBIT M

# REDACTED