# EXHIBITS 12 – 13

# REDACTED
# IN
# FULL

# Exhibit 14

G. David Jang, M.D.  1/9/2007
**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

---

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____

BOSTON SCIENTIFIC CORPORATION and )
BOSTON SCIENTIFIC SCIMED, INC.,   )
        Plaintiffs, )
        vs.       ) C.A. NO.
CONOR MEDSYSTEMS, INC.,   ) 05-768 (SLR)
        Defendant.  )
_____ )

THIS DEPOSITION IS CONFIDENTIAL
PURSUANT TO PROTECTIVE ORDER

Videotaped deposition of G. DAVID
JANG, M.D., taken at 2029 Century Park
East, 40th Floor, Los Angeles,
California, commencing at 8:13 A.M.,
Tuesday, January 9, 2007, before Paula
Anderson, RPR, CSR No. 8625.

Pages 1 - 291

---

Page 3

1   APPEARANCES OF COUNSEL (CONTINUED):
2
3       FOR THE WITNESS:
4
5           GIBSON, DUNN & CRUTCHER LLP
6           BY: WAYNE M. BARSKY, ESQ.
7               JOSHUA A. JESSEN, ESQ.
8           2029 Century Park East
9           40th Floor
10          Los Angeles, California  90067
11          wbarsky@gibsondunn.com
12
13      ALSO PRESENT:
14
15          LENA I. VINITSKAYA, ESQ.
16          ROBERT SPACH, VIDEOGRAPHER
17
18
19
20
21
22
23
24
25

---

Page 2

1   APPEARANCES OF COUNSEL:
2
3       FOR THE PLAINTIFFS:
4
5           KIRKLAND & ELLIS LLP
6           BY: PETER J. ARMENIO, ESQ.
7           153 East 53rd Street
8           New York, New York  10022
9           212/446-4960
10          parmenio@kirkland.com
11
12      FOR THE DEFENDANT:
13
14          WEIL, GOTSHAL & MANGES LLP
15          BY: JARED BOBROW, ESQ.
16          201 Redwood Shores Parkway
17          Redwood Shores, California  94065
18          650/802-3034
19          jared.bobrow@weil.com
20
21
22
23
24
25

---

Page 4

1       THE VIDEOGRAPHER: Good morning. Today is          8:10:30
2   Tuesday, January 9, 2007. The time is now             8:12:59
3   approximately 8:13 A.M. The location today is 2029    8:13:30
4   Century Park East in Los Angeles, California.         8:16:00
5       My name is Robert Spach, video specialist         8:21:49
6   consulted by the Legal Support Group located at 501
7   West Broadway, Suite 460 in San Diego, California.
8       This is case No. 05-768 (SLR) entitled
9   "Boston Scientific Corporation, et al., versus Conor
10  Medsystems, Incorporated." And the witness today
11  will be Dr. G. David Jang.                            8:22:30
12      And if I could please have counsel and all
13  present identify themselves for the record.
14  MR. BOBROW: Yes. Good morning. This is Jared
15  Bobrow. I'm with the law firm of Weil, Gotshal &
16  Manges. And I am representing Conor Medsystems. And
17  with me from Conor Medsystems is Lena Vinitskaya.
18      MR. BARSKY: Wayne Barsky and Joshua Jessen of
19  Gibson, Dunn & Crutcher, representing the witness.
20      MR. ARMENIO: Peter Armenio, Kirkland & Ellis,
21  representing the Boston Scientific entities.
22      THE VIDEOGRAPHER: The witness will now be sworn   8:23:00
23  in by the court reporter.
24  ///
25  ///

1 (Pages 1 to 4)

G. David Jang, M.D.  1/9/2007
CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 5

1        G. DAVID JANG, M.D.,
2    the witness, having been duly administered an oath
3    in accordance with CCP Section 2094, testified as
4    follows:
5
6            EXAMINATION
7    BY MR. BOBROW:
8    Q   Good morning, Dr. Jang.
9    A   Good morning.
10   Q   Am I pronouncing your last name correctly?        8:23:30
11   Is it Jang?
12   A   Yes, very well, Jang, yes.
13   Q   Thank you.  And thank you for coming here
14   this morning.  I appreciate it.
15       You understand that we are here for your
16   deposition in a case that is pending in Delaware
17   between Boston Scientific and Conor Medsystems?
18   A   That's what I was.
19   Q   And you understand that the patent at issue
20   in that case is the patent with the last three
21   numbers '021 on which you are the main inventor?
22   A   That's what I was recently told.
23   Q   You have had your deposition taken before;        8:24:00
24   correct?
25   A   Yes.

Page 6

1    Q   And certainly one time was in the case
2    between Boston Scientific and Cordis; is that right?
3    A   Yes, that is the main one.
4    Q   Have you been deposed besides in that case?
5    A   Not a patent case, I think.  Yes, it was
6    patent case, but it was an interference case, I
7    believe.  One of my patents was interfered with USCI,    8:24:30
8    I believe.  And that particular patent was at that
9    time licensed to USC — no, not USC.  ACS.  ACS
10   lawyers took me — it was about three- or four-hour
11   deposition.        8:25:00
12   Q   And when was that deposition?
13   A   I can't recall the year.  It was many years
14   ago, more than ten years ago.  It was in 1980's, I
15   believe.  I doubt it is 1990's.  Maybe late 1980's.
16   Q   Did that interference involve patents
17   relating to stents, or was it something else?
18   A   No.  It was balloon catheters.
19   Q   Balloon catheters?        8:25:30
20   A   Yes.
21   Q   Have you had your deposition taken in your
22   lawsuit that was filed against Boston Scientific
23   relating to the patent assignment issues?
24   A   Yes, that's true, yes.
25   Q   When was that deposition?

Page 7

1    A   When was it?  It must be — I want to forget
2    about it.  What was the date?
3    MR. BARSKY:  You can give Mr. Bobrow an estimate.
4    THE WITNESS:  Well, that was last month, wasn't
5    it?  I am just blacked out.  It is recently, very        8:26:00
6    recently.
7    Q   BY MR. BOBROW:  Any other depositions that
8    you've provided besides the two about which you have
9    testified so far?
10   A   I can't think of —
11   Q   Have you testified in a court of law, at a
12   trial?
13   A   I doubt.  I doubt it.  I don't think I ever
14   appeared in a court except during my divorce
15   finalization.  That was the only time I appeared in        8:26:30
16   court.  It was not testimony.
17   Q   Let me just go over a few of the ground
18   rules that apply for a deposition.  I will be brief
19   given the fact that you testified several times
20   before.
21       First of all, you understand that you are
22   under oath and sworn to testify fully and truthfully?
23   A   Yes.        8:27:00
24   Q   And as you can see and have observed, there
25   is a court reporter here who is taking down

Page 8

1    essentially a verbatim transcript of what we are
2    saying during the proceedings today.
3    A   Yes.
4    Q   A booklet will be prepared called a
5    transcript.  You will have an opportunity to review
6    that transcript — and we ask that you do so — under
7    Federal Rule 30, the Federal Rules of Civil
8    Procedure.  And obviously you can work with your
9    counsel on that.
10       But, of course, I will caution you that, if
11   you make substantive changes to the testimony, that        8:27:30
12   we would have an opportunity at the trial of this
13   matter to comment upon those changes.
14       Do you understand that?
15   A   I understand.
16   Q   If I ask you a question and you don't
17   understand it, please tell me, and I will try to
18   rephrase it.
19       If you answer the question that is asked,
20   it's assumed that you've understood it as asked.
21       Okay?
22   A   Okay.
23   Q   If you don't hear a question, please let me
24   know, and we can have the court reporter read it back
25   or I can restate it.

2 (Pages 5 to 8)

G. David Jang, M.D.   1/9/2007
CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 133

1    MR. BOBROW: I am asking about what is shown here
2  in this document.
3    THE WITNESS: Yes. The numbers are the way it is
4  written there as a prescription for electropolish.
5    Q  BY MR. BOBROW: You mentioned earlier that,
6  when I was asking some questions about the PSJ-6 and    12:00:00
7  the PSJ-14, that the width of the connectors were
8  different. And you provided some numbers.
9        Do you have any documents that you are aware
10  of or do you know of any documents that specify that
11  the thicknesses of the connectors as you -- are as
12  you described them for the PSJ-6 and PSJ-14?
13    MR. ARMENIO: Objection. Vague as to which    12:00:30
14  generation PSJ-6 and which generation PSJ-14 you are
15  talking about.
16    MR. BOBROW: Mr. Armenio, that's an improper
17  objection. You can object that it's vague, but you
18  don't need to coach.
19    MR. ARMENIO: It is not coaching. You are
20  trying to mislead, and I am pointing it out.
21    MR. BOBROW: No, I am not. No, I am not. It is
22  improper. Please stop.
23    THE WITNESS: For one thing, the comparison table
24  that we talked about earlier which model we used.
25  Because this picture is here did we compare this one

Page 134

1  to that one or not, that I cannot tell you.
2    Q  BY MR. BOBROW: I understand you. My    12:01:00
3  question isn't that. So I will try to restate my
4  question.
5        My question is, when you mentioned that the
6  widths -- when you were talking earlier about the
7  PSJ-6 and PSJ-14, you talked about the connector
8  being different widths.
9        I am simply asking are you aware of any
10  documents that reflect that different width?
11    MR. ARMENIO: Same objection.
12    THE WITNESS: I don't remember which document for
13  that particular comparison is available. I have no    12:01:30
14  idea. But I have made different tube thickness and
15  different tube -- I mean stent connector width many
16  times. Because I still have leftover tubes that are
17  about three or four different thickness and
18  diameters. And so as well as cutting stent
19  widths. I have cut dozens of different    12:02:00
20  prototypes.
21        And sometimes, particularly earlier stage,
22  you are experimenting. And you don't know really
23  what the width is necessary to balance out between
24  flexibility and radial strength. You cannot go too
25  thin. Then radial strength is weak. And the narrow

Page 135

1  fatigue will be increased. So those things you have    12:02:30
2  balance out.
3        Until you get there, I have cut some
4  connectors as wide as four thousandths of an inch as
5  well as three thousandths of an inch. It makes a big
6  difference. And the tube thickness was also very
7  different.
8    Q  BY MR. BOBROW: My question, I think, is a
9  little more straightforward. I am simply asking you,
10  as the person who was involved in designing these,    12:03:00
11  can you point me to a document that shows me those
12  different widths?
13    A  No, I don't have a document I can point to.
14    MR. ARMENIO: Same objections.
15    Q  BY MR. BOBROW: Turn, if you would, towards
16  the end of this document, the very last two pages,
17  10708 and 10709.
18    A  10708 and 10709 --
19    Q  And I am sorry. Let me make the record a    12:03:30
20  little bit clearer. It's on Conor Exhibit 11.
21    MR. BARSKY: The penultimate page of the exhibit
22  and what else?
23    MR. BOBROW: I would like to direct the witness's
24  attention to page 10708.
25    THE WITNESS: Yes.

Page 136

1    Q  BY MR. BOBROW: And that is headed "RUJ-1
2  Coronary Stent Platform."
3        Do you see that?
4    A  Right.
5    Q  And the RUJ appears to be, well, obviously
6  different letters than the PSJ.    12:04:00
7    A  I don't remember what does that stand for.
8    Q  It stands for reverse U design.
9    A  Reverse U. It could be. Reverse U.
10    Q  Is that consistent with your recollection?
11    A  It could be. It could be vaguely familiar.
12  But this one I discarded a long time ago.
13    Q  Why?
14    A  Why?
15    Q  Yes.
16    A  I didn't think this was -- some reason I did
17  not even apply patent.    12:04:30
18    Q  Why didn't you think it was a good design?
19    A  I don't know. I don't know. Here patent
20  not applied. And if you look at the next one, next
21  one, I did not patent apply either. I either didn't
22  like it, or, you know, some reason I was not
23  attracted to it. And I discarded it.
24        You have to also understand my first patent    12:05:00
25  application was not PSJ-Stent. It is a -- well, what

34 (Pages 133 to 136)

# Exhibit 15



## RUJ-1 Coronary Stent Platform

Circa: Mid 1997 / Patent not applied.

Invented & Designed By G. David Jang, MD

Intellectual Property of Boston Scientific Corporation

© BSC, 2002. All rights are reserved.

BSC - J 010708
HIGHLY CONFIDENTIAL



# RUJ-2 *Coronary Stent Platform*

Circa: Late, 1997 / Patent not applied.

Invented & Designed By G. David Jang, MD

Intellectual Property of Boston Scientific Corporation

© BSC, 2002, All rights reserved.

CONFIDENTIAL

ENGINEERING COPY

May contain Patentable Subject Matter and Trade Secrets

BSC - J 010709
HIGHLY CONFIDENTIAL

HIGHLY CONFIDENTIAL                    BSC-C 019843

# EXHIBIT 16

# REDACTED
# IN
# FULL

# Exhibit 17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORDIS CORPORATION,

                Plaintiff,

                v.                      C.A. No. 03-027-SLR

BOSTON SCIENTIFIC CORPORATION and
SCIMED LIFE SYSTEMS, INC.

                Defendants.

**OPENING BRIEF IN SUPPORT OF CORDIS' MOTION FOR JMOL
OR, IN THE ALTERNATIVE, A NEW TRIAL, ON INFRINGEMENT OF
THE JANG '021 PATENT UNDER THE CLAIM CONSTRUCTION
THAT BSC SUCCESSFULLY ADVOCATED IN ANOTHER COURT**

*Of Counsel*:

PATTERSON BELKNAP WEBB & TYLER LLP
Gregory L. Diskant
Eugene M. Gelernter
Kathleen M. Crotty
Ravi V. Sitwala
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

Dated: February 27, 2007

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Cordis Corporation*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

FACTS ....................................................................................................................... 2

    A.    Prior Proceedings in this Action ............................................................... 2

    B.    The California Case .................................................................................. 3

    C.    The Claim Construction that BSC Obtained in the
           California Case Precludes a Finding that the
           BX Velocity Infringes the '021 Patent ...................................................... 6

ARGUMENT:
           THIS COURT SHOULD ADOPT THE CLAIM
           CONSTRUCTION THAT BSC SUCCESSFULLY
           ADVOCATED IN THE CALIFORNIA CASE AND
           SHOULD ENTER JUDGMENT OF NONINFRINGEMENT
           BASED ON THAT CLAIM CONSTRUCTION ............................................ 10

    A.    The Court is Free to Revise its Interlocutory Ruling on Claim
           Construction At Any Time Prior to the Entry of Judgment ........................ 10

    B.    This Court Should Adopt the Constructions of "Expansion
           Column" and "Connecting Strut Column" that BSC
           Successfully Advocated in the California Case ........................................ 11

    C.    Principles of Judicial Estoppel Bar BSC from Disputing the
           Constructions of "Expansion Column" and "Connecting Strut
           Column" That it Successfully Advocated in the California Case ................ 14

    D.    The Claim Construction that BSC Obtained in the California
           Case Precludes a Finding that the BX Velocity has
           "Expansion Columns" or "Connecting Strut Columns" .............................. 17

    E.    At a Minimum, this Court Should Order a New
           Trial on Infringement ............................................................................. 19

CONCLUSION ......................................................................................................... 20

i

# TABLE OF AUTHORITIES

Page

## CASES

Antonious v. Spalding & Evenflo Companies, 44 F. Supp. 2d 732
(D. Md. 1998), aff'd in part & rev'd in part, 217 F.3d 849,
1999 WL 777450 (Fed. Cir. 1999).................................................................18

Armstrong World Industrial, Inc. v. Allibert, 1997 WL 793041
(E.D. Pa. Nov. 26, 1997).................................................................................15

Asyst Techs., Inc. v. Emtrak, Inc., 402 F.3d 1188 (Fed. Cir. 2005)...................19

Bateman v. Por-Ta Target, Inc., 2004 U.S. Dist. LEXIS 28487
(N.D. Cal. July 28, 2004), aff'd, 155 Fed. Appx. 511
(Fed. Cir. 2005)................................................................................................10

Boler Co. v. Watson & Chalin Mfg, Inc., 372 F. Supp. 2d 1013
(N.D. Ohio 2004) ................................................................................. 15, 16-17

Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003)................................................19

C.R. Bard, Inc. v. United States Surgical Corp., 388 F.3d 858
(Fed. Cir. 2004)................................................................................................12

Cabot Safety Intermediate Corp. v. Howard S. Leight & Assocs., Inc.,
992 F. Supp. 463 (D. Mass. 1998) .............................................................16, 17

Freeman v. Gerber Products Co., 396 F. Supp. 2d 1260 (D. Kan. 2005)...........10

Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.,
2002 WL 10479 (S.D.N.Y. Jan 3, 2002) .......................................................11

Jack Guttman, Inc. v. KopyKake Enterprises, Inc., 302 F.3d 1352
(Fed. Cir. 2002)................................................................................................11

Johns Hopkins University v. Cellpro, 931 F. Supp. 303 (D. Del. 1996),
aff'd in pertinent part, vacated on other grounds, 152 F.3d 1342
(Fed. Cir. 1998)..........................................................................................11, 18

Kinik Co. v. Int'l Trade Comm'n, 362 F.3d 1359 (Fed. Cir. 2004)...................14

Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996) ...................12, 15

### TABLE OF AUTHORITIES
(continued)

Page

Markman v. Westview Instruments, Inc., 772 F. Supp. 1535
    (E.D. Pa. 1991), aff'd, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*),
    aff'd, 517 U.S. 370 (1996)............................................................................11

MicroStrategy, Inc. v. Business Objects, S.A., 429 F.3d 1344
    (Fed. Cir. 2005)........................................................................................19

Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091
    (Fed. Cir. 2000)........................................................................................18

New Hampshire v. Maine, 532 U.S. 742 (2001) .............................................15

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005)........................1, 2, 5, 14

Talavera v. School Board of Palm Beach County, 129 F.3d 1214
    (11th Cir. 1997)........................................................................................16

Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193
    (Fed. Cir. 2002)....................................................................................5, 14

Transclean Corp. v. Jiffy Lube International, Inc., 474 F.3d 1298
    (Fed. Cir. 2007)..................................................................................15, 16

UTStarcom, Inc. v. Starent Networks Corp., 2005 WL. 3299714
    (N.D. Cal. Dec. 6, 2005) ...........................................................................18

## INTRODUCTION

While BSC has been asserting in this case that Cordis' BX Velocity stent infringes the Jang '021 patent, it simultaneously has been defending a case in California in which Dr. Jang alleged that his '021 patent covers BSC's Express stent, thereby entitling him to a substantial payment from BSC. To avoid liability in the California case, BSC – without informing this Court – advocated and obtained a claim construction in the California case that precludes a finding of infringement in this action.

In particular, BSC argued in the California case that under Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*): (1) the term "expansion column" in the '021 patent must be construed to mean "a tubular structure formed *solely* by a plurality of expansion strut pairs…," and (2) the term "connecting strut column" must be construed to mean a structure "formed *solely* of a plurality of connecting struts ….." Ex. C at 3 (emphasis added). For both terms, the court in the California case adopted the construction that BSC advocated. That construction compelled a decision in BSC's favor because the connecting struts in BSC's Express stent partially overlap with the columns formed by the expansion strut pairs, thus precluding a finding that the Express has "expansion columns" formed "solely" of expansion strut pairs or a "connecting strut column" formed "solely" of connecting struts. Dr. Jang recognized the consequences of this claim construction and stipulated to partial summary judgment in BSC's favor after the claim construction ruling.

The same claim construction also precludes a finding of infringement in this case. In the BX Velocity stent as in the Express stent, a portion of each connecting strut lies in the column formed by the expansion strut pairs. Because of this overlap, the BX Velocity lacks "expansion columns" formed "solely" of expansion strut pairs and lacks a "connecting strut column" formed "solely" of connecting struts, as required under the construction that BSC

obtained in the California case. Having advocated and obtained that construction in the California case, BSC cannot escape its consequences here.

   Cordis respectfully requests this Court to issue an order adopting the claim construction that BSC obtained in the California case, and entering judgment as a matter of law under that construction, dismissing BSC's allegations of infringement. Any other result would lead to terms in the '021 patent ("expansion column" and "connecting strut column") having different meanings in this Court and in the Central District of California, and would allow BSC to avoid the impact of the claim construction it obtained in the California case.

## FACTS

### A. Prior Proceedings in this Action

   In this action, BSC alleges that Cordis' BX Velocity stent infringes claim 36 of the Jang '021 patent.

#### 1. This Court's Ruling on Claim Construction

   This Court issued an order on claim construction on June 3, 2005, D.I. 334, six weeks before the Federal Circuit issued its *en banc* decision in <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303 (Fed. Cir. 2005). Relying on Federal Circuit precedent that was in force at the time, this Court construed "a first connecting strut column formed of a plurality of first connecting struts" to mean "a column formed of at least two first connecting struts." The parties did not seek a construction of "expansion column" and the Court did not construe that phrase.

#### 2. Trial and Post-Trial Events

   At trial, BSC's expert asserted that the BX Velocity literally has every limitation of claim 36, including a first "expansion column," a second "expansion column" and a "connecting strut column." D.I. 388 at Tr. 1016:11-17, 1018:10-12, 1024:22-1025:3, 1029:10-15, Tr. 1030:8-19.

On July 1, 2005, the jury returned a verdict that Cordis' BX Velocity stent does not have "corners" as required by claim 36, and thus does not literally infringe that claim. However, the jury did find infringement under the doctrine of equivalents.

On May 11, 2006, this Court denied Cordis' renewed motion for JMOL or, in the alternative, a new trial. D.I. 416, D.I. 417. On May 25, 2006, Cordis moved for reconsideration of that decision. D.I. 418, D.I. 419, D.I. 422. Cordis' motion for reconsideration is currently pending and judgment has not been entered.

**B.    The California Case**

On May 19, 2005 – shortly before the trial in this case – the inventor of the '021 patent, Dr. David Jang, commenced an action in U.S. District Court for the Central District of California captioned <u>Jang v. Boston Scientific Corp.</u>, Case No. EDCV 05-426 (VAP) (SGLx) (the "California case"). In the California case, Jang alleged, *inter alia*, that the Express stent is covered by the '021 patent – the same patent that BSC asserts against Cordis in this case – and that BSC accordingly is contractually obligated to pay him royalties on sales of the Express stent. <u>See</u> Ex. A, ¶¶ 14-17, 22. In an answer filed on June 24, 2005, BSC denied that the '021 patent covers the Express stent and asserted counterclaims seeking a declaratory judgment to that effect. Ex. B.

An engineering drawing of BSC's Express stent is shown below, with expansion strut pairs colored green and connecting struts colored red:

3



As shown in this graphic, a portion of each connecting strut in the Express stents lies in the column formed by a plurality of expansion strut pairs.

### 1. BSC's Position on Claim Construction in the California Case

In the California case, BSC argued that the term "expansion column" should be construed to mean "a tubular structure formed *solely* by a plurality of expansion strut pairs arranged in a column along the circumference of the stent ...," and that "connecting strut column" should be construed to mean a column "formed *solely* of a plurality of connecting struts ...." Ex. C at 3 (emphasis added).

At the time BSC requested this claim construction, Cordis' initial motion for JMOL of noninfringement was pending before this Court. Although the claim construction that BSC was advocating in the California case precludes a finding that the BX Velocity infringes the '021 patent, BSC did not tell this Court about the construction it was seeking in the California case. Instead, it sought and obtained that construction without informing this Court.

Dr. Jang advocated a different construction, which would have permitted the presence of structure in the "expansion columns" in addition to expansion strut pairs and would have permitted the presence of structure in the "connecting strut columns" in addition to connecting struts. BSC argued that Dr. Jang's proposed construction "erased th[e] crucial

4

distinction between the expansion columns and connecting columns," Ex. D at 2, and would

render the '021 patent invalid over the prior art. BSC told the court that the '021 patent was

"quite clear that the expansion column is made of expansion strut pairs, not other kinds of struts."

Id. at 24. As BSC told the California court, the '021 patent "establish[es] unequivocally that the

'connecting strut columns' contain 'connecting struts,' not 'expansion struts' (which are contained

in the 'expansion columns')." Id. at 29.

In offering these arguments, BSC relied heavily on the *en banc* decision in

Phillips, 415 F.3d 1303, which post-dated both the claim construction ruling and trial in this

case. BSC argued that Jang's claim construction was based on the approach followed in Texas

Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193 (Fed. Cir. 2002), which Phillips overruled.

See Ex. D at 24-25, 29-35; Ex. E at 8-15.

### 2.    The California Court's Claim Construction

The court in the California case adopted BSC's proposed constructions of

"expansion column" and "connecting strut column" in a decision dated August 24, 2006. Ex. F

at 5-12.

With respect to the construction of "expansion column," the court stated that

"[t]he Summary of the Invention ... mentions only expansion strut pairs – and no other structural

member – in the description of the expansion columns." Ex. F at 6. The court agreed with BSC

that "all of the references to 'expansion columns' ... mention only expansion strut pairs," id., and

"nowhere does the patent describe any other structural member [aside from expansion strut pairs]

contained in the expansion columns." Id. at 8. For these reasons, the court "adopt[ed] [BSC's]

proposed construction [of expansion columns]." Id.

The California court also adopted BSC's proposed construction of "connecting

strut column." It agreed with BSC that "the specification[], illustrations, and Summary of the

Invention all uniformly and consistently show and define the connecting strut columns as composed only of connecting strut[s]." Id. at 11-12. The court concluded that "the authorities cited above [including Phillips] support [BSC's] proposed construction." Id. at 12.

### 3.    The Stipulation to Partial Summary Judgment in BSC's Favor

The claim construction that BSC obtained in the California case precluded a finding that the Express stent is covered by the '021 patent because (1) the columns in the Express stent that correspond to "expansion columns" are not formed "*solely* by a plurality expansion strut pairs" and (2) the columns that correspond to "connecting strut columns" are not formed "*solely* of a plurality connecting struts." In recognition of this fact, Jang stipulated to partial summary judgment dismissing his claims that the Express stent is covered by his '021 patent, while preserving his right to appeal from the claim construction. Pursuant to the parties' stipulation, partial summary judgment in BSC's favor on that issue was entered on September 18, 2006. Ex. G.

Counsel for Cordis recently learned that BSC and Dr. Jang have reached an agreement in principle to settle the California case.

### C.    The Claim Construction that BSC Obtained in the California Case Precludes a Finding that the BX Velocity Infringes the '021 Patent

Under the claim construction that BSC obtained in the California case, the '021 patent does not cover the BX Velocity for the same reasons that it does not cover BSC's Express stent. In both the Express stent and the BX Velocity, there is an overlap between the connecting struts and the columns formed by the expansion strut pairs. Because of this overlap, the BX Velocity does not have "expansion columns" that are formed "*solely* by a plurality of expansion strut pairs" and does not have "connecting columns" that are formed "*solely* of a plurality of

6

connecting struts." This is readily apparent from the graphic that BSC's expert provided in his expert report to illustrate his infringement analysis[1]:



It also is clear from the demonstratives that BSC's expert used in his trial testimony, which are shown below:

---

[1] For ease of understanding, the boundary between the "expansion columns" and "connecting strut column" that BSC's expert created at the top of this graphic has been extended by dotted lines.

## BX Velocity Has A First Expansion Column

23. A stent in a non-expanded state, comprising:

a first expansion column formed of a plurality of first expansion column strut pairs, a first expansion strut pair including a first expansion strut adjacent to a second expansion strut and a first joining strut that couples the first and second expansion struts at a proximal end of the first expansion strut pair, a second expansion strut pair including a third expansion strut adjacent to the second expansion strut and a second joining strut that couples the second and third expansion struts at a distal end of the second expansion strut pair, a third expansion strut pair including a fourth expansion strut adjacent to the third expansion strut and a third joining strut that couples the third and fourth expansion struts at a proximal end of the third expansion strut pair, a fourth expansion strut pair including a fifth expansion strut adjacent to the fourth expansion strut and a fourth joining strut that couples the fourth and fifth expansion struts at a distal end of the fourth expansion strut pair...



## BX Velocity Has A Second Expansion Column

23. A stent in a non-expanded state, comprising:

...a second expansion column formed of a plurality of second expansion column strut pairs, a first expansion strut pair including a first expansion strut adjacent to a second expansion strut and a first joining strut that couples the first and second expansion struts at a proximal end of the first expansion strut pair, a second expansion strut pair including a third expansion strut adjacent to the second expansion strut and a second joining strut that couples the second and third expansion struts at a distal end of the second expansion strut pair, a third expansion strut pair including a fourth expansion strut adjacent to the third expansion strut and a third joining strut that couples the third and fourth expansion struts at a proximal end of the third expansion strut pair, a fourth expansion strut pair including a fifth expansion strut adjacent to the fourth expansion strut and a fourth joining strut that couples the fourth and fifth expansion struts at a distal end of the fourth expansion strut pair...





As shown in these demonstratives, part of each connecting strut in the BX Velocity lies in the column formed by the "expansion strut pairs." Likewise, a portion of the "expansion strut pairs" lies in the column formed by the connecting struts. This overlap precludes a finding that the BX Velocity has "expansion columns" formed "*solely* by a plurality of expansion strut pairs" or "connecting columns" formed "*solely* of a plurality of connecting struts," as required by the claim construction that BSC obtained in the California case.

## ARGUMENT

### THIS COURT SHOULD ADOPT THE CLAIM CONSTRUCTION THAT BSC SUCCESSFULLY ADVOCATED IN THE CALIFORNIA CASE AND SHOULD ENTER JUDGMENT OF NONINFRINGEMENT BASED ON THAT CLAIM CONSTRUCTION

To avoid liability to Dr. Jang in the California case, BSC sought and obtained a claim construction that defines an "expansion column" as formed "*solely* by a plurality of expansion strut pairs" and defines a "connecting strut column" as formed "*solely* of a plurality of connecting struts." Having benefited from the construction it advocated in the California case, BSC cannot avoid its impact here. BSC should not be heard to argue that "expansion columns" can include structures in addition to "expansion strut pairs," or that "connecting strut columns" can include structures in addition to "connecting struts."

When the construction that BSC obtained is applied to the BX Velocity, it precludes a finding of infringement because part of each connecting strut lies in a column formed by the expansion strut pairs, creating an overlap between the columns formed by the expansion strut pairs and the columns formed by the connecting struts. This Court should revise its claim construction to adopt the construction that BSC successfully advocated in the California case, and should grant JMOL of noninfringement based on that construction.

### A.    The Court is Free to Revise its Interlocutory Ruling on Claim Construction At Any Time Prior to the Entry of Judgment

Courts have recognized that Markman rulings are "purely interlocutory," and that district courts accordingly "ha[ve] discretion to review the claims construction at any time before final adjudication." Bateman v. Por-Ta Target, Inc., 2004 U.S. Dist. LEXIS 28487 (N.D. Cal. July 28, 2004), aff'd, 155 Fed. Appx. 511 (Fed. Cir. 2005); see also Freeman v. Gerber Prods. Co., 396 F. Supp. 2d 1260, 1261 (D. Kan. 2005) ("This case has not yet proceeded to the stage where a final judgment has been entered. Thus, this court's order construing the claims of the

10

patent was an interlocutory order that this court has the inherent power to reconsider and modify."); <u>Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.</u>, 2002 WL 10479, at *5 (S.D.N.Y. Jan 3, 2002) ("<u>Markman</u> decisions are interlocutory. Interlocutory decisions are subject to revision any time before a final judgment is rendered.") (citations omitted); <u>United States v. Jerry</u>, 487 F.2d 600, 605 (3d Cir. 1973) ("[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so."); <u>Jack Guttman, Inc. v. KopyKake Enters., Inc.</u>, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.").

Courts may revise their <u>Markman</u> rulings after a jury verdict. Indeed, <u>Markman</u> itself was a case in which the district court adopted a claim construction after the jury verdict and granted JMOL based on that claim construction. <u>See</u> <u>Markman v. Westview Instruments, Inc.</u>, 772 F. Supp. 1535 (E.D. Pa. 1991), <u>aff'd</u>, 52 F.3d 967 (Fed. Cir. 1995) (<i>en banc</i>), <u>aff'd</u>, 517 U.S. 370 (1996). Similarly, in <u>Johns Hopkins Univ. v. Cellpro</u>, 931 F. Supp. 303, 317-20 (D. Del. 1996), <u>aff'd in pertinent part, vacated in part on other grounds</u>, 152 F.3d 1342, 1354-56 (Fed. Cir. 1998), this Court "revisit[ed]" its claim construction after a jury verdict, adopted a new construction and granted JMOL in light of its revised construction. The claim construction that BSC sought and obtained in the California case makes the same relief appropriate here.

**B.     This Court Should Adopt the Constructions of "Expansion Column" and "Connecting Strut Column" that BSC Successfully Advocated in the California Case**

The Court should adopt the constructions of "expansion column" and "connecting strut column" that BSC advocated and obtained in the California case. Doing so would serve the important purpose – identified by the Supreme Court in <u>Markman</u> – of promoting "uniformity in

11

the treatment of a given patent ...."  Markman v. Westview Instruments, Inc., 517 U.S. 370, 390

(1996).  Any other result would lead to an untenable situation where these terms in the '021

patent have one meaning in the Central District of California and a different meaning here.

       In its Markman submissions in the California case, BSC explained why its

proposed constructions of "expansion column" and "connecting strut column" are correct and

consistent with the now-controlling authority of the *en banc* decision in Phillips.  For example, in

explaining that "The 'Expansion Column' Is Composed Solely Of Expansion Strut Pairs," BSC

stated:

> Boston Scientific and Dr. Jang ... disagree as to whether the claimed
> "expansion column" can contain structural members – *i.e.*, struts – other
> than those in the "expansion strut pairs. ***The Jang patents are quite clear
> that the expansion column is made of expansion strut pairs, not other
> kinds of struts***:
>
>> A plurality of the first expansion strut pair form a first expansion
>> column ...
>>
>> A plurality of the second expansion pair form a second expansion
>> column ...
>>
>> ....
>
> '743 patent, Col. 3, lines 40-41, 46-48 ....[2]  Nowhere do the Jang patents
> even hint that an expansion column can contain the only other kind of strut
> identified in the claims – a "connecting strut."
>
> It is important to note, in this regard, that the preceding definition of
> "expansion column" is drawn, not from a description of a particular
> embodiment, but from the "Summary of the Invention."  *See C.R. Bard,
> Inc. v. United States Surgical Corp.*, 388 F.3d 858, 864-66 (Fed. Cir.
> 2004) (explaining that statements describing the invention in the Summary
> of Invention are particularly likely "to support a limiting definition of a
> claim term" insofar as they "describe the invention as whole," rather than a

---

[2] As BSC told the California court, "the '743 patent and the '021 patent were both based upon
Provisional Application No. 60/1017,484 ... [and] share, almost entirely, the same description
and Figures, as well as many of the same elements and claim terms."  Ex. D at 1 n.3.  The
passages from the '743 patent that are quoted above appear in the Jang '021 patent at 3:53-54,
3:59-60.

mere embodiment); *Bell Atlantic Network Servs. Inc. v. Covad Communications Group*, 262 F.3d 1258, 1275 (Fed. Cir. 2001) (where summary of invention defined term to include limitation, same term in claim was properly interpreted to include limitation); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1343 (Fed. Cir 2001) (characterization of "invention" in summary of invention as having particular configuration was "strong evidence" that the claimed invention required that configuration). This definition is, moreover, consistent with every description of "expansion column" in the patents.

Ex. D at 24-25 (footnotes omitted) (emphasis added).

BSC was equally forceful in explaining that "The 'Connecting Strut Columns' Do Not Contain Expansion Struts Or Expansion Strut Pairs." As BSC told the California court:

> ***Nor can Dr. Jang justifiably assert that the claimed "connecting strut columns" may contain other structural elements – i.e., expansion struts and/or expansion strut pairs.*** The Jang patents establish unequivocally that the "connecting strut columns" contain "connecting struts," not "expansion struts" (which are contained in the "expansion columns"). *See* '021 patent, col. 6, lines 14-16 ("Connecting struts 38 connect adjacent expansion columns 24 forming a series of interspersed connecting strut columns 26 each extending around the circumference of stent 10."); col. 3, lins 40-41, 46-48, 54-57, 61-62 and col. 4, lines 2-5. As demonstrated in Figure 8, *supra*, and the other Figures reproduced above, there is not a single depiction of the Jang stent that show anything but "connecting struts" in the claimed "connecting strut columns." Accordingly, Dr. Jang cannot assert a broader meaning for "connecting strut column," under which the claimed column could include "expansion struts" or "expansion strut pairs."

Ex. D at 29-30 (footnote omitted) (emphasis added).

BSC also relied upon the following description of the "connecting strut columns," which appears in the '021 specification's "Summary of the Invention" at 3:53-4:3:

> A plurality of the first expansion strut pair form a first expansion column …. A plurality of the second expansion pair form a second expansion column … A plurality of the first connecting struts form a first connecting strut column that couples the first expansion column to the second expansion column ….

BSC argued that the above "definitions are from the 'Summary of the Invention,' and thus are dispositive under the authorities cited above [including <u>Phillips</u>]." Ex. D at 29-30, n.15.

13

BSC criticized the construction that Dr. Jang advocated, which would permit an overlap between the columns formed by the "expansion strut pairs" and the "connecting struts," as "effectively erasing any distinction between a 'connecting strut column' and an 'expansion column ....'" Id. at 30. BSC argued that Dr. Jang's proposed construction would "render the differences between the claim terms meaningless. Ex. E at 4.

For both the "expansion columns" and the "connecting strut columns," BSC emphasized that its claim construction was required by controlling *en banc* authority of Phillips, which was decided *after* this Court ruled on claim construction in June 2005. Thus, BSC told the court in the California case (Ex. E at 2):

> Boston Scientific's proposed claim constructions are based on the approach set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), the landmark decision in which the Federal Circuit clarified the manner in which claims should be construed. In *Phillips*, the Federal Circuit declared that "[t]he words of the claims must be based on the description." *Id.* at 1315 (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)). Thus, "[t]he words of patent claims have the meaning and scope with which they are used in the specification and the prosecution history." *Id.* (quoting *Kinik Co. v. Int'l Trade Comm'n*, 362 F.3d 1359, 1365 (Fed. Cir. 2004)).

BSC criticized Dr. Jang's approach as "substantially the same as the one advocated in *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), which was expressly rejected by the Federal Circuit in *Phillips*." (Ex. E at 2).

C.    **Principles of Judicial Estoppel Bar BSC from Disputing the Constructions of "Expansion Column" and "Connecting Strut Column" That it Successfully Advocated in the California Case**

BSC cannot dispute the constructions of "expansion column" and "connecting strut column" that it advocated and obtained in the California case. Having asserted in the California case that "expansion columns" must be formed "*solely* of a plurality of expansion strut pairs" and that a "connecting strut column" must be formed "*solely* of a plurality of connecting

14

struts" – thereby taking its Express stent outside the scope of the '021 claims – BSC cannot turn around and assert the opposite in this case. It cannot contend that the "expansion columns" in the BX Velocity may include other structure besides "expansion strut pairs" or that its "connecting strut columns" may include other structure besides "connecting struts."

Permitting BSC to advocate one construction to avoid infringement in California and a different construction to cover the BX Velocity in this Court would frustrate the important goal of promoting "uniformity in the treatment of a given patent ...." Markman, 517 U.S. at 390. It also would invite the kind of abuse that the doctrine of judicial estoppel is designed to prevent.

The doctrine of judicial estoppel exists to ensure that litigants "do not gain an advantage in one proceeding by taking one position, and then obtain an advantage in a concurrent or subsequent proceeding by adopting an inconsistent position." Armstrong World Indus.. Inc. v. Allibert, 1997 WL 793041, at *19 (E.D. Pa. Nov. 26, 1997). That doctrine "prohibits a party from taking inconsistent positions in the same or related litigation. The underlying purpose of the doctrine is to 'protect the integrity of the judicial process.'" Transclean Corp. v. Jiffy Lube Int'l, Inc., 474 F.3d 1298, 1307 (Fed. Cir. 2007) (citation omitted). The doctrine comes into play "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, [but] assume[s] a contrary position [in another court] simply because his interests have changed." Boler Co. v. Watson & Chalin Mfg.. Inc., 372 F. Supp. 2d 1013, 1020 (N.D. Ohio 2004).

"The Supreme Court recently acknowledged the viability of the doctrine and identified several non-exclusive factors that guide a court's decision whether to apply judicial estoppel," Transclean, 407 F.3d at 1307:

> (1) the party's later position must be "clearly inconsistent" with its earlier
> position; (2) the party must have succeeded in persuading a court to adopt

15

> its earlier position, thereby posing a "risk of inconsistent court
> determinations"; and (3) "the party seeking to assert an inconsistent
> position would derive an unfair advantage or impose an unfair detriment
> on the opposing party if not estopped."

Id., quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001).

Judicial estoppel is fully applicable where a patent-owner obtains a claim construction in one court and seeks a different construction in another court when its perceived interests have changed. "The Federal Circuit has stated that a party may be judicially estopped from asserting clearly inconsistent positions on claim construction." Transclean, 474 F.3d at 1307; see Boler, 372 F. Supp. 2d at 1020 (holding that patentee was "judicially estopped" from disputing a claim construction it had successfully advocated in another court); Cabot Safety Intermediate Corp. v. Howard S. Leight & Assocs., Inc., 992 F. Supp. 463, 466 (D. Mass. 1998) (same).

That is exactly what BSC has done here. BSC filed its answer and counterclaims in the California case denying that the Express stent is covered by the '021 patent in June 2005, while the trial of this case was on-going. In 2006, while Cordis' initial JMOL motion and its motion for reconsideration were pending, BSC advocated a claim construction for "expansion column" and "connecting strut column" in the California case that would bring both its Express stent and Cordis' BX Velocity stent outside the scope of the '021 claims. BSC did so without advising this Court that it was seeking such a construction. Having persuaded the California court to adopt its constructions of "expansion column" and "connecting strut column," and having obtained partial summary judgment on that basis, principles of judicial estoppel bar BSC from advocating a different claim construction here. Talavera v. School Bd. of Palm Beach County, 129 F.3d 1214, 1217 (11th Cir. 1997) ("The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings.") (quotation omitted); see Boler, 372

16

F. Supp. 2d at 1020 (patentee was "judicially estopped" from disputing a claim construction it

had successfully advocated in another court);; Cabot, 992 F. Supp. at 466 (same).

**D.    The Claim Construction that BSC Obtained in the California Case
        Precludes a Finding that the BX Velocity has "Expansion Columns"
        or "Connecting Strut Columns"**

As discussed above (at 6-9), the "expansion strut pairs" in the BX Velocity do not

form columns that consist "*solely*" of expansion strut pairs, and the connecting struts do not form

columns that consistent "*solely*" of connecting struts, as required by the claim construction that

BSC obtained in the California case.  Rather, there is an overlap between the columns formed by

the BX Velocity's expansion strut pairs and the columns formed by its connecting struts, with a

portion of each connecting strut lying in a column formed by expansion strut pairs.



As shown in the demonstratives that BSC's expert used in his expert report and

trial testimony (see pages 7-9, supra), the columns in the BX Velocity that are formed by the

expansion strut pairs do not consist "*solely*" of a plurality of expansion strut pairs, and the

columns that are formed by the connecting struts do not consist "*solely*" of a plurality of connecting struts. These facts are not subject to dispute. They preclude a finding that the BX Velocity infringes claim 36 of the '021 patent. <u>Johns Hopkins,</u> 931 F. Supp. at 317-20, <u>aff'd in pertinent part, vacated in part on other grounds,</u> 152 F.3d 1342, 1354-56 (revising claim construction after a jury verdict and granting JMOL on some claims based on the revised construction).

       The claim construction that BSC obtained in the California case not only defeats its assertion of literal infringement – it also precludes a finding that the BX Velocity has the equivalent of "expansion columns" and "connecting strut columns" under the doctrine of equivalents ("DOE"). An "expansion column" that includes other structures in addition to expansion strut pairs is the antithesis – not the equivalent – of the claimed "expansion column" formed "solely by a plurality of expansion strut pairs." Likewise, a "connecting strut column" that includes structures in addition to connecting struts is the antithesis – not the equivalent – of the claimed "connecting strut column" formed "solely of a plurality of connecting struts." Such structures cannot be equivalents under the DOE. <u>Moore U.S.A., Inc. v. Standard Register Co.,</u> 229 F.3d 1091, 1106 (Fed. Cir. 2000) (the DOE cannot be used to cover the "antithesis" of a claim requirement); <u>UTStarcom, Inc. v. Starent Networks Corp.,</u> 2005 WL 3299714 (N.D. Cal. Dec. 6, 2005) (the DOE "cannot be used to equate a claim limitation with its opposite").

       Applying the DOE in these circumstances would read the "solely" requirement that BSC advocated out of the claim for all practical purposes, impermissibly vitiating that requirement. <u>See</u> <u>Antonious v. Spalding & Evenflo Companies,</u> 44 F. Supp. 2d 732, 737 (D. Md. 1998), <u>aff'd in part & rev'd in part,</u> 217 F.3d 849, 1999 WL 777450, at *6 (Fed. Cir. 1999) (unpublished) (a member attached to both the rear wall and to another structure cannot be

equivalent to a member attached "solely" to the rear wall); <u>Asyst Techs., Inc. v. Emtrak, Inc.</u>, 402

F.3d 1188, 1195 (Fed. Cir. 2005 ("To hold that 'unmounted' is equivalent to 'mounted' would

effectively read the 'mounted on' limitation out of the claim.").

        In any event, BSC failed to present <u>any</u> evidence that the BX Velocity has the

equivalent of an "expansion column" formed "solely by a plurality of expansion strut pairs" or a

"connecting strut column" formed "solely by a plurality of connecting struts." JMOL of

noninfringement is accordingly appropriate. <u>See, e.g.</u>, <u>MicroStrategy, Inc. v. Business Objects,</u>

<u>S.A.</u>, 429 F.3d 1344, 1359 (Fed. Cir. 2005) (affirming JMOL when party offered no evidence as

to an element of its claim).

**E.    At a Minimum, this Court Should Order a New Trial on Infringement**

        The undisputed facts concerning the BX Velocity's structure compel the

conclusion that BX Velocity lacks "expansion columns" and "connecting strut columns" under

the claim construction that BSC obtained in the California case because there is an overlap in the

BX Velocity between the columns formed by the expansion strut pairs and the column formed by

the connecting struts. In other words, the columns formed by the expansion strut pairs includes

part of the connecting struts. Similarly, the column formed by connecting struts include parts of

the expansion strut pairs.

        This design does not have "expansion columns" or "connecting strut columns"

under the construction that BSC obtained in the California case. Cordis respectfully submits that

the undisputed facts concerning the structure of the BX Velocity require judgment of

noninfringement. At a minimum, this Court should order a new trial on whether the BX Velocity

literally has "expansion columns" and "connecting strut columns" under the construction that

BSC obtained in the California case. <u>Brennan v. Norton</u>, 350 F.3d 399, 430 (3d Cir. 2003) ("A

new trial may be granted even when judgment n.o.v. is inappropriate.").

19

## CONCLUSION

For the reasons set forth above, the Court should grant Cordis' motions for JMOL

or, in the alternative, for a new trial on the infringement of the Jang '021 patent based on the

claim construction that BSC obtained in the California case.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

*Of Counsel*:

PATTERSON BELKNAP WEBB & TYLER LLP
Gregory L. Diskant
Eugene M. Gelernter
Kathleen M. Crotty
Ravi V. Sitwala
1133 Avenue of the Americas
New York, NY  10036
(212) 336-2000

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

*Attorneys for Cordis Corporation*

Dated:  February 27, 2007
178247.1

20

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2007, the attached **OPENING BRIEF**

**IN SUPPORT OF CORDIS' MOTION FOR JMOL OR, IN THE ALTERNATIVE, A**

**NEW TRIAL, ON INFRINGEMENT OF THE JANG '021 PATENT UNDER THE**

**CLAIM CONSTRUCTION THAT BSC SUCCESSFULLY ADVOCATED IN ANOTHER**

**COURT** was served upon the below-named counsel of record at the address and in the manner

indicated:

Josy W. Ingersoll, Esquire                                    <u>HAND DELIVERY</u>
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19899-0391

Peter J. Armenio, Esquire                                    <u>VIA FEDERAL EXPRESS</u>
Kirkland & Ellis
Citigroup Center
153 East 53rd Street
New York, NY  10022-4675


                                            */s/ Tiffany Geyer Lydon*
                                            _____
                                            Tiffany Geyer Lydon

122444.1

# EXHIBIT 18

# REDACTED
# IN
# FULL