IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION and )     **REDACTED**
BOSTON SCIENTIFIC SCIMED, INC.,      )     **PUBLIC VERSION**
                                        )
           Plaintiffs,          )
                                        )
           v.                  )    C.A. No. 05-768-SLR
                                        )
CONOR MEDSYSTEMS, INC.,         )
                                        )
           Defendant.        )

## CONOR'S ANSWERING BRIEF IN OPPOSITION
## TO BSC'S MOTION FOR SUMMARY JUDGMENT
## OF VALIDITY AND ENFORCEABILITY

                                        ASHBY & GEDDES
                                        Steven J. Balick (I.D. #2114)
                                        John G. Day (I.D. #2403)
                                        Lauren E. Maguire (I.D. # 4261)
*Of Counsel*:                          500 Delaware Avenue, 8th Floor
                                        Wilmington, DE 19801
PATTERSON BELKNAP WEBB & TYLER LLP     (302) 654-1888
Gregory L. Diskant
Eugene M. Gelernter
Scott B. Howard                            *Attorneys for Defendant*
Kathleen M. Crotty                         *Conor Medsystems, Inc.*
Ravi V. Sitwala
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

Dated: May 25, 2007
180963.1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ..................................................................................................1

THE FACTS .........................................................................................................2

A.   BSC's Claims in This Action Against Conor....................................................2

B.   Proceedings in the 03-027 Action and the Status of That Case .........................2

C.   Conor's Pending Motion for Summary Judgment  of Obviousness of Claim 35 of the
     Jang '021 Patent ..........................................................................................3

ARGUMENT .......................................................................................................4

I.   THE STANDARD FOR APPLYING COLLATERAL ESTOPPEL ..................................4

II.  THE VALIDITY ISSUES IN THIS CASE ARE NOT "IDENTICAL" TO THE
     VALIDITY ISSUES IN THE 03-027 CASE.......................................................5

     A.   Claim 35 Is Broader, and Different, than Claim 36....................................7

     B.   BSC's Analysis..........................................................................................9

     C.   Both Claims 35 and 36 Are Invalid, But Claim 35 Is Easier to Invalidate...........11

          1.   Claim 35 Does not Depend from Claim 24 and Is Broader in Scope
               than Claim 35 ..............................................................................11

          2.   Conor Has Anticipation Defenses for Claim 35 that Were Not
               Available for Claim 36 .................................................................13

          3.   Claim 35 Covers the "Old Art" of Horizontal Connectors Whereas
               the Same Is Not True for Claim 36...............................................14

III. CONOR WAS NOT A PARTY OR IN PRIVITY WITH ANY PARTY TO THE 03-
     027 CASE .................................................................................................18

     A.   Cordis Was Not Conor's Legal Representative at the Time of Trial ....................19

     B.   Cordis Is Not Conor's Legal Representative Today.................................22

     C.   Representation by the Same Counsel Does Not Establish Privity.........................23

     D.   The Cases BSC Cites Are Inapposite...............................................24

# TABLE OF CONTENTS
(continued)

Page

IV.     CONTROLLING LEGAL PRINCIPLES HAVE CHANGED SINCE THE
DECISION IN THE 03-027 ACTION ...............................................................................25

V.      THERE IS NO BASIS FOR APPLYING COLLATERAL ESTOPPEL ON
INEQUITABLE CONDUCT BECAUSE THAT ISSUE WAS NOT LITIGATED IN
THE 03-027 CASE .........................................................................................................26

CONCLUSION.........................................................................................................................28

# TABLE OF AUTHORITIES

Page

## CASES

Abbott Labs. v. Andrx Pharms., Inc., 473 F.3d 1196 (Fed. Cir. 2007) ...............................4

Benson & Ford, Inc. v. Wanda Petroleum Co., 833 F.2d 1172
    (5th Cir. 1987)........................................................................................................23

Blonder-Tongue Labs., Inc. v. University of Illinois Found., 402 U.S. 313 (1971)..........19

Board of Trustees v. Centra, 983 F.2d 495 (3d Cir. 1992) ...................................................5

Boston Scientific Corp. v. Schneider (Europe) AG, 983 F. Supp. 245
    (D. Mass. 1997).................................................................................................24, 25

Boutell v. Volk, 449 F.2d 673 (10th Cir. 1971)..................................................................21

Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368
    (Fed. Cir. 2001)......................................................................................................13

Burlington Northern R.R. Co. v. Hyundai Merch. Marine Co.,
    63 F.3d 1227 (3d Cir. 2002)..................................................................................27

Collins v. E.I. DuPont de Nemours & Co., 34 F.3d 172 (3d Cir. 1994)...................*passim*

Cordis Corp. v. Boston Scientific Corp., C.A. No. 03-027,
    2005 WL 1331172 (D. Del. June 3, 2005)...........................................................5, 6

Dana Corp. v. American Axle & Mfg, Inc., 279 F.3d 1372
    (Fed. Cir. 2002)........................................................................................................7

Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567
    (3d Cir. 2002)......................................................................................................5, 19

Dici v. Pennsylvania, 91 F.3d 542 (3d Cir. 1996) ...............................................................5

Doral Pharmamedics, Inc. v. Pharmaceutical Generic Developers, Inc.,
    148 F. Supp. 2d 127 (D. P.R. 2001).....................................................................22

Duvall v. Atty. Gen. of U.S., 436 F.3d 382 (3d Cir. 2006) ...............................................25

Free Motion Fitness, Inc. v. Cybex, Int'l, Inc., 423 F.3d 1343
    (Fed. Cir. 2005)......................................................................................................13

## TABLE OF AUTHORITIES
(continued)

Page

Freeman v. Lester Coggins Trucking, Inc., 771 F.2d 860 (5th Cir. 1985) .......................24

Gonzalez v. Banco Central Corp., 27 F.3d 751 (1st Cir. 1994)........................................24

Graham v. John Deere Co., 383 U.S. 1 (1966) ....................................................... 9, 14-15

Hallco Mfg. Co. Inc. v. Foster, Inc., 256 F.3d 1290 (Fed. Cir. 2001) ................................4

Hamilton v. Leavy, 2001 WL 848603 (D. Del. July 27, 2001) .........................................18

Hart v. Yamaha-Parts Distribs., Inc., 787 F.2d 1468 (11th Cir. 1986)............................22

Hebron Pub. Sch. Dist. 13 v. U.S. Gypsum Co., 723 F. Supp. 416
    (D.N.D. 1989), aff'd, 953 F.2d 398 (8th Cir. 1992)......................................................24

Hitchens v. County of Montgomery, 98 Fed. Appx. 106
    (3d Cir. 2004)................................................................................................................21

Interconnect Planning Corp. v. Feil, 774 F.2d 1132 (Fed. Cir. 1985) ...............................6

Jackson Jordan, Inc. v. Plasser American Corp., 747 F.2d 1567
    (Fed. Cir. 1984)..............................................................................................................9

Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399
    (3d Cir. 1993)..........................................................................................................20, 22

Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244
    (3d Cir. 2006)........................................................................................................ 4, 26-27

Johnson & Johnson v. Coopervision, Inc., 720 F. Supp. 1116
    (D. Del. 1989) ...............................................................................................................22

Jones v. Hardy, 727 F.2d 1524 (Fed. Cir. 1984)..................................................................6

KSR Int'l Co. v. Teleflex, Inc., 127 S. Ct. 1727 (2007)..............................................*passim*

Karlin Tech., Inc. v. Surgical Dynamics, Inc., 177 F.3d 968
    (Fed. Cir. 1999).............................................................................................................6

L & W v. Shertech, Inc., 471 F.3d 1311 (Fed. Cir. 2006) ...........................................7, 17

## TABLE OF AUTHORITIES
(continued)

Page

Lomax v. Nationwide Mut. Ins. Co., 776 F. Supp. 870 (D. Del. 1991),
   rev'd on other grounds, 964 F.2d 1343 (3rd Cir. 1992) ............................27

Lubrizoil Corp. v. Exxon Corp., 929 F.2d 960 (3d Cir. 1991) ..........................21

MSM Invs. Co. v. Carolwood Corp., 70 F. Supp. 2d 1044
   (N.D. Cal. 1999)......................................................................................6

Martin v. Wilks, 490 U.S. 755 (1989) ................................................................19

In re Medomak Canning, 922 F.2d 895 (1st Cir. 1990)......................................25

Mendenhall v. Cedarapids, Inc., 5 F.3d 1557 (Fed. Cir. 1993) ....................7, 17

Metro Indus., Inc. v. Sammi Corp., 82 F.3d 839 (9th Cir. 1996) ......................24

Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., 476 F. Supp. 2d 1143
   (N.D. Cal. 2007)....................................................................................20

Monsour Med. Ctr. v. Heckler, 806 F.2d 1185 (3d Cir. 1986)..........................25

Montana v. United States, 440 U.S. 147 (1979) ................................................26

Novartis Pharms. Corp. v. Abbott Labs., 375 F.3d 1328 (Fed. Cir. 2004).........5

O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062 (3d Cir. 1991).....................27

Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979) .........................................5

Pharmacia & Upjohn v. Mylan Pharms, Inc., 170 F.3d 1373
   (Fed. Cir. 1999)......................................................................................4

Pony Express Records, Inc. v. Springsteen, 163 F. Supp. 2d 465
   (D.N.J. 2001)................................................................................ passim

Raytech Corp. v. White, 54 F.3d 187 (3d Cir. 1995)...........................................5

Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.,
   264 F.3d 1344 (Fed. Cir. 2001)...............................................................7

Smith v. Holtz, 210 F.3d 186 (3d Cir. 2000) .......................................................5

# TABLE OF AUTHORITIES
(continued)

Page

South Central Bell Tel. Co. v. Alabama, 526 U.S. 160 (1999)............................................23

Stevenson v. Sears, Roebuck & Co., 713 F.2d 705 (Fed. Cir. 1983) ................................19

Supr. Medical Corp. v. Baker, 1996 WL 571544 (D. Del. Sept. 26, 1996).................18, 19

Symbol Tech., Inc. v. Metrologic Instruments, Inc., 771 F. Supp. 1390
    (D. N.J. 1991)............................................................................................................21

Szehinskyi v. Atty. Gen. of U.S., 432 F.3d 253 (3d Cir. 2005)............................................4

In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litig.,
    1997 WL 164256 (E.D. Pa. Apr. 9, 1997) ...................................................................27

UGI Corp. v. Piccione, 1997 WL 698011 (E.D. Pa. Nov. 5, 1997)...................................27

U.S. v. Webber, 396 F.2d 381 (3d Cir. 1968).....................................................................21

Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.,
    308 F.3d 1167 (Fed. Cir. 2002).................................................................................13

Westwood Chem., Inc. v. United States, 525 F.2d 1367 (Ct. Cl. 1975)..............................6

## OTHER AUTHORITIES

Restatement (Second) of Judgments § 27 (1982) ...............................................................27

Restatement (Second) of Judgments § 41 (1982) ...............................................................19

## INTRODUCTION

Conor Medsystems, LLC, sued in this case as Conor Medsystems, Inc. ("Conor") respectfully submits this answering brief in opposition to BSC's motion for summary judgment on the validity and enforceability of claim 35 of Dr. Jang's U.S. Patent No. 5,922,021.

BSC asserts that claim 35, at issue here, and claim 36, at issue in the 03-027 case, present the "same" issue of validity and that Conor, the defendant here, is in privity with Cordis Corporation ("Cordis"), the defendant in the 03-027 case. As a result, BSC argues that Conor should be barred in this case from contesting the validity of claim 35 because in the 03-027 case Cordis litigated the validity of claim 36 and lost. This argument is at odds with basic requirements of collateral estoppel.

First, claim 35 and claim 36 are not the "same" and do not present the "same" validity issues. Indeed, to the contrary, claim 35, at issue here, is both different and broader than claim 36. The differences are apparent from the two claims and the relevant prior art. The differences were explained by Conor's expert at deposition and never disputed by BSC's expert. As a result, a jury hearing both claims together could uphold the validity of claim 36 while finding claim 35 invalid. Since no court or jury has considered the validity of claim 35, let alone upheld its validity, neither Conor nor any other party is barred from contesting its validity.

Second, Conor and Cordis are not the same, nor are they in privity for purposes of collateral estoppel. Today, Cordis and Conor are sister corporations, both owned by Johnson & Johnson. But Johnson & Johnson was not a party to the 03-027 case and it is not a party to this case. Meanwhile, under Third Circuit law, there can be no finding of collateral estoppel unless the party in the first case (Cordis) had a "**preexisting** legal relationship" with the party in the second

1

case (Conor), such that Conor either "controlled or directed the previous litigation" or that Cordis, the party in the previous case, was sued as a "representative" of Conor.

The legal standard cannot possibly be met here. At the time of the first case, Conor was a completely separate company that had no relationship whatsoever to Johnson & Johnson, let alone to Cordis. Conor cannot, by any stretch of the imagination, be deemed to have been represented by Cordis in the 03-027 litigation two years ago – two years before there existed any relationship whatsoever between the two companies.

## THE FACTS

A.    BSC's Claims in This Action Against Conor

BSC commenced this case on November 8, 2005. In this action, BSC alleges that Conor's CoStar and UniStar stents infringe only one claim of the Jang '021 patent – claim 35. Claim 35 depends directly from independent claim 23.

Conor is the only defendant in this case. On February 1, 2007, Conor was acquired by Johnson & Johnson. It is now a wholly-owned subsidiary of Johnson & Johnson. Prior to February 1, 2007, Conor was an independent company. Upon the acquisition, BSC told this Court it would move to add Johnson & Johnson as a party here, but it never did so. D.I. 76 at Tr. 7:14-16.

Conor has not yet had its day in court on the validity and enforceability of claim 35.

B.    Proceedings in the 03-027 Action and the Status of That Case

In Cordis Corp. v. Boston Scientific Corp., C.A. No. 03-027-SLR (the "03-027 case"), BSC asserted a counterclaim against Cordis alleging that Cordis' BX Velocity stent infringes the Jang '021 patent.

The only claim of the '021 patent that BSC asserted in the 03-027 case was claim 36. Claim 36 depends from claim 24, which in turn depends from claim 23. As a result, the limitations

of claim 24 are part of claim 36. (In contrast, the limitations of claim 24 are <u>not</u> part of claim 35, at issue here.)

BSC's allegations against Cordis concerning claim 36 were tried together in a consolidated trial with BSC's claims of infringement of the Ding '536 patent, which were the subject of BSC's complaint in C.A. No. 03-283-SLR. On July 1, 2005, the jury returned a verdict in BSC's favor that claim 36 of the Jang '021 patent was infringed by Cordis and was not invalid. In a decision dated May 11, 2006, this Court denied Cordis' motions for JMOL or a new trial. <u>See</u> D.I. 417 in the 03-027 case. Cordis then moved for reconsideration.

While that motion was pending, the U.S. District Court for the Northern District of California adopted the construction of "expansion column" and "connecting strut column" that BSC advocated in a case that Dr. Jang had brought against BSC involving the '021 patent. Cordis then moved for JMOL of noninfringement based on that claim construction. <u>See</u> D.I. 426, 427 in the 03-027 case. That motion is now pending in the 03-027 case.

Judgment in the 03-027 action has not been entered.

## C.    Conor's Pending Motion for Summary Judgment of Obviousness of Claim 35 of the Jang '021 Patent

On May 11, 2007, the parties in this case submitted briefs on claim construction.

On the same date, Conor moved for summary judgment that claim 35 of the Jang '021 patent is obvious as a matter of law. In its brief in support of that motion (D.I. 142), Conor demonstrated that the "objective reach" of claim 35 (<u>KSR Int'l Co. v. Teleflex, Inc.</u>, 127 S. Ct. 1727, 1742 (2007)) encompasses stents with horizontal connectors – what Dr. Jang himself described as "old art." As Conor demonstrated, the undisputed evidence establishes that claim 35 is obvious as a matter of law.

Conor's submissions in support of its motion for partial summary judgment of obviousness (D.I. 141, D.I. 142) are incorporated by reference in this answering brief.

## ARGUMENT

### THIS COURT SHOULD DENY BSC'S MOTION FOR SUMMARY JUDGMENT BASED ON COLLATERAL ESTOPPEL

BSC seeks to foreclose Conor from presenting its validity and inequitable conduct defenses in this case. That effort misses the mark. The basic requirements for applying collateral estoppel – including identity of issues and identity of parties – are missing here.

## I.    THE STANDARD FOR APPLYING COLLATERAL ESTOPPEL

The Federal Circuit generally applies regional circuit law to general questions of collateral estoppel.[1] Abbott Labs. v. Andrx Pharms., Inc., 473 F.3d 1196, 1202 (Fed. Cir. 2007). Accordingly, this Court should apply Third Circuit law in addressing the collateral estoppel issues presented by BSC's motion. Under Third Circuit law, "[a]pplication of collateral estoppel is a question of law...." Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 248 (3d Cir. 2006) (citing Szehinskyi v. Atty. Gen. of U.S., 432 F.3d 253, 255 (3d Cir. 2005)).

In this Circuit, collateral estoppel or issue preclusion may only be applied when:

> "(1) the *identical issue* was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) *the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication*; and (4) the party against whom the bar is asserted [or its privy] had a full and fair opportunity to litigate the issue in question." (Emphasis added)

---

[1]  The Federal Circuit takes a different approach in cases, unlike this one, where a collateral estoppel question presents issues that are unique to patent law. In such cases, the Federal Circuit applies its own law on collateral estoppel, rather than the law of the regional circuit. See Hallco Mfg. Co. Inc. v. Foster, Inc., 256 F.3d 1290, 1294 (Fed. Cir. 2001) ("Since the present claim preclusion issue is particular to patent law, we analyze it under applicable Federal Circuit law."); see also Pharmacia & Upjohn v. Mylan Pharms, Inc., 170 F.3d 1373, 1381 n.4 (Fed. Cir. 1999).

Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 573 n.10 (3d Cir. 2002) (quoting

Board of Trustees v. Centra, 983 F.2d 495, 504 (3d Cir. 1992)).  The burden of proving these

elements rests with "'[t]he party seeking to invoke collateral estoppel.'"  Novartis Pharms. Corp. v.

Abbott Labs., 375 F.3d 1328, 1333 (Fed. Cir. 2004) (quoting Dici v. Pennsylvania, 91 F.3d 542,

548 (3d Cir. 1996)).

   Even if the requirements for collateral estoppel are satisfied, the trial court has

"broad discretion" on whether or not to apply the doctrine.  Parklane Hosiery Co. v. Shore, 439

U.S. 322, 331 (1979); see also Smith v. Holtz, 210 F.3d 186, 199 n.18 (3d Cir. 2000); Raytech

Corp. v. White, 54 F.3d 187, 190 (3d Cir. 1995).  In exercising that discretion, courts should

consider the "'overriding fairness'" of precluding litigation on an issue.  Cordis Corp. v. Boston

Scientific Corp., C.A. No. 03-027, 2005 WL 1331172, at *5 (D. Del. June 3, 2005) (Robinson,

C.J.) (citation omitted).

   BSC cannot meet the basic requirements for collateral estoppel.  In particular, BSC

cannot meet its burden of showing:  (1) that the invalidity issues in this case are "identical" to the

validity issues that were litigated in the 03-027 case; and (2) that Conor, the defendant in this case,

"was a party or in privity with a party [Cordis] to the prior adjudication."  Del. River Port Auth.,

290 F.3d at 573 n.10.  In addition, the Supreme Court's April 2007 decision in KSR has altered the

obviousness analysis in significant ways, and provides further reason why applying collateral

estoppel would be inappropriate.  Finally, collateral estoppel is not applicable on the issue of

inequitable conduct because that issue was not actually litigated or determined in the 03-027 case.

## II. THE VALIDITY ISSUES IN THIS CASE ARE NOT "IDENTICAL" TO THE VALIDITY ISSUES IN THE 03-027 CASE

   As the Federal Circuit has held and as this Court has recognized, "each claim [in a

patent] defines a separate invention ...."  Cordis v. BSC, No. 03-027-SLR, 2005 WL 1331172, at

\*5-6; see also Karlin Tech., Inc. v. Surgical Dynamics, Inc., 177 F.3d 968, 971-72 (Fed. Cir. 1999)

("different words or phrases used in separate claims are presumed to indicate that the claims have

different meanings and scope"); Jones v. Hardy, 727 F.2d 1524, 1528 (Fed. Cir. 1984) ("[E]ach

claim must be considered as defining a separate invention.").

　　　　　For this reason, an unsuccessful challenge to the validity of one claim does not

preclude a validity challenge for other claims in the same patent unless the different claims present

"identical" validity issues.  This Court applied these principles in the 03-027 action.  It held that

BSC was not precluded from asserting an invalidity defense to claims 1, 9 and 12 of the Palmaz

'762 patent because those claims presented a "different [validity] issue" than claim 23 of the same

patent, as to which the Court did apply collateral estoppel.  Cordis v. BSC, No. 03-027-SLR, 2005

WL 1331172, at \*5-6.

　　　　　In deciding whether different claims present the same or different validity issues, the

court must consider whether the claim asserted in the later case "'present[s] new issues as to the art

…; as to the scope and content of that art; [and] as to the differences between the prior art and the

nonlitigated claims ….'"  Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1136-37 (Fed. Cir.

1985) (rejecting the application of collateral estoppel) (quoting Westwood Chem., Inc. v. United

States, 525 F.2d 1367, 1375 (Ct. Cl. 1975)).  If any of these inquiries raises "any new triable

issues," then collateral estoppel does not apply.  Westwood, 525 F.2d at 1375.

　　　　　An important factor in deciding whether the claim in the later case presents a new

validity issue is whether that claim is broader than the previously litigated claim in ways that

implicate the prior art differently than the previously litigated claim.  See, e.g., MSM Invs. Co. v.

Carolwood Corp., 70 F. Supp. 2d 1044, 1051 (N.D. Cal. 1999) (rejecting the application of

collateral estoppel).  It is black letter law that a finding that a narrower claim is valid does not

necessarily mean that a broader claim is also valid.  Cf. Dana Corp. v. American Axle & Mfg., Inc., 279 F.3d 1372, 1376 (Fed. Cir. 2002) (dependent claims, which "necessarily add limitations to the claims from which they depend," require independent validity analysis); Sandt Tech., Ltd. v. Resco Metal and Plastics Corp., 264 F.3d 1344, 1356 (Fed. Cir. 2001) (same).  In such circumstances, collateral estoppel cannot be applied.

Here, claim 35 is both different and broader than claim 36.  The differences between those claims alter the comparison with the prior art in ways that could be outcome-determinative to the validity analysis.  For that reason, the jury finding of validity of claim 36 in the 03-027 case does not imply, or require, a finding of validity of claim 35 in this case.  See L & W v. Shertech, Inc., 471 F.3d 1311, 1320 (Fed. Cir. 2006) (verdict of validity of one patent claim and invalidity of a similar claim not inconsistent where there was a basis for jury to conclude that one claim was broader than the other); Mendenhall v. Cedarapids, Inc. 5 F.3d 1557, 1563 (Fed. Cir. 1993) (same).

A.    **Claim 35 Is Broader, and Different, than Claim 36**

Claim 36, which is asserted against Cordis in the 03-027 case, depends from claim 24, which in turn depends from claim 23.

Claim 23 describes a stent with two "expansion columns" formed of "expansion strut pairs" and a "connecting strut column" formed of "connecting struts."  The connecting struts link "expansion strut pairs" in adjacent "expansion columns."  The connecting struts have proximal, distal and intermediate sections, with the intermediate section being non-parallel to the proximal and distal sections.  As BSC has conceded, there is nothing novel about these features.  Ex. A, at Tr. 72:3-16 (expansion columns and connecting strut columns form the "building blocks of stents"); Ex. B, at Tr. 354:18-355:8 (Dr. Jang testifies that stents with expansion columns and connecting strut columns were well-known and not something he invented).

Claim 36 – but not claim 35 – depends from claim 24, which recites:

> The stent of claim 23, wherein the stent includes a proximal
> expansion column, a distal expansion column, a plurality of
> connecting struts positioned between the proximal and distal
> expansion columns, and ***a plurality of expansion columns positioned
> between the proximal and distal expansion columns***, each expansion
> column being made of a plurality of juxtapositioned proximal and
> distal ***looped slots***.

As a result of claim 24, claim 36 – but not claim 35 – requires at least four expansion columns, not

just the two expansion columns required for claim 35, and the expansion columns must be

composed of a plurality of proximal and distal "loop slots," a requirement for a particular kind of

opening in the expansion column that is wholly absent from claim 35.

Claim 36 adds further limitations calling for a specific orientation of the connector

between expansion columns – a second-corner-to-first-corner (or bottom-to-top) connector. Thus,

claim 36 recites that the first connecting strut is coupled on its proximal end to the "***second corner***

of the second expansion strut pair of the first expansion strut column" and coupled on its distal end

to the "***first corner*** of the first expansion strut pair of the second expansion strut column."

Unlike claim 36, claim 35 – which is in issue in this case – depends directly from

claim 23 without also depending from claim 24. As a result, the added limitations of claim 24 are

part of claim 36, but are <u>not</u> limitations of claim 35. The absence of these limitations from claim

35 gives that claim a broader scope than claim 36.

In addition, claim 35 is different than claim 36 because its connector must be

oriented in the opposite direction – first (top)-corner-to-second (bottom)-corner rather than bottom-

to-top. Thus, claim 35 recites that the first connecting strut is coupled on its proximal end to the

"***first corner*** of the second expansion strut pair of the first expansion strut column" and coupled on

its distal end to the "***second corner*** of the first expansion strut pair of the second expansion strut

column."

8

**B.**     <u>BSC's Analysis</u>

BSC's purported analysis of the "identity" of the two claims is superficial and contrary to controlling law. BSC asserts that the scope of the two claims is the "same" and purports to demonstrate that by presenting two graphics – one depicting the accused device (Conor's CoStar stent) and the other depicting a hypothetical variant of the CoStar that was created by BSC, with bottom-to-top connectors – literally a mirror image of the first stent. D.I. 138 at 15. BSC's argument on identity of issues rests on the visual similarity between its two graphics.

BSC's graphics have nothing to do with either the scope of the claim or the obviousness analysis. The obviousness inquiry involves a comparison between the prior art and the "objective reach" of the claimed invention, <u>KSR</u>, 127 S. Ct. at 1742 – not a comparison between alternate hypothetical versions of the accused product. One must look at the limitations of the claims, not hypothetical embodiments of the claims, to determine their scope and validity. <u>See Jackson Jordan, Inc. v. Plasser American Corp.</u>, 747 F.2d 1567, 1578 (Fed. Cir. 1984) ("The *claims,* not particular embodiments, must be the focus of the obviousness inquiry.") (citing <u>Graham v. John Deere Co.</u>, 383 U.S. 1, 17 (1966)).

In fact, the differences between claims 35 and 36 are well developed in the evidentiary record in this case – and not denied by BSC's expert. There are at least three important differences bearing on validity between claim 35 and claim 36: (1) claim 35, but not claim 36, depends directly from claim 23, while claim 36 depends from claims 23 and 24 and has additional limitations of a "plurality of expansion columns" and "loop slots"; (2) claim 35, but not claim 36, requires a top-to-bottom connector, which presents anticipation defenses that are not available for claim 36; and (3) claim 35, but not claim 36, reads on a horizontal connector, which BSC admits is "old art" thus presenting an obviousness defenses not available for claim 36.

At deposition, Conor's expert, Dr. Nigel Buller, discussed these differences, pointing to the presence of claim 24 and the altered geometry of top-to-bottom connector.  Dr. Buller explained that these differences "mean[] that some prior art becomes highly relevant in a way that it wasn't before because of the geometry."  (Ex. C, at Tr. 32:15-33:18)).  After Dr. Buller was deposed, Conor deposed BSC's expert, Prof. Moore.  Prof. Moore did not even attempt to rebut Dr Buller's analysis.  His testimony on the subject is insufficient even to join issue on the supposed "identity" of the claims, let alone to prevail on this motion:

> Q.     Is it your opinion that the difference between the connections set forth in claim 35 require a different comparison to the prior art as compared to claim 36?
>
> A.     I haven't fully considered that.
>
> Q.     So you don't have an opinion one way or the other sitting here today?
>
> A.     *I have not fully considered it, so I would not say one way or the other definitively.*

Ex. D, at Tr. 212:15-25.

In the 03-027 trial, Prof. Moore likewise refused to endorse BSC's current theory that there is no difference between a claim on a top-to-bottom connector and one on a bottom-to-top connector.  Instead, Dr. Moore testified that these different connector orientations may be "very different" inventions (Ex. E, at Tr. 1153:11-16):

> Q     [The Jomed patent] shows top to bottom connectors, right?
>
> A     Right.  Not bottom to top.
>
> Q     No, not bottom to top.  That would be a very different invention, wouldn't it?
>
> A     Perhaps.

In short, nothing in the opinion testimony of BSC's expert supports BSC's conclusory assertion that the two claims are "identical" in scope.

**C.**     **Both Claims 35 and 36 Are Invalid, But Claim 35 Is Easier to Invalidate**

Jang's patent contains a simple combination of known ingredients of the prior art –
expansion columns and connectors.  His particular combinations, in both claim 35 and claim 36, are
obvious variants on what was known, if not fully anticipated.  In defending against Cordis'
obviousness case in the 03-027 litigation, BSC tried to whittle down the prior art – rejecting as
irrelevant "expansion columns" that BSC said were "tubular members" or dismissing connectors
that were curvy and horizontal because they were not offset, or, if offset, because they were top-to-
bottom rather than bottom-to-top.  Because there are real differences between claim 35 and claim
36, these arguments will be weaker, or inapplicable, as BSC attempts to defend claim 36 in this
case.  The jury verdict in the 03-027 case is thus irrelevant to the current dispute.

**1.**     **Claim 35 Does not Depend from Claim 24 and
Is Broader in Scope than Claim 35**

As discussed above, claim 36 depends from claim 24, which in turn depends from
claim 23 – whereas claim 35 depends directly from claim 23 without depending from claim 24.
The added limitations recited in claim 24 – plurality of expansion columns and the requirement of
"looped slots" – make claim 36 narrower than claim 35 in ways that bear on obviousness.  Indeed,
in the 03-027 case, BSC's expert Prof. Moore relied on limitations recited in claim 24 in
distinguishing the prior art for purposes of claim 36.  The absence of those limitations from claim
35 makes claim 35 broader – and closer to the prior art in the views of BSC's own expert.

Several prior art patents that Conor relies upon intersperse connectors after every
other expansion column, rather than after every one.  These designs – Palmaz '417, Pinchasik '373
and Hess '210 – are important prior art references for Conor's obviousness defense because they
show offset or curvy connectors of the kind Jang claims to have invented.  BSC tries to belittle the

relevance of these references by ignoring the connectors and arguing that their design is based on

what BSC calls tubular members that include whole (closed-end) slots.



In the 03-027 case, BSC made the same argument, but because of claim 24 was able

to do so with greater force. BSC pointed to claim 24's requirement of "loop slots" to argue that

claim 36 did not include such "tubular members" as expansion columns because they had closed-

end slots. Thus, in his rebuttal expert report in the 03-027 action, Prof. Moore distinguished

Palmaz '417 from the invention covered by claim 36 on the theory that it lacks the "distal loop

slots" that are recited in claim 24, from which claim 36 depends. Ex. F, at 10. Such slots, he

contended, cannot include closed-end slots. (Cordis argued that this art was relevant, and that Prof.

Moore was misapplying the "loop slots" limitation.) Prof. Moore also relied upon the "same

reasons" in distinguishing the Pinchasik '373 patent. (Ex. G). See Ex. F, at 14. Prof. Moore's

reasoning applies as well to the Hess '210 reference (Ex. H), which Conor also relies upon in asserting that claim 35 is obvious.

BSC cannot offer the same distinction in this case for claim 35. Claim 35 does not depend from claim 24 and thus does not require "loop slots." As a result, BSC will have a harder time trying to distinguish this highly relevant prior art – and Conor will have an easier time relying upon it to show the claim to be obvious.

In its current motion, BSC ignores the additional limitations of claim 24 and ignores its own expert's reliance on those limitations in the 03-027 case. In effect, BSC treats claim 24 as superfluous – as redundant of claim 23, from which it depends. That approach runs counter to settled law. Free Motion Fitness, Inc. v. Cybex, Int'l, Inc., 423 F.3d 1343, 1351 (Fed. Cir. 2005) ("The difference in meaning and scope between claims is presumed to be significant 'to the extent that the absence of such difference in meaning and scope would make a claim superfluous.'") (citation omitted).

## 2. Conor Has Anticipation Defenses for Claim 35 that Were Not Available for Claim 36

A patent claim is invalid as anticipated if there is a complete identity between the limitations of the asserted claim and the prior art. See Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1188 (Fed. Cir. 2002) (citing Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368, 1374 (Fed. Cir. 2001)). Necessarily, the bottom-to-top connector of claim 36 cannot be anticipated by a prior art top-to-bottom connector. Therefore, the anticipation analysis for claim 35 is different than the analysis for claim 36. Indeed, the same prior art design cannot possibly anticipate both claims.

At the 03-027 trial, Cordis had no anticipation defenses for claim 36, with its bottom-to-top connector. But there are at least two prior art references with the top-to-bottom

connectors of claim 35. Both of these references give rise to anticipation defenses that were not available in the 03-027 case. At the trial in this case, Conor will prove that the top-to-bottom connector of claim 35 is anticipated.



Hess '210, Fig. 3                    Richter '404, Fig. 11 (excerpt)

Figure 3 of the Hess '210 patent depicts connector 7 that provides a top-to-bottom connection between expansion strut pairs in adjacent columns. As the Hess '210 patent explains, connector 7 can be "curved or wavy." Ex. H, at col. 4:62-63. Likewise, Fig. 11 of the Richter '404 patent (Ex. I) shows a curved top-to-bottom connector, and thus anticipates claim 35.[2]

These defenses apply only to claim 35, not claim 36.

### 3.    Claim 35 Covers the "Old Art" of Horizontal Connectors Whereas the Same Is Not True for Claim 36

Separate and apart from anticipation, the top-to-bottom connection of claim 35 presents different obviousness issues than the bottom-to-top connection of claim 36. The differences flow not from the superficial similarities between one orientation and the other. Rather the differences flow from the differences in the *language in the claim as written*. That is, of course, the appropriate focus of the comparison. See KSR, 127 S. Ct. at 1734 (citing Graham v.

---

[2] The application for the Richter '404 patent was filed in September 1996. Because the parties disagree on whether claim 35 of the '021 patent is entitled to a 1996 priority date or a 1997 priority date, they also disagree on whether Richter '404's September 1996 filing date is early enough for that patent to qualify as prior art for purposes of claim 35. BSC does not contend that there is a basis for applying collateral estoppel on the priority date issue. Nor could it rely on collateral estoppel as to the priority date because there is no way of knowing what priority date the jury in the 03-027 case applied in reaching its verdict concerning claim 36.

John Deere Co., 383 U.S. 1, 17 (1966) (obviousness analysis concerns "differences between the prior art and the claims at issue")).

BSC has asserted that claims 35 and 36 are both directed to the supposedly novel invention of the "curvy, offset" connector. See, e.g., D.I. 138, at 5; Ex. D, at Tr. 32:4-8 (invention of claim 35 is a "curvy, offset connector"); Ex. J, at 25 ("Claim 36, as properly construed, is directed to having a stent having curvy, *offset* connectors") (emphasis in original)). That is correct for purposes of claim 36, but it is unquestionably incorrect for purpose of claim 35 – as both BSC and Conor agree.

As Conor demonstrated in its motion in this case for summary judgment of obviousness (D.I. 141, D.I. 142), the "objective reach" of claim 35 (KSR, 127 S. Ct. at 1742) covers stents with horizontal connectors  – connectors whose end points lie on a line parallel to the stent's longitudinal axis. Stents with horizontal connectors are "old art," as Dr. Jang admitted in his deposition. Ex. B, at Tr. 344:18-20. These undisputed facts, discussed in detail in Conor's opening brief in support of its motion for summary judgment of obviousness (D.I. 142, which is incorporated by reference herein), render claim 35 obvious as a matter of law under KSR.

Claim 35 covers the "old art" of horizontal connectors, but the same is not true for claim 36. This is a function of the two claims' numbering of the specific expansion struts and connecting struts that they describe. Both claims 35 and 36 depend from claim 23. Claim 23 requires that the "second expansion strut pair" in the first column be connected to the "first expansion strut pair" in the second column. This describes the "split level" of connected pairs claimed by Jang. Claim 35 requires that the "split level" pairs be connected "first corner" to "second corner." That claim requirement automatically results in a horizontal connector when the

expansion columns are in-phase. That is a mathematical inevitability as demonstrated in Conor's motion for summary judgement.



In contrast, claim 36 requires the reverse – that the "*second* corner" of the second pair in the first column be connected to the "*first* corner" of the first pair in the second column. Because of the "split level" requirement in the claim language, that second corner will always be offset, indeed significantly offset, from the first corner of the first pair in the second column. The horizontal connector simply does not arise under claim 36.

16



As a consequence, in the 03-027 case, Cordis did not have this obviousness defense. While BSC's gerrymandered numbering of struts could theoretically result in a horizontal connector under claim 36, Cordis did not agree with that numbering – and it is demonstrably incorrect. Therefore, Cordis could not, and did not, move for summary judgment on claim 36 obviousness in the 03-027 case. Rather, the most that Cordis could do with the issue was to argue, as it did, that BSC was trying to have it both ways – asserting that the claim was limited to curvy offset connectors when it came to validity, but offering a reading that potentially included horizontal connectors when it came to infringement. See Ex. K, at 12. While that was a legitimate defense for Cordis to present, it was not the "same" as the straightforward invalidity defense that Conor is able to present here.

*                    *                    *

Simply put, claim 35 is different, and broader, than claim 36. A jury that considered both claims together could rationally return a verdict of validity for claim 36 and invalidity for claim 35. See L & W, 471 F.3d at 1320; Mendenhall, 5 F.3d at 1563. Yet no court or jury has ever considered claim 35, let alone found it valid. Because the validity issues in this case and in the 03-

027 case "cannot be characterized as identical," <u>Supra Medical Corp. v. Baker</u>, 1996 WL 571544,

at *5 (D. Del. Sept. 26, 1996) (Robinson, J.), collateral estoppel is inapplicable here. <u>Id.</u>; <u>see also</u>

<u>Hamilton v. Leavy,</u> 2001 WL 848603, at *9 (D. Del. July 27, 2001) (rejecting collateral estoppel

where the legal issues were not identical).

**III.    CONOR WAS NOT A PARTY OR IN PRIVITY
WITH ANY PARTY TO THE 03-027 CASE**

       Quite apart from the fact that claim 35 and claim 36 are not the same, Conor and

Cordis are also not the same entity and are not in privity with each other, as required for the

application of collateral estoppel.

       Until February of this year, Conor and Cordis had no connection whatsoever.  Both

were independent companies competing in the stent business.  In February 2007, Johnson &

Johnson, Cordis' parent company, acquired Conor.  As Johnson & Johnson stated at the time, the

acquisition of Conor made good business sense.  Rick Anderson, Johnson & Johnson's company

group chairman responsible for its stent business explained that "Cordis is looking forward to

strengthening its portfolio with the addition of the Co-Star stent system." <u>See</u> Declaration of Rick

Anderson, at ¶ 19.

       These synergies between the two companies and their products was, of course,

critical to Johnson & Johnson in making its decision to acquire Conor.  Yet, at the same time, the

acquisition preserves the two companies as separate legal entities, neither of which is the legal

representative of the other.  Even more important, at the time Cordis was defending the 03-027

case, there was no pre-existing relationship whatsoever – legal or otherwise – between Cordis and

Conor.  Cordis was not in privity with Conor.  Cordis was not Conor's legal representative.  As a

result, Conor simply cannot be bound by a verdict against Cordis.

A.    **Cordis Was Not Conor's Legal Representative at the Time of Trial**

For the 03-027 verdict to apply to Conor, BSC must prove that "the party against whom the bar is asserted [Conor] was a party or in privity with a party to the prior adjudication [Cordis]...." Del. River Port Auth., 290 F.3d at 573 n.10.  This requirement is an essential component of due process.  See Blonder-Tongue Labs., Inc. v. University of Illinois Found., 402 U.S. 313, 329 (1971); Stevenson v. Sears, Roebuck & Co., 713 F.2d 705, 710 (Fed. Cir. 1983). The refusal to treat non-parties as bound by prior judgments is "part of our 'deep-rooted' historic tradition that everyone should have his own day in court." Martin v. Wilks, 490 U.S. 755, 762 (1989).  Collateral estoppel is inapplicable against a party that "did not have 'a fair opportunity … to pursue his claim [or defense] the first time." Blonder-Tongue, 402 U.S. at 333.

Conor was not (and is not) a party to the 03-027 action.  Thus, the parties in the two cases are "not the same." Supra Medical, 1996 WL 571544.  In the absence of identity of parties, collateral estoppel could apply only if Conor "was … in privity" with the defendant in the 03-027 case. Del. River Port Auth., 290 F.3d at 573 n.10.  BSC cannot make that showing today, let alone in 2005.

BSC claims there are "few bright-line rules regarding the existence of privity," D.I. 138 at 9, 12, but that concept has clearly defined limits under Third Circuit law.  ***"The Third Circuit has construed the necessary legal relationship quite narrowly, to include only those instances in which a party to the suit [Cordis] is the legally designated representative of the non-party [Conor]."*** Pony Express Records, Inc. v. Springsteen, 163 F. Supp. 2d 465, 474 (D.N.J. 2001) (emphasis added), citing Collins v. E.I. DuPont de Nemours & Co., 34 F.3d 172, 176 (3d Cir. 1994) (citing Restatement (Second) of Judgments § 41 (1982) in applying New Jersey law, which is consistent with Third Circuit law).  The focus is on whether Cordis was "the legally designated

19

representative" of Conor when the 03-027 case was tried. That was not true then (and it is not true today).

Third Circuit law is clear (and is narrower than the First Circuit law that BSC relies upon). For collateral estoppel to apply in this Circuit, Conor must be "in privity with" Cordis in the sense that Conor *"controlled or directed the previous litigation or [Cordis] was sued [in the earlier case] in a representative capacity."* Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 410 (3d Cir. 1993) (emphasis added). Conor plainly did not control or direct the previous litigation; it had no relationship to Cordis at the time of the 03-027 case.

Nor was Cordis sued in a "representative capacity." Indeed, Cordis was sued all by itself, not as the "representative" of anyone. BSC notably opted *not* to sue Johnson & Johnson in the 03-027 case, even though it has frequently named Johnson & Johnson a party in other litigation involving stent products, including C.A. No. 03-283-SLR (alleging infringement of the Ding '536 patent) and C.A. No. 99-904-SLR (alleging infringement of the Israel '303 patent). Thus, the verdict in the 03-027 case does not even necessarily bar Johnson & Johnson, let alone an after-acquired subsidiary. See Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., 476 F. Supp. 2d 1143, 1151 (N.D. Cal. 2007) (refusing to apply collateral estoppel against party that plaintiff "could have easily joined … in [the] earlier action").

In any event, Cordis was not the "legal representative" of Conor in 2005. Neither Johnson & Johnson nor Cordis had any relationship at all with Conor in 2005. In the Third Circuit, a "pre-existing legal relationship" between Cordis and Conor is "necessary" for a finding of privity, and it is clearly absent here:

> [A]ll of the Restatement (Second) of Judgment examples, … and our cases finding privity have done so when there is a pre-existing legal relationship in which a party represents a non-party. A *pre-existing legal relationship* [i.e., a relationship pre-dating the determination in

earlier case] is not only a sufficient condition for privity to exist, but
it is also a necessary one. (Emphasis added).

Collins, 34 F.3d at 177; see also Hitchens v. County of Montgomery, 98 Fed. Appx. 106, 113 (3d

Cir. 2004) (non-precedential) (same).

These facts preclude a finding that the interests of Cordis and Conor were "so

closely aligned that the party to the [prior] suit [was] the 'virtual representative' of the non-party or

the non-party control[led] the litigation." Pony Express Records, 163 F. Supp. 2d at 474. "Such a

'virtual relationship' is found where the party in the present suit exercised control over and interest

in the earlier litigation." Symbol Tech., Inc. v. Metrologic Instruments, Inc., 771 F. Supp. 1390,

1400 (D. N.J. 1991) (quoting U.S. v. Webber, 396 F.2d 381, 387 (3d Cir. 1968)). That simply did

not occur.

Applying collateral estoppel would be particularly inappropriate because BSC is

trying to use collateral estoppel offensively. That is, it is trying to deny a new defendant the right

to assert its defense, rather than using collateral estoppel defensively to prevent a new plaintiff from

asserting a claim already litigated. For such offensive use of collateral estoppel, Third Circuit law

makes clear that a greater "degree of privity" is needed "for a plaintiff [such as BSC] to bind a new

defendant [such as Conor] in a later action" than would be "required for a new defendant to benefit

from claim preclusion." Lubrizoil Corp. v. Exxon Corp., 929 F.2d 960, 966 (3d Cir. 1991). The

application of this heightened standard when a plaintiff seeks to use collateral estoppel offensively

against a new defendant is consistent with decisions from other courts finding it "grossly

inequitable to bind a party to a judgment of validity rendered in an action against some other

party." Boutell v. Volk, 449 F.2d 673, 678 (10th Cir. 1971).

**B.    Cordis Is Not Conor's Legal Representative Today**

After Johnson & Johnson acquired Conor on February 1, 2007, Conor became a

Johnson & Johnson subsidiary and thus a sister corporation of Cordis.  However, even a parent-

subsidiary relationship – which is closer than the relationship that now exists between Conor and

Cordis – would not be not enough without more to create "privity" under Third Circuit law:

> *The basic principle of preclusion is that nonparties are not bound,
> and there is not privity between parent and subsidiary.*  (Emphasis
> added).

Janney Montgomery Scott, 11 F.3d at 410; see also Johnson & Johnson v. Coopervision, Inc., 720

F. Supp. 1116, 1123 (D. Del. 1989) ("The fact that Iolab is Johnson & Johnson's wholly-owned

subsidiary is insufficient to establish privity between the two entities."); Hart v. Yamaha-Parts

Distribs., Inc., 787 F.2d 1468, 1472-73 (11th Cir. 1986) (finding that privity between parent and

subsidiary does not exist unless the corporations function as alter egos); Doral Pharmamedics, Inc.

v. Pharmaceutical Generic Developers, Inc., 148 F. Supp. 2d 127, 133 (D. P.R. 2001) (refusing to

apply collateral estoppel where the parties in the first and second cases were subsidiaries of the

same company, i.e., "sister companies under …. common control.").

Of course, the acquisition of Conor provides great synergies with Johnson &

Johnson's preexisting stent company, Cordis.  But that does not somehow retroactively turn Cordis

into Conor's representative at a trial two years earlier, when there was no relationship between the

two companies.  Indeed, while Johnson & Johnson has acquired Conor, it has undertaken to

preserve the separate legal identity of the two corporations.  As a result, even today, Conor is not

Cordis' "legally designated representative."  Collins, 34 F.3d at 176-77; Pony Express Records, 163

F. Supp. 2d at 465.

In fact, Conor and Cordis both have adopted corporate resolutions stating that

neither is the "legally designated representative" of the other.  On February 1, 2007, the day

Johnson & Johnson acquired the outstanding shares of Conor stock, Conor's Board of Directors

approved the following resolution:

> RESOLVED:  that *Cordis Corporation is not and shall not be authorized to act as the legal representative or agent for Conor Medsystems, Inc. in any capacity whatsoever*, and further
>
> RESOLVED:  that *Conor Medsystems, Inc. shall not act as nor shall it be deemed to be the legal representative or agent for Cordis Corporation in any capacity whatsoever.*

See Ex. L (emphasis added).  Also on February 1, 2007, Cordis' board approved a similar

resolution:

> RESOLVED:  that *Conor Medsystems, Inc. is not and shall not be authorized to act as the legal representative or agent for Cordis Corporation in any capacity whatsoever*, and further
>
> RESOLVED:  that *Cordis Corporation shall not act as nor shall it be deemed to be the legal representative or agent for Conor Medsystems, Inc. in any capacity whatsoever.*

See Ex. M (emphasis added).  These resolutions establish that – even today – neither Cordis nor

Conor is the "legally designated representative" of the other, Collins, 34 F.3d at 176-77, Pony

Express Records, 163 F. Supp. 2d at 474, as required under controlling Third Circuit law.

### C.    Representation by the Same Counsel Does Not Establish Privity

After Johnson & Johnson acquired Conor, it asked its long-time counsel Patterson

Belknap Webb & Tyler LLP to take over the defense of this case.  But identity of counsel is not a

reason for applying collateral estoppel.  As the Supreme Court stated in South Central Bell

Telephone Co. v. Alabama, 526 U.S. 160, 168 (1999), the fact that "one of the … lawyers [from the

prior case] also represented [the party resisting collateral estoppel]" in the later action does not

justify the application of collateral estoppel.  The Third Circuit has agreed.  See Collins, 34 F.3d at

178 ("Nor does the fact that [the party resisting collateral estoppel] had the same attorney as the

plaintiffs in the first suit make issue preclusion appropriate.").[3]

**D.    The Cases BSC Cites Are Inapposite**

Although Third Circuit law on collateral estoppel is controlling, BSC relies on cases

from other Circuits that apply different standards.

BSC tries to analogize this case to <u>Boston Scientific Corp. v. Schneider (Europe)</u>

<u>AG,</u> 983 F. Supp. 245, 260 (D. Mass. 1997). That case involved an inapposite situation in which

BSC sought to challenge the validity of Schneider's Bonzel patent after merging with Scimed.

Scimed previously had lost a challenge to the validity of the Bonzel patent in another case and it

was a named party in the second case along with BSC. Applying First Circuit law, the district court

held that BSC, as Scimed's merger partner and co-party, was collaterally estopped from bringing

another case to challenge the validity of the same patent.

This case presents a very different situation. The unsuccessful validity challenger in

the earlier action (Cordis) is not a party to this case. Moreover, the entity resisting collateral

estoppel (Conor) has not merged with the entity that lost the earlier validity challenge. BSC tries to

shoehorn this case into the <u>BSC v. Schneider</u> fact pattern by asserting that "Conor merged with

Cordis." D.I. 138 at 13. This is not true. Conor and Cordis have not merged. Their current

relationship as subsidiaries of the same corporation (Johnson & Johnson) is significantly more

---

[3]  <u>See also</u> <u>Benson & Ford, Inc. v. Wanda Petroleum Co.,</u> 833 F.2d 1172, 1175 (5th Cir. 1987) (a party "cannot be precluded" from asserting a claim merely "because he chose an attorney who participated in a prior suit."); <u>Freeman v. Lester Coggins Trucking, Inc.,</u> 771 F.2d 860, 864 (5th Cir. 1985) (privity "requires more than a showing of parallel interests or, even, a use of the same attorney in both suits."); <u>Metro Indus., Inc. v. Sammi Corp.,</u> 82 F.3d 839, 849 n.6 (9th Cir. 1996) ("The fact that Vollrath and Metro shared a common attorney and argued similar theories of liability is not sufficient to demonstrate privity between the two parties."); <u>Gonzalez v. Banco Central Corp.,</u> 27 F.3d 751, 758-760 (1st Cir. 1994) (representation by the same lawyers held insufficient to support the application of collateral estoppel); <u>Hebron Pub. Sch. Dist. 13 v. U.S. Gypsum Co.,</u> 723 F. Supp. 416, 418-19 (D.N.D. 1989) ("The concept of relations with another party leading to privity does not include that between a client and his or her lawyer."), <u>aff'd,</u> 953 F.2d 398 (8th Cir. 1992).

attenuated than the merged relationship that led to the application of collateral estoppel in <u>BSC v. Schneider</u>. Moreover, because Cordis is not a party to this action, this case – unlike <u>BSC v. Schneider</u> – does not present the specter of a merged entity seeking a "second bite at the apple." D.I. 138 at 13.

More to the point, the district court in <u>BSC v. Schneider</u> was not applying Third Circuit law. Rather, it was applying the law of the First Circuit, which takes a more liberal approach to privity than the Third Circuit. <u>See Pony Express Records</u>, 163 F. Supp. 2d at 474 ("The Third Circuit has construed the necessary legal relationship quite narrowly ...."). Compare <u>Schneider</u>, 983 F. Supp. at 258 (stating that "privity may be established in proper circumstances even if the nonparty did not authorize representation by the party") (citing the First Circuit's decision in <u>In re Medomak Canning</u>, 922 F.2d 895, 901 (1st Cir. 1990)), with the Third Circuit's decision in <u>Collins</u>, 34 F.3d at 176 (finding privity lacking "because no legal relationship entitled the prior plaintiffs to represent [the current plaintiff]").

## IV.    CONTROLLING LEGAL PRINCIPLES HAVE CHANGED SINCE THE DECISION IN THE 03-027 ACTION

Finally, collateral estoppel should not be applied when there has been a "material intervening change in governing law." <u>Duvall v. Atty. Gen. of U.S.</u>, 436 F.3d 382, 391 (3d Cir. 2006); <u>see also</u> <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1196 n.27 (3d Cir. 1986) (collateral estoppel should not be applied when "controlling facts or legal principles have changed significantly since the [prior] judgment.").

The Supreme Court decision in <u>KSR</u>, 127 S. Ct. 1727, represents the kind of "material intervening change in governing law," <u>Duvall</u>, 436 F.3d at 391, that renders collateral estoppel inapplicable. Although <u>KSR</u> did not reject the teaching/suggestion/motivation ("TSM") requirement *per se*, it did reject an "inflexible" approach to application of the TSM test.

During the trial in the 03-027 case in 2005, BSC's expert Prof. Moore applied the TSM test in the "inflexible" manner that the Supreme Court rejected in KSR, 127 S. Ct. at 1739. He testified in conclusory terms that there was "no motivation" to "mix and match" the known features of prior art references. Ex. E, at Tr. 1077:1-12. This approach is contrary to the approach that the Supreme Court took in KSR when it held that "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit contents of issued patents." Id., 127 S. Ct. at 1741; see also id. at 1739 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."); id. at 1740 ("If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability.").

BSC's inflexible defense to Cordis' validity challenge to claim 36 will be an issue on appeal in that case in light of the change in the law. The fact that BSC prevailed in that case – on a different claim against a different party using a different legal standard – provides no reason to apply collateral estoppel here.

## V.    THERE IS NO BASIS FOR APPLYING COLLATERAL ESTOPPEL ON INEQUITABLE CONDUCT BECAUSE THAT ISSUE WAS NOT LITIGATED IN THE 03-027 CASE

BSC mentions enforceability only in passing, see D.I. 138 at 15-16, but also seeks summary judgment on the issue of enforceability and inequitable conduct. Once again, BSC cannot establish the requirements for applying collateral estoppel.

It is hornbook law that collateral estoppel only applies to issues that were "actually and necessarily determined by a court of competent jurisdiction" in prior litigation. Montana v. United States, 440 U.S. 147, 153 (1979). Thus, Third Circuit law is clear that collateral estoppel only applies to issues that were "'actually litigated'" and "'determined.'" Jean Alexander Cosmetics,

458 F.3d at 239, quoting Restatement (Second) of Judgments § 27 (1982); see also Burlington

Northern R.R. Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231 (3d Cir. 2002).  For

purposes of this requirement, an issue is "actually litigated" only if it "is submitted for

determination, and is determined ...."  Restatement (Second) of Judgments § 27, comment (d); see

O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062, 1066 (3d Cir. 1991).

      Here, the issues of inequitable conduct and unenforceability were not "submitted for

determination" by Cordis in the 03-027 case.  Indeed, Cordis never raised an inequitable conduct

defense, either by pleading or otherwise.  Nor were these issues ever "submitted for determination"

or actually "determined" in the 03-027 case, either by a jury or by the Court.  Collateral estoppel

does not apply in these circumstances.  See Lomax v. Nationwide Mut. Ins. Co., 776 F. Supp. 870,

874 (D. Del. 1991) (rejecting collateral estoppel on entitlement to recover benefits where that issue

was not actually litigated or decided in the prior case), rev'd on other grounds, 964 F.2d 1343 (3rd

Cir. 1992); UGI Corp. v. Piccione, 1997 WL 698011, at *8 (E.D. Pa. Nov. 5, 1997) (rejecting

collateral estoppel on issue not actually litigated or decided in prior case); In re Texas Eastern

Transmission Corp. PCB Contamination Ins. Coverage Litig., 1997 WL 164256, at *16 (E.D. Pa.

Apr. 9, 1997) (same).

## CONCLUSION

For the reasons set forth above, this Court should deny BSC's motion for partial

summary judgment of validity and enforceability of claim 35 of the Jang '021 patent based on

collateral estoppel.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
(302) 654-1888

*Attorneys for Defendant*
*Conor Medsystems, Inc.*

*Of Counsel*:

Gregory L. Diskant
Eugene M. Gelernter
Scott B. Howard
Kathleen M. Crotty
Ravi V. Sitwala
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

Dated:  May 25, 2007
180963.1