# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-768-SLR |
| CONOR MEDSYSTEMS, INC., | ) ) | |
| Defendant. | ) ) | REDACTED |

## BSC'S OPPOSITION TO CONOR'S MOTION FOR
## SUMMARY JUDGMENT OF NONINFRINGEMENT

YOUNG CONAWAY
STARGATT & TAYLOR, LLP
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for*
*Boston Scientific Corporation*
*and Boston Scientific Scimed, Inc.*

*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Young J. Park
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022-4611
(212) 446-4800

Dated:  May 25, 2007

# TABLE OF CONTENTS

**Page(s)**

NATURE AND STAGE OF THE PROCEEDINGS ........................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................................... 2

COUNTERSTATEMENT OF FACTS ........................................................................................... 3

I.     CONOR'S STENTS INFRINGE THE JANG '021 PATENT ............................................. 3

II.    CONOR'S INFRINGEMENT OF THE JANG '021 PATENT IS WILLFUL .................... 5

ARGUMENT ..................................................................................................................................... 7

I.     CONOR'S COSTAR STENT LITERALLY INFRINGES THE "WHEREIN
       CLAUSE" UNDER THE COURT'S EXISTING CLAIM CONSTRUCTION .................. 8

II.    EVEN IF THE COURT WERE TO ACCEPT CONOR'S CONTRARY
       CONSTRUCTION OF THE "WHEREIN CLAUSE," CONOR'S STENTS
       INFRINGE UNDER THE DOCTRINE OF EQUIVALENTS ............................................. 9

III.   CONOR'S RELATED DESIGNS HELP PROVE THAT ITS INFRINGEMENT
       IS WILLFUL ...................................................................................................................... 11

       A.     BSC Disclosed In Its Contention That The Related Designs Infringe The
              Jang '021 Patent ...................................................................................................... 11

       B.     As Set Forth In Professor Moore's Expert Report, The Related Stent
              Designs Infringe Claim 35 Of The Jang '021 Patent .............................................. 13

CONCLUSION ............................................................................................................................... 16

i

# TABLE OF AUTHORITIES

## Cases

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
  327 F.3d 1364 (Fed. Cir. 2003).................................................................................................7

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995)....................................................................................................7

*N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*,
  215 F.3d 1281 (Fed. Cir. 2000)................................................................................................7

*Pitney Bowes Inc. v. Hewlett-Packard Co.*,
  182 F.3d 1298 (Fed. Cir. 1999)................................................................................................7

*Rexnord Corp. v. Laitram Corp.*,
  274 F.3d 1336 (Fed. Cir. 2001)................................................................................................7

*Schwing GmbH v. Putzmeister Aktiengesellschaft*,
  305 F.3d 1318 (Fed. Cir. 2002).......................................................................................8, 9, 11

*Storage Tech. Corp. v. Cisco Sys., Inc.*,
  329 F.3d 823 (Fed. Cir. 2003)..................................................................................................7

*W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC*,
  370 F.3d 1343 (Fed. Cir. 2004)................................................................................................8

## Statutes

35 U.S.C. § 102(b) .......................................................................................................................9

On May 11, 2007, Conor Medsystems, Inc. ("Conor") filed its Opening Brief In Support Of Conor Medsystems' Motion For Summary Judgment Of Noninfringement Of Claim 35 Of The Jang '021 Patent. Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively "BSC") respectfully submit this answering brief in opposition to that motion.

## NATURE AND STAGE OF THE PROCEEDINGS

On March 5, 2003, BSC filed its Answer and Counterclaim in *Cordis Corp. v. Boston Scientific Corp.*, No. 03-027 ("the *Cordis* action") alleging, *inter alia*, that Cordis Corporation ("Cordis") infringed U.S. Patent No. 5,922,021 ("the Jang '021 patent," Ex. 1). (D.I. 26) On June 3, 2005, this Court issued its claim construction ruling for the '021 patent, construing terms including the "wherein clause" at issue in Conor's motion. (D.I. 334) On July 1, 2005, a jury found that the Jang '021 patent was valid and infringed. (D.I. 381) This Court upheld the jury verdict and denied Cordis' motion for JMOL on May 11, 2006. (D.I. 417) This Court likewise denied Cordis' ensuing motion for reconsideration. (D.I. 429)

On November 8, 2005, BSC filed this action against Conor Medsystems, Inc., a wholly owned subsidiary of Johnson & Johnson, like Cordis. (D.I. 1) In its Complaint, BSC accused Conor's CoStar and UniStar stents of infringing the Jang '021 patent.

On May 11, 2007, BSC submitted its Opening Brief On Claim Construction Issues in support of its proposed constructions. On the same date, Conor submitted its Opening *Markman* Brief On Construction Of Terms In The Jang '021 Patents. BSC incorporates by reference its discussion of the proper construction of Claim 35 of the Jang '021 patent as set forth in its Opening Claim Construction Brief, as well as in its answering claim construction brief to be filed on May 31, 2007.

## SUMMARY OF THE ARGUMENT

Conor seeks summary judgment of noninfringement based on an improper construction of the "wherein clause" of Claim 35 of the Jang '021 patent. The Court previously rejected a similarly flawed construction in its June 3, 2005 claim construction ruling in the *Cordis* action. (D.I. 334 (Civ. No. 03-027)) And the Court has already considered, and denied, a similar motion for summary judgment made by Cordis in that action. (D.I. 217 (Civ. No. 03-027))

This Court has already considered and properly construed the "wherein clause." Under the Court's construction, there is no dispute that the accused CoStar stents meet this limitation literally. Indeed, Conor's motion for summary judgment does not even discuss the possibility of noninfringement under the Court's existing construction. There is no reason for this Court to reverse itself and adopt Conor's flawed construction. Conor's motion should be denied.

But even if the Court were to adopt Conor's flawed construction, genuine issues of material fact would still exist as to infringement under the doctrine of equivalents. Contrary to Conor's assertions, prosecution history estoppel does not bar BSC from arguing equivalents for the "wherein clause." Dr. Jang did not distinguish his stent designs based on any argument regarding structures being 180 degrees out of phase. In fact, the primary prior art reference discussed during prosecution, the Pinchasik '067 application, did not even contain that feature. Because BSC is not precluded from arguing equivalents for the "wherein clause," this Court should deny Conor's motion for summary judgment of noninfringement even if it adopts Conor's flawed construction of that limitation.

2

Contrary to Conor's allegations, BSC timely informed Conor that earlier stent designs that led to the CoStar stents[1] (hereinafter the "related stent designs") also infringed Claim 35 of the Jang '021 patent.

REDACTED

As set forth therein, Conor became aware of the Jang '021 patent by 1999, while it was prosecuting a patent application for a stent design similar in appearance to the CoStar stent. Conor also became aware of the Jang '021 patent through the *Cordis* action, which it was monitoring, where BSC asserted infringement by the Bx Velocity stent. Despite this knowledge, Conor continued to make related stent designs that incorporated infringing features. BSC's Second Supplemental Response To Interrogatory No. 14 sets forth all of this information and cites documents produced by Conor disclosing the structure of its infringing related stent designs. BSC's response was served on January 11, 2007, well within the period for fact discovery. Conor's arguments are thus baseless. Conor knew what related stent designs were accused of infringement and why: they help prove Conor's willful infringement.

## COUNTERSTATEMENT OF FACTS

## I.    CONOR'S STENTS INFRINGE THE JANG '021 PATENT

Conor's CoStar stents literally infringe Claim 35 of the Jang '021 patent under this Court's existing claim constructions. Claim 35 depends on Claim 23. The meaning of the vast majority of the terms in Claim 35 of the Jang '021 patent is not disputed by the parties. Of the three claim limitations in dispute, Conor's motion rests entirely on its proposed construction of

---

[1]    All references to the CoStar stents include both the CoStar and UniStar stents. As Conor has admitted, both stents have the same bare-metal stent architecture. (Ex. 2 at 6)

3

the final limitation of Claim 23, referred to by the parties as the "wherein clause."  That clause

reads as follows:

> wherein the first expansion strut of the first expansion strut pair in
> the first expansion column has a longitudinal axis offset from a
> longitudinal axis of the first expansion strut of the second
> expansion strut pair in the second expansion column.

(Ex. 1 at col. 21:11-15)

This is the second time that this Court is addressing a proposed claim construction

of the "wherein clause" from a Johnson & Johnson ("J&J") subsidiary that seeks to exclude 180

degrees out-of-phase stent designs.  This is also the second time that this Court is addressing a

motion from a J&J subsidiary that an accused stent does not infringe the Jang '021 patent based

on the subsidiary's proposed construction of the "wherein clause."

This Court previously rejected Cordis' proposed construction of the "wherein

clause" to exclude stent designs that are 180 degrees out of phase.  (D.I. 334 at 6 (Civ. No. 03-

027))  As the Court explained, the ordinary meaning of the claim language, specification and

prosecution history all support the construction of the "wherein clause" to mean "the first

expansion strut in the first column does not share a longitudinal axis with the second expansion

strut in the second column."  *Id.*  On the basis of this construction, the Court denied Cordis'

motion for summary judgment of noninfringement.  (D.I. 341 (Civ. No. 03-027))  And there is

no reason the outcome in this case should be any different.

As set forth in BSC's Opening Brief On Claim Construction Issues, the Court

should continue to give the "wherein clause" its existing construction.  (*See* BSC's Opening

Claim Construction Brief at 9-15)  Under the Court's construction, the "wherein clause" does not

require any "in phase" or "out-of-phase" expansion strut pair alignment.  (*See id.*)  And that

result is fully consistent with the claim language, specification and prosecution history.

4

Conor does not dispute that the accused CoStar stents meet the "wherein clause" literally under the Court's existing construction. Instead, Conor mischaracterizes the specification and prosecution history of the Jang '021 patent in an attempt to manufacture an argument that Dr. Jang somehow disclaimed any interpretation of the "wherein clause" that would cover stents that are 180 degree out of phase. This proposed construction is without merit and should be rejected for the same reasons that the Court rejected it last time.

Nonetheless, even if the Court were to change its prior construction of the "wherein clause" and adopt Conor's proposed construction, the prosecution history does not estop BSC from arguing equivalents for that limitation. Dr. Jang did not distinguish his claimed stent designs based on any argument regarding structures being 180 degrees out of phase. Absent such an estoppel, genuine issues of material fact exist as to whether the accused CoStar stents infringe the "wherein clause" under the doctrine of equivalents, which preclude granting Conor's motion for summary judgment.

## II.    CONOR'S INFRINGEMENT OF THE JANG '021 PATENT IS WILLFUL

BSC has alleged throughout this action that Conor's infringement of the Jang '021 patent has been willful. For example, in its Complaint, BSC averred that "[u]pon information and belief, Conor has willfully infringed the '021 patent." (D.I. 1 at ¶ 15) BSC provided Conor with a detailed basis for its willful infringement allegation in its Second Supplemental Response To Interrogatory No. 14. (Ex. 3) BSC has also submitted an unrebutted expert report that concludes Conor's infringement was willful. (Ex. 4)

Referencing paragraph 15 of the Complaint, Conor's Interrogatory No. 14 sought BSC's basis for alleging that Conor has willfully infringed the Jang '021 patent. In its second supplemental response, BSC stated "Conor has copied and otherwise infringed the '021 patent and or its commercial embodiments [*e.g.*, the Bx Velocity stent] while on notice of the '021

5

patent since at least 1999, with no reasonable good-faith basis for concluding that it does not infringe." (Ex. 3 at 6)

As stated in BSC's interrogatory response, Conor was on notice of the '021 patent since at least 1999, when the '021 patent was cited by a patent examiner against Conor's patent application disclosing a stent design similar to the CoStar stent. (*Id.*) As BSC's response further stated, "Conor began infringing, and has continued to infringe, the '021 patent while on notice of, *inter alia*, Civil Action No. 03-027-SLR, in which the validity of the '021 patent was upheld by both a jury verdict and this Court's denial of Cordis' motion for judgment as a matter of law." (*Id.*)

REDACTED

BSC's interrogatory response not only stated BSC's contention that Conor's related stent designs infringe the '021 patent, but cited examples of such related stent designs. It is disingenuous for Conor to allege that BSC raised infringement of the related stent designs in the first instance in Professor James Moore's expert report. BSC served its Second Supplemental Response To Interrogatory No. 14 on January 11, 2007, well within the period for fact discovery.

6

Accordingly, Conor was fully informed of BSC's claim that Conor's related stent designs infringed the Jang '021 patent during the period for fact discovery.

### ARGUMENT

An infringement analysis involves two steps — the threshold determination of the meaning and scope of the asserted claims, followed by the determination of whether the accused product infringes those claims, as properly construed. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc). "The starting point for any claim construction must be the claims themselves." *Pitney Bowes Inc. v. Hewlett-Packard Co.*,182 F.3d 1298, 1305 (Fed. Cir. 1999). "The words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005); *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002) (stating that a court construing a claim term should "indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning"). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

The Federal Circuit has consistently refused to apply the doctrine of prosecution disclaimer where the alleged disavowal of claim scope falls short of being "clear and unmistakable." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003); *see also Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 833 (Fed. Cir. 2003); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1369 (Fed. Cir. 2003). Thus, a disclaimer cannot be found where the prosecution history is ambiguous or amenable to multiple reasonable interpretations. *See N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1293-95 (Fed. Cir. 2000); *see also Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1347 (Fed. Cir. 2001) (refusing to limit the ordinary meaning of the claim because the alleged disclaimer in the file

wrapper was at best "inconclusive"); *W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC,* 370 F.3d 1343, 1353 (Fed. Cir. 2004) ("Where, as here, the written description and prosecution history are ambiguous as to whether the patentee used the claim terms inconsistent with their ordinary and customary meanings, it is the ordinary and customary meanings that the terms obtain.").

This rigorous standard, which permits a departure from the ordinary meaning of a claim term only in limited circumstances, applies equally in the context of the doctrine of equivalents. *See, e.g., Schwing GmbH v. Putzmeister Aktiengesellschaft,* 305 F.3d 1318, 1327 (Fed. Cir. 2002) (holding that, because "the applicant's remarks with respect to the annular extensions are equivocal at best," they "do not preclude the application of the doctrine of equivalents").

I.    **CONOR'S COSTAR STENT LITERALLY INFRINGES THE "WHEREIN CLAUSE" UNDER THE COURT'S EXISTING CLAIM CONSTRUCTION**

In the *Cordis* action, this Court construed the "wherein clause" to mean "the first expansion strut in the first column does not share a longitudinal axis with the second expansion strut in the second column." (D.I. 334 at 6)  For the reasons set forth in the Court's June 3, 2005 claim construction ruling (D.I. 334) and BSC's briefs on claim construction issues in this action, BSC proposes that the Court continue to construe the "wherein clause" as it did in the *Cordis* action.

There is no dispute that, under the Court's existing construction of the "wherein clause," the CoStar stents literally infringe that limitation.  As shown in the figure below, which was attached to Professor Moore's Opening Expert Report as Ex. D, the first expansion strut in the first expansion column of the CoStar stent does not share a longitudinal axis with the second expansion strut in the second expansion column.  (Ex. 5, at Ex. D)

8



Indeed, Conor's motion for summary judgment does not even discuss the possibility of noninfringement under the Court's existing construction of the "wherein clause."

## II. EVEN IF THE COURT WERE TO ACCEPT CONOR'S CONTRARY CONSTRUCTION OF THE "WHEREIN CLAUSE," CONOR'S STENTS INFRINGE UNDER THE DOCTRINE OF EQUIVALENTS

Even if the Court reverses itself and adopts Conor's proposed construction, Conor's motion should still be denied. This is so because BSC asserts infringement under the doctrine of equivalents (Ex. 5, at 8 ("Even if the CoStar stent is not found to literally infringe Claim 35 of the '021 patent, that stent infringes that claim under the doctrine of equivalents.")), and Conor cannot prove any *Festo* bar. Dr. Jang's statements during prosecution regarding the "wherein clause" are "equivocal at best." As a result, they do not preclude the application of the doctrine of equivalents. *See, e.g., Schwing*, 305 F.3d at 1327 (holding that prosecution-history statements that are "equivocal at best . . . do not preclude the application of the doctrine of equivalents").

During prosecution of the Jang '021 patent, the patent examiner initially rejected certain patent claims, including application Claim 24 (which eventually issued as Claim 23), as being anticipated under 35 U.S.C. § 102(b) over a "modified" Figure 2B of the Pinchasik '067

9

application. (Ex. 6 at BSC-C 163-170)  The examiner "modified" that figure by improperly

dissecting the "tubular members" disclosed in that figure to carve out alleged "expansion strut

pairs" and "expansion columns," structures nowhere found in that drawing.

Notably, the patent examiner did not identify any specific phase-alignment feature

of the Pinchasik '067 application that he believed would render the Jang '021 patent unpatentable.

And for good reason.  The concept of a "180 degree out-of-phase" alignment does not apply to

tubular-member designs like Figure 2B of the Pinchasik '067 application, which do not have

expansion struts that are connected to joining struts at alternating ends.  Moreover, specifying a

particular phase alignment would not have made any sense given that the universe of phase

alignments was already known in the art.  For example, U.S. Patent No. 5,514,154 to Lau

contains figures illustrating an "in phase" stent design (Figure 5), a "180 degree out-of-phase"

design (Figure 11), and a design that is neither "in phase" nor "180 degrees out-of-phase" (Figure

12).  (*See* Ex. 7 at Figs. 5, 11, 12)

Following the examiner's rejection, Dr. Jang amended application Claim 1 and

application Claim 24 (what issued as Claim 23) to include the "wherein clause." (Ex. 6 at BSC-

C 178-185)  In remarks accompanying this amendment, Dr. Jang responded to the examiner's

rejection as follows:

> The present invention is a stent with a first connecting strut with
> proximal, distal and intermediate sections.  The intermediate
> section is non-parallel to the proximal and distal sections.
> Additionally, the stent has a first expansion strut of a first
> expansion strut pair in a first expansion column that has a
> longitudinal axis which is offset from a longitudinal axis of a first
> expansion strut of the second expansion strut pair in a second
> expansion column.
>
> Pinchasik, et al. fails to teach or suggest *such a structure*.
> Pinchasik, et al., in combination with Lam et al., also fails to teach
> or suggest such a structure.  Additionally, there is no suggestion or

motivation to combine the teachings of Pinchasik et al., with Lam
et al. to obtain *the stent of the present invention*.

(*Id.* at BSC-C 184 (emphases added)) As is apparent from the above text, Dr. Jang distinguished

his invention from Pinchasik on the basis of the structure of the claimed stent *as a whole*,

including the requirement for "expansion strut pairs" and "expansion columns." The examiner

agreed, and subsequently removed the rejection based upon Pinchasik. Nowhere was the phrase

"in phase" or "out of phase" even mentioned in the context of the Pinchasik '067 application and,

at a minimum, Dr. Jang did not clearly and unmistakably distinguish his invention on the basis of

such a requirement.

Accordingly, even if resort to the doctrine of equivalents becomes necessary to

establish that Conor's accused stents satisfy the "wherein clause," that doctrine is fully available

to BSC. *See Schwing*, 305 F.3d at 1327 (holding that, because "the applicant's remarks with

respect to the annular extensions are equivocal at best," they "do not preclude the application of

the doctrine of equivalents").

## III.    CONOR'S RELATED DESIGNS HELP PROVE THAT ITS INFRINGEMENT IS WILLFUL

### A.    BSC Disclosed In Its Contention That The Related Designs Infringe The Jang '021 Patent

Contrary to its assertions, BSC informed Conor that the related stent designs

leading up to the CoStar stent infringed the Jang '021 patent in BSC's Second Supplemental

Response To Interrogatory No. 14. This response was served on January 11, 2007, well within

the fact discovery period.

Conor's Interrogatory No. 14 sought the basis for BSC's claim in the Complaint

that the CoStar and UniStar stents willfully infringed the Jang '021 patent. BSC's complete

response to Conor's Interrogatory No. 14 is provided in Exhibit 3. For the Court's convenience, BSC refers to the following paragraph in BSC's response:

REDACTED

As demonstrated by this response, BSC put Conor on notice that the related stent designs meet all of the limitations of Claim 35 of the '021 patent. The documents following the "See, e.g.," are the same documents that are referenced in Professor Moore's expert report that Conor currently seeks to criticize.[2]

REDACTED

It is irrelevant that BSC did not identify those related stent designs in its response to Conor's Interrogatory No. 3, which sought the basis for BSC's infringement claim, or Complaint. (Ex. 3) BSC does not accuse the related stent designs of infringing the Jang '021 patent in order to obtain damages. Rather, BSC asserts infringement by the related stent designs to help demonstrate Conor's continuing acts of copying and willful infringement over the years leading up to this action. BSC made this position clear in its response to Conor's contention interrogatory relating to willful infringement and Conor's arguments in its motion papers are puzzling at best.

---

[2]    Although Professor Moore's expert report cites a few more documents, these additional documents merely show the same or very similar stent designs to those cited in the interrogatory response.

It is also irrelevant whether the related stent designs have been commercialized or sold. Again, BSC does not accuse those related designs of infringement in order to obtain damages. To establish infringement, it is enough that Conor has made the related stents. 35 U.S.C. § 271.

REDACTED

. (Ex. 9 at 106: 17-20; 195:2-16; 200:19-201:4; 225:17-25; 226:8-14; Ex. 10 at 59:21-63:20; 64:1-65:21; 71:1-16; 78:4-23; 85:15-86:1) This is enough to prove copying and willfulness

**B.    As Set Forth In Professor Moore's Expert Report, The**
**Related Stent Designs Infringe Claim 35 Of The Jang '021 Patent**

Conor also argues that even if BSC had timely identified the related stent designs, it offered "no particularized proof of infringement." (Conor Summary Judgment Opening Brief at 10) This argument is meritless. Given the high degree of similarity between the CoStar stent and the stents shown in the related stent designs, it was unnecessary for Professor Moore to prepare additional infringement charts for each of the related stent designs.

REDACTED

REDACTED

13

REDACTED

REDACTED

To grant Conor's motion for summary judgment would exalt form over substance. Based on Professor Moore's infringement analysis of the CoStar stent, it is readily apparent how that same analysis would also apply to the related stent designs. For Conor to argue otherwise would be disingenuous; Conor is fully aware of how BSC contends that the related stent designs literally infringe Claim 35 of the Jang '021 patent. Therefore, it was appropriate for Professor Moore to state in his expert report that his infringement analysis regarding the CoStar stent is equally applicable to the related Conor stent designs. If there was any ambiguity as to how the related stent designs infringed Claim 35, Conor had the opportunity to question Professor Moore on this topic during his expert witness deposition, which it did not. Indeed, during his deposition, Professor Moore offered to "go through each [related design] and do the infringement and DOE analysis," but attorneys for Conor declined. (Ex. 11, at 207:14-209:22)

Conor's motion for summary judgment of noninfringement is nothing more than a backdoor attempt to undercut BSC's willful infringement claim. Conor attempts to have this Court rule in its favor now so that it can later attempt to preclude BSC from arguing that Conor has knowingly, systematically and continuously made stents that infringe and copy the Jang '021 patent. But Conor's arguments are meritless. BSC timely disclosed that the related stent designs infringe the Jang '021 patent in its response to Conor's contention interrogatory relating to willful infringement. Moreover, BSC's expert witness, Professor Moore, properly explained in his expert report that the related stent designs infringe Claim 35 for the same reasons that the CoStar

15

stents infringe.  And Conor had the opportunity to examine Dr. Moore on that explanation.

Accordingly, this Court should deny Conor's motion for summary judgment that the related stent

designs do not infringe the Jang '021 patent.

## CONCLUSION

For all the reasons set forth above and in its claim construction briefs, BSC

respectfully requests that the Court deny Conor's motion for summary judgment of

noninfringement.

Dated:      May 25, 2007                    Respectfully submitted,


                                             /s/ Adam W. Poff
                                            Josy W. Ingersoll (I.D. #1088)
                                            John W. Shaw (I.D. #3362)
                                            YOUNG CONAWAY
                                            STARGATT & TAYLOR, LLP
                                            1000 West Street, 17th Floor
                                            P.O. Box 391
                                            Wilmington, Delaware  19899
                                            (302) 571-6600
                                            apoff@ycst.com

                                            *Attorneys for*
                                            *Boston Scientific Corporation*
                                            *and Boston Scientific Scimed, Inc.*


*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Young J. Park
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022-4611
(212) 446-4800

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on  May 25, 2007, I caused to be served a true and

correct copy of the foregoing document upon the following counsel of record as indicated.

### BY HAND DELIVERY

Steven J. Balick, Esquire
John G. Day, Esquire
Lauren E. Maguire, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

### BY E-MAIL

Gregory L. Diskant, Esquire
Eugene M. Gelernter, Esquire
Kathleen M. Crotty, Esquire
Scott W. Parker, Esquire
Ravi V. Sitwala, Esquire
Diana Breaux, Esquire
Patterson, Belknap, Webb
    & Tyler, LLP
1133 Avenue of the Americas
New York, NY  10036

Courtland L. Reichman, Esquire
King & Spalding
1180 Peachtree Street, NE
Atlanta, GA  30309

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s Adam W. Poff

Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
*apoff@ycst.com*

*Attorneys for Boston Scientific Corporation*
*and Boston Scientific Scimed, Inc.*