# EXHIBIT 19

Case 1:05-cv-00768-SLR    Document 167-8    Filed 06/13/2007    Page 1 of 19

CONFIDENTIAL

Page 1

```
 1
 2   THE UNITED STATES DISTRICT COURT
 3   FOR THE DISTRICT OF DELAWARE
 4   ------------------------------------
 5   BOSTON SCIENTIFIC CORPORATION and
 6   BOSTON SCIENTIFIC SCIMED, INC.,
 7            Plaintiffs,
 8       vs.                        No. 05-768-SLR
 9   CONOR MEDSYSTEMS, INC.,
10            Defendant.
11   ------------------------------------
12
13
14
15     VIDEOTAPED DEPOSITION OF NIGEL BULLER
16           SATURDAY, APRIL 21, 2007
17                 8:30 a.m.
18
19
20
21
22
23   Reported by:
24   Joan Urzia, RPR
25   JOB NO. 193443
```

Page 2

```
 1
 2           April 21, 2007
 3           8:30 a.m.
 4           New York, New York
 5
 6
 7       VIDEOTAPED DEPOSITION of NIGEL
 8  BULLER, held at the offices of Patterson
 9  Belknap Webb & Tyler, LLP, 1133 Avenue of
10  the Americas, New York, New York, pursuant
11  to Agreement, before Joan Urzia, a Notary
12  Public of the State of New York.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1
 2              A P P E A R A N C E S:
 3
 4       KIRKLAND & ELLIS
 5       Attorneys for Plaintiffs
 6          153 E. 53rd Street
 7          New York, NY 20004-1206
 8       BY:  PETER J. ARMENIO, ESQ.
 9
10
11       PATTERSON BELKNAP WEBB
12       & TYLER, LLP
13       Attorneys for Defendant
14          1133 Avenue of the Americas
15          New York, New York
16       BY:  KATHLEEN MCCROTTY, ESQ.
17            SCOTT W. PARKER, ESQ.
18
19
20       ALSO PRESENT:
21         IAN PAOLA, Videographer
22         LENA I. VINITSKAYA, Conor
23              General Counsel
24
25
```

Page 4

```
 1
 2       THE VIDEOGRAPHER:  Good morning.
 3  Here begins tape number one in the
 4  videotaped deposition of Dr. Nigel
 5  Buller in the matter of Boston
 6  Scientific Corporation, et al., versus
 7  Conor Medsystems, Inc. in the United
 8  States District Court, District of
 9  Delaware.
10       This deposition is being held at
11  1133 Avenue of the Americas, New York,
12  New York on April 21, 2007 at
13  approximately 8:35 a.m.
14       My name is Ian Paola from the
15  firm of Esquire Video Services and I
16  am the legal video specialist.
17       The court reporter is Joan Urzia,
18  in association with Esquire Deposition
19  Services.
20       Will counsel and all others
21  present please introduce themselves.
22       MR. ARMENIO:  Peter Armenio from
23  Kirkland & Ellis for plaintiffs,
24  Boston Scientific Corporation, Boston
25  Scientific, Inc.
```

Page 5

```
 1            N. Buller
 2       MS. MCCROTTY:  Kathleen McCrotty
 3  with Patterson Belknap for defendant
 4  Conor Medsystems, Inc.
 5       MR. PARKER:  Scott Parker, also
 6  from Patterson Belknap.
 7       MS. VINITSKAYA:  Lena Vinitskaya,
 8  in-house counsel for Conor.
 9  N I G E L   B U L L E R,    called as a
10     witness, having been duly sworn by a
11     Notary Public, was examined and
12     testified as follows:
13  EXAMINATION BY
14  BY MR. ARMENIO:
15     Q.  Good morning, Dr. Buller.
16     A.  Good morning.
17     Q.  As you know, I'm an attorney for
18  Boston Scientific.  I'm going to be asking
19  you some questions today.  I know you've
20  been through this process before, so I will
21  spare you a long introduction.
22       The one thing I would ask is if
23  you don't understand a question of mine,
24  would you please during the day today ask
25  me for clarification so we have a clear
```

CONFIDENTIAL

Page 37

1  N. Buller
2  geometries?
3  MS. McCROTTY: Objection.
4  A.  It's a difference in connector
5  geometry, and therefore when prior arts
6  show or have that difference, it can be,
7  you know, anticipation or very least
8  obviousness.  If it doesn't have that
9  geometry, then it can be a different route
10 to get to non-infringement if the patent is
11 still relevant in the --
12     MR. ARMENIO:  Mark this as Buller
13 Exhibit 2, please.
14     (Buller Exhibit 2, BX Velocity
15     stent picture, marked for
16     identification, as of this date.)
17 Q.  Doctor, I've marked as Exhibit 2
18 a picture of the BX Velocity stent.  One is
19 for you and one is for your counsel.
20 A.  Got it.
21 Q.  And you have seen the BX Velocity
22 stent many, many times, right?
23 A.  Yes, that's true.
24 Q.  And you believe that stent for a
25 bare metal stent to have been a

Page 38

```
 1         N. Buller
 2   commercially successful stent, lots of them
 3   have been used very successfully around the
 4   world?
 5         MS. McCROTTY:  Objection.
 6         You can answer.
 7    A.   Yes, I think that's true.
 8    Q.   And you also believe the BX
 9   Velocity to be a clinically successful
10   stent; again, very many, probably hundreds
11   of thousands of these stents have been
12   implanted in patients with good outcomes?
13         MS. McCROTTY:  Objection.
14    A.   What you're saying is highly
15   likely.  I don't have the sales figures for
16   the numbers and I'm not really the right
17   person to say whether it's considered on
18   the ground scale of things a commercial
19   success, but yes, in broadest terms, yes, I
20   believe it is very successfully clinically,
21   and I think it's probably been a successful
22   product without having all the facts and
23   figures in front of me.
24    Q.   And is it correct that this bare
25   metal BX Velocity stent serves as the
```

Page 403

```
 1              N. Buller
 2    date.)
 3       Q.   What I've just marked as Buller
 4    Exhibit 37 is a pictorial representation of
 5    figure 1 of the Wijay '569 Patent.
 6       A.   Yes.
 7       Q.   With the labeling and the court's
 8    prior construction of the "wherein" clause
 9    that shows that this figure 1 would be
10    excluded from claim 23 of the '021 Patent,
11    right?
12       A.   Yes.
13       Q.   And you would agree that under
14    that construction of the "wherein" clause,
15    this is a fair representation?
16       A.   Yes, under that construction and
17    with this particular embodiment, but as
18    I've already said it would be a routine
19    design choice to decide to spiral in the
20    opposite direction.
21           MR. ARMENIO:  Why don't we take
22     our break?
23           THE VIDEOGRAPHER:  The time is
24     5:08 p.m.  We're going off the record.
25           (Recess taken from 5:08 p.m. to
```

Page 438

```
 1          N. Buller
 2   But sadly, that isn't what's going to
 3   happen here.  It would be lovely, but it
 4   isn't possible.
 5      Q.   I think you're probably right.
 6          MR. ARMENIO:  Doctor, I really
 7   appreciate your time.  Thank you very
 8   much.  I have no further questions.
 9          MS. McCROTTY:  I have no
10   questions.
11          THE VIDEOGRAPHER:  The time is
12   5:55 p.m.  This marks the end of the
13   videotaped deposition of Dr. Nigel
14   Buller.
15          (Time Noted:  5:55 p.m.)
16
17          _____
18            NIGEL BULLER
19
20   Subscribed and sworn to before me
21   this ___ day of _____, 2007.
22
23   _____
24
25
```

Page 439

```
 1
 2              C E R T I F I C A T E
 3   STATE OF NEW YORK   )
 4                       : ss.
 5   COUNTY OF NEW YORK  )
 6
 7       I, Joan Urzia, a Notary Public
 8   within and for the State of New York,
 9   do hereby certify:
10       That NIGEL BULLER, the witness
11   whose deposition is hereinbefore set
12   forth, was duly sworn by me and that
13   such deposition is a true record of the
14   testimony given by the witness.
15       I further certify that I am not
16   related to any of the parties to this
17   action by blood or marriage, and that I
18   am in no way interested in the outcome
19   of this matter.
20       IN WITNESS WHEREOF, I have
21   hereunto set my hand this 30th day of
22   April, 2007.
23
24          _____
25              Joan Urzia
```

Page 440

```
 1
 2   ---------------- I N D E X ----------------
 3   WITNESS       EXAMINATION BY       PAGE
 4   NIGEL BULLER    MR. ARMENIO
 5
 6   ---------------- EXHIBITS ----------------
 7   BULLER                          FOR ID.
 8    1    U.S. Patent '5,922,021        31
 9    2    BX Velocity stent picture     37
10    3    Engineering drawings          54
11    4    Picture, Bates stamped        57
12         number CM 5992
13    5    Picture, Bates stamped        57
14         CM 5412
15    6    Picture, Bates stamped        58
16         CM 129935
17    7    Engineering drawings          58
18    8    Opening Expert Report of      65
19         Nigel Buller
20    9    Rebuttal Expert Report of     66
21         Nigel Buller
22   10    United States Patent         154
23         6,241,762
24
25              (Continued)
```

Page 441

```
 1
 2   ------------- EXHIBITS (Cont'd) -------------
 3   BULLER                          FOR ID.
 4   11    Document Bates stamped       179
 5         CM 118761 to 768
 6   12    Document Bates stamped       189
 7         CM 123829 through 846
 8   13    Document Bates stamped       189
 9         CM 118786 through 118791
10   14    Document                     189
11   15    Document Bates stamped       189
12         CM 87273 through 74
13   16    Picture                      189
14   17    Jury Verdict                 221
15   18    Opening Report               228
16   19    Rebuttal Expert Report       228
17   20    Drawing                      241
18   21    Stent Design                 248
19   22    Document Bates stamped       257
20         OCC 19780 to 843
21   23    United States Patent         274
22         '6,783,543
23   24    Dr. Moore's Opening Report   322
24
25              (Continued)
```

# EXHIBIT 20

Page 1224

- VOLUME F -

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

---

BOSTON SCIENTIFIC CORPORATION,       :   CIVIL ACTION
                                     :
           Plaintiff                 :
                                     :
    vs.                              :
                                     :
CORDIS CORPORATION and               :
JOHNSON & JOHNSON, INC.,             :
                                     :
           Defendants                :   NO. 03-27 (SLR)
-------------------------------------
BOSTON SCIENTIFIC SCIMED, INC.,      :   CIVIL ACTION
and BOSTON SCIENTIFIC                :
CORPORATION,                         :
                                     :
           Plaintiffs                :
                                     :
    vs.                              :
                                     :
CORDIS CORPORATION and               :
JOHNSON & JOHNSON, INC.,             :
                                     :
           Defendants                :   NO. 03-283 (SLR)

---

Wilmington, Delaware
Wednesday, June 29, 2005
9:40 o'clock, a.m.

---

BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge, and a jury

---

Valerie J. Gunning and
Leonard A. Dibbs,
Official Court Reporters

---

Page 1225

APPEARANCES:

ASHBY & GEDDES
BY: STEVEN J. BALICK, ESQ and
    JOHN G. DAY, ESQ.

-and-

PATTERSON, BELKNAP, WEBB & TYLER LLP
BY: GREGORY L. DISKANT, ESQ.,
    MICHAEL TIMMONS, ESQ.
    EUGENE GELERNTER, ESQ.,
    KIM J. LANDSMAN, ESQ.,
    SCOTT HOWARD, ESQ and
    THOMAS PIPPERT, ESQ
    (New York, New York)

-and-

JOHNSON & JOHNSON
BY: ERIC HARRIS, ESQ

    Counsel for Cordis Corporation

YOUNG, CONAWAY, STARGAT & TAYLOR
BY: JOSY W. INGERSOLL, ESQ

-and-

BOUCHARD, MARGULES & FRIEDLANDER, P.A
BY: KAREN L. PASCALE, ESQ

-and-

---

Page 1226

APPEARANCES (Continued):

KENYON & KENYON
BY: RICHARD DeLUCIA, ESQ.,
    THOMAS MELORO, ESQ and
    ELIZABETH GARDNER, ESQ
    (New York, New York)

-and-

KIRKLAND & ELLIS
BY: JOHN DESMARAIS, ESQ and
    PETER J. ARMENIO, ESQ.
    (New York, New York)

    Counsel for Boston Scientific
    Corporation

---

Page 1227

PROCEEDINGS

(Proceedings commenced at 9:40 a.m., and the following occurred without the presence of the jury.)

MR. MELORO: Good morning, your Honor.

Mr. DeLucia referenced an evidentiary issue regarding Dr. Buller's testimony.

The main issue relates to some prior-art references that Cordis wishes to question Dr. Buller about and introduce into evidence, to the extent they're not already in evidence.

Dr. Buller is not going to be offering any opinions regarding invalidity of the Helmus and Ding patent during his testimony. The references are not part of any invalidity opinion of any expert.

Dr. Hanson will be testifying on invalidity for Cordis. He has not relied on the references in his invalidity evaluation. So part of the reason for putting these in is they describe general state of the art. I think there's only potential for mischief here. These references don't go to an opinion that Dr. Buller will Express and they don't go to an opinion that Dr. Hanson will Express.

BSC vs. Cordis & J&J, CA#03-27 & 03-283 (SLR)                Page 1224 - Page 1227

BSC-C 008282

Page 1284

Page 1287

1 the other.
2 Q. Okay. And let's just, so we're clear, these are
3 not in phase because they're not pointing exactly in the
4 same direction; is that right?
5 A. Correct. These are out of phase, but they are not
6 mirror images. They are not 180 degrees out of phase.
7 Q. Okay. So you can't -- they're not mirror images?
8 A. They are not mirror images.
9 Q. All right. Does Jang specification discuss 180-
10 degree out-of-phase stents?
11 A. Yes. He explains very early on in the patent
12 that stents with 180 degrees have some undesirable
13 features.
14 Q. Go to Column 2. He says, another example of a
15 conventional stent patent is the Brun patent. What is
16 the Brun patent?
17 A. It's a sort of misprint here because Brun was the
18 name of the attorney who prosecuted a patent in Europe
19 and I think this is, in fact, from memory, without
20 looking at that, I think it is the Israel patent in
21 Europe.
22 Q. And he says, the even and odd first meander
23 patterns.
24      What's he talking about here?
25 A. He's talking about Palmaz rings or the expansion

BSC vs. Cordis & J&J, CA#03-27 & 03-283 (SLR)                Page 1284 - Page 1287

BSC-C 008297

Page 1363

1  the patent, the actual patent text, this is the Jang
2  patent; right?
3  A. Could I have a copy of it?
4      Yes, it is the '021 patent or one page of it.
5  Q. Yes. I would be happy to give you a copy.
6      MR. DESMARAIS: May I approach, your Honor?
7      THE COURT: Yes, you may.
8  BY MR. DESMARAIS:
9  Q. I hand you Boston Scientific Exhibit 4 (handing
10 exhibit to the witness).
11 A. Thank you.
12 Q. And my only question is: What we see here, this
13 is Columns 1 and 2 from the Jang patent; right? What you
14 see on the screen?
15 A. Yes.
16 Q. And what we see is, there's a section entitled
17 background of the invention. Right in the text of the
18 patent; right?
19 A. Yes.
20 Q. And that's in Column 1.
21     And then if we go over to discussion, the
22 Palmaz patent is discussed by Dr. Jang right in the very
23 text of his patent; right?
24 A. Yes.
25 Q. And if we look down, one of the other references

BSC vs. Cordis & J&J, CA#03-27 & 03-283 (SLR)          Page 1360 - Page 1363

BSC-C 008316

Page 1364

1  you rely on, that's actually the foreign equivalent of
2  the Israel '303 patent. That's discussed right in the
3  background of Dr. Jang's patent; right
4  A. That is correct. They are both discussed briefly.
5  Q. In fact, if we look at one of the figures that you
6  relied on in your direct, this figure, you remember you
7  colored this in for the jury?
8  A. Yes.
9  Q. That figure comes right from the Patent Office's
10 file showing they considered it before they issued the
11 Jang patent; right?
12 A. That's exactly what I said. It came out of the
13 file history. That's what I said. I think it's Page
14 198.
15 Q. So there's no dispute between us that the Patent
16 Office had all of these references, Israel, Palmaz, Brown
17 and Pinchasik, and specifically considered them before
18 issuing the Jang patent; right?
19 A. That is true. They considered these references.
20 Q. Now, you know, don't you, sir, that when deciding
21 obviousness of an invention, the law prohibits you from
22 using hindsight to pick and choose and mix and match
23 from differences; right? Doesn't the law prohibit
24 hindsight?
25 A. Absolutely. The exercise I performed avoided that

BSC vs. Cordis & J&J, CA#03-27 & 03-283 (SLR)              Page 1364 - Page 1367

BSC-C 008317

# EXHIBITS 21-22
# REDACTED IN FULL

# EXHIBIT 23


1

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC.,

    Plaintiffs,

-against-

CONOR MEDSYSTEMS, INC.,

    Defendant.

No. 05-768-SLR

May 5, 2007
9:54 a.m.

   HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION

of JAMES E. MOORE, taken by Defendant,

pursuant to Notice, held at the offices of

KIRKLAND & ELLIS, LLP, 153 East 53rd

Street, New York, New York before Wayne

Hock, a Notary Public of the State of New

York.

## Page 2

```
 1
 2  APPEARANCES:
 3
       KIRKLAND & ELLIS, LLP
 4     Attorneys for Plaintiffs
           153 East 53rd Street
 5         New York, New York 10022
 6     BY:   PETER J. ARMENIO, ESQ.
             YOUNG J. PARK, ESQ.
 7
 8  PATTERSON BELKNAP WEBB & TYLER, LLP
       Attorneys for Defendant
 9         1133 Avenue of the Americas
           New York, New York 10036
10
       BY:   SCOTT W. PARKER, ESQ.
11           LAURA STORTO, ESQ.
12
13  ALSO PRESENT:
14       KEVIN GALLAGHER, Videographer
              *   *   *
15
```

## Page 3

```
 1
 2       (Whereupon, a document entitled
 3  Expert Report of Professor James E.
 4  Moore, Ph.D. was marked Moore
 5  Exhibit 1 for identification.)
 6       (Whereupon, a document entitled
 7  Rebuttal Expert Report of Professor
 8  James E. Moore, Ph.D. was marked
 9  Moore Exhibit 2 for identification.)
10       THE VIDEOGRAPHER: We are now
11  going on the record approximately 9:55
12  a.m.
13       This is the videotaped
14  deposition of witness James Moore
15  taken in the U.S. District Court for
16  the District of Delaware, case
17  number 05-768-SLR, Boston Scientific
18  Corporation, et al., versus Conor
19  MedSystems, Inc.
20       The deposition is being held
21  today, May 5, 2007 at the offices of
22  Kirkland Ellis in the Citicorp
23  building in New York, New York.
24       I'm Kevin Gallagher, the
25  videographer. The court reporter is
```

## Page 4

```
 1
 2  Wayne Hock. We're both from the
 3  independent firm of Veritext Court
 4  Reporting Services.
 5       Counsel will now identify
 6  themselves for the record.
 7       MR. PARKER: Scott Parker,
 8  Patterson Belknap Webb and Tyler, LLP,
 9  on behalf of Conor MedSystems.
10       MS. STORTO: Laura Storto from
11  Patterson Belknap Webb and Tyler also
12  on behalf of Conor MedSystems.
13       MR. ARMENIO: Peter Armenio from
14  Kirkland and Ellis for Plaintiffs
15  Boston Scientific Corporation and
16  Boston Scientific Scimed, Inc. and the
17  witness, Dr. Moore.
18       THE VIDEOGRAPHER: Mr. Hock will
19  swear the witness.
20  J A M E S  E.  M O O R E, having
21       been first duly sworn by a Notary Public of
22       the State of New York, upon being examined,
23       testified as follows:
24       (CONTINUED ON NEXT PAGE)
25
```

## Page 5

```
 1  J. E. Moore -- HIGHLY CONFIDENTIAL
 2  EXAMINATION BY
 3  MR. PARKER:
 4    Q.   Good morning, Professor.
 5    A.   Good morning.
 6    Q.   Nice to see you again.
 7    A.   Nice to see you.
 8    Q.   I know that you've been deposed
 9  before. In fact, I've deposed you before.
10       Can I assume that you're
11  generally familiar with the rules of
12  depositions?
13    A.   Yes.
14    Q.   I'll just ask that you let me
15  finish all of my questions before you give
16  me your answers and I will do the same.
17       You understand that you're under
18  oath today and you have to tell the truth?
19    A.   Yes.
20    Q.   If I ask a question and you
21  don't understand it, just ask me to
22  rephrase it and I'll be happy to do so.
23       And if you need a break at any
24  time, just let me know, we can take a
25  break. We'll take regular breaks over the
```

**78**

J. E. Moore -- HIGHLY CONFIDENTIAL

going back on the record at approximately 1:35 p.m.

   MR. PARKER: I'd like to have marked as Exhibit 7 the opening expert report of Nigel Buller dated March 19, 2007.

   (Whereupon, a document entitled Opening Expert Report of Nigel Buller, B.S.C. was marked Moore Exhibit 7 for identification.)

Q. Before we get to that --
   MR. PARKER: Actually, strike that.
Q. Can you turn to Exhibit C of Dr. Buller's report.
A. Okay.
Q. You've reviewed Dr. Buller's initial expert report in this case; right?
A. Yes.
Q. And he submitted it on March 19; right?
A. That looks to be the case.
Q. So is it fair to say you've had about six weeks to think about it?

**79**

J. E. Moore -- HIGHLY CONFIDENTIAL

A. That sounds about right.
Q. Do you agree that the stent design shown on page one of Moore Exhibit 7 satisfies all of the limitations of claim twenty-three of the '021 patent?
   MR. ARMENIO: I think you misspoke when you identified where you want him to look.
   MR. PARKER: Okay.
Q. Looking at Moore Exhibit 7 --
A. Uh-huh.
Q. -- turn to Exhibit C, and do you see the image on page one of Exhibit C?
A. Yes, I do.
Q. Would you agree that the stent design shown on this page satisfies all of the limitations of claim twenty-three of the '021 patent?
   MR. ARMENIO: Objection. Lack of foundation.
A. I don't know. I haven't analyzed it from that point of view.
Q. Have you analyzed it from any point of view?

**80**

J. E. Moore -- HIGHLY CONFIDENTIAL

A. Yes.
Q. What point of view is that?
A. Whether or not it really would count as something disclosed by the Israel '303 patent.
Q. I don't understand.
   Oh, whether this particular image is disclosed by the Israel '303 patent?
A. Yes.
Q. You've considered that?
A. Yes.
Q. Have you considered whether -- regardless of whether this image is disclosed by the Israel '303 patent, this image reads on all of the limitations of claim twenty-three of the '021 patent?
A. No, I have not.
Q. Why not?
A. To me it doesn't -- it is not a design that is described in the Israel '303 patent. This is a design that would go against the teachings of the Israel '303. I don't see it as a relevant

**81**

J. E. Moore -- HIGHLY CONFIDENTIAL

exercise to see whether or not it reads on claim twenty-three.
Q. Let's assume you're wrong. Let's assume that this design is disclosed by the Israel '303 patent.
   If you assume that this design is disclosed by the Israel '303 patent, do you agree that it reads on all of the limitations on claim twenty-three of the '021 patent?
   MR. ARMENIO: Objection. Improper hypothetical.
   I just object to the extent that you're asking him to assume something he's just said he can't assume.
   You can continue.
A. Again, I didn't consider it in that way. For the purposes of determining whether or not this corresponds to claim twenty-three, it didn't seem like a relevant exercise because, as I said, this is not a design that one could get from the Israel '303 patent.
Q. Okay.

218

```
 1
 2
 3              I N D E X (continued)
 4
 5              INSERTIONS
 6         Page          Line
 7            (NONE)
 8
 9              REQUESTS
10         Page          Line
11            (NONE)
12
13              RULINGS
14         Page          Line
15            (NONE)
16
17              *    *    *
18
19
20
21
22
23
24
25
```

219

```
 1
 2         CERTIFICATION BY REPORTER
 3
 4      I, Wayne Hock, a Notary Public of the
 5   State of New York, do hereby certify:
 6         That the testimony in the within
 7   proceeding was held before me at the
 8   aforesaid time and place;
 9         That said witness was duly sworn
10   before the commencement of the testimony,
11   and that the testimony was taken
12   stenographically by me, then transcribed
13   under my supervision, and that the within
14   transcript is a true record of the
15   testimony of said witness.
16         I further certify that I am not
17   related to any of the parties to this
18   action by blood or marriage, that I am not
19   interested directly or indirectly in the
20   matter in controversy, nor am I in the
21   employ of any of the counsel.
22         IN WITNESS WHEREOF, I have hereunto
23   set my hand this 7th day of May, 2007.
24
                    _____
25                        WAYNE HOCK
```

220

```
 1
 2                  ERRATA SHEET
          VERITEXT/SPHERION DEPOSITION SERVICES
 3
     CASE NAME: BOSTON SCIENTIFIC V. CONOR
 4   DATE OF DEPOSITION: May 5, 2007
     WITNESS' NAME: JAMES E. MOORE
 5
 6   PAGE/LINE(S)/    CHANGE          REASON
         /    /                   /
 7   _____/____/_____/_____
         /    /                   /
 8   _____/____/_____/_____
         /    /                   /
 9   _____/____/_____/_____
         /    /                   /
10   _____/____/_____/_____
         /    /                   /
11   _____/____/_____/_____
         /    /                   /
12   _____/____/_____/_____
         /    /                   /
13   _____/____/_____/_____
         /    /                   /
14   _____/____/_____/_____
         /    /                   /
15   _____/____/_____/_____
         /    /                   /
16   _____/____/_____/_____
         /    /                   /
17   _____/____/_____/_____
         /    /                   /
18   _____/____/_____/_____
19
20                    _____
                           JAMES E. MOORE
21
     SUBSCRIBED AND SWORN TO
22   BEFORE ME THIS_____DAY
     OF_____,2007.
23
                    _____
24        NOTARY PUBLIC
25   MY COMMISSION EXPIRES
```

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on May 25, 2007, I caused to be served a true and correct copy of the foregoing document upon the following counsel of record as indicated.

**BY HAND DELIVERY**

Steven J. Balick, Esquire
John G. Day, Esquire
Lauren E. Maguire, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

**BY FEDEX & E-MAIL**

Gregory L. Diskant, Esquire
Eugene M. Gelernter, Esquire
Kathleen M. Crotty, Esquire
Scott W. Parker, Esquire
Ravi V. Sitwala, Esquire
Diana Breaux, Esquire
Patterson, Belknap, Webb
    & Tyler, LLP
1133 Avenue of the Americas
New York, NY 10036

Courtland L. Reichman, Esquire
King & Spalding
1180 Peachtree Street, NE
Atlanta, GA 30309

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
*apoff@ycst.com*

*Attorneys for Boston Scientific Corporation
and Boston Scientific Scimed, Inc.*